# Item 1

# Defendants' Appendix Of Certain Documents Referred To In The Third Amended Complaints

# HOLLISTER EMPLOYEE SHARE OWNERSHIP TRUST

## HOLLISTER EMPLOYEE SHARE OWNERSHIP TRUST

### Table of Contents

| Article | I | Title | 1 |
|---|---|---|---|
| Article | II | Purpose | 1 |
| Article | III | Definitions | 2 |
| Article | IV | Effective Date | 12 |
| Article | V | Eligibility and Participation | 12 |
| Article | VI | Contributions | 14 |
| Article | VII | Accounts and Allocations of Funds | 15 |
| Article | VIII | Vesting and Forfeiture of Accounts | 22 |
| Article | IX | Distribution of an Account | 25 |
| Article | X | Loans from Trust Fund | 38 |
| Article | XI | Trustees and Trust Administration | 40 |
| Article | XII | Amendment and Termination | 48 |
| Article | XIII | Miscellaneous | 51 |
| Article | XIV | Top-Heavy Rules | 53 |

This Restatement of the Hollister Employee Share Ownership Trust ("Trust") is hereby made and entered into this __27th__ day of February, 2002 by Hollister Incorporated ("Company") and Samuel P. Brilliant, James A. Karlovsky and Richard T. Zwirner ("Trustees" or individually "Trustee").

WHEREAS the Company heretofore established the Trust as a profit sharing plan and trust effective January 1, 1973, which Trust was amended and restated on December 15, 1976 and further amended on December 5, 1977, June 29, 1979, August 22, 1983, October 24, 1985, November 1, 1985, June 26, 1987 and December 22, 1989 and then amended and restated December 28, 1994 and further amended on December 23, 1996 and January 28, 1999; and

WHEREAS under the terms of the Trust, the Company has the ability to amend the Trust;

NOW, THEREFORE, effective January 1, 1997, except as otherwise provided, the Company and the Trustees hereby agree to amend and restate the Trust in its entirety to provide as follows:

## Article I

### Title

The Trust continued in accordance with the terms of this Agreement is and shall continue to be known as the Hollister Employee Share Ownership Trust. All funds and assets transferred to or held by the Trustees are and shall be held subject to the terms and conditions of the Trust as herein set forth.

## Article II

### Purpose

The purpose of this Trust is to enable participating employees of the Company to share in profits of the Company in accordance with the profit sharing plan embodied herein. In no event shall the principal or income of the Trust be used for any purpose whatsoever other than for the exclusive benefit of the participating employees and their beneficiaries. The Trust is hereby

designated as a retirement plan intended to qualify under Sections 401(a) and 501(a) of the Internal Revenue Code of 1986 ("Code") as amended and under the Employee Retirement Income Security Act of 1974 ("Act"). All provisions of the Trust shall be construed in a manner consistent with the Code and the Act.

## Article III

### Definitions

Wherever used herein, unless the context clearly indicates otherwise, the following words shall have the following meanings:

3.01    Account. "Account" means the accounting balance for a Participant, Former Participant or Alternate Payee, which balance represents the Participant's, Former Participant's or Alternate Payee's portion of the Trust Fund.

3.02    Alternate Payee. "Alternate Payee" means a spouse, former spouse, child or other dependent of a Participant who is recognized by a QDRO as having the right to receive all, or a portion of, the Participant's Account.

3.03    Annuity. "Annuity" means the applicable annuity form of payment in Section 9.01 which is purchased by the Trustees with the funds constituting the balance of the Account of a Former Participant (either alone or grouped with funds being similar Accounts of other Former Participants) from an insurance company pursuant to a written annuity contract entered into by the Trustees for the purpose of providing benefits to Former Participants and their Beneficiaries under the Plan.

3.04    Annuity Contract. "Annuity Contract" means an annuity contract described in Section 3.25 supra.

3.05    Beneficiary. "Beneficiary" means the one or more persons entitled to receive the distribution provided by this Trust after the death of the Participant or Former Participant or Alternate Payee.

-2-

With respect to a Participant or Former Participant who is married, such Participant's or Former Participant's surviving spouse shall be his or her Primary Beneficiary as to no less than 50% of the Participant's or Former Participant's benefits under the Trust unless such surviving spouse shall have consented in accordance with the requirements of the Code and regulations to such Participant's or Former Participant's designation of some other person or persons as the Primary Beneficiary. If the Participant's or Former Participant's surviving spouse is the Primary Beneficiary and dies before all distributions have been made to the surviving spouse, the remaining distributions shall be made to the surviving spouse's estate unless such surviving spouse shall have consented in accordance with the requirements of the Code and regulations to the Participant's or Former Participant's designation of some other person or persons as Successor Beneficiary. A married Participant or married Former Participant may, without a spouse's consent, designate a Contingent Beneficiary to receive distributions in the event that, at the Participant's or Former Participant's death, there is no surviving spouse.

With respect to a Participant or Former Participant who is unmarried or who is otherwise exempted under Section 417(a)(2)(B) of the Code, such Participant or Former Participant may designate in writing a Primary Beneficiary to receive distributions under the Trust following the death of the Participant or Former Participant, a Contingent Beneficiary to receive distributions if the Primary Beneficiary fails to survive the Participant or Former Participant, or a Successor Beneficiary to receive distributions upon the death of a Primary Beneficiary subsequent to the death of the Participant or Former Participant.

A married Participant or married Former Participant may, with the consent of his or her spouse in accordance with the requirements of the Code and regulations, designate a Primary Beneficiary other than such surviving spouse (including other individuals or a trust for the benefit of the spouse and/or other persons) or a Successor Beneficiary to receive the remaining distributions at the death of the spouse or other Primary Beneficiary.

- 3 -

A married Participant or married Former Participant who, with his or her spouse's consent, has designated a Primary Beneficiary (other than the spouse) or a Successor Beneficiary cannot, if he or she is then married to the consenting spouse, change such beneficiary designation without the consent of his or her spouse. Such beneficiary designation will be invalid if the Participant or Former Participant is married to a different spouse at death.

For the purposes of the preceding five paragraphs of this Section 3.05, a Participant or Former Participant shall be deemed to be married only if the Participant or Former Participant and his or her spouse have been married for at least one (1) year as of the earlier of the date benefit payments commence or the date of death of the Participant or Former Participant.

If there is neither a Primary Beneficiary nor a Contingent Beneficiary or if neither the Primary Beneficiary nor the Contingent Beneficiary survives the Participant or Former Participant or Alternate Payee, the Beneficiary shall be the surviving person or persons in the first of the following classes of successive preference beneficiaries, any distribution to two or more persons to be made in equal shares:

The Participant's or Former Participant's or Alternate Payee's

    (1)    spouse

    (2)    descendants, _per stirpes_

    (3)    parents

    (4)    brothers and sisters

    (5)    executors or administrators.

If no person has been designated as Successor Beneficiary to receive the distribution after the death of the Primary Beneficiary, or if the designated Successor Beneficiary does not survive the Beneficiary, the Successor Beneficiary shall be the estate of the Beneficiary.

3.06    Board of Directors. "Board of Directors" means the Board of Directors of the Company.

-4-

3.07    Break in Service. "Break in Service" means any Trust Fiscal year beginning with 1976 during which a Participant or Former Participant does not complete more than 500 Hours of Service excluding, however, any Trust Fiscal Year in which participation terminates by retirement at (or after) age 65, by reason of Permanent Disability or by death.

3.08    Company. "Company" means Hollister Incorporated, an Illinois corporation, and any successor to all or a major portion of its property or business, and such subsidiaries and affiliated corporations as are (1) organized under the laws of the United States or a state thereof, and (2) designated in writing by the Board of Directors of Hollister Incorporated.

3.09    Compensation. "Compensation" means all the compensation received by a Participant from the Company during a Trust Fiscal Year or portion thereof that such person was a Participant and which is subject to withholding of federal income taxes and is included in the amounts set forth on the Participant's Wage and Tax Statement (Internal Revenue Service Form W-2 or equivalent) excluding, however, any contributions, forfeitures, or benefits hereunder and any contributions, forfeitures or benefits under any other qualified pension, profit sharing, group insurance or other employee welfare plan or trust now or hereafter adopted by the Company. Notwithstanding the foregoing, commencing January 1, 1999, on a basis uniformly applied to all Participants, the Company may, in its discretion, include as Compensation hereunder, pursuant to Code Section 415(c)(3)(D), amounts which are otherwise excluded from Participants' Wage and Tax Statements pursuant to a Code Section 125 "Cafeteria Plan" or pursuant to Code Section 402(e)(3) as a qualified cash or deferred arrangement defined in Code Section 401(k)(2) or, commencing January 1, 2002, pursuant to Code Section 132(f)(4) as a qualified transportation fringe benefit.

For a Participant's initial year of participation, Compensation shall be recognized as of such Employee's effective date of participation.

- 5 -

In addition to other applicable limitations set forth in the Plan, and notwithstanding any other provision of the Plan to the contrary, the annual Compensation of each Employee taken into account under the Plan shall not exceed the annual compensation limit permitted by Code Section 401(a)(17) including adjustments by the Commissioner provided for thereunder for increases in the cost of living. The cost of living adjustment in effect for a calendar year applies to any period, not exceeding twelve (12) months, over which Compensation is determined (determination period) beginning in such calendar year. If a determination period consists of fewer than twelve (12) months, the annual compensation limit will be multiplied by a fraction, the numerator of which is the number of months in the determination period, and the denominator of which is twelve (12).

If Compensation for any prior determination period is taken into account in determining an Employee's benefits accruing in the current Plan Year, the Compensation for that prior determination period is subject to the annual compensation limit in effect for that prior determination period.

In determining a "highly compensated employee" for any purpose under the Plan, the Company elects the application of Section 414(q)(1)(B)(ii) of the Code.

3.10   Consolidated Net Operating Profits.  "Consolidated Net Operating Profits" means the consolidated net earnings of the Company's parent company, The Firm of John Dickinson Schneider, Inc. ("JDS Inc.") and its subsidiaries (being Hollister Incorporated and its subsidiaries) as determined by JDS Inc. upon the basis of its books of account and in accordance with generally accepted accounting principles, before any deduction for federal, state or other taxes on income or for contributions made by the Company to the Trust Fund; provided that such consolidated net earnings shall not include extraordinary items of income or expense as determined in accordance with generally accepted accounting principles.

3.11   Consolidated Net Worth.  "Consolidated Net Worth" means the sum of the issued shares of capital stock, paid-in surplus and retained earnings of JDS Inc. as determined by JDS

- 6 -

Inc. upon the basis of its books of account and in accordance with generally accepted accounting principles.

3.12    Continuous Service with the Company.    "Continuous Service with the Company" means employment by the Company regularly and without interruption over a period of time. Employment with JDS Inc. or any subsidiary of the Company shall be considered Continuous Service with the Company.    The period of any approved leave of absence shall also be considered to be Continuous Service with the Company.  For purposes of this section, "approved leave of absence" means a leave of absence granted by the Company in accordance with uniform principles of Company personnel policy consistently applied and shall include absence due to military service, maternity, sickness or personal reasons.

3.13    Employee.    "Employee" means an individual who is employed by the Company excluding, however:

(1)    anyone who is or with the passage of a 30 day waiting period or other period of time will be or will be eligible to become, a member of Local No. 710 of the International Union, United Automobile Aerospace and Agricultural Implement Workers of America;

(2)    anyone who is a non-resident alien with respect to the United States; and

(3)    anyone who is a "leased employee" within the meaning of Section 414(n) of the Code and would otherwise be deemed an employee solely by reason of such Section.

3.14    Former Participant.    "Former Participant" means a Participant who has:

(1)    retired, terminated employment with the Company or whose employment has been terminated by the Company; provided, however, that (a) a Participant who works on the last regularly scheduled working day of any Trust Fiscal Year shall be considered to have been a Participant through the end of that Trust Fiscal Year; and (b) employment

- 7 -

with any corporation or corporations controlling, controlled by, or under common control with the Company shall, for purposes of this Section, be deemed employment with the Company; or

(2)    died;

whichever occurs first.

3.15    Hour of Service. "Hour of Service" shall mean each hour for which an Employee is paid, or entitled to payment, for the performance of duties for the Company during the applicable computation period. An Employee will be credited with an Hour of Service for any customary period of work based on a 40 hour week or pro rata portion thereof. If an Employee has less than 1,000 Hours of Service for purposes of determining a Year of Service with the Company by crediting the Employee with Hours of Service for a customary period of work, based on a 40 hour week or pro rata portion thereof, then the actual number of Hours of Service shall determine whether the Employee has less than 1,000 Hours of Service for purposes of determining a Year of Service with the Company. Each hour of overtime shall be counted as one hour.

An Hour of Service shall also include each hour for which an Employee is paid or entitled to payment by the Company on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence. No more than 501 Hours of Service will be required to be credited under this subparagraph to an Employee on account of any single continuous period during which the Employee performs no duties (whether or not such period occurs in a single computation period).

Solely for purposes of determining whether a Break in Service has occurred in a computation period, an individual who is absent from work for maternity or paternity reasons shall receive credit for the Hours of Service which would otherwise have been credited to such individual but for such absence, or in any case in which such hours cannot be determined, at 8

- 8 -

Hours of Service per day of such absence. For purposes of this paragraph, an absence from work for maternity or paternity reasons means an absence (1) by reason of the pregnancy of the individual, (2) by reason of a birth of a child of the individual, (3) by reason of the placement of a child with the individual in connection with the adoption of such child by such individual or (4) for purposes of caring for such child for a period beginning immediately following such birth or placement. The Hours of Service credited under this paragraph shall not exceed 501 and shall be credited (1) in the computation period in which the absence begins if the crediting is necessary to prevent a Break in Service in that period, or (2) in all other cases, in the following computation period.

An hour for which an Employee is directly or indirectly paid or entitled to payment, on account of a period during which no duties are performed, is not required to be credited to the Employee as such payment is made or due under a plan maintained solely for purposes of complying with applicable workers' compensation or unemployment compensation or disability insurance laws. Hours of Service are not required to be credited for a payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee.

An Hour of Service is each hour for which back pay (irrespective of mitigation of damages) is either awarded or agreed to by the Company. However, if an Hour of Service has been credited under the preceding subparagraphs of this Section, it shall not be again credited under this subparagraph, and if the back pay covers a period of time in which no duties are performed, then it shall only be credited for purposes of determining whether an Employee has incurred a Break in Service. Further, no more than 501 Hours of Service will be required to be credited under this subparagraph to an Employee on account of any single continuous period during which the Employee performs no duties (whether or not such period occurs in a single computation period).

Nothing in this Section shall be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States or any rule or regulation issued under any such law. The

- 9 -

application of the definition of Hour of Service shall be governed by the applicable regulations issued by the Department of Labor.

3.16  Participant.  "Participant" means an Employee who has met the eligibility requirements set forth in Section 5.01 and has elected in writing to participate in the Plan.

3.17  Permanent Disability. "Permanent Disability" means a physical or mental condition of a Participant resulting from a bodily injury, disease or mental disorder which renders him incapable of continuing in the employment of the Company.  The Permanent Disability of any Participant shall be determined by the Company, in accordance with uniform principles consistently applied, upon the basis of such evidence as it deems necessary and desirable.  In determining the nature and extent of any Participant's disability, the Company may select a physician to examine such Participant and to advise the Company with respect to such disability. The final determination of the nature and extent of such disability shall be made solely by the Company.

3.18  Plan.  "Plan" or "Trust" means the Hollister Employee Share Ownership Trust created by this Agreement and any and all amendments thereto and restatements thereof.

3.19  Plan Administrator.  "Plan Administrator" means the Company.

3.20  Plan Year.  "Plan Year" or "Trust Fiscal Year" means the fiscal period of January 1st through December 31st used by the Trust for the purpose of maintaining its financial and accounting records.

3.21  QDRO.  "QDRO" means a domestic relations order as to which a determination that it is a qualified domestic relations order becomes final in accordance with uniform procedures established by the Plan Administrator pursuant to Section 414(p) of the Code.

3.22  Related Employer.  "Related Employer" means

(1)  a member of a controlled group of corporations with the Company as determined under Section 414(b) of the Code, except that for purposes of the Section 415

limitations, control shall be determined by substituting "more than 50 percent" for "at least 80 percent";

(2)    a trade or business under common control with the Company as determined under Section 414(c) of the Code except that for purposes of the Section 415 limitations, control shall be determined by substituting "more than 50 percent" for "at least 80 percent"; and

(3)    a member of an affiliated service group with the Company as determined under Section 414(m) of the Code.

3.23    Trust. "Trust" or "Plan" means the Hollister Employee Share Ownership Trust created by this Agreement and any and all amendments thereto and restatements thereof.

3.24    Trust Fiscal Year. "Trust Fiscal Year" or "Plan Year" means the fiscal period of January 1st through December 31st used by the Trust for the purpose of maintaining its financial and accounting records.

3.25    Trust Fund. "Trust Fund" means the funds, other assets and any liabilities administered pursuant to this Trust by the Trustees and any interest of the Trust in Annuity Contracts entered into by the Trustees with an insurance company.

3.26    Trustee. "Trustee" means a natural person or corporation appointed and acting as Trustee of this Trust and any duly appointed successor or successors.

3.27    Year of Service. "Year of Service" has the meanings set forth in Sections 5.01 and 8.02 respectively. For the sole purpose of computing Years of Service (and not, for example, for the purpose of determining whether or not an individual is an Employee), the following service shall be deemed to be service with Company:

(1)    service with any corporation, including a corporation organized under the laws of a jurisdiction other than the United States or a state thereof, controlling, controlled by, or under common control with the Company;

- 11 -

(2)    service with any other Related Employer; and

(3)    service as a leased Employee of the Company to the extent required under Section 414(m) of the Code.

## Article IV

### Effective Date

Except as otherwise provided herein or by law, the effective date of this amended and restated Trust shall be January 1, 1997 ("Effective Date"). An Employee who was a Participant under the provisions of the Trust in effect prior to the Effective Date shall continue as a Participant in accordance with the provisions of this amended and restated Trust. The rights and benefits, if any, of each Employee of the Company shall be determined in accordance with the provisions of the Plan in effect on the date of termination of his or her employment.

## Article V

### Eligibility and Participation

5.01    An Employee shall be eligible to become a Participant in the Plan as of January 1st or July 1st of any year if on or before such date the Employee has completed a Year of Service and his or her employment has not terminated before such date; provided, however, that a person who has completed a Year of Service on or before the date such person becomes an Employee (as defined in Section 3.13) shall be eligible to become a Participant on the date of becoming an Employee. The Company shall notify each Employee of impending eligibility for participation prior to the date of eligibility for participation and shall supply the Employee with a form which, when signed by the Employee and delivered to the Company, shall make the Employee a Participant as of January 1st or July 1st, whichever is applicable. For purposes of this section, a "Year of Service" means either (1) the consecutive 12-month period commencing with the most recent date of hire if the Employee completes at least 1,000 Hours of Service in such period or, if not, (2) the first Trust Fiscal Year in which the Employee completes at least 1,000 Hours of Service.

- 12 -

5.02    A Participant who becomes a Former Participant and then is reemployed by the Company shall become a Participant as of the date of reemployment, whether or not there has been a Break in Service.

5.03    A person shall not, by virtue of membership in a collective bargaining unit, lose eligibility to participate in the benefits provided in this Plan; provided that, if the Company is required pursuant to a collective bargaining agreement to provide immediate or prospective benefits under a pension, profit sharing, stock bonus, retirement or other similar plan for members of the collective bargaining unit, then (1) each member of such collective bargaining unit who is not then a Participant in this Plan shall cease to be eligible to become a Participant; and (2) each member of such collective bargaining unit who is then a Participant in this Plan shall remain a Participant except that he or she shall cease (a) to have allocated to his or her Account any portion of any Company contributions to the Trust fund, (b) to receive any portion of any forfeitures arising under the terms of this Trust and (c) to share, directly or indirectly, in any earnings, losses, appreciation and depreciation of the Trust fund. Although each such member of the collective bargaining unit shall remain a Participant, his or her Account shall be fixed in value and amount as of the effective date of such collective bargaining agreement or as of the date he or she becomes a member of the collective bargaining unit, whichever occurs later; provided that, after such date, each such member shall be entitled to those rights and subject to those conditions set forth in Articles VIII and IX of this Trust.

5.04    Subject to Section 13.05, in the event that a question arises as to eligibility of an Employee of the Company to participate in this Trust, the question shall be decided by the Trustees after a hearing if requested by the Employee concerned. The Trustees' decision shall be final.

5.05    The Company shall, on or before April 1st of each year, prepare and deliver to the Trustees a list of the Participants as of the preceding December 31st. Such list shall show with

- 13 -

respect to each Participant (1) the portion of the Company's contributions for the preceding year to be allocated to the Participant's Account, and (2) the number of Plan Years that such person had been a Participant as of such preceding December 31st.

## Article VI

## Contributions

6.01    Participants shall not make any contributions to the Trust Fund.

6.02    The Company shall contribute to the Trust fund for each Plan Year as follows:

    (1)    The greater of,

        (a)    5% of the aggregate Compensation of the Participants; or

        (b)    such other amount as the Company's Board of Directors shall determine;

provided, however, that such contribution shall be made only to the extent that JDS Inc.'s Consolidated Net Operating Profits for the Plan Year are maintained at a level equal to at least $10,000,000 after deducting such Company contribution.

    (2)    The contribution by the Company for any one Plan Year shall in no event exceed the lesser of (1) the maximum amount deductible by the Company for such year under Sections 404(a)(3) and 404(a)(7) of the Code, including the carryover provisions thereunder, or (2) the maximum amount otherwise permissible under applicable federal and state laws and regulations.

6.03    The Company shall make payment in full of its contribution for each year directly to the Trustees not later than the time (including extensions thereof) prescribed by law for filing its federal income tax return for such year. Upon delivery by the Company of any money or assets to the Trustees, all interest of the Company therein shall cease and terminate and no part thereof, nor any income therefrom, shall be used or devoted for purposes other than for the exclusive benefit of the Trust and of the Participants, Former Participants and Beneficiaries, as herein

- 14 -

provided, and no part thereof shall at any time revert to the Company; provided, however, that (1) a contribution made by the Company under a mistake of fact may be returned within one year after payment of the contribution; and (2) if a contribution is found to be non-deductible under Section 404 of the Code, then, to the extent the deduction is disallowed, the contribution shall be returned within one year after disallowance.

## Article VII

## Accounts and Allocations of Funds

7.01    The Trustees shall maintain on the books of the Trust an Account for each Participant and Former Participant.    The Accounts of Former Participants shall constitute a separate fund which shall be segregated from the Accounts of the Participants.  If such separate fund earns more than the amount of interest required to be paid or credited in accordance with Section 7.02(2), then such excess shall become a part of the Trust fund allocable to the Accounts of Participants.  If such separate fund earns less than the amount of interest required to be paid or credited in accordance with Section 7.02(2), then such deficiency shall become a charge against and shall be paid out of the Trust Fund allocable to the Accounts of Participants.  The Trustees shall determine the amount of each such Account as of each December 31st.  Such determination shall be made not later than the sixtieth day following the date upon which (1) the Company has made payment in full of its contribution for the year ending on such December 31st and has notified the Trustees of the amount of such contribution, or (2) the Company has delivered to the Trustees the list required by Section 5.05, whichever is later.

(1)    The Trustees shall maintain on the books of the Trust an Account for each Alternate Payee, which Account shall be created by allocations from the Account of a Participant to whom a QDRO relates of such portions of the Participant's Account as is specified in the applicable QDRO.

- 15 -

7.02    The Trustees shall determine the amount of each Account as follows:

(1)    The Account of each Participant shall be equal to the sum of the following components (a), (b) and (c):

(a)    The Trust Fund as of such December 31st reduced by the total of the following four amounts determined as of that date:

(i)    that part of the Trust Fund which represents the total Accounts of all Former Participants and Alternate Payees;

(ii)    that part of the Trust Fund which represents the contributions for the year ending as of such December 31st (including the portion thereof actually paid to the Trustees during such year as well as the portion thereof received by them in the following year);

(iii)    that part of the Trust Fund which represents forfeitures of Accounts by Participants who have become Former Participants (regardless of whether or not they have incurred Breaks in Service); and

(iv)    that part of the Trust Fund which represents the aggregate balance as of such December 31st of all loans to Participants plus the total amount of principal and interest on loans paid by Participants during such year;

multiplied by a fraction, the numerator of which is such Participant's Account on the preceding December 31st (less any then outstanding loan balance) and the denominator of which is the total Accounts on such preceding December 31st (reduced by the aggregate outstanding loan balances) of all persons who were

then Participants and have at all times continued to be Participants to and including the December 31st as of which the computation is being made; plus

(b)     Those parts of the Trust Fund which represent the total contributions to the Trust fund for such year (including the portion of such contributions made after as well as on or before December 31st) and the total forfeitures of Accounts by Former Participants who have as of such December 31st incurred five consecutive one year Breaks in Service; multiplied by a fraction the numerator of which is the Compensation of such Participant for such year and the denominator of which is the total Compensation of all Participants for such year; provided, however, that

(i)     the Annual Addition to each Participant's Account (meaning the sum of the Participant's share of the Company contributions and forfeitures for such Trust Fiscal Year) may not exceed the lesser of $30,000 or 25% of the Participant's compensation computed in accordance with Section 415 of the Code for such Trust Fiscal Year or such larger amount reflecting cost-of-living adjustments as may be from time to time permitted by applicable regulations of the Internal Revenue Service, reduced to the extent required under Sections 7.05 and 7.06; and,

(ii)     the excess, if any, between the Participants' aggregate component (b) calculated without regard to the maximum permissible Annual Additions and such aggregate maximum permissible Annual Additions shall be reallocated to the Accounts of all Participants whose Annual Additions are

- 17 -

less than the maximum permissible amount in accordance with the calculation of component (b) set forth above.

(c)    As to any Participant who had a loan outstanding at any time during the year, the loan balance at December 31st of such year plus any principal and interest payments made by such Participant to the Trustees during such year.

(2)    The Account of each Former Participant shall be determined as follows:

(a)    Upon a Participant becoming a Former Participant, his or her Account shall be:

(i)    The amount of his or her Account on the December 31st preceding the date on which he or she became a Former Participant, minus

(ii)    The amount of the forfeiture, if any, of that Account.

(b)    Once the Account of a Former Participant has been so determined, the Trustees shall distribute the account in accordance with Article IX.

(c)    Pending distribution of a Former Participant's Account by a single payment or by purchase of an Annuity for such Participant and/or his or her Beneficiaries, interest shall be credited to such Account after the date on which such Participant becomes a Former Participant at a then current short term interest rate chosen by the Trustees in their sole discretion from time to time.

(d)    Upon any December 31st, a Former Participant's Account shall be adjusted for any interest as hereinabove provided and for any distributions of principal or credited interest.

(e)    After the purchase of an Annuity pursuant to Section 9.01(1), the Account of a Former Participant shall consist of the Former Participant's interest in the Annuity.

- 18 -

(3)    A Former Participant who again becomes a Participant shall retain all rights in any Account as a Former Participant separate and apart from his or her new Account or Accounts as a Participant. With respect to any such rights:

(a)    Such Former Participant's vested Account, if any, shall remain a segregated account subject to the provisions of Sections 7.01 and 9.01.

(b)    If an individual who becomes a Former Participant again becomes a Participant before having incurred five consecutive one year Breaks in Service, the amount, if any, which had been subject to forfeiture under Section 8.03 (or Section 9.04 or Section 14.02, if applicable) at the time such individual became a Former Participant shall be allocated as of the last day of the Trust Fiscal Year in which such Former Participant again becomes a Participant to a separate Participant's Forfeiture Restoration Account. Such Participant's Forfeiture Restoration Account shall share in the adjustments under Section 7.02(1)(a) commencing with the December 31st of the Trust Fiscal Year subsequent to the Trust Fiscal year in which it was restored. Such Forfeiture Restoration Account shall not share in the allocation of contributions and forfeitures under Section 7.02(1)(b). In the event such Participant again becomes a Former Participant, vesting in his or her Forfeiture Restoration Account shall be determined under Section 8.04.

(4)    The Account of each Alternate Payee established pursuant to Section 7.01(1) shall, pending its distribution in accordance with Article IX, be invested by the Trustees in a short-term interest-bearing investment, which interest shall be credited periodically to such Alternate Payee's Account.

7.03    The assets in the Trust Fund shall be valued by the Trustees at their respective fair market values as of each December 31st. The fair market value of Common Shares of JDS Inc.

- 19 -

held in the Trust Fund shall, subject to the provisions of the remainder of this Section 7.03, be their book value as of the valuation date as reflected on the books of JDS Inc. The Trustees shall accept such book value as the fair market value if such book value is computed in accordance with generally accepted accounting principles. If such book value was not computed in accordance with generally accepted accounting principles, the Trustees shall investigate the actual method of computation. If after investigation they determine that such book value fairly reflects the value of the shares under the circumstances, they shall accept such book value as the fair market value. If after investigation they determine that such book value does not fairly reflect the value of the shares under the circumstances, they shall make such adjustment thereto, taking into consideration generally accepted accounting principles, as they deem reasonable and appropriate to fairly reflect the value of the shares under the circumstances; provided, however, that such adjustment shall not exceed the difference between such book value and book value computed in accordance with generally accepted accounting principles.

7.04    Nothing set forth in this Trust shall be deemed to give any Participant, Former Participant, Alternate Payee, Beneficiary or any other persons claiming a right or interest through such Participant, Former Participant, Alternate Payee or Beneficiary, any interest in any specific part of the Trust Fund or any right or interest under this Trust other than the right to receive a distribution in accordance with Article IX and any other applicable provisions of this Trust.

7.05    If a Participant hereunder is also a participant in any other defined contribution plan maintained by the Company or any Related Employer, then the Annual Additions to such defined contribution plans for the Company Fiscal Year shall not exceed the lesser of $30,000 as adjusted from time to time pursuant to applicable Internal Revenue Service regulations, or 25 percent of the Participant's compensation computed in accordance with Section 415 of the Code and the regulations thereunder. "Annual Additions" for this purpose means the sum of the contributions by the Company or a Related Employer, forfeitures and Employee contributions (other than qualified

- 20 -

voluntary Employee contributions under Section 72 of the Code and certain rollovers) to the extent of the lesser of the Employee contributions in excess of 6% of his or her compensation or one-half of the Employee contributions under all such defined contribution plans. If such Annual Additions would otherwise exceed the maximum permissible limit, then

(1)    To the extent provided under any such plan permitting Employee contributions, Employee contributions included in such Annual Additions shall be refunded to the extent necessary to reduce the Annual Additions to the permissible limit or as close to it as possible.

(2)    If the Annual Additions still exceed the permissible maximum, then to the extent provided under any such other plan, Company or Related Employer contributions and forfeitures shall be reallocated first under any such plan, and only after such reallocation if any, shall the Company contributions and forfeitures under this Trust and any other related plan be reduced pro rata and reallocated to other Participants as provided in Section 7.02(1)(b); and

(3)    If there remain any excess amounts after such reallocations, they shall be suspended until subsequent years.

7.06    For Plan Years commencing before January 1, 2000, if a Participant is or has been a participant in both a defined benefit plan and a defined contribution plan maintained by the Company and/or a Related Employer, then in no event shall a Participant be entitled to receive benefits in an amount which would cause the sum of the Defined Benefit Plan Fraction and the Defined Contribution Plan Fraction for any year to exceed 1. For purposes of this section:

(1)    The "Defined Benefit Plan Fraction" for any year is a fraction (a) the numerator of which is the projected annual benefit of the Participant under the plan, and (b) the denominator of which is the lesser of (i) the product of 1.25 multiplied by the dollar limitation in effect under Section 415(b)(1)(A) of the Code for such year (presently

- 21 -

$90,000) or (ii) the product of 1.4 multiplied by the amount which may be taken into account under Section 415(b)(1)(B) of the Code with respect to such Participant for such year (presently 100% of the Participant's high compensation for his or her high three years).

(2)    The "Defined Contribution Plan Fraction" for any year is a fraction (a) the numerator of which is the sum of the Annual Additions to the Participant's account as of the close of the year, and (b) the denominator of which is the sum of the lesser of the following amounts determined for such year and for each prior year of service with the Company or a Related Employer: (i) the product of 1.25 multiplied by the dollar limitation in effect under Section 415(c)(1)(A) for such year, as adjusted, or (ii) the product of 1.4 multiplied by the amount which may be taken into account under Section 415(c)(1)(B) (presently 25% of compensation) with respect to such Participant under such plan for such year.

(3)    All defined contribution plans of the Company and any Related Employer shall be treated as a single plan and all defined benefit plans of the Company and any Related Employer shall be treated as a single plan.

(4)    Compensation shall be computed in accordance with Section 415 of the Code and the regulations thereunder.

## Article VIII

### Vesting and Forfeiture of Accounts

8.01  If a Participant becomes a Former Participant by retirement at (or after) age 65, by reason of Permanent Disability or by death, then the Participant's Account shall vest fully and be nonforfeitable at the time of becoming a Former Participant.

8.02  If a Participant becomes a Former Participant in any other manner or for any other reason (except if discharged or resigns for cause under Section 9.04), then the vesting and

- 22 -

nonforfeitability of the Account shall be equal to the amount of the Account as of the last December 31st on which the person was a Participant multiplied by the appropriate percentage set forth below.

Except as otherwise provided in Section 9.04 relating to discharge or resignation for cause, or in Section 8.04 relating to any Forfeiture Restoration Account, or in Section 14.02 relating to the Top-Heavy Vesting Rules, if a Participant becomes a Former Participant in any other manner or for any other reason, then the vesting and nonforfeitability of the Account shall be equal to the amount of the Account as of the last December 31st on which the person was a Participant multiplied by the appropriate percentage set forth below. If, when the person became a Former Participant, he or she had been a Participant for purposes of vesting for the number of Plan Years shown in the first column then the appropriate percentage is that shown in the second column which corresponds to such number of Plan Years:

| | |
|---|---|
| less than 1 | 0% |
| 1 | 10% |
| 2 | 25% |
| 3 | 40% |
| 4 | 55% |
| 5 | 70% |
| 6 | 85% |
| 7 or more | 100% |

provided, however, that:

(1)    If a Participant who becomes a Former Participant is subsequently reemployed as an Employee of the Company, then the following vesting rules shall also apply:

(a)    If such Employee had any vested interest in an Account at the time he or she last terminated employment with the Company, then such Employee shall (i) become a Participant for the purposes of vesting as of the January 1st or July 1st immediately following the date of reemployment with the Company; and (ii)

- 23 -

be vested automatically to the same extent that such Employee was vested upon the preceding termination of employment.

(b)    If such Employee had no vested interest in an Account at the time he or she last terminated employment with the Company, then such Employee shall receive credit for vesting purposes for service prior to the last termination of employment only if such Employee's Years of Service prior to that termination exceed the number of consecutive one-year Breaks in Service after that termination and prior to reemployment or if the number of consecutive one-year Breaks in Service after that termination and prior to reemployment is four or fewer.

(c)    In no event, however, shall the Employee's service following reemployment be taken into account for vesting purposes until such Employee has a Year of Service following such reemployment if such Employee had at least a one-year Break-in-Service after terminating employment and before such reemployment.

8.03    At the time a Participant becomes a Former Participant, the amount of forfeiture of his or her Account shall be equal to the amount of the Account as of the last December 31st on which he or she was a Participant minus the amount of the Account which is vested in accordance with the provisions of Section 8.02.

8.04    If at the time of becoming a Former Participant an individual has a Forfeiture Restoration Account and his or her vested percentage in respect to his or her regular Account under Section 8.02 (or Section 9.04 or Section 14.02, if applicable) is less than 100%, then the vested percentage of such individual's Forfeiture Restoration Account shall be determined by the following fraction:

(1)    The numerator of the fraction shall be the vesting percentage applicable to the Participant's regular Account as of such termination reduced by the vested percentage

- 24 -

of the Participant's Account at the prior termination, and

    (2)    The denominator shall be 100% minus the vested percentage of the Participant's Account at the date of the earlier termination.

The vested portion currently distributable to such Participant upon subsequently becoming a Former Participant is the vested percentage times the Forfeiture Restoration Account balance as of the December 31st preceding such subsequent termination. The balance of such Account shall be a forfeiture.

## Article IX

### Distribution of an Account

9.01  The Account of a Former Participant or of an Alternate Payee or of a Participant seeking distribution pursuant to Section 9.08 ("Section 9.08 Participant") shall be distributed as follows:

    (1)    Subject to Section 9.01(3), if the Former Participant, Alternate Payee or Section 9.08 Participant is then living, the Account shall be paid or used in the manner which the Former Participant or Alternate Payee or Section 9.08 Participant selects in writing from among the following alternative forms of payment:

        (a)    Lump sum single cash payment to the Former Participant, Alternate Payee or Section 9.08 Participant;

        (b)    For a Former Participant or for an Alternate Payee who is a spouse (or former spouse) of the Participant or Former Participant from whose Account the Alternate Payee's Account was established or for a Section 9.08 Participant, a direct rollover to an eligible retirement plan as described in Section 9.07;

        (c)    Purchase of one of the following forms of annuity from an insurance company selected by the Former Participant or Alternate Payee or Section 9.08 Participant:

- 25 -

(i)    Period Certain Annuity consisting of monthly annuity payments for a fixed term of months determined by the Former Participant's or Alternate Payee's or Section 9.08 Participant's life expectancy as of the date monthly payments commence, with any remaining payments at the death of the Former Participant or Alternate Payee or Section 9.08 Participant payable to the Former Participant's or Alternate Payee's or Section 9.08 Participant's Beneficiary; provided, however, that this form of payment may not be elected by a Former Participant or Section 9.08 Participant who is married for at least one (1) year at the date payments commence unless such Former Participant's or Section 9.08 Participant's spouse has consented in writing in accordance with the requirements of the Code and the applicable regulations.

(ii)   Period Certain and Life Annuity consisting of monthly annuity payments for the life of the Former Participant or Alternate Payee or Section 9.08 Participant, with a guaranteed minimum number of payments for 120 months (10 years) or 180 months (15 years) as selected by the Former Participant or Alternate Payee or Section 9.08 Participant, with any payments certain remaining at the death of the Former Participant or Alternate Payee or Section 9.08 Participant payable to the Former Participant's or Alternate Payee's or Section 9.08 Participant's Beneficiary; provided,

- 26 -

however, that this form of payment may not be elected by a Former Participant or Section 9.08 Participant who is married for at least one (1) year at the date payments commence unless such Former Participant's or Section 9.08 Participant's spouse has consented in writing in accordance with the requirements of the Code and the applicable regulations.

(iii)    Joint and 50% Survivor Annuity consisting of monthly payments to a Former Participant or Section 9.08 Participant who is married for one (1) year or more on the date payments commence, with payments for such Former Participant's or Section 9.08 Participant's life, and upon the death of such Former Participant or Section 9.08 Participant, monthly payments equal to 50% thereof to the Former Participant's or Section 9.08 Participant's spouse to whom such Former Participant or Section 9.08 Participant was married at the date payments commenced, for his or her life; provided, however, that this form of payment may not be elected by an Alternate Payee.

(iv)    Deferral and Accumulation Annuity consisting of one of the foregoing forms of Annuity as selected by (A) the Former Participant or Section 9.08 Participant, subject to the aforementioned spousal consent, or (B) the Alternate Payee, subject to the aforementioned Joint and 50% Survivor Annuity prohibition, commencing on a date deferred to as se-

lected by the Former Participant or Alternate Payee pursuant to the provisions of Section 9.03, which date, in the case of a Former Participant, is at least one (1) year after the termination of the Former Participant's employment with the Company, with accumulation of interest under the Annuity pending commencement of payments; or

(d)     A combination of the above.

(e)     (i)     If the Former Participant fails to select a form of payment as provided above, benefits shall be used to purchase a Straight Life Annuity for the Former Participant if he or she is unmarried or a Joint and 50% Survivor Annuity if he or she is married, with payment commencing on the first day of the month on or after the date the Former Participant reaches age 65 or, if later, within a reasonable period of time after the date the Former Participant retires or otherwise terminates employment.

(ii)     Effective January 1, 1999, if the Alternate Payee's QDRO specifies that the Alternate Payee shall select the form of payment and the Alternate Payee fails to select a form of payment as provided above, benefits shall be used to purchase a Straight Life Annuity for the Alternate Payee, with payment commencing on the first day of the month on or after the date the Alternate Payee reaches age 65 or, if later, within a reasonable period of time after the date the

- 28 -

QDRO "determination" pursuant to Code Section 414(p)(7) is made.

(III)    If a Section 9.08 Participant requests a distribution from his or her Account and such Account is more than $5,000 ($3,500 for Plan Years beginning before January 1, 1998), no such distribution will be made unless and until the Section 9.08 Participant properly selects in writing the form(s) of such payment.  If the Account is $5,000 ($3,500 for Plan Years beginning before January 1, 1998) or less, distribution shall be made in a lump sum single cash payment.

(iv)    Annuities under Sections 9.01(1)(e)(i) and (ii) shall be purchased from insurance companies selected by the Trustees.

(2)    Upon the death of a Participant, Former Participant or Alternate Payee prior to the receipt of all payments in accordance with the provision of Section 9.01(1):

(a)    If payments have commenced under Section 9.01(1)(c) (i) or (ii), then upon the death of the Former Participant or Alternate Payee or Section 9.08 Participant, any remaining monthly payments thereunder shall be paid to the Former Participant's or Alternate Payee's or Section 9.08 Participant's Beneficiary for the balance of the applicable period in accordance with the terms of the Annuity.

(b)    If payments have commenced under Section 9.01(1)(c)(iii), then upon the death of the Former Participant or Section 9.08 Participant if the Former Participant's or Section 9.08 Participant's spouse at the time of the commencement of such joint and survivor annuity is then living, monthly payments shall continue, in accordance with the terms of the Annuity, equal to 50% of the

- 29 -

Former Participant's or Section 9.08 Participant's monthly payment for such surviving spouse as a joint and survivor annuitant for his or her life but no further payments shall be made following the death of the survivor of the Former Participant or Section 9.08 Participant and such spouse.

(c)     Subject to Section 9.01(3), if the Participant, Former Participant or Alternate Payee dies prior to the commencement of monthly payments, benefits will be paid to the Beneficiary in the form of an Annuity or other form of payment permitted below as the Participant or Former Participant or Alternate Payee has selected or, if the Participant or Former Participant or Alternate Payee has failed to make a selection or has provided that the Beneficiary may change the selection, as the Beneficiary selects; provided, however, that

(i)     If the Beneficiary is the Participant's or Former Participant's surviving spouse, benefits will either be paid in a lump sum single cash payment or used to purchase a Period Certain Annuity or a Period Certain and Life Annuity or a Deferral and Accumulation Annuity based on such surviving spouse's life expectancy, as selected by such surviving spouse. If a Period Certain Annuity or a Period Certain and Life Annuity is selected, payments will commence within a reasonable time after the Participant's or Former Participant's death. If a Deferral and Accumulation Annuity is selected, payments will commence on a date selected by such surviving spouse but not later than April 1 of the year the Participant or Former Participant would have reached age 70½. If the surviving spouse fails to select a form of

- 30 -

payment, benefits shall be used to purchase a Straight Life Annuity payable to the surviving spouse with payments commencing on the first day of the month on or after the date the Former Participant would have become age 65 or, if later, 180 days after the death of the Participant, but not later than April 1 of the calendar year following the calendar year in which the Former Participant reached or would have reached age 70½.

(ii)    If the Beneficiary is an individual designated by the Participant or Former Participant other than the Participant's or Former Participant's surviving spouse or an individual designated by the Alternate Payee, benefits shall either be paid as a lump sum single cash payment within a reasonable period but not later than five years after the death of the Participant or Former Participant or Alternate Payee or used to purchase a Period Certain Annuity or a Period Certain and Life Annuity with payments commencing within one (1) year of the death of the Participant or Former Participant or Alternate Payee based on such designated individual Beneficiary's life expectancy. If the Participant or Former Participant or Alternate Payee has not selected a form of payment and the designated individual Beneficiary fails to select an Annuity form of payment within such time as the Trustees may require, benefits shall be paid as a lump sum single cash payment within a reasonable period

- 31 -

but not later than five years after the death of the Participant or Former Participant or Alternate Payee.

(iii)    If the Beneficiary is neither the surviving spouse nor another individual Beneficiary designated by the Participant or Former Participant, the benefits shall be paid as a lump sum single cash payment within a reasonable period not later than five years after the death of the Participant or Former Participant.

(3)    (a)    If the Former Participant's or Alternate Payee's Account is less than $200, such Account shall be distributed to the Former Participant or Alternate Payee if living, or if the Former Participant or Alternate Payee is not then living, to the Former Participant's or Alternate Payee's Beneficiary in a lump sum single cash payment.

(b)    If the Former Participant's Account is at least $200 but not more than $5,000 ($3,500 for Plan Years beginning before January 1, 1998), such Account shall be distributed to the Former Participant in a lump sum single cash payment or rolled over directly to an eligible retirement plan pursuant to Section 9.07 as selected by the Former Participant if living, or if the Former Participant is not then living, to the Former Participant's Beneficiary in a lump sum single cash payment subject to the rollover rights provided for in Section 9.07 if such Beneficiary is the Former Participant's surviving spouse.

(c)    If the Alternate Payee's Account is at least $200 but not more than $5,000 ($3,500 for Plan Years beginning before January 1, 1998), such Account shall be distributed to the Alternate Payee in a lump sum single cash payment or rolled over directly to an eligible retirement plan pursuant to Section

- 32 -

9.07 as selected by the Alternate Payee if living, or if the Alternate Payee is not then living, to the Alternate Payee's Beneficiary in a lump sum single cash payment.

(d)      If the Alternate Payee's Account exceeds $5,000 ($3,500 for Plan Years beginning before January 1, 1998), such Account shall be distributed upon the earliest to occur of (i) the date directed in the QDRO, (ii) the date selected in writing by the Alternate Payee, or (iii) the "earliest retirement age" (as defined in Section 414(p) of the Code) of the Participant from whose Account the Alternate Payee's Account was created.

(4)      Interest credited on a Former Participant's Account under Section 7.02(2)(c) pending commencement of monthly payments under an Annuity shall, in the discretion of the Plan Administrator, be paid directly to the Former Participant or Beneficiary or included in the amount used to purchase the Annuity.  Such discretion shall be exercised uniformly as to all such interest credited during any given Plan Year.

9.02    If any Former Participant, Alternate Payee or Beneficiary who is entitled to receive an installment or other distribution under Section 9.01 is then a minor or under a disability which in the judgment of the Trustees renders him or her unable to apply such installment or distribution to his or her own interest and advantage, the Trustees may in their discretion make the distribution in one or a combination of the following ways as they may determine to be in the individual's best interests:

(1)      directly to him or her;

(2)      to his or her legal or natural guardian or the conservator of his or her estate; or

(3)      to any person having his or her care or custody.

- 33 -

9.03    The first payment pursuant to Section 9.01(1)(c) or the single distribution or rollover pursuant to Section 9.01(1)(a) or (b) shall be made:

(1)    in the case of a Former Participant, within a reasonable period of time after termination of the Former Participant's employment with the Company, provided, however, that if a Former Participant's Account exceeds $5,000 ($3,500 for Plan Years beginning before January 1, 1998), such Former Participant may elect to defer receipt of payment beyond such reasonable period of time by electing a Deferral and Accumulation Annuity described in Section 9.01(1)(c)(iv); or

(2)    in the case of an Alternate Payee, as soon as reasonably possible, but subject to Section 9.01(3)(d); or

(3)    in the case of an Annuity selected by the Former Participant in accordance with Section 9.01(1)(c)(iv), on the deferred commencement date; provided, however, that distribution will commence no later than April 1 of the calendar year following the calendar year in which the Former Participant becomes age 70½ or, if later, in the case of a Former Participant other than an individual who is a 5% owner as defined in Section 416 of the Code, by April 1 of the calendar year following the calendar year in which such individual retires.

9.04    Notwithstanding anything to the contrary in this Trust, except to the extent the Top-Heavy provisions of Article XIV apply, if a Participant or Former Participant is discharged by the Company for cause or resigns from the Company for cause and at the time of such discharge or resignation has not completed seven (7) Plan Years for purposes of vesting (as determined pursuant to Section 8.02), then vesting and nonforfeitability of the Account of such Participant or Former Participant shall not be determined under Section 8.02 but shall instead be equal to the amount of the Account as of the last December 31st on which the person was a Participant multiplied by the applicable percentage which follows:

- 34 -

| Plan Years of Vesting | Vested Percentage |
|---|---|
| less than 3 | 0% |
| 3 | 20% |
| 4 | 40% |
| 5 | 60% |
| 6 | 80% |
| 7 or more | 100% |

That portion of the Account not vested shall be a forfeiture.

If the Company determines, in accordance with uniform principles of Company personnel policy consistently applied, that a Participant or Former Participant has been discharged for cause or has resigned for cause, then it shall within 30 days of such discharge or resignation notify the Trustees in writing of its determination. For purposes of this Section, "discharge for cause" or "resignation for cause" means discharge or resignation for or because of (including but not limited to) persistent and continued drunkenness, gambling or use or possession of illegal drugs on Company property; inflicting bodily injury to a fellow Employee; fraud; theft; embezzlement; conviction of a felony which is in some manner connected with or related to employment with the Company; aiding a competitor of the Company; or disclosing any confidential information with respect to the Company, including its plans, finances, customers, research and development, engineering, manufacturing processes and formulas. The Company shall notify in writing such Participant or Former Participant of the determination by certified or registered mail to such person's last known address. Such person shall be given 30 days following the mailing of such notification in which to file with the Trustees by certified or registered mail a notice of appeal of such determination. If such Participant or Former Participant does not file a notice of appeal within such 30 day period, the determination of the Company shall be final and binding. If such Participant or Former Participant files a notice of appeal within such 30 day period, such person shall simultaneously with filing the notice of appeal name an arbitrator. The Company shall name a second arbitrator and these two shall choose a third arbitrator. The only issue before the

- 35 -

arbitrators shall be whether or not the Participant's or Former Participant's employment terminated for cause. The decision of a majority of the arbitrators shall be final and binding upon the Participant or Former Participant, the Company, the Trustees and all other parties. If the arbitrators rule that the Participant or Former Participant was discharged or resigned for cause, such person shall pay one-half of the fee of the arbitrators and the Company shall pay one-half of the fee of the arbitrators. If the arbitrators rule otherwise, the Company shall pay the fee of the arbitrators.

9.05    Each Participant, each Former Participant, each Alternate Payee and each Beneficiary of a deceased Participant, deceased Former Participant and deceased Alternate Payee shall file with the Trustees in writing his or her post office address and each change of post office address. Any communication, statement or notice addressed to such person at the last post office address filed with the Trustees or, if no such address was filed with the Trustees then at the last post office address as shown in the Company's records, if any, shall be binding on such person for all purposes of this Trust.

9.06    If at the time a Participant becomes a Former Participant he or she is indebted to the Trust Fund, any outstanding loan balance and accrued interest which is not repaid within 90 days of such event will be deducted from the vested portion of his or her Account before distribution is made or any Annuity purchased pursuant to Section 9.01.

9.07    A distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion of an eligible rollover distribution paid directly to an eligible retirement plan specified by the distributee in a direct rollover.

For purposes of this Section the following definitions shall apply:

(1)    An eligible rollover distribution is any distribution of all or any portion of the balance to the credit of the distributee, except that an eligible rollover distribution does not include: any distribution that is one of a series of substantially equal periodic payments

- 36 -

(not less frequently than annually) made for the life (or life expectancy) of the distributee or the joint lives (or joint life expectancies) of the distributee and the distributee's designated Beneficiary, or for a specified period of ten (10) years or more; and any distribution to the extent such distribution is required under Code Section 401(a)(9).

(2)    An eligible retirement plan is an individual retirement account described in Code Section 408(a), an individual retirement annuity described in Code Section 408(b), an annuity plan described in Plan Section 403(a), or a qualified trust described in Code Section 401(a), that accepts the distributee's eligible rollover distribution. However, in the case of an eligible rollover distribution to the surviving spouse, an eligible retirement plan is an individual retirement account or individual retirement annuity.

(3)    A distributee includes a Participant or Former Participant. In addition, the Participant's or Former Participant's surviving spouse and an Alternate Payee are distributees with regard to the interest of such surviving spouse and the Account of such Alternate Payee.

(4)    A direct rollover is a payment by the Plan to the eligible retirement plan specified by the distributee.

9.08    A Participant who remains employed by the Company beyond age 65 may obtain distribution of all or any part of his Account at any time, subject to the consent of his or her spouse if he or she has been married for at least one (1) year at the date such payment is to be made or is to commence unless such distribution is taken in the form of a Joint and 50% Survivor Annuity. Such Participant's participation in the Plan shall not be affected by such election to take a distribution except as to the adjustment to his or her Account for the amount of such distribution. No Participant shall be required to take any distribution from the Plan based solely on the age of such Participant.

- 37 -

## Article X

## Loans from Trust Fund

10.01    In the event of a Participant's financial hardship, he or she may make application to the Trustees to borrow from the Trust Fund. The Trustees, in their sole discretion and in accordance with uniform principles consistently applied, may permit such a loan upon the conditions stated herein. The authority herein granted to the Trustees to make loans from the Trust Fund is for the purpose of assisting Participants to meet the situation described below and shall not be used as a means of distributing benefits before they otherwise become due. For purposes of this Section the term "Participant's financial hardship" shall be limited to (1) financing the purchase, major repair or major improvement of the Participant's permanent residence, (2) college or other post-high school education of the Participant or one dependent upon him or her, (3) avoidance or termination of litigation by a creditor against the Participant or one dependent upon him or her, or (4) financial hardship caused by illness or disability of the Participant or one dependent upon him or her.

10.02    Each loan shall be made by the Trustees on the following conditions:

(1)    The aggregate amount of all unrepaid loans to the Participant shall not at any time exceed 50% of the portion of his or her Account which is vested in accordance with the provisions of Section 8.02;

(2)    The outstanding principal balance of such loan, when added to the outstanding principal balance of all other loans made to a Participant under this Trust or any other plan of the Company or of a Related Employer for which service is credited under Section 3.25, shall not exceed the lesser of

(a) $50,000 or

(b) one-half of the vested portion of the Participant's Account under such Trust and the other plans.

- 38 -

The $50,000 limit is further reduced by the amount, if any, by which (i) the highest outstanding loan balance during the 12 month period ending on the day before the current loan (ii) exceeds the amount of the outstanding loan balance on the day before the current loan;

(3)    The loan shall be evidenced by a promissory note, in form acceptable to the Trustees, which shall provide for (a) reasonable interest at a rate comparable to current bank rates, and (b) repayment in substantially level installments payable at least monthly over a period not to exceed 60 months;

(4)    The promissory note may, in the discretion of the Trustees, be renewed upon maturity provided, however, that (except for a loan which was used to acquire any dwelling unit which, at the time of the loan or within a reasonable time thereafter, is used as the principal residence of the Participant) the aggregate term of the loan including any extensions shall not exceed 60 months from the date of the original loan;

(5)    The loan shall be secured by (a) the Participant's right, title and interest in and to the Trust Fund, and (b) such other property, if any, as the Trustees may in their sole discretion require to secure adequately repayment of the loan;

(6)    Repayment shall generally be made by payroll deductions;

(7)    With respect to a loan to a married Participant, the Participant's spouse must consent in accordance with the requirements of the Code and regulations to any such loan and to any extension of a loan which is not being extended in accordance with the original terms of the loan, and

(8)    If a loan is not being repaid timely through payroll deductions or if the payroll deductions have ceased or been reduced, in either case with the result that the Participant is in default in repayment of the loan, the Trustees shall give written notice of default to the Participant by first class mail; and, if the default is not cured within 90 days

- 39 -

from the date of such notice, the outstanding loan balance, plus any interest accrued, may be applied against the Participant's account balance in liquidation of the debt.

10.03  Loan repayments will be suspended under this Trust as permitted under Section 414(u)(4) of the Code.

## Article XI

## Trustees and Trust Administration

11.01  Trustees shall have the following powers in addition to others set forth in this Trust:

(1)    The Trustees shall have all the powers and rights accorded a Trustee under the laws of the State of Illinois and shall exercise such powers and rights (a) solely in the interests of the Participants and Beneficiaries and for the exclusive purpose of providing benefits to Participants and their Beneficiaries and defraying reasonable expenses of administering the Plan, and (b) with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like means.  It is expressly understood that under normal circumstances and to the maximum extent practicable and advisable, the Trustees are to:

(i)    invest the Trust Fund in Common Shares of JDS Inc.; and

(ii)    purchase from JDS Inc. and from Employees, former Employees and personal representatives of former Employees of the Company and/or JDS Inc., Common Shares of JDS Inc. offered or made available to the Trustees subject, however, to compliance with or exemption from the prohibited transactions rules.

(2)    The Trustees may

(a)    sell at public or private sale, convey, transfer, assign, exchange,

- 40 -

lease for any immediate or future period not exceeding 100 years, mortgage, pledge, give options to purchase, or otherwise dispose of, at such prices and on such terms as they deem proper, any property, real or personal, or any interest therein, at any time constituting a part of the Trust Fund; provided that any disposition of Common Shares of JDS Inc shall be made in accordance with its Articles of Incorporation as amended at the time of such disposition;

(b)    abandon any such property if they deem such action to be in the best interest of this Trust; and

(c)    reserve from investment and keep unproductive any portion of the Trust Fund which they deem advisable.

(3)    The Trustees may borrow money and otherwise incur indebtedness on such terms and conditions as they in their sole discretion deem advisable.

(4)    The Trustees may

(a)    exercise the voting power of all shares of stock held in the Trust Fund;

(b)    Refrain from exercising such power with respect to all or any of such shares;

(c)    exercise every power, election and discretion, give every notice, make every demand and do every act in respect to any shares of stock, bonds, notes, debentures or other obligations or securities held in the Trust Fund which the Trustees could or might do if they were the absolute owners thereof;

(d)    consent to and join in any plan of reorganization or recapitalization of any corporation the shares of stock or other securities of which are held in the Trust Fund and accept any shares of stock or other securities issued in

- 41 -

accordance with such plan in lieu of the shares of stock or securities held in the Trust Fund; and

(e)    exercise and dispose of any rights or subscriptions to capital shares of stock or other securities of any corporation.

(5)    The Trustees may

(a)    pay all costs, expenses, taxes and other charges in connection with the administration of this Trust; and

(b)    withhold from any payment or distribution of a benefit such amount as the Trustees deem necessary or advisable to protect themselves or the Trust Fund against (i) possible liability or obligation for income, inheritance, social security, transfer or other taxes, and (ii) any other claims, demands or charges arising from such payment or distribution, from the contributions to the Trust Fund or from the participation of the person entitled thereto (or such person's predecessor in interest) in this Trust; provided that an amount so deducted or charged shall be used only to discharge such liability or obligation and the balance not so used, if any, shall be paid, distributed or applied within a reasonable time to or for the use and the enjoyment of the person or persons to or for whom it would otherwise have been paid, distributed or applied in the first instance or the successor or successors in interest of such person or persons.

(6)    Unless prohibited by applicable law or regulation, the Trustees may delegate responsibilities provided such delegation is in writing and expressly approved by all Trustees. Without limiting the generality of the foregoing, the Trustees may:

(a)    authorize and allocate to one or more of the Trustees such discretionary functions and fiduciary duties as the Trustees see fit, including the signing on their behalf of any instructions, instruments, checks or other documents;

- 42 -

(b)      employ such agents and Employees as the Trustees deem necessary or advisable and allocate to such agents and Employees such discretionary functions and fiduciary duties as the Trustees see fit, and any determination by the Trustees as to what are discretionary functions and fiduciary duties shall be binding upon the Company, the Board of Directors, Employees and any other persons or entities;

(c)      employ and consult with counsel, who may be counsel for the Company; provided that the Trustees shall not be liable for any act or omission or act done or omitted on the advice of counsel with respect to legal questions; and

(d)      pay as administrative expenses such compensation for services as may be agreed by and between the Trustees and such agents, Employees or counsel.

(7)      The Trustees may

(a)      sue in any court of competent jurisdiction or take other appropriate action to enforce any contract, claim or right;

(b)      refrain from any such suit or action;

(c)      defend against or compromise, settle or otherwise dispose of any claim or suit by or against the Trustees or the Trust; and

(d)      protect in any way the interests of the Trust and the Trust Fund, either before or after default with respect to any such contract, claim or right.

(8)      The Trustees may enter into all contracts and agreements and execute any and all documents which they deem necessary or advisable in exercising the authorities and powers herein granted.

-43-

(9)    The Trustees may do or cause to be done any and all other acts which they deem necessary or advisable for the advantageous effectuation, management, investment and distribution of the Trust and the Trust Fund.

11.02    No person or entity dealing or contracting with or paying money or delivering property to the Trustees hereunder shall be required to inquire into the authorities and powers of the Trustees or the terms of this Trust or to see to the application of money or property so paid or delivered.  All parties dealing with the Trustees in respect to this Trust may assume that the Trustees have full authority and power in all respects to deal with this Trust and the Trust Fund, and may rely on a certificate of the Secretary of the Company as to the persons or organizations who are or were the duly appointed and acting Trustees at any time, the identification and genuineness of the signature of any Trustee, of the terms of this Trust or any amendment thereof.

11.03    The Trustees shall have legal title to the Trust Fund and custody thereof, including all documents and evidences of title, interest or ownership.  Except as may be expressly provided in this Trust neither the Company nor any Participant nor any  Former Participant nor any Alternate Payee nor any Beneficiary nor any other person shall have any right, title or interest in, to or under the Trust Fund or any part thereof.  The Trustees may cause title to any property in the Trust Fund, including bank accounts, to be taken, held or placed in the name of the Trustees or any one or more of them or in the name of their nominee or in such form that title will pass by delivery; provided that the books and records of the Trustees shall show at all times that all such property is part of the Trust Fund.

11.04    The Trustees shall keep suitable records and accounts of all investments, purchases, sales, receipts, capital gains and losses, payments, distributions, taxes, expenses and other charges paid or incurred and in such other data as shall be necessary for the proper administration of the Trust and Trust Fund.  All such records and accounts of this Trust shall be maintained on an accrual basis of accounting and shall be open to inspection and audit at all

- 44 -

reasonable times by any member of the Board of Directors. After the close of each Trust Fiscal Year (but not before the expiration of a reasonable period of time after the final determination of the contributions by the Company to the Trust for such year) and at other times at the direction of the Board of Directors, the Trustees shall make reports of matters concerning the Trust as required under applicable law or regulation or as directed by the Board of Directors or, in the absence of such requirements or directions, as the Trustees may deem appropriate. The Trustees shall also furnish after the end of the Trust Fiscal Year to each Participant, Former Participant, Alternate Payee, Beneficiary or other successor in interest, such information as may be required by applicable law and regulation. In addition, within a reasonable period of time after any Participant becomes a Former Participant, the Trustees shall furnish to such Former Participant or Beneficiary or heir or personal representative or other successor in interest, whichever is applicable, a report of his or her interest under the Trust (after giving effect to such change in status) as the Trustees deem appropriate; provided, however, that the Trustees shall furnish any Participant or Former Participant or Alternate Payee or Beneficiary who so requests in writing a statement indicating on the basis of the latest available information:

(1)    the total benefits accrued to such person under the Trust; and

(2)    the amount of nonforfeitable benefits, if any, which have accrued to such person or the earliest date on which benefits will become nonforfeitable.

11.05    In addition to or in substitution for the individuals who execute this Agreement and act as Trustees, the Board of Directors may appoint as Trustees such individuals, wherever domiciled or residing, and such banks or trust companies wherever situated, as deemed advisable; provided, however, that the Trustees may not maintain the indicia of ownership of any assets of the Trust outside the jurisdiction of the district courts of the United States. The number of Trustees shall be three or such other number as may be fixed by the Board of Directors;

- 45 -

provided, however, that there shall be at least three (3) Trustees whenever all the Trustees are natural persons.

11.06    Any Trustee may resign upon written notice to the Board of Directors and the Board of Directors may remove any Trustee with or without cause upon written notice to the Trustee. At the time such notice of resignation or removal is received, all authorities, powers and duties of the Trustee shall cease, except the authority, power and duty to convey and deliver to the remaining Trustees all of the right, title and interest in and to the Trust Fund, render accountings, make reports and take any other action incidental to such resignation or removal. If a former Trustee has possession of any records or accounts concerning the Trust or Trust Fund, or his or her acts as Trustee, he or she shall deliver the same to one or more of the remaining Trustees. Within 30 days after resignation or removal, a former Trustee shall make a full report to the Board of Directors of his or her acts as Trustee since the close of the last Trust Fiscal Year or other period for which a report by the Trustees has been made to the Board of Directors.

11.07    On resignation or removal of a Trustee or the death or inability to act of a Trustee, the Board of Directors may appoint a successor Trustee. Each successor or additional Trustee shall execute and deliver to the Board of Directors a written instrument accepting the Trust thereby assumed, executed with the same formalities as this Trust and thereupon shall become a Trustee and shall have no liability for any occurrence prior to the delivery of such acceptance. If the Board of Directors does not approve the final report of a former Trustee, it shall notify any one or more of the remaining Trustees (including any successor or additional Trustee) of its disapproval and the reasons therefor and direct an investigation and report of the results thereof to the Board of Directors within a reasonable time. Thereafter the Trustees shall take such further action at such time and in such manner as they deem advisable or as the Board of Directors directs.

-46-

11.08  Any act which this Trust authorizes or requires the Trustees to do may be done by a majority of the then Trustees.  The action of such majority of the Trustees expressed either by a vote at a meeting or in a written consent without a meeting shall constitute the action of the Trustees.  It shall have the same effect for all purposes as if assented to by all of the Trustees at the time in office.  Any Trustee who is a Participant under this Trust shall not vote or consent on any question relating exclusively to such Trustee.

11.09  Neither the Company nor the officers, directors or shareholders of the Company shall be personally liable for the payment of any benefits under this Plan, and no expressed or implied representation or guarantee of such payment or against depreciation or loss of value of the Trust Fund shall be impuled to any thereof.

11.10  The Company agrees to indemnify and hold harmless all Trustees who are natural persons and each of them from and against:

(1)    any and all liability, loss, cost, damage and expense which the Trustees or any of them may incur or to which they are or any of them may become subject in the exercise of their duties and powers under this Trust, and

(2)    any and all claims, demands, suits and proceedings at law or in equity which may be brought in respect of any matter affecting this Trust or the administration thereof by any Employee or former Employee of the Company, by any beneficiary, heir, legal representative, assign or other successor in interest of any such Employee or former Employee, or by any person claiming through or against any thereof;

provided that the Company shall not indemnify or hold harmless Trustees from and against

(1)    any such liability, loss, cost, damage or expense which the Trustees or any of them shall incur or to which they or any of them shall become subject by reason of gross negligence, lack of good faith or willful misconduct, and

- 47 -

(2)    any such claim, demand, suit or proceeding in which or in connection with which it is adjudged by a court of competent jurisdiction that the Trustee or Trustees against whom such claim, demand, suit or proceeding is directed has or have been guilty of gross negligence, lack of good faith or willful misconduct.

Anything in this section to the contrary notwithstanding, no Trustee shall be denied the benefit of indemnification by reason of the gross negligence, lack of good faith or willful misconduct of another Trustee or Trustees in which he or she did not participate.

11.11   In addition to the duties imposed on the Company by this Trust, the Company shall also serve as Plan Administrator and shall, in such capacity, be responsible for carrying out the duties of the Plan and compliance with all applicable law and regulations.  The Company, Board of Directors and Trustees shall each be deemed Named Fiduciaries within the meaning of the Employee Retirement Income Security Act of 1984.

### Article XII

### Amendment and Termination

12.01   The Company shall have the right at any time to amend this Trust, subject to the limitations of this Section.  Any such amendment shall be adopted by formal action of the Company's Board of Directors and executed by an officer authorized to act on behalf of the Company.  However, any amendment which affects the rights, duties or responsibilities of the Trust or Plan Administrator may only be made with the Trustee's or Plan Administrator's (as applicable) written consent.  Any such amendment shall become effective as provided therein upon its execution. The Trustees shall not be required to execute any such amendment unless the amendment affects the duties of the Trustee hereunder.

No amendment to the Plan shall be effective if it authorizes or permits any part of the Trust Fund (other than such part as is required to pay taxes and administration expenses) to be used for or diverted to any purpose other than for the exclusive benefit of the Participants or

- 48 -

their Beneficiaries or estates; or causes any reduction in the amount credited to the account of any Participant; or causes or permits any portion of the Trust Fund to revert to or become property of the Company.

Except as permitted by the Code or the regulations, no Plan amendment or transaction having the effect of a Plan amendment (such as a merger, plan transfer or similar transaction) shall be effective to the extent it eliminates or reduces any "Section 411(d)(6) protected benefits" the result of which is a further restriction on such benefit unless such protected benefits are preserved with respect to benefits accrued as of the later of the adoption date or effective date of the amendment. "Section 411(d)(6) protected benefits" are benefits described in Code Section 411(d)(6)(A), early retirement benefits and retirement-type subsidies, and optional forms of benefit.

12.02    The Company hopes and intends to continue this Plan indefinitely but reserves the right to terminate it or to discontinue its contributions to the Trust Fund at any time. In case of termination or partial termination of the Trust by the Company, each Participant's Account or, in the case of a partial termination, each affected Participant's Account, shall become fully vested and nonforfeitable. A complete discontinuance of contributions by the Company (determined in accordance with the Code and any applicable regulations thereunder, but not including an omission of contributions solely by reason of the operation of the formula set forth in Section 6.02) shall be deemed to constitute a termination of this Trust. If this Trust is terminated, the Trust Fund shall be paid or distributed to or for the benefit of the Participants, Former Participants, Alternate Payees and Beneficiaries, as hereafter set forth, and the Company shall have no further liability under the Trust. As soon as practicable, the Trust Fund shall, if the Company so directs, be paid or distributed to the trustee or trustees under any new plan or plans established for the benefit of the Participants, Former Participants, Alternate Payees and Beneficiaries, and otherwise the Trust

- 49 -

Fund shall be paid or distributed, in accordance with Article IX, to or for the benefit of the Participants, Former Participants, Alternate Payees and Beneficiaries, as follows:

(1)   In the case of a person who was a Former Participant or an Alternate Payee on the date of termination of the Trust, if living, or else his or her Beneficiary, the amount to be paid or distributed shall be that to which such person was entitled under Articles VII, VIII and IX; and

(2)   In the case of a person who was a Participant on the date of termination, if living, or else his or her Beneficiary, the amount to be paid or distributed shall be equal to the remainder of the Trust Fund (after deducting the total amounts computed under paragraph (1) above) multiplied by a fraction the numerator of which is the Participant's Account on the date of termination (computed as if such date were December 31st and the period from the preceding December 31st were a complete year) and the denominator of which is the total Accounts (so computed) on the date of termination of all persons who were Participants on that date.

12.03  In the event of the merger or consolidation of the Company with another company or other circumstances whereby a successor person, firm or company shall continue to carry on all or a substantial part of the Company's business and such successor shall elect to carry on the provisions of this Trust, such successor shall be substituted for the Company hereunder, subject to the approval of the Company, upon the filing by such successor of a written election to do so with the Trustees.  In the event of the merger or consolidation of the Trust with, or transfer of assets or liabilities to, any other plan, each Participant in this Trust shall (if the other plan then terminated) receive a benefit immediately after the merger, consolidation or transfer which is equal to or greater than the benefit such person would have been entitled to receive pursuant to this Trust immediately before such merger, consolidation or transfer (if this Trust had then terminated).

-50-

## Article XIII

### Miscellaneous

13.01  The Company shall furnish the Trustees with any information from the Company's records which in the opinion of the Trustees is necessary or advisable to enable them to establish and maintain the tax qualification or classification of this Trust or to exercise properly their authorities and powers and to perform their duties under the Trust.

13.02  The Company agrees to assume and pay, in addition to its contributions pursuant to this Trust, (1) such compensation as may be reasonably agreed upon from time to time between the Company and the Trustees to any agent, Employee or counsel employed by the Trustees, and (2) all clerical and office expenses incurred in the administration of this Trust while the Trust Fund remains in the sole custody of Trustees who are natural persons.  No such compensation or expenses shall be paid out of the Trust Fund unless and to the extent that the Company shall fail to pay the same, in which event the Trustees shall pay the same out of the Trust Fund. All other expenses shall be paid by the Trustees out of the Trust Fund.  To the extent that the Trustees determine, in accordance with uniform principles consistently applied, that any such compensation or other expenses paid out of the Trust Fund are properly allocable to the Account or interest of a particular Participant, Former Participant, Alternate Payee or Beneficiary, the Trustees shall charge the same against such person's Account or interest, and in all other cases such compensation or other expenses shall be charged against the Trust Fund as a whole. Any such determination shall be binding on the Company, Participant, Former Participant, Alternate Payee, Beneficiary and all other persons or entities having or claiming all or any part of such Account or interest.

13.03  Notwithstanding any provision of this Trust to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.

13.04  Except as otherwise provided in this Trust, the Trustees shall have authority to interpret all provisions of this Trust and to decide all questions arising in its administration.  All such determinations shall be binding on all Participants, Former Participants, Alternate Payees, Beneficiaries and all other persons or entities having or claiming any interest through or against them.

13.05  In the event that a claim for benefits under this Trust is denied to a Participant, Former Participant, Alternate Payee or Beneficiary, adequate notice setting forth the specific reason or reasons in understandable language shall be provided and a claim procedure established affording such Participant, Former Participant, Alternate Payee or Beneficiary a reasonable opportunity for a full and fair review by the Trustees or Plan Administrator denying the claim, whichever is applicable.

13.06  Since the distributions under this Trust are intended to contribute to the financial security of Participants, Former Participants, Alternate Payees and Beneficiaries, no distribution to be made under Article IX is assignable, and no such distribution shall be subject to seizure, sequestration or attachment through legal process or subject to the legal or equitable claim of any creditor or other claimant other than, for the Plan Year commencing January 1, 2002 and subsequent Plan years, as to amounts the Participant or Former Participant or Alternate Payee is required to pay to this Trust pursuant to Code Section 401(a)(13)(C).

13.07  Neither this Trust nor any act under this Trust shall give any Participant, Former Participant, Alternate Payee or other person any right to be accepted or retained in the employment of the Company, and no Participant, Former Participant, Alternate Payee, Beneficiary

-52-

or other person shall have any right or claim to any benefit or right under this Trust which has not arisen under the express provisions of this Trust.

13.08  Except to the extent, if at all, prohibited by the Code or the Act or applicable regulations, this Trust is created and administered in the State of Illinois and the laws of the State of Illinois shall regulate and govern all matters relating to the interpretation, affect, validity and administration of this Trust, the custody, management and disposition of the Trust Fund and all other matters which may arise in any way or at any time by reason of or in connection with this Trust or the Trust Fund.

13.09  Unless the context otherwise requires, words connoting natural persons include trusts, corporations and other entities, words of the singular include the plural and words of the plural include the singular.

13.10  By executing this Agreement, the Company and the Trustees signify their acceptance of the Trust herein created and their agreement to be bound by the provisions hereof.

## Article XIV

### Top-Heavy Rules

14.01  If, as of the day next preceding the beginning of any Trust Fiscal Year (the "Determination Date"), the Trust is a "Top-Heavy Plan" (determined in accordance with the provisions of Section 416(g) of the Code), that is, the aggregate present value of the accrued benefits and account balances of all "Key Employees" (within the meaning of Section 416(i) of the Code) and for this purpose using the definition of compensation under Section 415 of the Code and their Beneficiaries exceeds sixty percent (60%) of the aggregate present value of the accrued benefits and account balances of all Participants and Beneficiaries, the provisions specified in this Article XIV will automatically become effective as of the first day of the Trust Fiscal Year. In making such calculations:

- 53 -

14.02   The provisions that will take effect under this Article XIV are as follows:

(1)     Subsection 7.02(1)(b) will be modified to provide that the aggregate amount of Company contributions allocated in each Trust Fiscal Year to the Accounts of each Participant who is not a Key Employee (within the meaning of Section 416(i)(1) of the Code), and who is employed by the Employer as of the last day of the Trust Fiscal Year, may not be less than the lesser of:

(a)     three percent of his or her compensation for the year; or

(b)     a percentage of his or her compensation equal to the largest percentage obtained by dividing the sum of the amount credited to the Account of any Key Employee by that Employee's compensation (but not in excess of the limitation under Section 401(a)(17) of the Code).

(2)     Sections 8.02 and 9.04 will be modified as to all Participants who perform an Hour of Service during such Trust Fiscal Year to provide as follows:

| Year of Service | Vested Percentage |
|---|---|
| Less than 2 years | 0% |
| 2 years but less than 3 years | 20% |
| 3 years but less than 4 years | 40% |
| 4 years but less than 5 years | 60% |
| 5 years but less than 6 years | 80% |
| 6 years or more | 100% |

- 55 -

The preceding provisions will remain in effect for the period which the Trust is Top-Heavy. If, for any particular years thereafter, the Trust is no longer a Top-Heavy Plan, the vesting schedule under Section 8.02 or 9.04, if applicable, shall thereafter apply, except that the vesting schedule described in paragraph (2) of this Section 14.02 may not be made less favorable for any Participant who has completed five or more Years of Service and no amendment may cause any previously vested portion of any Account to become forfeitable.

14.03    If in any Trust Fiscal Year, the Trust is a Top-Heavy Plan, then if any Participant is or has been a participant in any defined benefit plan maintained by the Company or a Related Employer, then the number 1 shall be substituted for the number 1.25 in subsections 7.06 (1) and (2) if:

(1)    the Trust is a "Super-Top-Heavy Plan" determined in accordance with Section 14.01 except that 90% is substituted for "60%" in the Top-Heavy determination; or

(2)    the Trust and any applicable plans of the Company and any Related Employers do not provide the increased minimum benefits otherwise required under Section 416(b) of the Code.

14.04  For purposes of this Article, to the extent provided in the regulations under Section 416 of the Code, "compensation" means compensation as determined for purpose of the limitations under Section 415 of the Code.

Executed on the date and year first set forth above.

HOLLISTER INCORPORATED, Company

Attest:

By _____
Alan F. Herbert, President

_____
Dian J. Thielitz, Assistant Secretary

_____
Samuel P. Brilliant, Trustee

_____
James A. Karlovsky, Trustee

_____
Richard T. Zwirner, Trustee

Accepted this __27th__ day of February, 2002.

HOLLISTER INCORPORATED, Plan Administrator

Attest:

By _____
Alan F. Herbert, President

_____
Dian J. Thielitz, Assistant Secretary

1572252.2

- 57 -