# Item 2

# Defendants' Appendix Of Certain Documents Referred To In The Third Amended Complaints

Certificate 31597



# To all to whom these Presents Shall Come, Greeting:

**Whereas,** Articles of amendment to the Articles of Incorporation duly executed Articles of Incorporation

THE FIRM OF JOHN DICKINSON SCHNEIDER, INC.

have been filed in the Office of the Secretary of State, on the _____ day of _____ May _____ A. D. 19 78, as provided by "THE BUSINESS CORPORATION ACT" of Illinois, in force July 13, A. D. 1933.

Now Therefore, I, ALAN J. DIXON, Secretary of State of the State of Illinois by virtue of the powers vested in me by law, do hereby issue this certificate of amendment and attach thereto a copy of the Articles of Amendment to the Articles of Incorporation and Restated Articles of Incorporation of the aforesaid corporation.

**In Testimony Whereof,** I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois. Done at the City of Springfield this _____ 25th day of _____ May _____ A. D. 19 78 and of the Independence of the United States the two hundred and _____ 2nd

(SEAL)

SECRETARY OF STATE

FORM BCA-55

3644-7761
(Do not write in this space)
Date Paid 5-25 78
License Fee $
Franchise Tax $
Filing Fee $25.00
Clerk

(File in Duplicate)

# ARTICLES OF AMENDMENT
## TO THE
## ARTICLES OF INCORPORATION
### OF

The Firm of John Dickinson Schneider, Inc.

(Exact Corporate Name)

To MICHAEL J. HOWLETT
Secretary of State
Springfield, Illinois

The undersigned corporation, for the purpose of amending its Articles of Incorporation and pursuant to the provisions of Section 55 of "The Business Corporation Act" of the State of Illinois, hereby executes the following Articles of Amendment:

ARTICLE FIRST: The name of the corporation is:

The Firm of John Dickinson Schneider, Inc.

ARTICLE SECOND: The following amendment or amendments were adopted in the manner prescribed by "The Business Corporation Act" of the State of Illinois:

ARTICLE SECOND, which contains the information called for by Section 55(b) of the Illinois Business Corporation Act, is set forth on the attached twenty-one consecutively numbered pages, which are hereby incorporated by reference herein.

PAID

MAY 31 1978

(Disregard separation into classes if class voting does not apply to the amendment voted on.)

ARTICLE THIRD: The number of shares of the corporation outstanding at the time of the adoption of said amendment or amendments was _____ 655,150 _____; and the number of shares of each class entitled to vote as a class on the adoption of said amendment or amendments, and the designation of each such class were as follows:

| Class | Number of Shares |
|---|---|
| Preferred | 617,500 |
| Common | 37,650 |

(Treasury Shares 384,850)

(Disregard separation into classes if class voting does not apply to the amendment voted on.)

ARTICLE FOURTH: The number of shares voted for said amendment or amendments was _____ 655,150 _____; and the number of shares voted against said amendment or amendments was _____ --0-- _____.

The number of shares of each class entitled to vote as a class voted for and against said amendment or amendments, respectively, was:

| Class | Number of Shares Voted | |
|---|---|---|
| | For | Against |
| Preferred | 617,500 | 0 |
| Common | 37,650 | 0 |

(Disregard these items unless the amendment restates the articles of incorporation.)

Item 1. On the date of the adoption of this amendment, restating the articles of incorporation, the corporation had 1,040,000 shares issued, itemized as follows:

| Class | Series (If Any) | Number of Shares | Par value per share or statement that shares are without par value |
|---|---|---|---|
| Preferred | None | 617,500 | $1.00 per share |
| Common | None | 422,500 | $1.00 per share |

Item 2. On the date of the adoption of this amendment restating the articles of incorporation, the corporation had a stated capital of $ $1,040,000.00 and a paid-in surplus of $ 109,840.39 or a total of $ 1,149,840.39

(Disregard this Article where this amendment contains no such provisions.)

ARTICLE FIFTH: The manner in which the exchange, reclassification, or cancellation of issued shares, or a reduction of the number of authorized shares of any class below the number of issued shares of that class, provided for in, or effected by, this amendment, is as follows:

Inapplicable.



(Disregard this Paragraph where amendment does not affect stated capital or paid-in surplus.)

ARTICLE SIXTH: Paragraph 1: The manner in which said amendment or amendments effect a change in the amount of stated capital or the amount of paid-in surplus, or both, is as follows:

Inapplicable

(Disregard this Paragraph where amendment does not affect stated capital or paid-in surplus.)

Paragraph 2: The amounts of stated capital and of paid-in surplus as changed by this amendment are as follows:

|  | Before Amendment | After Amendment |
|---|---|---|
| Stated capital........$ |  | $ |
| Paid-in surplus.......$ |  | $ |

Inapplicable

IN WITNESS WHEREOF, the undersigned corporation has caused these Articles of Amendment to be executed in its name by its ___Vice___ President, and its corporate seal to be hereto affixed, attested by its _____ Secretary, this __12th__ day of __May_____, 19__78__.

The Firm of John Dickinson Schneider, In
(Exact Corporate Name)

By_____
Its ____Vice____ President

Place
(CORPORATE SEAL)
Here

ATTEST:

_____
Secretary

STATE OF__Illinois__
COUNTY OF__Cook__ } ss.

I, _____, a Notary Public, do hereby certify that on the __12th__ day of __May__ 19__78__, Michael C. Winn _____ personally appeared before me and, being first duly sworn by me, acknowledged that he signed the foregoing document in the capacity therein set forth and declared that the statements therein contained are true.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year before written.

_____
Notary Public

MY COMMISSION EXPIRES MAY 26, 1980.

Place
(NOTARIAL SEAL)
Here

Form BGA-35

Box 2644  File 226-1

ARTICLES OF AMENDMENT
to the
ARTICLES OF INCORPORATION
of
The Firm of John Dickinson Schneider, Inc.

FILED
MAY 25 1978

FILE IN DUPLICATE

Filing Fee $25.00

Filing Fee for Re-Stated Articles $100.00

1.      The Firm of John Dickinson Schneider, Inc. hereby adopts Restated Articles of Incorporation which accurately copy the Articles of Incorporation and all amendments thereto that are in effect to date and which are further amended by such Restated Articles of Incorporation as hereinafter set forth.  The Articles of Incorporation are amended by the Restated Articles of Incorporation as follows:

        a.  ARTICLE ONE of the Articles of Incorporation is hereby amended so as to read as follows:

The name of the Corporation is The Firm of John Dickinson Schneider, Inc., a close corporation.  The Corporation was incorporated on October 11, 1956, under the name of The Firm of JOHN DICKINSON SCHNEIDER, Inc. and reorganized as a close corporation under The Close Corporation Act on

        b.  ARTICLE FOUR of the Articles of Incorporation is hereby amended so as to read as follows:

The purpose or purposes for which the Corporation is organized are:

To be a close corporation;

To purchase and otherwise acquire, manufacture and otherwise produce, own and otherwise invest in, use, sell and otherwise dispose of, and generally trade and deal in, goods, wares, merchandise, other personal property and services of every kind and description;

To purchase, take, receive, subscribe for or otherwise acquire, own, hold, vote, use, employ, sell, mortgage, lend, pledge or otherwise dispose of, and otherwise use and deal in and with, shares or other interests in, or obligations of, other corporations, firms, partnerships and proprietorships;

To purchase, take, receive or otherwise acquire, own, hold, transfer or otherwise dispose of, shares of the Corporation in accordance with The Close Corporation Act, Business Corporation Act and these Restated Articles of Incorporation; and

To have and exercise such other powers conferred upon corporations formed under The Close Corporation Act and Business Corporation Act as are necessary and proper to carry out the above purposes.

c.   ARTICLE FIVE of the Articles of Incorporation is hereby amended so as to read as follows:

I.    The aggregate number of shares which the Corporation is authorized to issue is 121,260,000, divided into two classes.  The designation of each class, the number of shares of each class, and the par value, if any, of the shares of each class, or a statement that the shares of any class are without par value, are as follows:

| Class | Series (if any) | Number of Shares | Par value per share or statement that shares are without par value |
|-------|-----------------|------------------|--------------------------------------------------------------------|
| Common |  | 50,000,000 | Par value $0.01 per share |
| Preferred |  | 71,260,000 | Par value $0.01 per share |

II.    The preferences, qualifications, limitations, restrictions and the special or relative rights in respect of the shares of each class are:

### A.  Dividends.

The holders of the preferred shares shall be entitled to receive when and as declared by the Board of Directors, out of funds legally available for that purpose, dividends at the rate of 6% of the par value per share per year.  Such dividends shall be noncumulative and shall be payable semi-annually on the fifth day of January and July in each year (and the semi-annual dividend periods shall commence on the sixth day of those months).  The Board of Directors shall not be required to declare a dividend on the preferred shares before declaring a dividend on the common shares.

### B.  Liquidation, Dissolution or Winding Up.

In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, the holders of the preferred shares shall be entitled to be paid the sum of $0.01 per share, plus the amount of any dividends declared but not paid at the time of such liquidation, dissolution or winding up, before any distribution or payment shall be made to holders of common shares of the Corporation.  In the event of any such liquidation, dissolution or winding up of the Corporation,

after payment shall have been made in full to holders of preferred shares in accordance with this paragraph, the holders of common shares shall be entitled to receive any and all assets remaining to be paid or distributed and the holders of preferred shares shall not be entitled to share therein.

### C. Restriction of Classes of Persons Entitled to Hold Shares.

Subject to the exception set forth in paragraph E below, the following are the only classes of persons entitled to be holders of shares of any class: holders of shares of the Corporation as of May 5, 1978; employees of the Corporation, of Hollister Incorporated or of any other corporation controlled by one or more of such corporations; and any deferred benefit plan maintained by any one or more of such corporations for the exclusive benefit of employees of any one or more of them.

### D. Transfer Restrictions and Repurchase by the Corporation.

Except as provided in this paragraph D and subject to the restriction set forth in paragraph C above, shares of the Corporation shall not be transferred, directly or indirectly, to any person, firm, corporation, trust, entity or other holder, whether by cash sale, contract, deed, gift, operation of law, sale pursuant to lien, pledge, security agreement or judicial process, or otherwise. No transfer or attempted transfer of any one or more shares of the Corporation, or of any interest, legal or equitable, or claimed interest in such shares, shall be effective unless and until the following conditions shall have been satisfied:

### 1. Option to Repurchase.

a. In the event of termination, by death or for any other reason, of the employment of any shareholder of the Corporation (other than John D. Schneider) by the Corporation, Hollister Incorporated, any subsidiary of the Corporation or Hollister Incorporated, or any other corporation controlled by one or more of such corporations, the Corporation shall have the option to repurchase any and all shares which such person owned, held or in which he or she had an interest, legal or equitable, or claimed an interest, at the time of such termination of employment.

b. . The Corporation shall repurchase pursuant to its option all of such person's shares at the price and in the manner set forth in subparagraphs 3 and 4 of this paragraph D unless the Corporation delivers a written notice to such person or his or her personal representative (within 30 days after the date of termination of employment) setting forth the Corporation's election not to exercise its option to repurchase any or all of the shares held by such person. The written notice (if any) to such person or his or her personal representative of an election by the Corporation not to exercise its option to repurchase shall: (1) state which shares shall not be repurchased by the Corporation and which shares, if any, shall be repurchased, and (2) be delivered in person or sent by certified mail with return receipt requested, to such person or his or her personal representative at his or her last known address.

c. The effective date of exercise of any such option (i.e., if the Corporation does not deliver the written notice provided for above) and the effective date of the repurchase (on the Corporation's share transfer records and for all other purposes) shall be the date of termination of employment (hereinafter the "Repurchase Date").

2. Right of First Refusal.

a. If any owner, person, personal representative, firm, corporation, trust, entity or other holder desires or intends to transfer any one or more shares of the Corporation, or to create any interest, legal or equitable, in such shares, such holder shall first offer in writing, at least 30 days prior to such transfer or creation of an interest, to sell to the Corporation all shares of the Corporation which such holder desires or intends to transfer, or in which such holder desires or intends to create an interest, at the price and in the manner set forth in subparagraphs 3 and 4 of this paragraph D.

b. Each written offer to the Corporation shall: (1) state the name of the holder of the shares offered to the Corporation and the certificate number or numbers of such shares, and

(2) be delivered in person or sent by certified mail with return receipt requested, to Corporate Secretary, The Firm of John Dickinson Schneider, Inc., at 211 East Chicago Avenue, Chicago, Illinois 60611, or at such other office as the Corporate Secretary shall designate in writing to the shareholders.

c.  The Corporation shall repurchase all shares covered by the written offer at the price and in the manner set forth in subparagraphs 3 and 4 of this paragraph D unless the Corporation delivers a written notice to such holder (within 30 days after receipt of the written offer) setting forth the Corporation's election not to exercise its right to repurchase any or all of the shares covered by the written offer. The written notice (if any) from the Corporation to the holder of an election by the Corporation not to exercise its right of repurchase shall:  (1) state which shares shall not be repurchased by the Corporation and which shares, if any, shall be repurchased, and (2) be delivered in person or sent by certified mail with return receipt requested to the holder at his or her last known address.

d.  The effective date of exercise of any such right of first refusal (i.e., if the Corporation does not deliver the written notice provided for above) and the effective date of the repurchase (on the Corporation's share transfer records and for all other purposes) shall be the date on which the holder first becomes obligated, in accordance with these Restated Articles of Incorporation, to offer such shares to the Corporation (hereinafter the "Repurchase Date").

3.  Repurchase Price.

All shares repurchased by the Corporation pursuant to the provisions of subparagraphs 1 or 2 of this paragraph D shall be repurchased at the following prices:

a.  The price of each preferred share shall be $0.01 plus the amount of any dividends declared but not paid prior to the Repurchase Date.

b.  The price of each common share shall be its book value as of the end of the calendar month in which the Repurchase Date occurs, plus the amount of any dividends declared but not paid prior to the Repurchase Date.  The book value of each common share shall be computed in accordance with generally accepted accounting principles, and a report by an independent certified public accountant retained by the Corporation stating such book value shall be conclusive proof thereof.

4.    Payment for Repurchased Common Shares.

a.    The aggregate price of any common shares repurchased by the Corporation shall be paid as follows:  The first $5,000 (or the aggregate price if it is less than $5,000) shall be paid in cash, and the balance shall be paid in the form of a promissory note of the Corporation payable (1) to the holder of such common shares, (2) at the principal office of the Corporation, (3) in equal quarterly installments of principal (plus interest), and (4) over a period of time determined in accordance with the schedule below.  The principal amount of the note shall be equal to such balance of the aggregate price of such common shares, and interest shall be paid on the unpaid principal balance at the rate per year determined in accordance with the formula below.  The note shall be subordinated to other indebtedness of the Corporation, except that the note shall not be subordinated to other notes delivered in payment for common shares repurchased by the Corporation.

b.    The number of equal quarterly installments of principal on any such subordinated promissory note shall be determined from the following schedule:

| Aggregate Repurchase Price | | Portion of Aggregate Repurchase Price Paid in Cash | Term of Subordinated Promissory Note for Balance of Aggregate Repurchase Price Expressed in Calendar | |
|---|---|---|---|---|
| At Least | But Less Than | | Quarters | Years |
| $     1 | $ 5,000 | $5,000 | — | — |
| 5,000 | 7,500 | 5,000 | 4 | 1 |
| 7,500 | 10,000 | 5,000 | 8 | 2 |
| 10,000 | 15,000 | 5,000 | 12 | 3 |
| 15,000 | 20,000 | 5,000 | 16 | 4 |

| Aggregate Repurchase Price | | Portion of Aggregate Repurchase Price Paid in Cash | Term of Subordinated Promissory Note for Balance of Aggregate Repurchase Price Expressed in | |
|---|---|---|---|---|
| At Least | But Less Than | | Calendar Quarters | Years |
| $ 20,000 | $ 30,000 | $5,000 | 20 | 5 |
| 30,000 | 40,000 | 5,000 | 24 | 6 |
| 40,000 | 50,000 | 5,000 | 28 | 7 |
| 50,000 | 65,000 | 5,000 | 32 | 8 |
| 65,000 | 85,000 | 5,000 | 36 | 9 |
| 85,000 | 110,000 | 5,000 | 40 | 10 |
| 110,000 | 135,000 | 5,000 | 44 | 11 |
| 135,000 | 165,000 | 5,000 | 48 | 12 |
| 165,000 | 200,000 | 5,000 | 52 | 13 |
| 200,000 | and over | | | |

The number of years equal to the lesser of (1) the principal amount divided by $15,000, or (2) (if the owner or holder is a natural person) the life expectancy of an average man or woman the age of the owner or holder.

c.    The interest rate per year on any such subordinated promissory note shall be determined by application of the following formula:  (1) Take the yield average for industrial bonds of A-rated issuers for the month in which the Repurchase Date occurs as quoted in Moody's Bond Record published by Moody's Investors Service, Inc. (hereinafter the "yield average").  If for any reason Moody's Bond Record is discontinued, the Corporation's Board of Directors shall specify a substitute yield average set forth in another publication which yield average the Board in its sole and unlimited discretion deems comparable to the yield average in Moody's Bond Record.  (2) On a subordinated promissory note with a term of not more than 39 calendar quarters, the interest rate on the note shall be the yield average less 1 percent.  On a subordinated promissory note with a term of not less than 40 calendar quarters and not more than 79 calendar quarters, the interest rate shall be the yield average less 1/2 of 1 percent.  On a subordinated promissory note with a term of not less than 80 calendar quarters, the interest rate shall be the  yield average.  (3) Notwithstanding the result of the foregoing interest rate calculation, no note shall bear interest at a rate less than 6% per year or at a rate more than 9% per year.

5.   Transfer of More than 50% of Common Shares.

Subject to the restriction set forth in paragraph
C above, no sale, transfer or attempted transfer of
more than 50% of the outstanding common shares of the
Corporation by or for the use of any one or more
holders of common shares shall be effective unless
such sale or transfer is made pursuant to a written
offer by a responsible person or corporation to
purchase all of the outstanding common shares of the
Corporation. The terms of such written offer shall
be identical with respect to each of the Corporation's
outstanding common shares and such written offer shall
be irrevocable for a period of at least 120 days.

6.   Enforcement of Repurchase Provisions.

a.   The failure of any owner, person, personal
representative, firm, corporation, trust, entity or
other holder to offer in writing, or to sell, shares to
the Corporation in accordance with this paragraph D
shall not impair or otherwise affect the right of
the Corporation to repurchase such shares. If at
any time any owner, person, personal representative,
firm, corporation, trust, entity or other holder
has any one or more shares of the Corporation,
or an interest, legal or equitable, in such shares,
or claims an interest in such shares, and the con-
ditions of this paragraph D have not been satisfied,
then the Corporation may, at any time within 30
days after determining that it has the right to
repurchase such shares: (1) serve notice in writing
upon the owner, holder or other possessor of such
shares that the Corporation shall repurchase all
or any part of such shares, and (2) repurchase such
shares. In such event, the Repurchase Date, price,
form of payment and all other terms of such repurchase
shall be the same as though such shares had been re-
purchased by the Corporation in accordance with sub-
paragraphs 1, 2, 3 and 4 of this paragraph D.

b.   The certificate or certificates for shares
repurchased by the Corporation shall be surrendered
to the Corporation within 30 days after the Repurchase

Date. If not surrendered within such 30 days, the Corporation may, at its sole option and at any time thereafter, deposit the aggregate price, in the form of cash or a promissory note or both, with The First National Bank of Chicago or its successor, for the account of the holder, to be delivered upon surrender of such certificate or certificates duly endorsed to the Corporation. Upon making such deposit, the certificate or certificates shall be considered surrendered to the corporation.

c.     Upon discovery by the Corporation of any event which results in a breach of the restriction set forth in paragraph C above or in a breach of the transfer restrictions or the Corporation's rights of repurchase in this paragraph D, the Corporation shall promptly notify all of the shareholders in writing of such event and of the shareholders' rights under subparagraph (b) of Section 9 of The Close Corporation Act. If such breach has not been cured within 90 days after notifying the shareholders, the Corporation shall commence an appropriate proceeding in accordance with Section 9 of The Close Corporation Act in the Circuit Court of Cook County within such 90 day period. In any such proceeding, the Court shall be requested to issue all orders necessary to prevent the Corporation from losing its status as a close corporation by enjoining or setting aside any act or threatened act on the part of any holder of the shares or other person or entity which would be inconsistent with any of the restrictions, provisions or conditions of these Restated Articles of Incorporation.

7.    Other

Notwithstanding anything to the contrary in this paragraph D.

a.    Under exceptional circumstances and in the discretion of the Corporation's Board of Directors, shares may be repurchased by the Corporation at such other times, upon such other terms, in such other manners, over such other periods of time, or on such other conditions as the Corporation and the owner or holder of such shares may from time to time agree.

b.     The Corporation may sell, assign or other-
wise transfer its obligations under any note
delivered in payment for common shares repurchased
by the Corporation to the Trustees of the Hollister
Employee Share Ownership Trust on such terms as
the Corporation and such Trustees may agree.   If
at any time the Trustees fail to pay any installment
in accordance with the terms of such note, such
installment shall be paid by the Corporation.

E.   Mr. and Mrs. Schneider.

Notwithstanding anything to the contrary in paragraphs
C and D above, the provisions of those paragraphs shall not
apply to any transfer or attempted transfer by, to or for
the use of John D. Schneider, Minnie R. Schneider or any
trustee designated in writing by either or both of them.

F.   Pre-emptive Rights.

No shareholder of the Corporation shall by reason of
his or her holding shares of any class have any pre-emptive
or preferential right to purchase or subscribe to any pre-
ferred shares, common shares or shares of any other class
of the Corporation whether now or hereafter issued.

G.   Cancellation of Preferred Shares.

Preferred shares redeemed or repurchased by the
Corporation shall be cancelled and shall not be reissued or
resold.

III.   The provisions of Paragraphs II.C. and II.D. of this
ARTICLE FIVE shall not be repealed, altered, amended or otherwise
changed without the prior consent of shareholders having the right
to vote at least 2/3 of the outstanding shares of each class of the
Corporation's shares.

2.    The date of incorporation was October 11, 1956.

3.    The corporation was incorporated under the name of The Firm of John Dickinson Schneider, Inc. and reorganized under that name as a close corporation pursuant to the provisions of The Close Corporation Act of May 5, 1978.

4.    The address of the registered office on the date of the adoption of the amendment was 3100 Prudential Plaza, Chicago, Illinois 60601.

5.    The name of the registered agent on the date of the adoption of the amendment was Richard T. Zwirner.

6.    The Articles of Incorporation and all amendments and supplements thereto are hereby superseded by the following Restated Articles of Incorporation which accurately copy the entire text thereof and which are amended as set forth above:

The Restated Articles of
Incorporation begin on
the following page.

RESTATED ARTICLES OF INCORPORATION

OF

THE FIRM OF JOHN DICKINSON SCHNEIDER, INC.

ARTICLE ONE

The name of the Corporation is The Firm of John Dickinson Schneider, Inc., a close corporation. The Corporation was incorporated on October 11, 1956, under the name of The Firm of JOHN DICKINSON SCHNEIDER, Inc. and reorganized as a close corporation under The Close Corporation Act on

ARTICLE TWO

The address of the Corporation's registered office in Illinois is 3100 Prudential Plaza, Chicago, Illinois 60601, and the name of its registered agent at such address is Richard T. Zwirner.

ARTICLE THREE

The duration of the Corporation is perpetual.

ARTICLE FOUR

The purpose or purposes for which the Corporation is organized are:

To be a close corporation;

To purchase and otherwise acquire, manufacture and otherwise produce, own and otherwise invest in, use, sell and otherwise dispose of, and generally trade and deal in, goods, wares, merchandise, other personal property and services of every kind and description;

To purchase, take, receive, subscribe for or otherwise acquire, own, hold, vote, use, employ, sell, mortgage, lend, pledge or otherwise dispose of, and otherwise use and deal in and with, shares or other interests in, or obligations of, other corporations, firms, partnerships and proprietorships;

To purchase, take, receive or otherwise acquire, own, hold, transfer or otherwise dispose of, shares of the Corporation in accordance with The Close Corporation Act, Business Corporation Act and these Restated Articles of Incorporation; and

To have and exercise such other powers conferred upon corporations formed under The Close Corporation Act and Business Corporation Act as are necessary and proper to carry out the above purposes.

ARTICLE FIVE

I.    The aggregate number of shares which the Corporation is authorized to issue is 121,260,000, divided into two classes.  The designation of each class, the number of shares of each class, and the par value, if any, of the shares of each class, or a statement that the shares of any class are without par value, are as follows:

| Class | Series (if any) | Number of Shares | Par value per share or statement that shares are without par value |
|-------|-----------------|------------------|--------------------------------------------------------------------|
| Common |  | 50,000,000 | Par value $0.01 per share |
| Preferred |  | 71,260,000 | Par value $0.01 per share |

II.    The preferences, qualifications, limitations, restrictions and the special or relative rights in respect of the shares of each class are:

A.    Dividends.

The holders of the preferred shares shall be entitled to receive when and as declared by the Board of Directors, out of funds legally available for that purpose, dividends at the rate of 6% of the par value per share per year.  Such dividends shall be noncumulative and shall be payable semi-annually on the fifth day of January and July in each year (and the semi-annual dividend periods shall commence on the sixth day of those months).  The Board of Directors shall not be required to declare a dividend on the preferred shares before declaring a dividend on the common shares.

B.    Liquidation, Dissolution or Winding Up.

In the event of any voluntary or involuntary liquidation, dissolution or winding up of the Corporation, the holders of the preferred shares shall be entitled to be paid the sum of $0.01 per share, plus the amount of any dividends declared but not paid at the time of such liquidation, dissolution or winding up, before any distribution or payment shall be made to holders of common shares of the Corporation.  In the event of any such liquidation, dissolution or winding up of the Corporation,

after payment shall have been made in full to holders of preferred shares in accordance with this paragraph, the holders of common shares shall be entitled to receive any and all assets remaining to be paid or distributed and the holders of preferred shares shall not be entitled to share therein.

    C.   Restriction of Classes of Persons Entitled to Hold Shares.

    Subject to the exception set forth in paragraph E below, the following are the only classes of persons entitled to be holders of shares of any class:  holders of shares of the Corporation as of May 5, 1978; employees of the Corporation, of Hollister Incorporated or of any other corporation controlled by one or more of such corporations; and any deferred benefit plan maintained by any one or more of such corporations for the exclusive benefit of employees of any one or more of them.

    D.   Transfer Restrictions and Repurchase by the Corporation.

    Except as provided in this paragraph D and subject to the restriction set forth in paragraph C above, shares of the Corporation shall not be transferred, directly or indirectly, to any person, firm, corporation, trust, entity or other holder, whether by cash sale, contract, deed, gift, operation of law, sale pursuant to lien, pledge, security agreement or judicial process, or otherwise.  No transfer or attempted transfer of any one or more shares of the Corporation, or of any interest, legal or equitable, or claimed interest in such shares, shall be effective unless and until the following conditions shall have been satisfied:

    1.   Option to Repurchase.

    a.   In the event of termination, by death or for any other reason, of the employment of any shareholder of the Corporation (other than John D. Schneider) by the Corporation, Hollister Incorporated, any subsidiary of the Corporation or Hollister Incorporated, or any other corporation controlled by one or more of such corporations, the Corporation shall have the option to repurchase any and all shares which such person owned, held or in which he or she had an interest, legal or equitable, or claimed an interest, at the time of such termination of employment.

b.    The Corporation shall repurchase pursuant to its option all of such person's shares at the price and in the manner set forth in subparagraphs 3 and 4 of this paragraph D unless the Corporation delivers a written notice to such person or his or her personal representative (within 30 days after the date of termination of employment) setting forth the Corporation's election not to exercise its option to repurchase any or all of the shares held by such person. The written notice (if any) to such person or his or her personal representative of an election by the Corporation not to exercise its option to repurchase shall: (1) state which shares shall not be repurchased by the Corporation and which shares, if any, shall be repurchased, and (2) be delivered in person or sent by certified mail with return receipt requested, to such person or his or her personal representative at his or her last known address.

c.    The effective date of exercise of any such option (i.e., if the Corporation does not deliver the written notice provided for above) and the effective date of the repurchase (on the Corporation's share transfer records and for all other purposes) shall be the date of termination of employment (hereinafter the "Repurchase Date").

2.    Right of First Refusal.

a.    If any owner, person, personal representative, firm, corporation, trust, entity or other holder desires or intends to transfer any one or more shares of the Corporation, or to create any interest, legal or equitable, in such shares, such holder shall first offer in writing, at least 30 days prior to such transfer or creation of an interest, to sell to the Corporation all shares of the Corporation which such holder desires or intends to transfer, or in which such holder desires or intends to create an interest, at the price and in the manner set forth in subparagraphs 3 and 4 of this paragraph D.

b.    Each written offer to the Corporation shall: (1) state the name of the holder of the shares offered to the Corporation and the certificate number or numbers of such shares, and

(2) be delivered in person or sent by certified mail with return receipt requested, to Corporate Secretary, The Firm of John Dickinson Schneider, Inc., at 211 East Chicago Avenue, Chicago, Illinois 60611, or at such other office as the Corporate Secretary shall designate in writing to the shareholders.

c. The Corporation shall repurchase all shares covered by the written offer at the price and in the manner set forth in subparagraphs 3 and 4 of this paragraph D unless the Corporation delivers a written notice to such holder (within 30 days after receipt of the written offer) setting forth the Corporation's election not to exercise its right to repurchase any or all of the shares covered by the written offer. The written notice (if any) from the Corporation to the holder of an election by the Corporation not to exercise its right of repurchase shall: (1) state which shares shall not be repurchased by the Corporation and which shares, if any, shall be repurchased, and (2) be delivered in person or sent by certified mail with return receipt requested to the holder at his or her last known address.

d. The effective date of exercise of any such right of first refusal (i.e., if the Corporation does not deliver the written notice provided for above) and the effective date of the repurchase (on the Corporation's share transfer records and for all other purposes) shall be the date on which the holder first becomes obligated, in accordance with these Restated Articles of Incorporation, to offer such shares to the Corporation (hereinafter the "Repurchase Date").

3. Repurchase Price.

All shares repurchased by the Corporation pursuant to the provisions of subparagraphs 1 or 2 of this paragraph D shall be repurchased at the following prices:

a. The price of each preferred share shall be $0.01 plus the amount of any dividends declared but not paid prior to the Repurchase Date.

b.  The price of each common share shall be its book value as of the end of the calendar month in which the Repurchase Date occurs, plus the amount of any dividends declared but not paid prior to the Repurchase Date...  The book value of each common share shall be computed in accordance with generally accepted accounting principles, and a report by an independent certified public accountant retained by the Corporation stating such book value shall be conclusive proof thereof.

4.  Payment for Repurchased Common Shares.

a.  The aggregate price of any common shares repurchased by the Corporation shall be paid as follows:  The first $5,000 (or the aggregate price if it is less than $5,000) shall be paid in cash and the balance shall be paid in the form of a promissory note of the Corporation payable (1) to the holder of such common shares, (2) at the principal office of the Corporation, (3) in equal quarterly installments of principal (plus interest), and (4) over a period of time determined in accordance with the schedule below.  The principal amount of the note shall be equal to such balance of the aggregate price of such common shares, and interest shall be paid on the unpaid principal balance at the rate per year determined in accordance with the formula below.  The note shall be subordinated to other indebtedness of the Corporation, except that the note shall not be subordinated to other notes delivered in payment for common shares repurchased by the Corporation.

b.  The number of equal quarterly installments of principal on any such subordinated promissory note shall be determined from the following schedule:

| Aggregate Repurchase Price | | Portion of Aggregate Repurchase Price Paid in Cash | Term of Subordinated Promissory Note for Balance of Aggregate Repurchase Price Expressed In | |
|---|---|---|---|---|
| At Least | But Less Than | | Calendar Quarters | Years |
| $      1 | $  5,000 | $5,000 | — | — |
| 5,000 | 7,500 | 5,000 | 4 | 1 |
| 7,500 | 10,000 | 5,000 | 8 | 2 |
| 10,000 | 15,000 | 5,000 | 12 | 3 |
| 15,000 | 20,000 | 5,000 | 16 | 4 |

| Aggregate Repur-chase Price | | Portion of Aggregate Repurchase Price Paid in Cash | Term of Subordinated Promissory Note for Balance of Aggregate Repurchase Price Expressed in | |
|---|---|---|---|---|
| At Least | But Less Than | | Calendar Quarters | Years |
| $ 20,000 | $ 30,000 | $5,000 | 20 | 5 |
| 30,000 | 40,000 | 5,000 | 24 | 6 |
| 40,000 | 50,000 | 5,000 | 28 | 7 |
| 50,000 | 65,000 | 5,000 | 32 | 8 |
| 65,000 | 85,000 | 5,000 | 36 | 9 |
| 85,000 | 110,000 | 5,000 | 40 | 10 |
| 110,000 | 135,000 | 5,000 | 44 | 11 |
| 135,000 | 165,000 | 5,000 | 48 | 12 |
| 165,000 | 200,000 | 5,000 | 52 | 13 |
| 200,000 | and over | | | |

The number of years equal to the lesser of (1) the principal amount divided by $15,000, or (2) (if the owner or holder is a natural person) the life expectancy of an average man or woman the age of the owner or holder.

c. The interest rate per year on any such subordinated promissory note shall be determined by application of the following formula: (1) Take the yield average for industrial bonds of A-rated issuers for the month in which the Repurchase Date occurs as quoted in Moody's Bond Record published by Moody's Investors Service, Inc. (hereinafter the "yield average"). If for any reason Moody's Bond Record is discontinued, the Corporation's Board of Directors shall specify a substitute yield average set forth in another publication which yield average the Board in its sole and unlimited discretion deems comparable to the yield average in Moody's Bond Record. (2) On a subordinated promissory note with a term of not more than 39 calendar quarters, the interest rate on the note shall be the yield average less 1 percent. On a subordinated promissory note with a term of not less than 40 calendar quarters and not more than 79 calendar quarters, the interest rate shall be the yield average less 1/2 of 1 percent. On a subordinated promissory note with a term of not less than 80 calendar quarters, the interest rate shall be the yield average. (3) Notwithstanding the result of the foregoing interest rate calculation, no note shall bear interest at a rate less than 6% per year or at a rate more than 9% per year.

5.   Transfer of More than 50% of Common Shares.

Subject to the restriction set forth in paragraph C above, no sale, transfer or attempted transfer of more than 50% of the outstanding common shares of the Corporation by or for the use of any one or more holders of common shares shall be effective unless such sale or transfer is made pursuant to a written offer by a responsible person or corporation to purchase all of the outstanding common shares of the Corporation. The terms of such written offer shall be identical with respect to each of the Corporation's outstanding common shares and such written offer shall be irrevocable for a period of at least 120 days.

6.   Enforcement of Repurchase Provisions.

a.   The failure of any owner, person, personal representative, firm, corporation, trust, entity or other holder to offer in writing, or to sell, shares to the Corporation in accordance with this paragraph D shall not impair or otherwise affect the right of the Corporation to repurchase such shares. If at any time any owner, person, personal representative, firm, corporation, trust, entity or other holder has any one or more shares of the Corporation, or an interest, legal or equitable, in such shares, or claims an interest in such shares, and the conditions of this paragraph D have not been satisfied, then the Corporation may, at any time within 30 days after determining that it has the right to repurchase such shares: (1) serve notice in writing upon the owner, holder or other possessor of such shares that the Corporation shall repurchase all or any part of such shares, and (2) repurchase such shares. In such event, the Repurchase Date, price, form of payment and all other terms of such repurchase shall be the same as though such shares had been repurchased by the Corporation in accordance with subparagraphs 1, 2, 3 and 4 of this paragraph D.

b.   The certificate or certificates for shares repurchased by the Corporation shall be surrendered to the Corporation within 30 days after the Repurchase

Date.   If not surrendered within such 30 days, the Corporation may, at its sole option and at any time thereafter, deposit the aggregate price, in the form of cash or a promissory note or both, with The First National Bank of Chicago or its successor, for the account of the holder, to be delivered upon surrender of such certificate or certificates duly endorsed to the Corporation.   Upon making such deposit, the certificate or certificates shall be considered surrendered to the Corporation.

c.   Upon discovery by the Corporation of any event which results in a breach of the restriction set forth in paragraph C above or in a breach of the transfer restrictions or the Corporation's rights of repurchase in this paragraph D, the Corporation shall promptly notify all of the shareholders in writing of such event and of the shareholders' rights under subparagraph (b) of Section 9 of The Close Corporation Act.   If such breach has not been cured within 90 days after notifying the shareholders, the Corporation shall commence an appropriate proceeding in accordance with Section 9 of The Close Corporation Act in the Circuit Court of Cook County within such 90 day period.   In any such proceeding, the Court shall be requested to issue all orders necessary to prevent the Corporation from losing its status as a close corporation by enjoining or setting aside any act or threatened act on the part of any holder of the shares or other person or entity which would be inconsistent with any of the restrictions, provisions or conditions of these Restated Articles of Incorporation.

7.   Other.

Notwithstanding anything to the contrary in this paragraph D:

a.   Under exceptional circumstances and in the discretion of the Corporation's Board of Directors, shares may be repurchased by the Corporation at such other times, upon such other terms, in such other manners, over such other periods of time, or on such other conditions as the Corporation and the owner or holder of such shares may from time to time agree.

b.    The Corporation may sell, assign or other-
wise transfer its obligations under any note
delivered in payment for common shares repurchased
by the Corporation to the Trustees of the Hollister
Employee Share Ownership Trust on such terms as
the Corporation and such Trustees may agree.  If
at any time the Trustees fail to pay any installment
in accordance with the terms of such note, such
installment shall be paid by the Corporation.

E.   Mr. and Mrs. Schneider.

Notwithstanding anything to the contrary in paragraphs
C and D above, the provisions of those paragraphs shall not
apply to any transfer or attempted transfer by, to or for
the use of John D. Schneider, Minnie R. Schneider or any
trustee designated in writing by either or both of them.

F.   Pre-emptive Rights.

No shareholder of the Corporation shall by reason of
his or her holding shares of any class have any pre-emptive
or preferential right to purchase or subscribe to any pre-
ferred shares, common shares or shares of any other class
of the Corporation whether now or hereafter issued.

G.   Cancellation of Preferred Shares.

Preferred shares redeemed or repurchased by the
Corporation shall be cancelled and shall not be reissued or
resold.

III.   The provisions of Paragraphs II.C. and II.D. of this
ARTICLE FIVE shall not be repealed, altered, amended or otherwise
changed without the prior consent of shareholders having the right
to vote at least 2/3 of the outstanding shares of each class of the
Corporation's shares.

Certificate No. -51965



STATE OF ILLINOIS
OFFICE OF
THE SECRETARY OF STATE

To all to whom these Presents Shall Come, Greeting:

Whereas, ARTICLES OF AMENDMENT TO THE ARTICLES OF INCORPORATION, duly signed and verified of THE FIRM OF JOHN DICKINSON SCHNEIDER, INC. incorporated under the laws of the State of ILLINOIS have been filed in the Office of the Secretary of State as provided by The "Business Corporation Act" of Illinois, in force July 13, A.D. 1933.

Now Therefore, I, ALAN J. DIXON, Secretary of State of the State of Illinois by virtue of the powers vested in me by law, do hereby issue this certificate and attach thereto a copy of the Application of the aforesaid corporation.

In Testimony Whereof, I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, Done at the City of Springfield, this 21st day of November A.D. 19 80 and of the Independence of the United States the two hundred and 5th.

(SEAL)

SECRETARY OF STATE

FORM BCA-55

2644-7761

(Do not write in this space)
Date Paid    11-21-80
License Fee    $
Franchise Tax    $
Filing Fee    $ 25.00
Clerk

(File in Duplicate)

# ARTICLES OF AMENDMENT
## TO THE
## RESTATED ARTICLES OF INCORPORATION
### OF

The Firm of John Dickinson Schneider, Inc.
(Exact Corporate Name)

To ALAN J. DIXON
Secretary of State
Springfield, Illinois

Restated
The undersigned corporation, for the purpose of amending its Articles of

Incorporation and pursuant to the provisions of Section 55 of "The Business

Corporation Act" of the State of Illinois, hereby executes the following Articles

of Amendment:

ARTICLE FIRST: The name of the corporation is:

The Firm of John Dickinson Schneider, Inc.

ARTICLE SECOND: The following amendment or amendments were

adopted in the manner prescribed by "The Business Corporation Act" of the

State of Illinois:

Section II A of Article Five of the Restated Articles
of Incorporation is amended to increase the rate of
dividend from 6% to 12% and to make the dividends
"cumulative" rather than "non-cumulative".

(Disregard separation into classes if class voting does not apply to the amendment voted on.)

ARTICLE THIRD: The number of shares of the corporation outstanding at the time of the adoption of said amendment or amendments was _64,844,510_ ; and the number of shares of each class entitled to vote as a class on the adoption of said amendment or amendments, and the designation of each such class were as follows:

| Class | Number of Shares |
|---|---|
| Common | 3,094,510 |
| Preferred | 61,750,000 |

NOTE: On the date of adoption of the amendment an additional 39,155,490 shares were held in treasury and not entitled to vote:

| Class | Number of Shares |
|---|---|
| Common | 39,155,490 |

(Disregard separation into classes if class voting does not apply to the amendment voted on.)

ARTICLE FOURTH: The number of shares voted for said amendment or amendments was _64,790,510_ ; and the number of shares voted against said amendment or amendments was _-0-_ . The number of shares of each class entitled to vote as a class voted for and against said amendment or amendments, respectively, was:

| Class | Number of Shares Voted For | Against |
|---|---|---|
| Common | 3,040,510 | -0- |
| Preferred | 61,750,000 | -0- |

(Disregard these items unless the amendment restates the articles of incorporation.)

Item 1. On the date of the adoption of this amendment, restating the articles of incorporation, the corporation had _104,000,000_ shares issued, itemized as follows:

| Class | Series (If Any) | Number of Shares | Par value per share or statement that shares are without par value |
|---|---|---|---|
| Common | — | 42,250,000 | $0.01 |
| Preferred | — | 61,750,000 | $0.01 |

Item 2. On the date of the adoption of this amendment restating the articles of incorporation, the corporation had a stated capital of $ _1,040,000.00_ and a paid-in surplus of $ _109,840.39_ or a total of $ _1,149,840.39_ .

(Disregard this Article where this amendment contains no such provisions.)

ARTICLE FIFTH: The manner in which the exchange, reclassification, or cancellation of issued shares, or a reduction of the number of authorized shares of any class below the number of issued shares of that class, provided for in, or effected by, this amendment, is as follows:   N/A

(Disregard this Paragraph where amendment does not affect stated capital or paid-in surplus.)

ARTICLE SIXTH: Paragraph 1: The manner in which said amendment or amendments effect a change in the amount of stated capital or the amount of paid-in surplus, or both, is as follows:   N/A

(Disregard this Paragraph where amendment does not affect stated capital or paid-in surplus.)

Paragraph 2: The amounts of stated capital and of paid-in surplus as changed by this amendment are as follows:   N/A

|  | Before Amendment | After Amendment |
|---|---|---|
| Stated capital | $1,040,000.00 | $1,040,000.00 |
| Paid-in surplus | $ 109,840.39 | $ 109,840.39 |

IN WITNESS WHEREOF, the undersigned corporation has caused these Articles of Amendment to be executed in its name by its _____ President, and its corporate seal to be hereto affixed, attested by its _____ Secretary, this __24th__ day of __October__, 19 80.

The Firm of John Dickinson Schneider, Inc.
(Exact Corporate Name)

By _____
Its _____ President

Place
(CORPORATE SEAL)
Here

ATTEST _____
Its _____ Secretary

STATE OF __ILLINOIS__  } ss.
COUNTY OF __C O O K__

I, __Catherine P. Kolnik__, a Notary Public, do hereby certify that on the __24th__ day of __October__ __1980__, __John D. Schneider__ personally appeared before me and, being first duly sworn by me, acknowledged that he signed the foregoing document in the capacity therein set forth and declared that the statements therein contained are true.

IN WITNESS WHEREOF, I have hereunto set my hand and seal the day and year before written.

_____
Notary Public
My Commission Expires March 27, 1984

Place
(NOTARIAL SEAL)
Here

PAID
NOV 25 1980

FILED
NOV 2 1980

SECRETARY OF STATE
FILE IN DUPLICATE

Filing Fee $25.00
Filing Fee for Re-Stated Articles $100.00

Form BCA-55

Box 3644    File 7264

ARTICLES OF AMENDMENT
to the
RESTATED ARTICLES OF INCORPORATION
of
The Firm of John Dickinson Schneider, Inc.

File Number ___3644-776-1___



## To all to whom these Presents Shall Come, Greeting:

**Whereas**, ARTICLES OF AMENDMENT TO THE ARTICLES OF INCORPORATION OF
THE FIRM OF JOHN DICKINSON SCHNEIDER, INC.
INCORPORATED UNDER THE LAWS OF THE STATE OF ILLINOIS HAVE BEEN
FILED IN THE OFFICE OF THE SECRETARY OF STATE AS PROVIDED BY THE
BUSINESS CORPORATION ACT OF ILLINOIS, IN FORCE JULY 1, A.D. 1984.

*Now Therefore, I, Jim Edgar, Secretary of State of the State of Illinois, by virtue of the powers vested in me by law, do hereby issue this certificate and attach hereto a copy of the Application of the aforesaid corporation.*

*In Testimony Whereof, I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, at the City of Springfield, this* ___13TH___ *day of* ___AUGUST___ *A.D. 19* 84 *and of the Independence of the United States the two hundred and* ___9TH___

CP0792343

(SEAL)

*Jim Edgar*
SECRETARY OF STATE

3644-776-1

Form BCA-55

(File in Duplicate)

|  | ARTICLES OF AMENDMENT | (Do not write in this space) |
|---|---|---|
| To  JIM EDGAR | to the | Date Paid     5-13-54 |
| Secretary of State | ARTICLES OF INCORPORATION | License Fee       $ |
| Springfield, Illinois |  | Franschise Tax    $ 25 |
|  |  | Filing Fee        $ |
|  |  | Clerk             BW |

The undersigned corporation, for the purpose of amending its Articles of Incorporation and pursuant to the provisions of Section 55 of "The Business Corporation Act" of the State of Illinois, hereby executes the following Articles of Amendment:

ARTICLE FIRST: The name of the corporation is:

The Firm of John Dickinson Schneider, Inc.

ARTICLE SECOND: The following amendment or amendments were adopted in the manner prescribed by "The Business Corporation Act" of the State of Illinois:

See Schedule A Attached

Schedule A

Amendment 1.    ARTICLE FIVE, Sections II.C. and II.D.1., of
the Restated Articles of Incorporation are hereby amended so as
to read as follows:

        C.    Restriction of Classes of Persons Entitled to Hold
              Shares.

        Subject to the exception set forth in paragraph E
below, the following are the only classes of persons
entitled to be holders of shares of any class:  holders of
shares of the Corporation as of May 5, 1978; directors and
officers of the Corporation or of Hollister Incorporated who
(in the opinion of the Corporation's Board of Directors)
have performed substantial and continuing services for the
Corporation or Hollister Incorporated; employees of the
Corporation, of Hollister Incorporated or of any other
corporation controlled by one or more of such corporations;
and any deferred benefit plan maintained for the exclusive
benefit of such directors, officers or employees.

        D.    Transfer Restrictions and Repurchase by the
              Corporation

        Except as provided in this paragraph D and subject to
the restriction set forth in paragraph C above, shares of
the Corporation shall not be transferred, directly or
indirectly, to any person, firm, corporation, trust, entity
or other holder, whether by cash sale, contract, deed, gift,
operation of law, sale pursuant to lien, pledge, security
agreement or judicial process, or otherwise.  No transfer or
attempted transfer of any one or more shares of the
Corporation, or of any interest, legal or equitable, or
claimed interest in such shares, shall be effective unless
and until the following conditions shall have been satisfied:

        1.    Option to Repurchase.

        a.    In the event of termination, by death or for
any other reason, of the employment of any shareholder
of the Corporation (other than John D. Schneider) by
the Corporation, Hollister Incorporated, any subsidiary
of the Corporation or Hollister Incorporated, or any
other corporation controlled by one or more of such

corporations, or in the event any non-employee shareholder ceases for any reason to be a director or officer of the Corporation or Hollister Incorporated, the Corporation shall have the option to repurchase any and all shares which such person owned, held or in which he or she had an interest, legal or equitable, or claimed an interest, at the time of such termination of employment.

b.    The Corporation shall repurchase pursuant to its option all of such person's shares at the price and in the manner set forth in subparagraphs 3 and 4 of this paragraph D unless the Corporation delivers a written notice to such person or his or her personal representative (within 30 days after the date of termination of employment or cessation of a non-employee's status as director or officer) setting forth the Corporation's election not to exercise its option to repurchase any or all of the shares held by such person. The written notice (if any) to such person or his or her personal representative of an election by the Corporation not to exercise its option to repurchase shall:  (1)  state which shares shall not be repurchased by the Corporation and which shares, if any, shall be repurchased, and (2) be delivered in person or sent by certified mail with return receipt requested, to such person or his or her personal representative at his or her last known address.

c.    The effective date of exercise of any such option (i.e., if the Corporation does not deliver the written notice provided for above) and the effective date of the repurchase (on the Corporation's share transfer records and for all other purposes) shall be the date of termination of employment or cessation of a non-employee's status as director or officer (hereinafter the "Repurchase Date").

Amendment 2.    ARTICLE FIVE, Section II.D.2.b., of the Restated Articles of Incorporation is hereby amended so as to read as follows:

b.    Each written offer to the Corporation shall:  (1) state the name of the holder of the shares offered to the Corporation and the certificate number or numbers of such shares, and (2) be delivered in person or sent by certified mail with return receipt requested, to Corporate Secretary, The Firm of John Dickinson Schneider, Inc., at 2000 Hollister Drive, Libertyville, Illinois 60048, or at such other

-2-

office as the Corporate Secretary shall designate in writing
to the shareholders.

Amendment 3.    ARTICLE FIVE, Section II.D.3.b., of the
Restated Articles of Incorporation is hereby amended so as to
read as follows:.

    b.    The price of each common share shall be its book
value as of the end of the calendar month in which the
Repurchase Date occurs, plus the amount of any dividends
declared but not paid prior to the Repurchase Date.   The
book value of each common share shall be the book value as
reflected on the books of the Corporation and a report by
an independent certified public accountant retained by the
Corporation stating such book value shall be conclusive
proof thereof, regardless of whether the accountant's
opinion is qualified.

(Disregard separation into classes if class voting does not apply to the amendment voted on.)

ARTICLE THIRD: The number of shares of the corporation outstanding at the the time of the adoption of said amendment or amendments was_____

_____62,739,468_____; and the number of shares of each class

entitled to vote as a class on the adoption of said amendment or amendments, and the designation of each such class were as follows:

| Class | Number of Shares |
| --- | --- |
| Common | 989,468 |
| Preferred | 61,750,000 |

NOTE: On the date of adoption of the amendment an additional 41,260,532 shares were held in treasury and not entitled to vote:

| Class | Number of Shares |
| --- | --- |
| Common | 41,260,532 |
| Preferred | 0 |

(Disregard separation into classes if class voting does not apply to the amendment voted on.)

ARTICLE FOURTH: The number of shares voted for said amendment or amendments was 62,628,405 ; and the number of

shares voted against said amendment or amendments was -0- .

The number of shares of each class entitled to vote as a class voted for and

against said amendment or amendments, respectively, was:

| Class | Number of Shares Voted For | Against |
| --- | --- | --- |
| Common | 878,405 | -0- |
| Preferred | 61,750,000 | -0- |

(Disregard these items unless the amendment restates the articles of incorporation.)

Item 1. On the date of the adoption of this amendment, restating the articles of incorporation, the corporation had _____ shares issued, itemized as follows:

| Class | Series (If Any) | Number of Shares | Par value per share or statement that shares are without par value |
| --- | --- | --- | --- |
| | | N/A | |

Item 2. On the date of the adoption of this amendment restating the articles of incorporation, the corporation had a stated capital of $_____ and a paid-in surplus of $_____ or a total of $_____

(Disregard this Article where this amendment contains no such provisions.)

ARTICLE FIFTH: The manner in which the exchange, reclassification, or cancellation of issued shares, or a reduction of the number of authorized shares of any class below the number of issued shares of that class, provided for in, or effected by, this amendment, is as follows:

N/A

(Disregard this Paragraph where amendment does not affect stated capital or paid-in surplus.)

ARTICLE SIXTH: Paragraph 1: The manner in which said amendment or amendments effect a change in the amount of stated capital or the amount of paid-in surplus, or both, is as follows:

N/A

(Disregard this Paragraph where amendment does not affect stated capital or paid-in surplus.)

Paragraph 2: The amounts of stated capital and of paid-in surplus as changed by this amendment are as follows:

|  | Before Amendment | After Amendment |
|---|---|---|
| Stated Capital............$ | | $ |
| Paid-in surplus............$ | | $ |

N/A

IN WITNESS WHEREOF, the undersigned corporation has caused these Articles of Amendment to be executed in its name by its_____President, and its corporate seal to be hereto affixed, attested by its_____Secretary, this _____ 20th _____ day of_____ July _____ , 19 84 .

The Firm of John Dickinson Schneider, Inc.
Exact Corporate Name

Place
(CORPORATE SEAL)
Here

By _____
Its President

Michael C. Winn.

ATTEST: _____
Its Secretary

Georgia C. Llamzon

As authorized officers, we declare that this document has been examined by us and is, to the best of our knowledge and belief, true, correct and complete.

PAID AUG 15 1984

Form BCA-55

File #

ARTICLES OF AMENDMENT
to the
ARTICLES OF INCORPORATION

SECRETARY OF STATE
CORPORATION DEPARTMENT
SPRINGFIELD, ILLINOIS 62756
TELEPHONE (217) 782-6961

FILE IN DUPLICATE

Filing Fee $25.00

Filing Fee for Re-Stated Articles $100.00

File Number 3644-776-1

# State of Illinois
## Office of
## The Secretary of State

**Whereas**     ARTICLES OF AMENDMENT TO THE ARTICLES OF INCORPORATION OF
    THE FIRM OF JOHN DICKINSON SCHNEIDER, INC.
INCORPORATED UNDER THE LAWS OF THE STATE OF ILLINOIS HAVE BEEN FILED IN THE OFFICE OF THE SECRETARY OF STATE AS PROVIDED BY THE BUSINESS CORPORATION ACT OF ILLINOIS, IN FORCE JULY 1, A.D. 1984.

Now Therefore, I, Jesse White, Secretary of State of the State of Illinois, by virtue of the powers vested in me by law, do hereby issue this certificate and attach hereto a copy of the Application of the aforesaid corporation.

**In Testimony Whereof,** I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, at the City of Springfield, this   19TH   day of   MARCH   A.D.   1999   and of the Independence of the United States the two hundred and   23RD

*Jesse White*

Secretary of State

C-212.3

| Form **BCA-10.30** | **ARTICLES OF AMENDMENT** | File # 3644 7 7261 |
|---|---|---|

(Rev. Jan. 1999)

Jesse White
Secretary of State
Department of Business Services
Springfield, IL 62756
Telephone (217) 782-1832

Remit payment in check or money order, payable to "Secretary of State."

The filing fee for restated articles of amendment – $100.00

http://www.sos.state.il.us

**FILED**

MAR 19 1999

JESSE WHITE
SECRETARY OF STATE

PAID
MAR 24 1999

SUBMIT IN DUPLICATE

This space for use by Secretary of State

Date 3/19/99
Franchise Tax        $
Filing Fee*          $25.00
Penalty              $
Approved

1.  CORPORATE NAME: ___The Firm of John Dickinson Schneider, Inc.___

(Note 1)

2.- MANNER OF ADOPTION OF AMENDMENT:

The following amendment of the Articles of Incorporation was adopted on ___January 28,___
(Month & Day)

___1999___ in the manner indicated below. ( "X" one box only)
(Year)

☐ By a majority of the incorporators, provided no directors were named in the articles of incorporation and no directors have been elected;

(Note 2)

☐ By a majority of the board of directors, in accordance with Section 10.10, the corporation having issued no shares as of the time of adoption of this amendment;

(Note 2)

☐ By a majority of the board of directors, in accordance with Section 10.15, shares having been issued but shareholder action not being required for the adoption of the amendment.

(Note 3)

☒ By the shareholders, in accordance with Section 10.20, a resolution of the board of directors having been duly adopted and submitted to the shareholders. At a meeting of shareholders, not less than the minimum number of votes required by statute and by the articles of incorporation were voted in favor of the amendment;

(Note 4)

☐ By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been duly adopted and submitted to the shareholders. A consent in writing has been signed by shareholders having not less than the minimum number of votes required by statute and by the articles of incorporation. Shareholders who have not consented in writing have been given notice in accordance with Section 7.10;

(Notes 4 & 5)

☐ By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been duly adopted and submitted to the shareholders. A consent in writing has been signed by all the shareholders entitled to vote on this amendment.

(Note 5)

3.  TEXT OF AMENDMENT:

a.  When amendment effects a name change; insert the new corporate name below. Use Page 2 for all other amendments.

Article I. The name of the corporation is:

No change

(NEW NAME).

**EXPEDITED**

MAR 19 1999

SECRETARY OF STATE

All changes other than name, include on page 2
(over).

## Text of Amendment

b.    (If amendment affects the corporate purpose, the amended purpose is required to be set forth in its entirety. If there is not sufficient space to do so, add one or more sheets of this size.)

See attached Exhibits A and B

EXHIBIT A
TO
FORM BCA 10.30 - ARTICLES OF AMENDMENT
FOR
THE FIRM OF JOHN DICKINSON SCHNEIDER, INC.

ARTICLE FIVE, Section II.D.4., of the Restated Articles of Incorporation dated May 25, 1978 is hereby amended to read in its entirety as follows:

4.    Payment for Repurchased Common Shares.

a.    The aggregate price of any common shares repurchased by the Corporation shall be paid as follows: The greater of the first $250,000 or 10% of the aggregate price shall be paid in cash and the balance shall be paid in the form of a promissory note of the Corporation payable (1) to the holder of such common shares, (2) at the principal office of the Corporation, (3) in equal quarterly installments of principal (plus interest), and (4) over a period of ten years, or, if the principal amount is $135,000 or less, over such lesser number of years determined by dividing the principal amount of the note by $15,000 and, in the case of a partial year, rounding up to the next full year, i.e., a promissory note in the amount of $120,001 to $135,000 will be payable over nine years, $105,001 to $120,000 over eight years, and so on.

The principal amount of the note shall be equal to such balance of the aggregate price of such common shares, and interest shall be paid on the unpaid principal balance at the rate per year determined below. The note shall be subordinated to other indebtedness of the Corporation, except that the note shall not be subordinated to other notes delivered in payment for common shares repurchased by the Corporation.

b.    The interest rate on any such subordinated promissory note shall be determined by taking the yield average for industrial bonds of Baa rated issuers for the month in which the Repurchase Date occurs as quoted in Moody's Bond Record published by Moody's Investors Service, Inc. (hereinafter the "yield average"). If for any reason Moody's Bond Record is discontinued, the Corporation's Board of Directors shall specify a substitute yield average set forth in another publication which yield average the Board in its sole and unlimited discretion deems comparable to the yield average in Moody's Bond Record. Notwithstanding the result of the foregoing interest rate determination, no note shall bear interest at a rate less than 8% per year or at a rate more than 12% per year.

**EXHIBIT B**
**TO**
**FORM BCA 10.30 - ARTICLES OF AMENDMENT**
**FOR**
**THE FIRM OF JOHN DICKINSON SCHNEIDER, INC.**

The Restated Articles of Incorporation dated May 25, 1978 are hereby amended by the addition of ARTICLE SIX as follows:

<u>ARTICLE SIX</u>

No director of the Corporation shall be personally liable to the Corporation or its shareholders for monetary damages for breach of fiduciary duty as a director, except for liability (1) for any breach of the director's duty of loyalty to the Corporation or its shareholders, (2) for acts or omissions not in good faith or that involve intentional misconduct or a knowing violation of law, (3) under Section 8.65 of the Business Corporation Act, or (4) for any transaction from which the director derived an improper personal benefit. If, after adoption by the shareholders of this ARTICLE SIX, the Business Corporation Act is amended to permit the further elimination or limitation of the personal liability of directors, then the liability of the directors of the Corporation shall be eliminated or limited to the fullest extent permitted by the Business Corporation Act as so amended. This ARTICLE SIX shall not eliminate or limit the liability of a director of the Corporation for any breach of fiduciary duty occurring before ~~January 28~~ *March 19*, 1999. The right set forth in this ARTICLE SIX is in addition to any indemnification or other rights eliminating or limiting the personal liability of directors to which a director may be entitled by any by-law, agreement, vote of shareholders or disinterested directors, or otherwise.

Any repeal or modification of the foregoing paragraph by the shareholders of the Corporation shall not adversely affect any right or protection of the directors of the Corporation with respect to any act or omission occurring prior to the time of such repeal or modification.

4. The manner, if not set forth in Article 3b, in which any exchange, reclassification or cancellation of issued shares, or a reduction of the number of authorized shares of any class below the number of issued shares of that class, provided for or effected by this amendment, is as follows: *(If not applicable, insert "No change")*

No change

5. (a) The manner, if not set forth in Article 3b, in which said amendment effects a change in the amount of paid-in capital (Paid-in capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts) is as follows: *(If not applicable, insert "No change")*

No change

(b) The amount of paid-in capital (Paid-in Capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts) as changed by this amendment is as follows: *(If not applicable, insert "No change")*

No change

|  | Before Amendment | After Amendment |
|---|---|---|
| Paid-in Capital | $ | $ |

**(Complete either item 6 or 7 below. All signatures must be in BLACK INK.)**

6. The undersigned corporation has caused this statement to be signed by its duly authorized officers, each of whom affirms, under penalties of perjury, that the facts stated herein are true.

Dated ____March 18____ , ____1999____    The Firm of John Dickinson Schneider, Inc.
     *(Month & Day)*     *(Year)*    *(Exact Name of Corporation at date of execution)*

attested by _____    by _____
*(Signature of Secretary or Assistant Secretary)*    *(Signature of President or Vice President)*
Dian J. Thielitz — Secretary    Michael C. Winn — President
    *(Type or Print Name and Title)*          *(Type or Print Name and Title)*

7. If amendment is authorized pursuant to Section 10.10 by the incorporators, the incorporators must sign below, and type or print name and title.

OR

If amendment is authorized by the directors pursuant to Section 10.10 and there are no officers, then a majority of the directors or such directors as may be designated by the board, must sign below, and type or print name and title.

The undersigned affirms, under the penalties of perjury, that the facts stated herein are true.

Dated _____ , _____
    *(Month & Day)*     *(Year)*

## NOTES and INSTRUCTIONS

NOTE 1:  State the true exact corporate name as it appears on the records of the office of the Secretary of State, BEFORE any amendments herein reported.

NOTE 2:  Incorporators are permitted to adopt amendments ONLY before any shares have been issued and before any directors have been named or elected.

(§ 10.10)

NOTE 3:  Directors may adopt amendments without shareholder approval in only seven instances, as follows:

(a)  to remove the names and addresses of directors named in the articles of incorporation;

(b)  to remove the name and address of the initial registered agent and registered office, provided a statement pursuant to § 5.10 is also filed;

(c)  to increase, decrease, create or eliminate the par value of the shares of any class, so long as no class or series of shares is adversely affected.

(d)  to split the issued whole shares and unissued authorized shares by multiplying them by a whole number, so long as no class or series is adversely affected thereby;

(e)  to change the corporate name by substituting the word "corporation", "incorporated", "company", "limited", or the abbreviation "corp.", "inc.", "co.", or "ltd." for a similar word or abbreviation in the name, or by adding a geographical attribution to the name;

(f)  to reduce the authorized shares of any class pursuant to a cancellation statement filed in accordance with § 9.05,

(g)  to restate the articles of incorporation as currently amended.

(§ 10.15)

NOTE 4:  All amendments not adopted under § 10.10 or § 10.15 require (1) that the board of directors adopt a resolution setting forth the proposed amendment and (2) that the shareholders approve the amendment.

Shareholder approval may be (1) by vote at a shareholders' meeting (either annual or special) or (2) by consent, in writing, without a meeting.

To be adopted, the amendment must receive the affirmative vote or consent of the holders of at least 2/3 of the outstanding shares entitled to vote on the amendment (but if class voting applies, then also at least a 2/3 vote within each class is required).

The articles of incorporation may supersede the 2/3 vote requirement by specifying any smaller or larger vote requirement not less than a majority of the outstanding shares entitled to vote and not less than a majority within each class when class voting applies.

(§ 10.20)

NOTE 5:  When shareholder approval is by consent, all shareholders must be given notice of the proposed amendment at least 5 days before the consent is signed. If the amendment is adopted, shareholders who have not signed the consent must be promptly notified of the passage of the amendment.

(§§ 7.10 & 10.20)

C-173.11

Page 4

File Number 3644-776-1



CP0792347

# State of Illinois
## Office of
## The Secretary of State

**Whereas,** ARTICLES OF AMENDMENT TO THE ARTICLES OF INCORPORATION OF THE FIRM OF JOHN DICKINSON SCHNEIDER, INC. INCORPORATED UNDER THE LAWS OF THE STATE OF ILLINOIS HAVE BEEN FILED IN THE OFFICE OF THE SECRETARY OF STATE AS PROVIDED BY THE BUSINESS CORPORATION ACT OF ILLINOIS, IN FORCE JULY 1, A.D. 1984.

Now Therefore, I, Jesse White, Secretary of State of the State of Illinois, by virtue of the powers vested in me by law, do hereby issue this certificate and attach hereto a copy of the Application of the aforesaid corporation.

**In Testimony Whereof,** I hereto set my hand and cause to be affixed the Great Seal of the State of Illinois, at the City of Springfield, this 14TH day of JUNE A.D. 1999 and of the Independence of the United States the two hundred and 23RD

*Jesse White*

Secretary of State

C-212.3

Form **BCA-10.30**
(Rev. Jan. 1999)

**ARTICLES OF AMENDMENT**

File #3644-776-1

Jesse White
Secretary of State
Department of Business Services
Springfield, IL 62756
Telephone (217) 782-1832

**FILED**

PAID

**SUBMIT IN DUPLICATE**

JUN 14 1999

JUN 15 1999

This space for use by
Secretary of State

Remit payment in check or money
order, payable to "Secretary of State."

The filing fee for restated articles of
amendment - $100.00

http://www.sos.state.il.us

JESSE WHITE
SECRETARY OF STATE

Date 6-14-99
Franchise Tax        $
Filing Fee*          $25.00
Penalty              $
Approved: _____

1. CORPORATE NAME: The Firm of John Dickinson Schneider, Inc.

(Note 1)

2. MANNER OF ADOPTION OF AMENDMENT:

The following amendment of the Articles of Incorporation was adopted on _April 30_
(Month & Day)

__1999__ in the manner indicated below. ( "X" one box only)
(Year)

☐ By a majority of the incorporators, provided no directors were named in the articles of incorporation and no directors
have been elected;

(Note 2)

☐ By a majority of the board of directors, in accordance with Section 10.10, the corporation having issued no shares
as of the time of adoption of this amendment;

(Note 2)

☐ By a majority of the board of directors, in accordance with Section 10.15, shares having been issued but shareholder
action not being required for the adoption of the amendment;

(Note 3)

☒ By the shareholders, in accordance with Section 10.20, a resolution of the board of directors having been duly
adopted and submitted to the shareholders. At a meeting of shareholders, not less than the minimum number of
votes required by statute and by the articles of incorporation were voted in favor of the amendment;

(Note 4)

☐ By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been
duly adopted and submitted to the shareholders. A consent in writing has been signed by shareholders having not
less than the minimum number of votes required by statute and by the articles of incorporation. Shareholders who
have not consented in writing have been given notice in accordance with Section 7.10;

(Notes 4 & 5)

☐ By the shareholders, in accordance with Sections 10.20 and 7.10, a resolution of the board of directors having been
duly adopted and submitted to the shareholders. A consent in writing has been signed by all the shareholders
entitled to vote on this amendment.

(Note 5)

3. TEXT OF AMENDMENT:

a. When amendment effects a name change, insert the new corporate name below. Use Page 2 for all other
amendments.

Article I: The name of the corporation is:

No change
(NEW NAME)

**EXPEDITED**

JUN 14 1999

SECRETARY OF STATE

All changes other than name, include on page 2
(over)

## Text of Amendment

b.  *(If amendment affects the corporate purpose, the amended purpose is required to be set forth in its entirety. If there is not sufficient space to do so, add one or more sheets of this size.)*

See attached Exhibit A

Page 2

**EXHIBIT A**
**TO**
**FORM BCA 10.30 - ARTICLES OF AMENDMENT**
**FOR**
**THE FIRM OF JOHN DICKINSON SCHNEIDER, INC.**

ARTICLE FIVE of the Restated Articles of Incorporation dated May 25, 1978 is hereby amended to include the following amendments and additions:

<u>ARTICLE FIVE Paragraph II.C. is hereby amended to read as follows:</u>

Paragraph II.C.   <u>Restriction of Classes of Persons Entitled to Hold Shares.</u>

The following are the only classes of persons entitled to be holders of shares of any class: directors and officers of the Corporation or of Hollister Incorporated who (in the opinion of the Corporation's Board of Directors) have performed substantial and continuing services for the Corporation or Hollister Incorporated; employees of the Corporation, of Hollister Incorporated or of any other corporation controlled by one or more of such corporations; any deferred benefit plan maintained for the exclusive benefit of such directors, officers or employees; and The Firm of John Dickinson Schneider, Inc. Preferred Share Trust April 21, 1999.

<u>ARTICLE FIVE Paragraph II.D.1. is hereby amended to read as follows:</u>

Paragraph II.D.1.   <u>Option to Repurchase.</u>

a.      In the event of termination, by death or for any other reason, of the employment of any shareholder of the Corporation by the Corporation, Hollister Incorporated, any subsidiary of the Corporation or Hollister Incorporated, or any other corporation controlled by one or more of such corporations, or in the event any non-employee shareholder ceases for any reason to be a director or officer of the Corporation or Hollister Incorporated, the Corporation shall have the option to repurchase any and all shares which such person owned, held or in which he or she had an interest, legal or equitable, or claimed an interest, at the time of such termination of employment.

<u>ARTICLE FIVE Paragraph II.D.8. is hereby added to read as follows:</u>

Paragraph II.D.8.   <u>Common Share Ownership Limit of 10%.</u>

a.      No natural person shall own directly, or indirectly or both as of December 31 of any year (excluding only (i) indirect ownership through a non-discriminatory tax-qualified retirement plan sponsored by the Corporation, Hollister Incorporated or any of their subsidiaries, and (ii) ownership attributable to such person solely because of his acting as a fiduciary of The Firm of John Dickinson Schneider, Inc. Preferred Share Trust

April 21, 1999, the Hollister Employee Share Ownership Trust or any other plan sponsored by any of such corporations for the benefit of employees, whether or not tax-qualified) more than 10% of the Corporation's outstanding common shares (the "ownership limit"). No natural person shall accept, purchase or in any other manner acquire at any time during any year common shares of the Corporation (excluding only acquisitions related to such indirect ownership and such fiduciary ownership) if such acquisition would result in that person's owning common shares exceeding the ownership limit. Notwithstanding the foregoing, the ownership limit shall not apply to grants of common shares or options or other contingent rights to purchase or receive common shares of the Corporation prior to their vesting or exercise or fulfillment of their contingencies.

b.    As to any natural person who may own more than 10% of the outstanding common shares of the Corporation as of December 31 of any year, the Corporation shall repurchase the smallest number of common shares as are necessary to reduce the ownership of such person below 10% of the then outstanding common shares. The Repurchase Date shall be such December 31; the repurchase price shall be determined as set forth in Subparagraph 3 of this Paragraph D; and the aggregate repurchase price shall be paid in the manner set forth in Subparagraph 4 of this Paragraph D.

ARTICLE FIVE Paragraph II.E. is hereby amended to read as follows:

Paragraph II. E.    [Intentionally Left Blank]

ARTICLE FIVE Paragraph II.H. is hereby added to read as follows:

Paragraph II.H.    Exception to Transfer Restrictions.

Notwithstanding the transfer restrictions and repurchase provisions set forth in Paragraph D, the Corporation is directed to enter into and perform its obligations under the documents entitled "Agreement to Vote" and "Consent" by and among various of the John D. Schneider Preferred Share Trust dated April 21, 1977, the employee/beneficiaries thereof and The Firm of John Dickinson Schneider, Inc. Preferred Share Trust April 21, 1999.

4. The manner, if not set forth in Article 3b, in which any exchange, reclassification or cancellation of issued shares, or a reduction of the number of authorized shares of any class below the number of issued shares of that class, provided for or effected by this amendment, is as follows: *(If not applicable, insert "No change")*

No change

5. (a) The manner, if not set forth in Article 3b, in which said amendment effects a change in the amount of paid-in capital (Paid-in capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts) is as follows: *(If not applicable, insert "No change")*

No change

(b) The amount of paid-in capital (Paid-in Capital replaces the terms Stated Capital and Paid-in Surplus and is equal to the total of these accounts) as changed by this amendment is as follows: *(If not applicable, insert "No change")*

No change

|  | Before Amendment | After Amendment |
|---|---|---|
| Paid-in Capital | $_____ | $_____ |

**(Complete either Item 6 or 7 below. All signatures must be in <u>BLACK INK</u>.)**

6. The undersigned corporation has caused this statement to be signed by its duly authorized officers, each of whom affirms, under penalties of perjury, that the facts stated herein are true.

Dated _June 8, 1999_, _1999_
(Month & Day)    (Year)

attested by _Dian J. Thielitz_
(Signature of Secretary or Assistant Secretary)
Dian J. Thielitz - Secretary
(Type or Print Name and Title)

The Firm of John Dickinson Schneider, Inc.
(Exact Name of Corporation at date of execution)

by _Michael C. Wirth_
(Signature of President or Vice President)
Michael C. Wirth - President
(Type or Print Name and Title)

7. If amendment is authorized pursuant to Section 10.10 by the incorporators, the incorporators must sign below, and type or print name and title.

OR

If amendment is authorized by the directors pursuant to Section 10.10 and there are no officers, then a majority of the directors or such directors as may be designated by the board, must sign below, and type or print name and title.

The undersigned affirms, under the penalties of perjury, that the facts stated herein are true.

Dated _____, _____
(Month & Day)    (Year)

_____    _____
_____    _____
_____    _____
_____    _____

Page 3

## NOTES and INSTRUCTIONS

NOTE 1:   State the true exact corporate name as it appears on the records of the office of the Secretary of State, BEFORE any amendments herein reported.

NOTE 2:   Incorporators are permitted to adopt amendments ONLY before any shares have been issued and before any directors have been named or elected.                                                                    (§ 10.10)

NOTE 3:   Directors may adopt amendments without shareholder approval in only seven instances, as follows:
   (a)   to remove the names and addresses of directors named in the articles of incorporation;
   (b)   to remove the name and address of the initial registered agent and registered office, provided a statement pursuant to § 5.10 is also filed;
   (c)   to increase, decrease, create or eliminate the par value of the shares of any class, so long as no class or series of shares is adversely affected.
   (d)   to split the issued whole shares and unissued authorized shares by multiplying them by a whole number, so long as no class or series is adversely affected thereby;
   (e)   to change the corporate name by substituting the word "corporation", "incorporated", "company", "limited", or the abbreviation "corp.", "inc.", "co.", or "ltd." for a similar word or abbreviation in the name, or by adding a geographical attribution to the name;
   (f)   to reduce the authorized shares of any class pursuant to a cancellation statement filed in accordance with § 9.05,
   (g)   to restate the articles of incorporation as currently amended.                                        (§ 10.15)

NOTE 4:   All amendments not adopted under § 10.10 or § 10.15 require (1) that the board of directors adopt a resolution setting forth the proposed amendment and (2) that the shareholders approve the amendment.

   Shareholder approval may be (1) by vote at a shareholders' meeting (either annual or special) or (2) by consent, in writing, without a meeting.

   To be adopted, the amendment must receive the affirmative vote or consent of the holders of at least 2/3 of the outstanding shares entitled to vote on the amendment (but if class voting applies, then also at least a 2/3 vote within each class is required).

   The articles of incorporation may supersede the 2/3 vote requirement by specifying any smaller or larger vote requirement not less than a majority of the outstanding shares entitled to vote and not less than a majority within each class when class voting applies.                                                                (§ 10.20)

NOTE 5:   When shareholder approval is by consent, all shareholders must be given notice of the proposed amendment at least 5 days before the consent is signed. If the amendment is adopted, shareholders who have not signed the consent must be promptly notified of the passage of the amendment.                              (§§ 7.10 & 10.20)

C-173.11                                                        Page 4

BCA 5.10/5.20 (Rev. Jul. 1984)

*Submit in Duplicate*

*Remit payment in Check or Money Order, payable to "Secretary of State".*

*DO NOT SEND CASH!*

**JIM EDGAR**
Secretary of State
State of Illinois

STATEMENT OF CHANGE OF REGISTERED AGENT
AND/OR
REGISTERED OFFICE

**FILED**   File #D3644-776-1

SEP 07 1988

SECRETARY OF STATE

This Space For Use By Secretary of State

Date

Filing Fee   $5.00

Clerk   E. M.

Pursuant to the provisions of "The Business Corporation Act of 1983", the undersigned corporation hereby submits the following statement.

1. The name of the corporation is ___The Firm of John Dickinson Schneider, Inc.___

2. The State or Country of incorporation is ___Illinois___

3. The name and address of its registered agent and its registered office as they appear on the records of the office of the Secretary of State (*Before Change*) are:

Registered Agent: Richard   T.   Zwirner
*First Name*   *Middle Name*   *Last Name*

Registered Office   3100 Prudential Plaza
*Number*   *Street*   *Suite No. (A P.O. Box alone is not acceptable)*
Chicago   60601   Cook
*City*   *Zip Code*   *County*

4. The name and address of its registered agent and its registered office shall be (*After All Changes Herein Reported*):

Registered Agent   Richard   T.   Zwirner
*First Name*   *Middle Name*   *Last Name*

Registered Office   One Prudential Plaza
130 E. Randolph Street, Suite 3800
*Number*   *Street*   *Suite No. (A P.O. Box alone is not acceptable)*
Chicago   60601   Cook   016
*City*   *Zip Code*   *County*

5. The address of the registered office and the address of the business office of the registered agent, as changed, will be identical.

6. The above change was authorized by: ("X" one box only)

a. ☐ By resolution duly adopted by the board of directors.   (Note 5)

b. ☒ By action of the registered agent.   (Note 6)

*(If authorized by the board of directors, sign here. See Note 5)*
The undersigned corporation has caused this statement to be signed by its duly authorized officers, each of whom affirm, under penalties of perjury, that the facts stated herein are true.

Dated _____, 19 _____

_____
*(Exact Name of Corporation)*

attested by _____   by: _____
*(Signature of Secretary or Assistant Secretary)*   *(Signature of President or vice president)*

_____   _____
*(Type or Print Name and Title)*   *(Type or Print Name and Title)*

*(If change of registered office by registered agent, sign here. See Note 6)*
The undersigned, under penalties of perjury, affirms that the facts stated herein are true.

Dated ___August 18___, 19 88

_____
*(Signature of Registered Agent of Record)*

## NOTES

1.  The registered office may, but need not be the same as the principal office of the corporation. However, the registered office and the office address of the registered agent must be the same.

2.  The registered office must include a street or road address, a post office box number alone is not acceptable.

3.  A corporation cannot act as its own registered agent.

4.  If the registered office is changed from one county to another, then the corporation must file with the recorder of deeds of the new county a certified copy of the articles of incorporation and a certified copy of the statement of change of registered office. Such certified copies may be obtained ONLY from the Secretary of State.

5.  Any change of *registered agent* must be by resolution adopted by the board of directors. This statement must then be signed by the President (or *vice-president*) and by the Secretary (or *an assistant secretary*).

6.  The registered agent may report a change of the *registered office* of the corporation for which he or she is registered agent. When the agent reports such a change, this statement must be signed by the registered agent.

Form BCA-5.10/5.20

File No. D3644-776-1

STATEMENT OF CHANGE OF REGISTERED AGENT AND/OR REGISTERED OFFICE

Filing Fee $5.00

SECRETARY OF STATE

SEP 07 1988

FILED

RETURN TO:

Corporation Department
Secretary of State
Springfield, Illinois 62756
Telephone 217 – 782-7808

C-136.4

STATE OF ILLINOIS
Office of the Secretary of State
I hereby certify that this is a true and
correct copy, consisting of *Fifty-Five*
pages, as taken from the original on file in
this office.

*Jesse White*

JESSE WHITE
SECRETARY OF STATE

DATE: December 21, 2004

BY:

**EXPEDITED**
SECRETARY OF STATE

DEC 21 2004

EXP. FEES ___50.00___
COPY FEES ___25.00___