# Item 5

# Defendants' Appendix Of Certain Documents Referred To In The Third Amended Complaints

# THE FIRM OF JOHN DICKINSON SCHNEIDER, INC.

## PREFERRED SHARE TRUST

### APRIL 21, 1999

# TABLE OF CONTENTS

ARTICLE FIRST--Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARTICLE SECOND--Trust Purpose and History . . . . . . . . . . . . . . . . . . . . . . . . 4

ARTICLE THIRD--Irrevocability of Trust Additions . . . . . . . . . . . . . . . . . . . . . 11

ARTICLE FOURTH--Perpetual Existence . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARTICLE FIFTH--Policies and Principles and Corporate Goals . . . . . . . . . . . . . . 13

ARTICLE SIXTH--Share Voting . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

ARTICLE SEVENTH--Trustee and Trustee Succession . . . . . . . . . . . . . . . . . . . . 28

ARTICLE EIGHTH--Miscellaneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## DECLARATION OF TRUST

WE, MICHAEL C. WINN, LORETTA L. STEMPINSKI, RICHARD T. ZWIRNER, ALAN F. HERBERT, JAMES J. McCORMACK, JAMES P. O'CONNOR, WILLIAM D. SAUERLAND, DENIS R. CHEVALEAU, JEROME A. SAXON and JAMES A. KARLOVSKY, this 21st day of April, 1999, make this Declaration of Trust (this "Instrument"). By acceptance of this Instrument, the trustee named in paragraph A of ARTICLE SEVENTH agrees to administer the trust created by this Instrument according to its terms.

## ARTICLE FIRST

As used in this Instrument, the following terms shall have the following meanings:

A.    The term "Grantors" refers to MICHAEL C. WINN ("WINN"), LORETTA L. STEMPINSKI ("STEMPINSKI"), RICHARD T. ZWIRNER ("ZWIRNER"), ALAN F. HERBERT ("HERBERT"), JAMES J. McCORMACK ("McCORMACK"), JAMES P. O'CONNOR ("O'CONNOR"), WILLIAM D. SAUERLAND ("SAUERLAND"), DENIS R. CHEVALEAU ("CHEVALEAU"), JEROME A. SAXON ("SAXON"), JAMES A. KARLOVSKY ("KARLOVSKY") and such other persons as may hereafter contribute property to the trust created by this Instrument as set forth in ARTICLE SECOND and EXHIBIT A hereto. The 10 individuals named in the preceding sentence are sometimes referred to collectively herein as the "initial Grantors".

B.    The term "Trust" refers to this Instrument and the trust hereby created, which shall be known as "THE FIRM OF JOHN DICKINSON SCHNEIDER, INC. PREFERRED SHARE TRUST APRIL 21, 1999."

C.    The term "Trustee" refers to the persons serving as trustees of the Trust in accordance with ARTICLE SEVENTH of this Instrument.

D.    The term "JDS Inc" shall mean The Firm of John Dickinson Schneider, Inc., an Illinois corporation.

E.    The term "Hollister" shall mean Hollister Incorporated, an Illinois corporation.

F.    References to "JDS Inc" or "Hollister" or both shall include any subsidiary or subsidiaries of either of them and shall include any corporation or corporations or other business entity or entities which may succeed to all or a substantial part of (1) the shares of, or (2) the assets and business of, JDS Inc or Hollister or both, if it becomes necessary or advisable for business reasons either to merge or consolidate or reorganize these two corporations or their subsidiaries or to transfer all or part of their assets to a new corporation or corporations or to another business entity or entities.

G.    The term "Shares" shall mean preferred shares, par value $0.01, of JDS Inc. The Trustee shall receive and hold under this Trust all shares or other ownership interests, and all rights to receive shares or other ownership interests, of any corporation or other form of business entity received on account of the ownership by the Trustee of Shares (whether by merger, consolidation, reorganization, transfer or otherwise), and the term "Shares" shall include any such shares or other ownership interests which may be received by the Trustee with respect to, in connection with, or in lieu of, all or any part of the preferred shares of JDS Inc.

-2-

H.    The words "principal" or "trust" when used in connection with any mandatory distribution of principal include income which has been collected but remains undistributed, income which is accrued but uncollected, and income which has been accumulated.

I.    Any trustee is "unwilling" to act when he gives written notice to the other trustees, if any, that he is unwilling to act.  Any trustee is "unable" to act when he (1) is deceased, (2) refuses to act, (3) resigns, (4) is adjudicated incompetent, (5) is removed by court order, or (6) is found unable to transact business as a fiduciary by all of the other trustees, with the written concurrence of two doctors familiar with his physical and mental condition.

J.    Whenever a "written notice", "written direction" or "written nomination" is required to be given to any person, the notice or other writing shall be deemed to have been delivered when (1) it is delivered in person, (2) it is sent by telefacsimile transmission with proof of receipt, (3) two business days have elapsed from the time it is sent by overnight delivery via a national courier service addressed to the person entitled to receive it at his last known residence address, or (4) a period of 10 days has elapsed from the time it is placed in the United States mail, registered or certified mail, addressed to the person entitled to receive it at his last known post office address.

K.    Where appropriate, words of the masculine gender include the feminine and neuter and words used in a plural or collective sense include the singular, and vice versa.

-3-

## ARTICLE SECOND

A.     The purpose of the initial Grantors in making this Declaration of Trust is stated here. However, neither the creation nor any provision of this Trust is conditioned or contingent upon the accuracy of the statements and interpretations made, or the fulfillment of the expectations expressed, in this paragraph. There follows a brief synopsis of the history of JDS Inc which bears on the initial Grantors' purpose in making this Declaration of Trust:

1.     JDS Inc and its predecessors ran a printing business from the 1920's until early 1973. John Dickinson Schneider ("Schneider") was one of the founders of that printing business, which was for most of those years a closely-held, family business. In the late 1940's and early 1950's, JDS Inc purchased the Franklin C. Hollister Company and began to manufacture and sell hospital products, beginning with birth certificates, footprinters and then identification bracelets.

2.     This business grew, prospered and diversified and ultimately was incorporated under the name Hollister Incorporated, which is and always has been a wholly owned subsidiary of JDS Inc. From the time JDS Inc purchased the Franklin C. Hollister Company until Schneider resigned as President of Hollister in April 1972, Schneider ran it in the manner of a sole proprietorship.

3.     In the early 1960's, Hollister began to manufacture and sell ostomy products. Since the early 1970's, ostomy products have been Hollister's principal line of products. In the late 1990's, ostomy products remain Hollister's principal product line, contributing a majority of both its sales and earnings.

-4-

4.    Winn became the President (principal officer) of Hollister in April 1977.

5.    Hollister's product line has been expanded significantly through internal development since the early 1970's. Hospital products have been added and other lines of medical devices have been developed, such as the incontinence products.

6.    Beginning in the mid 1980's, Hollister has also expanded its product line through external acquisition. Many of the acquisitions have been of smaller companies whose products were either in competition with or closely related to Hollister's products. A number of these acquisitions have been successful.

7.    Sales and earnings have grown steadily over the years. A significant factor in the growth of sales has been the establishment by Hollister of direct sales subsidiaries (in place of distributors) in western Europe and in other key industrialized countries.

8.    Hollister has grown to approximately 2,600 employees worldwide.

9.    Hollister's business is supervised, directed, managed and operated in accordance with a mission statement, a vision statement (of the principal officer), a set of strategic corporate objectives and a planning process. The planning process includes a ten-year strategic plan and a one-year business and financial plan.

10.    Winn has served as the principal officer of Hollister for 22 years and has announced his retirement in May 2001. Plans have been developed and are being implemented providing for continuity and succession in management and leadership of the company. Important first steps in those plans have been the (1) division of the

-5-

principal officer's duties between executive and operating responsibilities, (2) appointment of Winn to the position of Chairman (chief executive officer), (3) creation of the new position of President (chief operating officer), (4) recruitment and appointment of Herbert to the position of President, and (5) expansion of the Board of Directors of Hollister to include Herbert and Richard I. Fremgen.

11.    Schneider wanted in 1977 to maintain unequivocal control of JDS Inc and Hollister in his own hands and later in the hands of a small group whose motivation and intentions he trusted and in whose competency he believed. Schneider's goal was to continue JDS Inc and Hollister as independent companies in which the employees had the benefits of share ownership and control was concentrated in the hands of a few.

12.    Schneider thus determined that his own Shares would be administered in accordance with the terms of a trust instrument that would require his successor trustee to continue his commitment to various policies and principles intended to insure the continued independence of JDS Inc and ownership by its employees. The successor trustee was bound, as provided in the trust instrument known as the John D. Schneider Preferred Share Trust dated April 21, 1977 as amended  (the "John Schneider Trust"), to honor the policies and principles which he established for JDS Inc and Hollister and to vote and otherwise exercise the control represented by his Shares in accordance with those policies and principles.

13.    One of Schneider's fundamental policies was to provide deserving employees of JDS Inc and later Hollister with an ownership interest in JDS Inc.  He

-6-

caused JDS Inc to sell its common shares to employees of JDS Inc and later Hollister for cash. Schneider's goal was to reward those who contribute the most to the success of the business by selling shares to them at current book value on which they could realize substantial gains at termination or retirement. The system he devised includes various transfer restrictions and repurchase provisions in the Restated Articles of Incorporation of JDS Inc ("Restated Articles") which in effect require that each shareholder of JDS Inc who terminates his employment with JDS Inc or Hollister must resell all his common shares to JDS Inc at their then current book value. In order that the repurchase of common shares from departing employees would not prohibit JDS Inc and Hollister from being able to carry on their business, the Restated Articles provide that each former shareholder receives payment for his common shares in the form of a subordinated promissory note of JDS Inc payable in quarterly installments of principal and interest over a period of years.

14. Winn, Stempinski and Zwirner became the successor trustee of the John Schneider Trust in the very early 1980s. The three have continued as the trustee since that time and, until May 1998, also served as the sole directors of JDS Inc and Hollister. There has thus been stability and continuity among the trustee and directors.

15. The John Schneider Trust will terminate on April 21, 2001.

16. In planning for the termination of the John Schneider Trust, Winn, Stempinski and Zwirner have discussed at length the future corporate control and governance of JDS Inc and Hollister. They have duly noted that JDS Inc and Hollister for decades have been controlled by a single shareholder, maintained as

-7-

independent and employee owned companies and governed, managed and operated in accordance with a set of policies and principles. These policies and principles were set out in writing by Schneider in 1977 in the John Schneider Trust. Winn, Stempinski and Zwirner, and many others, believe that this singular control, independence, employee ownership and adherence to the policies and principles have been of benefit to and in the best interests of the employees of Hollister who own common shares of JDS Inc, as well as to all of Hollister's employees.

17.     Winn, Stempinski and Zwirner further believe that this singular control, independence, employee ownership and adherence to the policies and principles will in the future continue to be of benefit to and in the best interests of the employees of Hollister who own common shares of JDS Inc, as well as to all employees, current and future, of JDS Inc and Hollister. They are joined in this belief by the other initial Grantors.

18.     Winn, Stempinski and Zwirner also believe that the universal practice of selling and repurchasing JDS Inc common shares at their book value is critical to the ability of JDS Inc and Hollister to continue as independent and employee owned companies. JDS Inc has without exception sold its common shares to employees at prices equal to their book value. In accordance with the Restated Articles, all repurchases of common shares from employees and the Hollister Employee Share Ownership Trust have been at prices equal to their book value. Pursuant to the directive set forth in the Hollister Employee Share Ownership Trust, all common

-8-

shares owned by the trust are valued once a year as of December 31 at their book value.

19.     In accordance with the terms of the John Schneider Trust, employees of Hollister who are common shareholders of JDS Inc on April 21, 2001 and who agree in writing to abide by the policies and principles set forth in the John Schneider Trust, will receive all the Shares held by the John Schneider Trust in proportion to their then holdings of common shares of JDS Inc. The trustee of the John Schneider Trust has determined that an otherwise eligible remainderman under that trust will be treated as having agreed in writing to abide by the policies and principles established by Schneider if he agrees to transfer such Shares to this Trust and thereby becomes a Grantor of this Trust. Alternatively, remaindermen under the John Schneider Trust have the option of holding directly their Shares subject to a written agreement (in form and content satisfactory to the trustee of the John Schneider Trust) to abide by the policies and principles of the John Schneider Trust.

20.     The initial Grantors wish to provide for the corporate control, independence, ownership and governance of JDS Inc and Hollister in the future through (1) continued concentration of the controlling Shares of JDS Inc, pursuant to this Trust, and (2) continued adherence to the policies and principles as set forth in this Trust.

B.     Each of the initial Grantors hereby transfers to the Trustee cash in the amount of $100. Each of the initial Grantors who is an employee of Hollister and who owns

-9-

common shares of JDS Inc on the date hereof hereby transfers to the Trustee all right, title and interest which he may have to receive a distribution of Shares from the John Schneider Trust, i.e., his entire contingent remainder interest in the Shares owned by the John Schneider Trust. Each of the subsequent Grantors listed in EXHIBIT A attached hereto hereby transfers to the Trustee either (1) his entire contingent remainder interest in Shares owned by the John Schneider Trust as of the date of grant set forth in EXHIBIT A, or (2) all of his Shares owned by him as of the date of grant set forth in EXHIBIT A.

C.    Each of the initial Grantors, by signing this Trust and transferring any cash and any contingent remainder interest in Shares:

1.    does so in reliance upon and in consideration for (a) the signing of this Trust and the transfer or transfers by each of the other Grantors, (b) the decision of each of the other Grantors who is an employee of Hollister and who owns common shares of JDS Inc, to forego his contingent right to receive and hold directly his portion of the Shares (subject to a written agreement) which would otherwise be distributable to him by the John Schneider Trust on April 21, 2001, and (c) the other promises, agreements and value set forth or inherent in the provisions of this Trust;

2.    agrees that any transfer to this Trust of his contingent remainder interest in Shares constitutes full and complete satisfaction of the requirement for distribution of Shares from the John Schneider Trust subject to continued adherence to the policies and principles therein;

-10-

3.    benefits, and intends to benefit, as a class, now and in the future, those employees of Hollister who have been sold and then own common shares of JDS Inc; and

4.    acknowledges and agrees that his transfers are irrevocable as provided in ARTICLE THIRD below, i.e. such transfers cannot in the future be amended, rescinded or otherwise changed in any way.

## ARTICLE THIRD

A.    At no time:

1.    May any Grantor alter, amend or revoke this Instrument in whole or in part.

2.    May any Grantor withdraw any contingent remainder interest or Shares or other property held by the Trustee.

B.    Any Grantor or any other person may add other property to this Trust by delivery, conveyance, bequest or by causing proceeds to be payable to the Trustee, if ownership of such property by the Trust is considered by the Trustee to be consistent with the purposes of the Trust and if such property is otherwise acceptable to the Trustee in its sole discretion.

-11-

## ARTICLE FOURTH

The Trustee shall administer the Trust as a qualified perpetual trust as defined in the Illinois Statute Concerning Perpetuities, 765 ILCS 305/3, as follows:

A.    As permitted by 765 ILCS 305/4 the Rule Against Perpetuities shall not apply to the Trust and the Trustee shall have the power to sell, lease or mortgage property of the Trust, subject to the provisions of ARTICLE SIXTH, for any period of time beyond the period of the Rule Against Perpetuities.

B.    Subject to paragraph G of ARTICLE FIFTH and to paragraph E below, the Trustee in its sole discretion shall retain the Shares and may acquire any other shares or other voting securities of JDS Inc, regardless of any standard of diversification or prudence otherwise applicable.

C.    Subject to paragraph D below, the beneficiaries of this Trust at any point in time are those employees of Hollister who then own directly common shares of JDS Inc.

D.    Except at the time of termination of the Trust as provided in paragraph E below, the Trustee in its sole discretion may, at any time or times when the value of the Trust (excluding shares and any other voting securities of JDS Inc) exceeds $2,500,000, pay any net income, other than net income received in the form of shares or other voting securities of JDS Inc, for such exclusively charitable, educational, religious or scientific purposes as the Trustee selects, including distribution to The John D. and Minnie R. Schneider Charitable Trust. As permitted by the Illinois Trust Accumulation Act, 765 ILCS 315/1, the Trustee of this qualified perpetual trust may accumulate income beyond the period of the Rule Against Perpetuities. The Trust is not intended to constitute and shall not be a

-12-

charitable trust as described in Section 501(c) of the Internal Revenue Code of 1986 as amended or under the law of the State of Illinois.

E.    While it is intended that the Trust shall continue its existence in perpetuity, in the event that the Trustee ever determines it is necessary to terminate the Trust in accordance with subparagraph G 2 of ARTICLE FIFTH, the Trustee shall submit the Shares and any other shares and any other voting securities of JDS Inc for redemption, if required to do so. Thereafter, the Trustee shall distribute the proceeds, and any other property constituting the Trust, to those employees of Hollister who then hold directly common shares of JDS Inc in proportion to their respective holdings of such common shares.

ARTICLE FIFTH

A.    Subject to paragraph G below, the Trustee shall vote and otherwise deal with all Shares and any other shares or other voting securities of JDS Inc in order to further the following policies and principles:

1.    Except for the Shares and any other shares or other voting securities held by the Trust, JDS Inc and Hollister shall be continued as corporations in which the entire equity interest (presently the common shares of JDS Inc) is owned directly or indirectly by employees of one or both of these corporations and their subsidiaries (this principle is herein referred to as "employee share ownership"). This employee share ownership shall be a combination of both direct and indirect ownership and should include, but shall not be limited to, the following:

-13-

a.      JDS Inc should continue to sell its common shares to the employees of JDS Inc, Hollister and any subsidiary thereof.  Sales to employees may be made directly to them or indirectly through a trust or other intermediary such as the present Hollister Foreign Employee Share Ownership Trust.   The selection of various employee-offerees and the determination of the number of shares of JDS Inc offered to each shall be made by the Board of Directors of JDS Inc after due consideration of the recommendations of the chief executive officer of Hollister.  With Hollister's present structure and operations, selected employees include management personnel and various technical, professional and scientific personnel, members of the field sales force, and marketing and research and development personnel.  Over time and with changes in the structure and operation of Hollister, this description of who constitute selected employees of Hollister will of course change.  Basically, however, the term selected employees should include those whose positions involve substantial responsibility, supervision of other employees, or exercise of discretion.  For JDS Inc to sell common shares to selected employees as described above, JDS Inc or Hollister may be required to prepare and file a registration statement pursuant to the Securities Act of 1933 and applicable state blue sky laws and at some point in the future to register its common shares as a class of equity security pursuant to Section 12 of the Securities Exchange Act of 1934.

-14-

b.     Hollister should continue to maintain an employee share ownership plan or plans such as the present Hollister Employee Share Ownership Trust.  The benefits of indirect employee share ownership should in these or comparable ways be extended to as many employees of Hollister as possible excluding only, to the extent lawful, union employees.

c.     The Trust shall continue to own the Shares and may own other shares and any other voting securities of JDS Inc so as to continue to vote them in order to accomplish the purposes of this Trust.

2.     JDS Inc and Hollister shall continue their conservative financial and investment policies.  JDS Inc and Hollister should continue to retain sufficient earnings to provide the funds necessary for capital development.  JDS Inc and Hollister have consciously followed this form of capital development as opposed to borrowing money or using other sources of outside financing such as mortgages, bank borrowings and public offerings of stock or other securities.  Presently JDS Inc's primary long term debt is comprised of the subordinated promissory notes held by former employee-shareholders of its common shares.

One of the purposes of conservative financial and investment policies is to insure that JDS and Hollister do not make such financial commitments or other extensions of their resources or credit as would require them to seek financing from sources outside JDS Inc and Hollister (such as mortgages, bank borrowings or sales of securities) which would or could ultimately lead to a violation of the principle of employee share ownership.

-15-

3.      Growth in sales and expansion of operations should result primarily from the successful marketing of Hollister's existing products and related new products and from the natural expansion during the foreseeable future of the markets for those products.  Growth should not at any time be a goal in and of itself and should not be permitted to jeopardize efficient operations or continued application of the principles of employee share ownership and conservative financial and investment policies.

4.      Investments in plant and other assets, including acquisitions, in countries outside the United States should be approached on a cautious and conservative basis.  Unsound investments in foreign countries could easily erode the corporations' financial resources and, as a result, investments should only be made when anticipated retained earnings exceed anticipated working capital and other foreseeable needs.

5.      The introduction of new and improved products and acquisitions of all kinds, including acquisitions of products, product ideas, intangibles with respect to potential products, and all other purchases of assets or business entities which may result in new or improved products, shall be judged by the following:

a.      Hollister shall at all times conscientiously develop to its optimum advantage the major markets for its existing products.

b.      New and improved products should ordinarily be logical extensions of the existing product line and otherwise compatible and consistent

-16-

with Hollister's then existing sales program, sales force, channels of distribution, manufacturing processes and manufacturing facilities.

c.    Hollister should continue to promote and develop new and improved products which are necessary or useful to people, such as its ostomy products, other medical devices and health care products. Extensions into other types of products should be approached on a cautious and conservative basis.

6.    The following general policies and philosophies should govern the operation of Hollister:

a.    Hollister products should always be of a very high quality. JDS Inc and Hollister have for years used the expression "Only first class is good enough." This expression is a reflection of the quality products, quality employees and quality sales approach which are at the heart of the financial success of Hollister.

b.    Hollister's directors and officers shall promote with all employees their personal identification with and commitment to the policies and principles specified in this paragraph A and shall retain and cause the retention as officers and managers of individuals who believe in the benefits of adherence to them, which are characteristics often associated with smaller businesses. Hollister should always hire competent employees and pay them commensurately. Hollister's directors and officers should constantly evaluate and re-evaluate the management personnel, weeding out where necessary

-17-

managers who do not display the competence and integrity associated with Hollister management.

        c.      Hollister's directors and officers should always be guided by the principle that Hollister is in business to provide quality service as well as products to its customers and to provide rewarding jobs with fair compensation to all of its employees, as well as financial gain of its employee-shareholders.

B.      The Trustee shall support a Mission Statement and a Vision Statement and Strategic Corporate Objectives of JDS Inc and Hollister which are consistent with the policies and principles specified in paragraph A. Hollister has adopted a Mission Statement and a set of Strategic Corporate Objectives and Winn has issued a Vision Statement which are, in the judgment of the Grantors and the initial Trustee, consistent with the policies and principles specified in paragraph A. The Trustee should support the present Mission and Vision Statements and present set of Strategic Corporate Objectives.

        1.      Hollister's present Mission Statement is as follows:

> In order to be successful, Hollister will rededicate itself to be a company which looks outward to the needs of the healthcare professionals and the people they serve.
>
> This rededication will be based on our Mission: to help healthcare professionals deliver better products and services, and to make life more rewarding and dignified for those who use our products.
>
> By listening to our customers and those they serve, we will gain a better understanding of the needs which we can best satisfy.
>
> This will lead us to improve present products and develop or acquire new and unique products, since all products inevitably face the cycle of growth, maturity and decline.

-18-

Our products and service will be of superior quality and backed by our policy of unconditional customer satisfaction.

We will work together by focusing on the process of filling these needs, through cooperation, effort and creativity.

We will form strong relationships with our suppliers and distributors, and with the communities in which we work.

We will judge behavior in every phase of our business by how it helps us better serve our customers.

We believe that the ethical way is the only way to conduct our business.

Hollister has the unique advantage of building on the solid foundation of "quality products, quality service, quality employees," a legacy of our founder, John Dickinson Schneider.

We are pledged to maintaining an independent company—employee-owned—and, to that end, will continue to manage our company as an internally financed and profitable business.

By living each day by our Mission, we will grow and prosper as a company and in the process, become better human beings.

2.     Winn's Vision Statement is as follows:

My vision is based on the assumption that we have "lived" our Mission Statement - our Purpose - and have achieved our strategic business objectives.

Our business purpose is to serve our customers and the community as a whole. We will serve them with products that are innovative and more efficacious than those offered by our competitors. Quality is delivery of increasingly higher levels of service to our customers.

Hollister will continue to be in the healthcare industry developing, manufacturing and selling medical products. But that is not our business. Our business is to serve customers, both inside and outside. Developing, manufacturing and selling medical products are the activities we engage in in order to serve.

The Hollister of the future will be larger and more complex than it is today. But the big difference between Hollister today and the one in the Vision will be the associates and how we interact.

Hollister will be more personal as a working environment because all associates will be serving one another in a way that creates a sense of community similar to the sense of family that existed when our founder, John Dickinson Schneider, was running a smaller company.

We want our associates to look upon their work not as an occupation, but a vocation...not a necessary chore for making a living, but an opportunity for personal development and fulfillment.

Hollister associates will be viewed as unique individuals with dignity and intrinsic value, independent of the work they do. They will be united in a common cause, each contributing his or her indispensable work, well done, so that the individual efforts add up to a collective world-class result.

We do not exist to make a profit. This is not an end, but a means by which we can continue as a strong, independently owned company.

The Hollister of the future is a community of persons who in various ways are endeavoring to satisfy their own needs and who form a particular group at the service of the whole of society.

3.    Hollister's present Strategic Corporate Objectives are as follows:

    (1)    To define, implement and develop fully a "market needs"

company;

    (2)    To regain the leading market share position in ostomy markets

worldwide;

    (3)    To develop two non-ostomy businesses each comprising at least

30% of total company sales; and

    (4)    To focus business development and acquisitions on global,

strategically planned growth strategies.

-20-

The present Mission and Vision Statements and present set of Strategic Corporate Objectives will change over time. The Trustee shall review any change and insure that any Mission Statement, Vision Statement and Strategic Corporate Objectives as amended continue to be consistent with the policies and principles specified in paragraph A.

C.    The Trustee shall exercise its best judgment to select suitable directors for JDS Inc and Hollister. Subject to the foregoing and subject to any provision of the Illinois Business Corporation Act or other applicable law, beginning June 1, 2001 the Trustee shall vote and otherwise deal with all shares of JDS Inc in such manner as to (1) maintain the number of directors of JDS Inc and Hollister at five or the smallest number in excess of five which the Trustee after due consideration deems consistent with the proper operation of such boards; (2) insure to the extent possible that at all times trustees of the Trust are also serving as directors of JDS Inc and Hollister and that those trustees serving as directors together constitute only a minority of each such board; (3) insure to the extent possible that at all times a majority of each such board are disinterested directors, as defined below; (4) insure to the extent possible that at all times those trustees serving as directors and such other persons as the Trustee may designate in writing as its nominees for directors shall together constitute at least a majority of each such board; and (5) elect the chief executive officer of Hollister as a director of JDS Inc and Hollister if not already so serving by virtue of being a trustee of the Trust or a Trustee's nominee. A disinterested director is one who is neither (1) an officer, manager, employee, consultant or otherwise similarly compensated by JDS Inc or Hollister, nor (2) a shareholder, director, officer, manager, employee, consultant or otherwise affiliated with any business or entity providing goods or services to JDS Inc or

-21-

Hollister (such as a customer, supplier or law or auditing firm). A director who is paid a fee for serving as a director or who owns common shares of JDS Inc because of being a director, or both, shall not be considered a non-disinterested director solely by virtue of receiving such fee or owning such common shares or both. If at any time a majority of a board are not disinterested directors, the situation shall be rectified as follows: either (1) one or more disinterested directors shall be elected or appointed to fill any one or more vacancies, or (2) one or more of the non-disinterested directors shall, at the request of the disinterested directors, resign, and disinterested directors shall be elected or appointed to the one or more vacancies so created.

D.      The Trustee shall use its best efforts to cause JDS Inc to continue to sell and repurchase its common shares only at prices equal to their book value. The Trustee shall seek to insure that JDS Inc and Hollister resist any attempt by the United States Department of Labor, the Internal Revenue Service or any other governmental or quasi-governmental body or entity, by any shareholder or employee of JDS Inc or Hollister, or by any other person or entity, to require that either (1) JDS Inc sell or repurchase its common shares at any price in excess of (or less than) their book value, or (2) JDS Inc common shares be valued for purposes of the Hollister Employee Share Ownership Trust or for any other purpose in excess of (or less than) their book value. If JDS Inc or Hollister is required by court order to sell or repurchase or value JDS Inc common shares at an amount in excess of (or less than) their book value, then, in such event, (1) the Trustee may seek to cause JDS Inc or Hollister either to continue to contest or to accede to the requirements of such court order, and (2) to the maximum extent permissible under law, no person who is a trustee of

-22-

this Trust or who is a director of JDS Inc or Hollister shall directly or indirectly receive or share in any windfall or other financial benefit which may result from such change.

E.   The Trustee shall use its best efforts to require that no natural person shall own directly and indirectly (excluding, however, indirect ownership through a non-discriminatory tax-qualified retirement plan sponsored by JDS Inc or Hollister such as the Hollister Employee Share Ownership Trust) more than 10% of the outstanding common shares of JDS Inc. The Trustee shall use its best efforts to maintain a mechanism in the Restated Articles requiring that, as to any natural person who may come to own more than 10% of the common shares at any time during a calendar year, JDS Inc shall repurchase as of year-end from such person such number of common shares as are necessary to reduce the ownership of such person below 10% of the then outstanding common shares.

F.   While the Trustee shall use its best efforts to retain the Shares, the Trustee shall in no event sell or otherwise transfer any Shares for more (or less) than $0.01 per share. The Trustee shall cause JDS Inc to (1) subject any attempted transfer of all or any part of the Shares to the transfer restrictions and repurchase provisions set forth in the Restated Articles, and (2) treat as null and void any attempted transfer of all or any part of the Shares at any price other than $.01 per Share.

G.   Notwithstanding anything to the contrary in paragraphs A, D and E above:

1.   The Trustee may deviate from one or more of the policies and principles specified in paragraph A only if the Trustee, after thorough, deliberate and careful consideration and discussion, and by the affirmative vote of five trustees, determines that such a deviation is essential in order to (a) preserve the financial

-23-

stability and soundness of JDS Inc and Hollister, (b) continue the manufacture and distribution of high quality healthcare and other products or (c) compete in the marketplace occupied by their principal competitors. In the event that the Trustee makes the necessary determination and permits deviation from one or more of the policies and principles specified in paragraph A, then (a) the Trustee may also deviate from the requirements of either or both of paragraphs D and E above, and (b) this Trust and the Trustee's obligations hereunder shall otherwise continue in accordance with the provisions of this Trust.

2.      While it is intended that this Trust shall be administered conservatively so as to continue in existence in perpetuity, the Trustee shall exercise its best judgment and use its best efforts to cause the sale of all shares or all assets of, or the liquidation or dissolution of, JDS Inc and Hollister in the event the Trustee, after thorough, deliberate and careful consideration and discussion, and by the affirmative vote of five trustees, determines that such corporations have become incapable of continuing in accordance with the provisions of this Trust as independent companies competing in the marketplace occupied by their principal competitors. In the event that the Trustee makes the necessary determination and causes such sale, liquidation or dissolution, the property then constituting the Trust shall be distributed in accordance with paragraph E of ARTICLE FOURTH and, thereafter, this Trust and the Trustee's obligations hereunder shall terminate.

-24-

## ARTICLE SIXTH

Except as otherwise provided in this Trust, the Trustee, in addition to any other powers granted by law, shall have the following discretionary powers:

A.     To vote, in person or by proxy, or to refrain from voting, any shares of JDS Inc and any other corporate shares or securities and any limited liability company ownership interests or any other ownership interests in any other business entity; to consent or object to action or non-action of a corporation, limited liability company or other business entity or of the board of directors, board of managers or trustees thereof, which issued or guaranteed any such shares or securities or ownership interests; to consent or object to, or to unite with other owners of shares or securities or ownership interests to carry out, a plan for the reorganization of any such corporation, limited liability company or other business entity, including any consolidation, merger, dissolution, liquidation, readjustment of the capital or financial structure of such corporation, or any lease, sale or foreclosure of any of its properties, rights, privileges or franchises; in connection with any such reorganization, to deposit any such shares or securities with any committee, representative, agent, depositary or trustee; to pay fees, assessments and expenses with respect to any such reorganization; to exchange any such shares or securities for new or additional shares or securities or other property, issued or deliverable in connection with any such reorganization or otherwise; to exercise or sell any rights to subscribe to any new or additional shares or securities issued in connection with any such reorganization or otherwise; and to accept and to retain as a proper investment hereunder, whether or not authorized by law for the investment of trust funds, any new or additional shares or securities or other property received upon any such exchange

-25-

or upon the exercise of any such subscription rights; and, generally, to take any action with respect to any shares or securities which may be necessary or appropriate for the proper and advantageous management and preservation of the Trust.

B.      To vote any shares of JDS Inc or Hollister in favor of any one or more of the trustees of the Trust as directors of either corporation; to vote in favor of, and for reasonable compensation and increases in compensation to, any of the trustees.

C.      To accept any property, the ownership of which is consistent with the purposes of the Trust, and add it to the Trust; to retain any property for such time as the Trustee deems appropriate; and to reject any property;

D.      To invest and reinvest Trust assets in any kind of property or undivided interests therein which is permitted by the Illinois Prudent Investor's Rule or any other applicable law.

E.      To continue Trust assets invested in any property received or acquired by the Trustee without obligation to sell all or any part thereof because not of a type or quality or constituting a diversification considered proper or wise for trust investments.

F.      To sell any property, for cash or on credit, at public or private sale, to exchange any property for other property, and to grant options to purchase, all at fair market value.

G.      To establish one or more trusts or subtrusts for the purpose of owning or managing specific assets included in the corpus of the Trust.

H.      To hold any asset in the name of a nominee, in bearer form or otherwise, with or without the disclosure of any fiduciary relationship.

-26-

I.       To insure any property, the title thereto, the Trustee or any person having an interest in or responsibility for the care, management or repair of any property, against such risks (including personal liability) as the Trustee deems appropriate.

J.       To take any reasonable action to conserve or to realize upon the value of any property; to collect, pay, contest, compromise or abandon claims of any kind for or against the Trust, wherever situated; and to execute contracts, notes, conveyances and other instruments, including instruments containing covenants and warranties binding upon and creating a charge against any assets or excluding personal liability of the Trustee.

K.       To institute and prosecute, or to defend, any action to administer, interpret, construe or enforce any provision of this Trust; or to defend any action to contest the validity of this Trust or any provision hereof.

L.       To make distributions and divisions of property in cash or in kind on the basis of fair market values at the time of distribution or division; and in so doing, to allot undivided interests in property and to allocate different kinds or disproportionate shares of property or interests therein.

M.       To make payments and distributions; to accept from any person receipts, releases and acceptances of accounts without the approval of any court; to allocate receipts and expenses to income or principal consistent with the Illinois Income and Principal Act, or any other applicable law, and this Trust.

N.       To pay all reasonable expenses of administration, including reasonable compensation to persons employed by the Trustee.

O.    To enter into any transaction authorized by this Trust with any trustee or trustees of this Trust, or in which any trustee has an interest, if approved by all other trustees of this Trust.

P.    To borrow money, and to mortgage or pledge any property, other than shares of JDS Inc and Hollister.

Q.    To move the situs of the Trust from the State of Illinois to another jurisdiction if such jurisdiction recognizes the validity of perpetual trusts such as this Trust.

R.    To administer, interpret and construe in its sole discretion the provisions of this Trust consistent with the policies and principles and other provisions set forth in ARTICLE FIFTH.

## ARTICLE SEVENTH

A.    The Trustee shall consist of five persons. The initial Grantors hereby appoint WINN, STEMPINSKI, ZWIRNER, HERBERT and DONNA J. MATSON (CARPENTER) as initial Trustee of the Trust.

B.    Beginning June 1, 2001, there shall at all times to the extent possible be a majority of the trustees who are disinterested persons. For purposes of this Trust, a disinterested person shall be defined exclusively as set forth in this Trust and not as set forth in the Illinois Business Corporation Act. A disinterested person is one who is neither (1) a director, officer, manager, employee, consultant or otherwise similarly compensated by JDS Inc or Hollister, nor (2) a shareholder, director, officer, manager, employee, consultant or otherwise affiliated with any business or entity providing goods or services to JDS Inc or

-28-

Hollister (such as a customer, supplier or law or auditing firm). A retiree of JDS Inc or Hollister receiving benefits or the proceeds of benefits earned while an employee shall not be considered a non-disinterested person solely by virtue of receiving such benefits or proceeds. If at any time a majority of the trustees are not disinterested persons, the situation shall be rectified as follows: either (1) one or more disinterested persons shall be appointed to fill any vacancy or vacancies, or (2) one or more of the non-disinterested persons serving as trustees shall, at the request of the disinterested persons serving as trustees, resign, and disinterested persons shall be appointed to the vacancy or vacancies so created. If a trustee whose resignation is requested shall refuse to resign, the disinterested persons serving as trustees and the refusing trustee shall meet and explain fully to each other their positions and the reasons for them. Thereafter, the disinterested persons serving as trustees shall, if they are not satisfied with the explanation of the refusing trustee as to why the refusing trustee is a disinterested person, remove the refusing trustee, and a disinterested person shall be appointed to the vacancy so created.

C.    Subject to paragraph B, if any trustee is or becomes unwilling or unable to act as a trustee, then the other trustee or trustees then acting shall, within 60 days of the determination that a vacancy exists, in their sole discretion, select and appoint the number of additional trustees required to keep the number at five. The appointment of any trustee shall be made only after thorough, deliberate and careful consideration and discussion by the remaining trustees. Any trustee appointed shall have such experience, such knowledge of JDS Inc and Hollister and such judgment, integrity, independence and other personal qualities as would make him effective in insuring continued adherence to the policies and

principles and other provisions set forth in ARTICLE FIFTH of this Trust.  The trustees appointing any other trustee shall give due consideration to persons who have retired and whose last employment was with JDS Inc or Hollister.  If the trustees filling a vacancy are unable to agree on who should be appointed, those trustees who are disinterested persons shall determine who is appointed.

D.      All trustees shall be natural persons.

E.      Any trustee who is an employee of JDS Inc or Hollister and whose employment terminates for any reason other than retirement shall be deemed, immediately upon such termination, to have resigned as a trustee of this Trust, and a person shall be appointed to the vacancy so created.

F.      If at any time all trustees become unwilling or unable to act, subject to paragraph B, successor trustees shall be selected and appointed as soon as convenient in the following manner:  The Board of Directors of JDS Inc shall select and appoint within 60 days two trustees, who may be non-disinterested persons.  Those two trustees shall petition the Chancery Division of the Circuit Court of Cook County, Illinois to select and appoint, or to supervise the selection and appointment of, two trustees who are disinterested persons.  The four trustees shall thereafter select and appoint the fifth trustee.

G.      No surety or other security shall be required on any bond furnished by the Trustee in any jurisdiction for any purpose.

H.      The Trustee shall act by the majority vote of the trustees in office, except where this Trust requires the approval or vote of five trustees or of the disinterested persons serving as trustees, in which case the approval or vote of five trustees or of the disinterested

-30-

persons serving as trustees, as the case may be, shall be required in order for the Trustee to act. Subject to the preceding sentence, if at any time after one or more of the trustees becomes or become unwilling or unable to act: (1) if only two, three or four trustees are acting, the trustees then acting shall have all of the powers of the trustees hereunder until five trustees are appointed, and (2) if only one trustee is acting, that trustee shall not have any of the powers of the Trustee hereunder until a second trustee is appointed except the power to appoint an additional trustee in accordance with paragraphs B and C above.

I.      Any trustee, by written notice to the other trustees, may delegate to the other trustees the power to sign and endorse checks and to execute other documents. In case of any such delegation any third person may, without liability, rely on the written certification of the trustees that the trustees have the power to act without the signature of the delegating trustee.

J.      Subject to paragraph B, any of the trustees, with the actual knowledge of the other trustees, may act as a director, officer, counsel, auditor or consultant of JDS Inc or Hollister or both and he or any firm of which he may be a member, or any corporation of which he may be a shareholder, director or officer, may contract with JDS Inc or Hollister or both, or be financially interested in any transaction to which JDS Inc or Hollister may be a party, or in which either such corporation may be in any way interested, as fully as though he were not a trustee.

K.      The Trustee shall use its best efforts to cause JDS Inc and Hollister to inform the trustees in writing from time to time with respect to the business, affairs and operations of JDS Inc and Hollister, including the provision of such financial statements, budgets,

-31-

forecasts, plans and other documents of JDS Inc and Hollister as the Trustee deems necessary or proper. The Trustee shall use its best efforts to cause the chief executive officer of Hollister to provide all such information in a timely manner.

The Trustee shall meet in person at least once each calendar quarter to review such information and the structure and operations of JDS Inc and Hollister generally for compliance with the policies and principles and other provisions set forth in ARTICLE FIFTH and with any other applicable provisions of this Trust. Meetings shall be held at the principal office of JDS Inc or Hollister unless otherwise agreed by the Trustee. Generally, each trustee shall prepare for, attend and participate in meetings of the Trustee.

To the extent permitted by law, each trustee shall, as a member of the Trustee, have the rights of a shareholder to examine all of the books, records, accounts and other documents of JDS Inc and Hollister and to copy any such documents which such trustee in his sole discretion deems appropriate.

L.     When the Trustee shall take any action or exercise any discretionary power, any non-participating trustee shall not be liable to any person on account of such action or exercise.

M.     Any successor trustee shall, without any conveyance, transfer or order of court, have all of the right and title of the predecessor trustee to the Trust property and all of the rights, powers and discretion of such predecessor. Any person or corporation dealing with any successor may, without liability and without inquiring into the terms of this Trust, rely upon the written certification of the Trustee that the new trustee has become a successor trustee and has the power to act as stated in the written certification.

N.    No successor trustee shall have any responsibility to inquire into the acts of any predecessor trustee, nor shall any successor trustee be liable for any act, default, error or omission of any predecessor trustee.

O.    Except as otherwise provided by law, the Trustee's exercise or non-exercise of its powers and discretion in good faith shall be conclusive on all persons. No person paying money or delivering any property to the Trustee need see to its application, and no person dealing with the Trustee shall be obligated to inquire into the necessity or expediency of any act of the Trustee. The certificate of the Trustee that it is acting according to this Trust will protect fully all persons dealing with the Trustee.

P.    The Trustee shall determine and pay to each trustee reasonable compensation. No person shall receive cash compensation for serving as a trustee if he is receiving for the same period of time cash compensation for serving as a director of JDS Inc or Hollister or both. No trustee shall own (other than as Trustee under this Trust) any common shares or other equity interest in JDS Inc or Hollister except that any trustee who is also a director or officer or employee of JDS Inc or Hollister may, if he otherwise meets the qualifications for ownership generally applicable to such directors or officers or employees, own directly and indirectly common shares or other equity interests in JDS Inc or Hollister. Each trustee shall be reimbursed for all reasonable expenses, including air fare or other transportation charges and lodging, incurred in attending any meeting of the Trustee. Any trustee may waive his right to receive compensation from the Trust.

Q.    To the extent permitted by law:

-33-

1.      No person serving as a trustee shall be personally liable for any act done or omitted to be done in good faith by the Trustee in the administration, interpretation, construction or enforcement of the Trust.

2.      Each person serving or formerly serving as a trustee shall be indemnified by the Trust, to the extent not indemnified by any liability insurance or other indemnification agreement with respect to the Trust, with respect to any liability, judgment, fine, settlement and expense to which the Trustee or a trustee or former trustee shall be subjected by reason of its or his good faith action or omission in the administration, interpretation, construction or enforcement of the Trust, and the Trust shall advance promptly to each person serving or formerly serving as a trustee payment for his expenses, as incurred, in connection with any threatened or actual legal proceeding relating to any action or omission as a trustee of the Trust.

R.      The Trustee may purchase liability insurance for the Trustee and each person serving as a trustee of this Trust and for the Trustee's agents.

S.      The Trustee shall provide an annual written financial accounting of the Trust to those employees of Hollister who then own directly common shares of JDS Inc. Employees owning directly a majority of such common shares, without liability to others, may approve any account of the Trustee and release the Trustee from liability for all matters covered by the account, which release shall bind all persons having any past, present or future interest in the Trust.  Each statement of account shall be deemed approved and the Trustee shall be deemed released by all persons having any past, present or future interest in the matters covered by the account unless objections to the account are filed with the Trustee

-34-

within one year after the account is provided to such common shareholders as are entitled to receive it. Before distribution of any Trust principal, the Trustee shall have the right to require settlement of any open accounts of the Trust, either by the written agreement and release of all persons or entities having any interest in the distribution or, if releases cannot be obtained, by court settlement of the open accounts. All of the Trustee's fees and expenses, including attorneys' fees, attributable to court approval of the Trustee's accounts shall be paid by the Trust.

## ARTICLE EIGHTH

A.    The term "disinterested director" is defined in paragraph C of ARTICLE FIFTH above and a trustee who is a "disinterested person" is defined in paragraph B of ARTICLE SEVENTH above. Pursuant to those definitions, a person may not be a "disinterested director" or a "disinterested person" if he is "a shareholder" of a business or entity "providing goods or services to JDS Inc or Hollister (such as a customer, supplier or law or auditing firm)." Notwithstanding those definitions, a person shall not be considered "a shareholder" of a business or entity "providing goods or services to JDS Inc or Hollister (such as a customer, supplier or law or auditing firm)" if such business or entity has a class or classes of equity securities which are publicly held and if such person owns 1% or less of any such class of equity securities or, with the approval of all of the trustees, more than 1% but less than 5% of any such class of equity securities.

B.    Notwithstanding any other provision of this Trust including paragraph C of ARTICLE SECOND, this Trust and each provision hereof, and any consent or proxy or

-35-

other document executed in connection herewith, are subject to the condition precedent that any and all action recommended by the Board of Directors of JDS Inc in connection with implementation of the Trust is approved at the 1999 annual meeting of shareholders of JDS Inc. Neither this Trust nor any provision hereof, nor any consent or proxy or other document executed in connection herewith, shall be binding upon any Grantor if such action is not approved.

C.     The validity and provisions of this Trust shall be governed by and shall be administered, interpreted and construed in accordance with the laws of the State of Illinois, excluding its choice of law rules.  In the event of any litigation arising out of, in connection with or in any way related to this Trust, such litigation may be commenced only in and submitted only to the jurisdiction of the Chancery Division of the Circuit Court of Cook County, Illinois.  If any one or more of the provisions of this Trust, including any of the policies and principles and other provisions of ARTICLE FIFTH, is or are declared invalid or unenforceable by a court, then the Trust shall continue and the remaining provisions shall be administered, interpreted and construed by the Trustee so as to continue and further the purposes of this Trust.

GRANTORS:

_____
Michael C. Winn

_____
Loretta L. Stempinski

_____
Richard T. Zwirner

_____
Alan F. Herbert

_____
James J. McCormack

_____
James P. O'Connor

_____
William D. Sauerland

_____
Denis R. Chevaleau

_____
Jerome A. Saxon

_____
James A. Karlovsky

Accepted by the TRUSTEES:

_____
Michael C. Winn, Trustee

_____
Loretta L. Stempinski, Trustee

_____
Richard T. Zwirner, Trustee

_____
Alan F. Herbert, Trustee

_____
Donna J. Matson, Trustee

Witnessed by:

_____

_____

The Firm of John Dickinson Schneider, Inc., an Illinois corporation (the "Corporation"), acknowledges (1) the existence of the Declaration of Trust known as THE FIRM OF JOHN DICKINSON SCHNEIDER, INC. PREFERRED SHARE TRUST APRIL 21, 1999, (2) the provisions of such TRUST, and (3) the TRUST's status as a future shareholder of the Corporation effective April 21, 2001.

The Firm of John Dickinson Schneider, Inc.

By: _____
     Michael C. Winn, President

Date:  April 30, 1999

-38-

## EXHIBIT A

## SUBSEQUENT GRANTORS AND PROPERTY TRANSFERRED TO
## THE FIRM OF JOHN DICKINSON SCHNEIDER, INC.
## PREFERRED SHARE TRUST APRIL 21, 1999

| Name and Address of Grantor | Date of Grant | Property Transferred | |
|---|---|---|---|
| | | Contingent Remainder Interests in Preferred Shares of The Firm of John Dickinson Schneider, Inc., an Illinois corporation, owned by the John D. Schneider Preferred Share Trust dated April 21, 1977 as of the Date of Grant | Preferred Shares of The Firm of John Dickinson Schneider, Inc., an Illinois corporation, owned by the Grantor as of the Date of Grant |