1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

JAMES P. DeFAZIO, et al.,

NO. CIV. S-04-1358 WBS GGH

        Plaintiffs,

    v.                                MEMORANDUM AND ORDER RE:
                                      DEFENDANTS' MOTIONS TO
                                      DISMISS; DEFENDANTS' MOTION TO
                                      STRIKE; PLAINTIFFS' MOTION TO
                                      SET ASIDE JUDGMENT
HOLLISTER, INC.; et al.,

        Defendants.

----oo0oo----

        Currently before the court are seven separate motions
to dismiss this action by all or various defendants pursuant to
Federal Rules of Civil Procedure 8(a), 12(b)(1), and 12(b)(6), as
well as a motion to strike certain requests from plaintiffs'
third amended complaint pursuant to Federal Rule of Civil
Procedure 12(f).  Also pending is a motion by plaintiffs to set
aside judgment in favor of defendants Stempinski, Winn, and

1

Herbert by acts of fraud, misrepresentation, and misconduct.

I.    Factual and Procedural Background[1]

In these consolidated cases, plaintiffs James P. DeFazio, Kathleen Ellis, Brenda Dimaro, Hallie Lavick, Theresa Beetham, DeLane Humphries, Sonya Pace, Judy Seay, Nancy Russell Stanton, and Cindy Worth ("plaintiffs") allege that defendants Hollister, Inc., Hollister Employee Share Ownership Trust ("HolliShare" or the "Plan"), The Firm of John Dickinson Schneider, Inc. ("JDS"), Samuel Brilliant, Richard I. Fremgen, Donald K. Groneberg, Charles H. Gunderson, Alan F. Herbert, James A. Karlovsky, Lori Kelleher, James J. McCormack, Charles C. Schellentrager, Howard I. Simon, Loretta L. Stempinski, Michale C. Winn, and Richard T. Zwirner ("defendants") violated the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 et seq. (DeFazio Third Amended Complaint ("TAC"); Ellis TAC.)[2]

Plaintiffs are beneficiaries of HolliShare. (DeFazio TAC ¶ 1; Ellis TAC ¶ 1.) Defendants are the Plan, the entities that own or owned the voting shares of JDS stock, and the trustees of those entities. (DeFazio TAC ¶ 2; Ellis TAC ¶ 2.)

On February 23, 2005, Judge Karlton denied defendants'

---

[1]    The significant factual and procedural history of this case are described in greater detail in Judge Karlton's prior orders of April 12, 2006 and February 23, 2005. For the purposes of these motions, familiarity with those documents are assumed.

[2]    Except for Kathleen Ellis, all plaintiffs are represented by Lynn Hubbard and Scottlynn Hubbard. Both complaints contain similar, if not identical, allegations. Ellis alleges an additional cause of action for failure to comply with a valid qualified domestic relation order ("QDRO"). Accordingly, the court will refer to the third amended complaints as the DeFazio TAC and the Ellis TAC.

motion to transfer venue, but granted defendants' motions to
dismiss causes of actions related to certain ERISA prohibited
transactions and stock valuation because they were barred by the
statute of limitations. (February 23, 2005 Order.) Judge
Karlton also denied defendants' motion to dismiss DeFazio's QDRO
claims. On April 12, 2006, Judge Karlton found that (1)
plaintiffs stated a valid claim that defendants engaged in
prohibited ERISA transactions; (2) Ellis stated a valid QDRO
claim; (3) plaintiffs had standing to sue under ERISA; (4) the
"Settlor Doctrine" did not prohibit plaintiff's claims; (5) JDS
is a de facto fiduciary under the pleadings; (6) claims against
Stepinski were barred by the statute of limitations. (April 12,
2006 Order (Case Nos. 05-559 Docket No. 102).) Judge Karlton
deferred his ruling on defendants' motion to dismiss with respect
to defendants Winn and Herbert. (Id.) On June 27, 2007, Judge
Karlton held that plaintiffs did not comply with the court's
order to file a further opposition or concession of non-
opposition within the prescribed time and entered final judgment
dismissing Winn and Herbert pursuant to its April 12, 2006
opinion. (June 27, 2006 Order (Docket No. 111).)

        After being transferred from Judge Karlton to Judge
Levi and back to Judge Karlton, this case was transferred to the
undersigned on March 28, 2007. Pursuant to a stipulation order
of June 25, 2007, plaintiffs filed their TACs on June 29 and 30,
2007. The DeFazio complaint alleges twelve causes of action
under ERISA: (1) defendants allowed Plan assets to improperly
benefit the employer sponsor; (2) defendants violated fiduciary
duties to Plan participants and beneficiaries; (3) defendants

breached their duty of care; (4) defendants failed to diversify Plan investments and act prudently; (5) defendants violated the terms of the Plan; (6) defendants concealed breaches of fiduciary duty by their co-fiduciaries; (7) defendants failed to prevent breaches of fiduciary duties by their co-fiduciaries; (8) defendants failed to cure breaches of fiduciary duty by their co-fiduciaries; (9) defendants failed to use reasonable care; (10) defendants used an instrument to relieve themselves of their responsibilities under ERISA; (11) defendants engaged in prohibited transactions by selling Plan assets to JDS for inadequate consideration; and (12) defendants engaged in prohibited transactions by selling Plan assets to JDS for a promissory note.  Ellis does not join in DeFazio's fourth and eleventh causes of action, and adds a cause of action for failure to comply with a valid QDRO.[3] (Ellis TAC ¶¶ 96-102.)

On August 29, 2007, defendants filed seven motions to dismiss and a one motion to strike.  On September 12, 2007, plaintiffs filed a motion to set aside the judgments obtained in favor of defendants Winn, Stepinski, and Herbert, because of acts of fraud, misrepresentation, and concealment.  The court heard oral arguments on October 29, 2007.

II.  Discussion

A.  Motions to Dismiss

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable

---

[3]   DeFazio's QDRO claims appear in paragraphs 72 through 74 of his TAC.  It is not plead as a separate cause of action, but a part of his general breach of fiduciary duty claims.

inferences in favor of the pleader.  <u>Scheuer v. Rhodes</u>, 416 U.S.
232, 236 (1974); <u>Cruz v. Beto</u>, 405 U.S. 319, 322 (1972).  To
survive a motion to dismiss, a plaintiff needs to plead "only
enough facts to state a claim to relief that is plausible on its
face."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S. Ct. 1955, 1974 (2007).
Dismissal is appropriate, however, where the pleader fails to
state a claim supportable by a cognizable legal theory.
<u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.
1988).

        In general, the court may not consider material other
than the facts alleged in the complaint when deciding a motion to
dismiss.  <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996)
("A motion to dismiss . . . must be treated as a motion for
summary judgment . . . if either party . . . submits materials
outside the pleadings in support or opposition to the motion, and
if the district court relies on those materials.").  However, the
court may consider materials of which it may take judicial
notice, including matters of public record.  <u>Mir v. Little Co. of
Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir. 1988); Fed. R. Evid.
201(b) (defining the scope of judicial notice); <u>see also</u> <u>Mack v.
S. Bay Beer Distribs.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986)
(noting that reliance on matters of public record "does not
convert a Rule 12(b)(6) motion to one for summary judgment"),
<u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Astoria Fed. Sav. & Loan Ass'n v.
Solimino</u>, 501 U.S. 104 (1991).[4]

_____

        [4]   Defendants request the court take judicial notice of
several documents referenced in plaintiffs' TACs.  The court
takes judicial notice of all of these documents referenced in

1    Federal courts are courts of limited jurisdiction, only

2  authorized to adjudicate those cases which the Constitution and

3  Congress permit.  <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511

4  U.S. 375, 377 (1994).  "A federal court is presumed to lack

5  jurisdiction in a particular case unless the contrary

6  affirmatively appears."  <u>Stock W., Inc. v. Confederated Tribes of</u>

7  <u>the Colville Reservation</u>, 873 F.2d 1221, 1225 (9th Cir. 1989)

8  (citing <u>Cal. ex rel. Younger v. Andrus</u>, 608 F.2d 1247, 1249 (9th

9  Cir. 1979)).

10    When considering a motion to dismiss for lack of

11  subject matter jurisdiction, the district court may properly

12  review evidence outside the pleadings to resolve factual disputes

13  concerning the existence of jurisdiction.  <u>Land v. Dollar</u>, 330

14  U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District

15  Court's jurisdiction is raised, either by a party or by the court

16  on its own motion . . . the court may inquire, by affidavits or

17  otherwise, into the facts as they exist."); <u>see</u> <u>also</u> <u>Biotics</u>

18  <u>Research Corp. v. Heckler</u>, 710 F.2d 1375, 1379 (9th Cir. 1983)

19  (consideration of material outside of the pleadings does not

20  convert a Rule 12(b)(1) motion into a summary judgment motion).

21  However, when the district court does not hold an evidentiary

22  hearing, the factual allegations in the complaint should be

23  accepted as true.  <u>McLachlan v. Bell</u>, 261 F.3d 908, 909 (9th Cir.

24  2001).

25  _____

26  Docket No. 241.  <u>Branch v. Tunnel</u>, 14 F.3d 449, 454 (9th Cir.
    1994), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u>, <u>Galbraith v. County of Santa</u>
27  <u>Clara</u>, 307 F.3d 1119 (9th Cir. 2002) (Courts may properly review
    "documents whose contents are alleged in the complaint and whose
28  authenticity no party questions, but which are not physically
    attached to the plaintiff's pleading.").

1    Defendants' move to dismiss for the second time in this

2  case.  Since defendants also brought a motion to dismiss in the

3  related cases, Case Nos. 05-559 and 05-1726, it is really their

4  third.  In addition to challenging claims made in plaintiffs' TAC

5  that were not in the original complaint, defendants' motions

6  reprise arguments Judge Karlton rejected in the previous motions

7  to dismiss.  The court will first consider issues previously

8  decided by Judge Karlton before turning to the "new" claims in

9  the TAC.

10    "Under the law of the case doctrine, a court is

11  generally precluded from reconsidering an issue that has already

12  been decided by the same court, or a higher court in the

13  identical case."  United States v. Alexander, 106 F.3d 874, 876

14  (9th Cir. 1997) (citations and internal quotation marks omitted).

15  Courts have discretion to reconsider a previous ruling where "(1)

16  the first decision was clearly erroneous; (2) an intervening

17  change in the law has occurred; (3) the evidence on remand is

18  substantially different; (4) other changed circumstances exist;

19  or (5) a manifest injustice would otherwise result."  Id.; see

20  also LR 78-230(k).[5]

21    Defendants ask for reconsideration of Judge Karlton's

22  rulings that (1) plaintiffs have standing, (2) the settlor

23  doctrine does not bar plaintiffs' claims, (3) the merits of

24  

25    [5]    There are additional plaintiffs and defendants and
26  additional causes of action in the TAC compared to the original
   complaint.  However, for those causes of action that are
27  substantially the same and involve substantially the same
   allegations, the court applies the law of the case doctrine.
28  Defendants do not argue or provide adequate support that the
   court should disregard that doctrine here.

1  plaintiffs' inadequate compensation claim cannot be decided on a
2  motion to dismiss, (4) JDS is a <u>de facto</u> fiduciary, and (5) the
3  merits of DeFazio and Ellis's QDRO claims cannot be decided on a
4  motion to dismiss.  As discussed below, however, they have failed
5  to demonstrate that these rulings were clearly erroneous or that
6  there has been any relevant intervening change in law or fact.
7  Accordingly, the court must deny defendants' motions to dismiss
8  for lack of subject matter jurisdiction, pursuant to Federal Rule
9  of Civil Procedure 12(b)(1) (Docket No. 234); JDS's motion to
10 dismiss for failure to state a claim, pursuant to Federal Rule of
11 Civil Procedure 12(b)(6) (Docket No. 236); portions of
12 defendants' motion to dismiss for failure to state a claim upon
13 which relief may be granted, pursuant to Federal Rule of Civil
14 Procedure 12(b)(6) (Docket No. 233); and portions of Hollister's
15 motion to dismiss for failure to state a claim, pursuant to
16 Federal Rule of Civil Procedure 12(b)(6) (Docket No. 238).

17          1.  <u>ERISA Standing</u>

18          Defendants argue that plaintiffs lack standing to bring
19 this action because they are not Plan "participants" within the
20 meaning of ERISA.  In ruling on defendants' last motion to
21 dismiss, Judge Karlton held that plaintiffs have standing under
22 <u>Amalgamated Clothing</u> because they allege that defendants "us[ed]
23 the Plan for their benefit . . . as a personal holding company,
24 and as a billion dollar tax shelter." (April 12, 2006 Order 13.)

25          An ERISA retirement plan "participant" is "any employee
26 or former employee of an employer or any member or former member
27 of an employee organization, who is or may become eligible to
28 receive a benefit of any type from an employee benefit plan."  29

8

1  U.S.C. § 1002(7).  In <u>Kuntz v. Reese</u>, 785 F.2d 1410, 1411 (9th

2  Cir. 1986), the Ninth Circuit held that retirees who have

3  withdrawn their full account balance in a lump-sum payment are no

4  longer Plan "participants" under ERISA and lack standing to sue

5  for damages.  But in <u>Amalgamated Clothing v. Murdock</u>, 861 F.2d

6  1406, 1418 (9th Cir. 1988), the court created an exception to the

7  <u>Kuntz</u> rule for plaintiffs who allege that plan fiduciaries have

8  personally profited through misuse of plan assets.

9         In their motion to dismiss (Docket No. 233) and reply

10  (Docket No. 288), defendants devote over thirty pages to arguing

11  that the court should overturn Judge Karlton's decision on

12  standing.  But their lengthy arguments do not include citation to

13  newly discovered facts or controlling precedent that bolster

14  their position.  Instead, they cite recent district and circuit

15  court decisions from other circuits and argue that Judge Karlton

16  misapplied <u>Amalgamated Clothing</u>.  But it is irrelevant that

17  courts not bound by <u>Amalgamated Clothing</u> might have decided

18  similar issues differently.  And defendants' arguments that Judge

19  Karlton misapplied <u>Amalgamated Clothing</u> do not persuade the

20  undersigned that his ruling is clearly erroneous.  Accordingly,

21  defendants' motion to dismiss for lack of subject matter

22  jurisdiction is denied.

23              2.  <u>Settlor Doctrine</u>

24         Defendants argue that the settlor doctrine precludes

25  plaintiffs contentions that defendants are violating ERISA by

26  valuing HolliShare's JDS common shares at their book value rather

27  than at "fair market value," and by selling JDS common shares to

28  JDS at their book value.  (Defs.' Mot. to Dismiss (Docket No.

1  233-2) 6-8.)  Judge Karlton held that the settlor doctrine does
2  not insulate defendants from liability because "plaintiffs
3  contend that the terms of the plan are unlawful and inconsistent
4  with ERISA."  (April 12, 2006 Order 16.)  He further concluded
5  that "[e]ven if the plan's terms dictated how the JDS shares were
6  to be valued ('book value' rather than fair market value),
7  plaintiffs maintain that those terms are unlawful.  That
8  contention, resting in part in a factual determination of fair
9  market value, cannot be resolved on a motion to dismiss."  (Id.
10 at 16.)

11         Under the settlor doctrine, a plan administrator is
12 immune from ERISA liability for breach of fiduciary duty when
13 acting as a settlor--i.e., when setting or amending the terms of
14 the plan.  See Hughes Aircraft Co. v. Jacobson, 525 U.S. 432,
15 443-44 (1999) ("ERISA's fiduciary duty requirement simply is not
16 implicated where [an employer], acting as the Plan's settlor,
17 makes a decision regarding the form or structure of the Plan such
18 as who is entitled to receive Plan benefits and in what amounts,
19 or how such benefits are calculated.") (citation omitted).  Once
20 a plan is set up, "ERISA requires that fiduciaries discharge
21 their duties in accordance with the terms of the plan, except
22 when such terms conflict with Titles I or IV of ERISA."  Wright
23 v. Oregon Metallurgical Corp., 360 F.3d 1090, 1094 (9th Cir.
24 2004).

25         Judge Karlton's conclusion is that the settlor doctrine
26 cannot insulate defendants from liability for following the terms
27 of the Plan if those terms violate ERISA.  And he believes that
28 whether the Plan's terms violate ERISA depends on the fair market

10

1   value of JDS stock--a question of fact--which means that

2   plaintiffs' claims cannot be decided on a motion to dismiss.

3   Judge Karlton's conclusions are essentially correct.  The settlor

4   doctrine protects those who create a plan, not fiduciaries who

5   administer it.  <u>Wright</u>, 360 F.3d at 1100.  There is no claim in

6   this lawsuit that HolliShare's settlors violated ERISA in setting

7   up the Plan.  Rather, plaintiffs claim that the Plan's

8   fiduciaries violated ERISA by administering the Plan in violation

9   of ERISA.  The settlor doctrine is not a defense to a claim of

10  unlawful administration.  Accordingly, the court denies

11  defendants' motion to dismiss on the basis of the settlor

12  doctrine.

13              3.   <u>Whether Plan's Methodology Violated ERISA</u>

14          Defendants argue that selling HolliShare's JDS stock at

15  book value in accordance with the terms of the Plan is not a

16  legally cognizable claim.  (Defs.' Mot. to Dismiss (Docket No.

17  233-2) 8-26.)  Judge Karlton concluded that the defendants

18  violated ERISA if the fair market value of JDS stock exceeded

19  book value, and that its fair market value is an evidentiary

20  question that cannot be decided on a motion to dismiss.  (April

21  12, 2006 Order 7 n.7.) ("[W]hether defendants' utilization of

22  book value constitutes 'adequate consideration' [under 29 U.S.C.

23  § 1108(e)] is a question requiring examination of evidence and

24  the merits, thus precluding dismissal at this stage.").  Judge

25  Karlton was correct.  If there was a market for JDS stock at a

26  price above book value, and if the Plan's fiduciaries

27  nevertheless sold Plan shares at book value, then they may have

28  violated ERISA's requirement that securities be sold only for

                                11

1  "adequate consideration."  29 U.S.C. § 1002(18).

2        As intervening precedent, defendants argue that the

3  Supreme Court's recent decision in Twombly retired the Conley v.

4  Gibson lenient standard for motions to dismiss.  As noted above,

5  Twombly requires a plaintiff to plead "only enough facts to state

6  a claim to relief that is plausible on its face."  127 S. Ct. at

7  1974.  Defendants urge reconsideration of Judge Karlton's orders

8  in light of Twombly.  However, whether book value constituted

9  "adequate consideration" depends on whether there was any

10 potential buyer for JDS stock other than JDS itself, and/or

11 whether JDS could have paid more than book value under the terms

12 of its corporate charter.  These are the central issues in this

13 case.  Plaintiffs allege that the Schneider Charitable Trust was

14 also a potential buyer of JDS stock, and also that the JDS

15 Articles of Incorporation allow the company to repurchase its

16 stock for more than book value "under exceptional circumstances."

17 Plaintiffs claims, citing to the corporate charter, are

18 plausible.  Defendants contend that the Schneider Trust could not

19 have bought JDS shares because the trust's settlor was Hollister,

20 not Mr. or Mrs. Schneider, and because "the terms of the

21 Schneider Trust required that any cash contained in the corpus of

22 the trust be paid either to Mrs. Schneider (before her death) or

23 to charity."

24        Whether there was any way the defendants could have

25 sold HolliShare's JDS stock for more than book value is an open

26 question.  There is no need to explore the debate further at this

27 point, however, because, as Judge Karlton held, these are

28 disputed questions of material fact not amenable to resolution on

12

1   a motion to dismiss.  The court follows Judge Karlton's lead and
2   will refrain from wading into this dispute until discovery is
3   finished and both sides have filed proper motions for summary
4   judgment.  Accordingly, the court denies defendants' motion to
5   dismiss with regard to whether defendants' sale of JDS stock at
6   book value violated ERISA.

7               4.   <u>JDS as a De Facto Fiduciary</u>

8            Defendant JDS moves separately for dismissal on the
9   ground that it is not a fiduciary of the Plan and hence no valid
10  claim can be stated against it.  Judge Karlton held that
11  plaintiffs stated a valid cause of action because "[t]he parties
12  do not dispute that JDS's Articles of Incorporation contain a
13  share transfer restriction that limits ownership of shares to
14  JDS, and that JDS had the absolute right to buy any and all JDS
15  shares that are offered for sale by anyone." (April 12, 2006
16  Order 19.)

17           ERISA provides that: "[A] person is a fiduciary with
18  respect to a plan to the extent (i) he exercises any
19  discretionary authority or discretionary control respecting
20  management of such plan or exercises any authority or control
21  respecting management or disposition of its assets . . . or (iii)
22  he has any discretionary responsibility in the administration of
23  such plan." 29 U.S.C. § 1002(21)(A).  For purposes of ERISA, the
24  definition of "fiduciary" is functional rather than formal.  <u>See</u>
25  <u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248,(1993); <u>Kayes v. Pacific</u>
26  <u>Lumber Co.</u>, 51 F.3d 1449, 1459 (9th Cir. 1995), <u>cert.</u> <u>denied</u>, 516
27  U.S. 914 (1995).  As Judge Karlton concluded, "if JDS in fact
28  exercised any discretionary authority over plan assets, it is an

                                13

1  ERISA fiduciary, whether the Plan itself named it as such."

2  (April 12, 2006 Order 19 (citing <u>Yeseta v. Baima</u>, 837 F.2d 380,

3  386 (9th Cir. 1988) (a fiduciary includes a person who withdraws

4  money from a pension plan and places it into the company's

5  account in order to pay operating expenses)).)

6         Defendants urge reconsideration in light of <u>Twombly</u> and

7  the fact that plaintiffs admit that HolliShare's trustees were

8  under no obligation to sell JDS common shares to JDS.  However,

9  neither compels the court to conclude that Judge Karlton's

10 conclusion that "[t]he allegations appear to support plaintiffs'

11 contention that JDS controls the market for Hollishare and the

12 price of the shares" was clearly erroneous.  The fact that JDS's

13 repurchase right is triggered when a holder of JDS common shares

14 decides to offer those shares for sale would appear to support a

15 finding that JDS is able to "exercise authority or control

16 respecting management or disposition" of Hollishare assets.  29

17 U.S.C. § 1002(21)(A).  Accordingly, the court denies the JDS's

18 separate motion to dismiss.

19         5.   <u>DeFazio and Ellis's QDRO Claims</u>

20         Defendant Hollister moves to dismiss DeFazio and

21 Ellis's claims that Hollister improperly administered a series of

22 domestic relations orders decreed by the Sacramento County

23 Superior Court.  In the court's February 23, 2005 Order, Judge

24 Karlton denied defendants' motion to dismiss DeFazio's QDRO

25 claims on the ground that whether the state court orders were

26 QDROs is best examined in a summary judgment motion.  (February

27 23, 2005 Order 22.)  For the reasons discussed below, this now

28 court ratifies Judge Karlton's ruling and extends it to Ellis's

1  claims.

2         ERISA authorizes state court-ordered assignments of

3  plan benefits to former spouses and dependents.  29 U.S.C. §

4  1056(d)(3) provides that pension plans "shall provide for the

5  payment of benefits in accordance with the applicable

6  requirements of any [QDRO]."  QDROs are a type of domestic

7  relations order ("DRO") relating "to the provision of child

8  support, alimony, or marital property rights to a spouse, former

9  spouse, child, or other dependent of a plan participant . . .

10 made pursuant to a State domestic relations law."  29 U.S.C. §

11 1056(d)(3)(ii).  A DRO is a QDRO if it "creates or recognizes the

12 existence of an alternate payee's right to, or assigns to an

13 alternate payee the right to, receive all or part of the benefits

14 payable with respect to a participant under a[n ERISA] plan," 29

15 U.S.C. § 1056(d)(3)(B), and does not (1) require the plan to

16 provide any type of benefit not otherwise provided, (2) require

17 the plan to provide increased benefits, or (3) require benefits

18 to be paid to an alternate payee which must be paid to another

19 alternate payee under another QDRO.  29 U.S.C. § 1056(d)(3)(D).

20 Finally, a QDRO must specify the name and mailing address of the

21 alternate payee and the affected plan participant, the amount or

22 percentage of the participant's benefits to be paid or the means

23 by which that amount will be determined, the number of payments

24 or time period to which the order applies, and the plan to which

25 the order applies.  29 U.S.C. § 1056(d)(3)(c).  DeFazio and Ellis

26 allege that a series of DROs issued pursuant to divorce

27 proceedings do not comply with these requirements and are

28 therefore not QDROs.

15

As Judge Karlton found, "[t]he allegations in this case, whether the Plan improperly administered the state court DROs as QDROs, 'turns on the precise manner in which an alternate payee's state-law-created interest in an ERISA plan is enforced under ERISA's QDRO provisions.'" (February 23, 2005 Order 21 (quoting Trustees of Directors Guild of America-Producer Pension Benefits Plans v. Tise, 234 F.3d 415, 420 (9th Cir. 2000))).  As they did before, defendants ask that the court examine the QDROs and other documents attached to the parties' papers and argue that the case law proves their compliance with the applicable ERISA provisions.  As Judge Karlton held, such arguments are best made in a summary judgment motion, and not on a motion to dismiss.  For the same reason, the court denies Hollister's motion to dismiss the QDRO claims.

### 6.   Defendants' Motion to Dismiss under Rule 8(a)
#### (Docket No. 249 correcting Docket No. 235.)

Defendants file an alternative motion to dismiss the TACs for failure to comply with Federal Rule of Civil Procedure 8(a).  Rule 8(a)(2) provides that pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Defendants argue that the Ninth Circuit vigorously enforces Rule 8(a)(2)'s short and plain statement requirement.  However, the case cited for that proposition indicates that the decision is within the discretion of the district court.  McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) ("We review dismissal of a complaint with prejudice for failure to comply with a court's order to amend the complaint to comply with Rule 8

16

1   for abuse of discretion." (citing <u>Nevijel v. North Coast Life</u>

2   <u>Ins. Co.</u>, 651 F.2d 671, 673-74 (9th Cir. 1981); <u>Schmidt v.</u>

3   <u>Herrmann</u>, 614 F.2d 1221, 1223-24 (9th Cir. 1980))).

4           The court declines to exercise is discretion to dismiss

5   the TACs for failure to follow Rule 8(a).  Although plaintiffs

6   complaints are long-winded and excessive, defendants managed to

7   file six other motions to dismiss and a motion to strike.  If

8   plaintiffs' complaints were so unintelligible, then the proper

9   remedy is not dismissal under Rule 8(a), but a motion for a more

10  definite statement under Federal Rule of Civil Procedure 12(e).

11  Rule 12(e) provides: "If a pleading to which a responsive

12  pleading is permitted is so vague or ambiguous that a party

13  cannot reasonably be required to frame a responsive pleading, the

14  party may move for a more definite statement before interposing a

15  responsive pleading."

16          However, "[m]otions for a more definite statement are

17  viewed with disfavor and are rarely granted because of the

18  minimal pleading requirements of the Federal Rules.  Parties are

19  expected to use discovery, not the pleadings, to learn the

20  specifics of the claims being asserted." <u>Sagan v. Apple</u>

21  <u>Computer, Inc.</u>, 874 F. Supp. 1072, 1077 (C.D. Cal. 1994); <u>see</u>

22  <u>also</u> <u>Advanced Microtherm, Inc. v. Norman Wright Mech. Equip.</u>

23  <u>Corp.</u>, No. 04-02266, 2004 WL 2075445, at *12 (N.D. Cal. Sept. 15,

24  2004) ("Motions for more definite statement are proper only where

25  a complaint is so indefinite that the defendant cannot ascertain

26  the nature of the claim being asserted.").

27          Lastly, citations to Strunk & White's <u>The Elements of</u>

28  <u>Style</u> are completely irrelevant.  Defendants would be well-served

1  to remember such citations in their future filings.  Accordingly,

2  defendants' motion to dismiss for failure to comply with Rule

3  8(a) is denied.

4          7.   Motions to Dismiss on the Basis of Statute of

5               Limitations (Docket Nos. 232 and 233)

6               a.   Defendants Winn and Stempinski's Motion to

7                    Dismiss

8          Defendants Winn and Stempinski move to dismiss the

9  TACs, arguing that plaintiffs claims, as against them, are barred

10  by the statute of limitations.  (Docket No. 232.)  ERISA's

11  statute of limitations provides that no action may be brought

12  against a fiduciary more than six years after the violation or

13  three years after the plaintiff knew of the violation.  29 U.S.C.

14  § 1113.  The amendments to the JDS Articles that authorize the

15  Preferred Share Trust to own JDS shares occurred on April 30,

16  1999.  (DeFazio TAC ¶¶ 27-28; Ellis TAC ¶¶ 30-31.)  Plaintiff

17  Ellis filed her first complaint against Winn and Stempinski on

18  June 24, 2005, which represents the first time that Winn or

19  Stempinski were named defendants in any of these consolidated

20  cases.  (Docket No. 89.)

21          Plaintiffs argue that in cases of fraud and

22  concealment, the statute of limitations does not begin to run

23  until the violation is discovered, and that defendants'

24  fraudulent misrepresentations tolled the statute of limitations.

25  Their argument is unpersuasive.  In order to trigger the fraud or

26  concealment exception to ERISA's statute of limitations, a

27  plaintiff must produce "specific evidence of fraudulent activity

28  or concealment."  Barker v. American Mobil Power Corp., 64 F.3d

18

1397, 1401 (9th Cir. 1995).  "The fraud or concealment exception

applies only when an ERISA fiduciary either misrepresents the

significance of facts the beneficiary is aware of (fraud) or

. . . hides facts so that the beneficiary never becomes aware of

them (concealment)."  Id. (quoting Radiology Ctr., S.C. v.

Stifel, Nicolaus & Co., 919 F.2d 1216, 1220 (7th Cir. 1990)

(internal quotation marks omitted)); see also Ranke v.

Sanofi-Synthelabo Inc., 436 F.3d 197, 204 (3d Cir. 2006) (stating

that an ERISA fiduciary must "have taken affirmative steps to

hide an alleged breach of fiduciary duty from a beneficiary in

order for the 'fraud or concealment' exception to apply").

Plaintiffs have pleaded no specific evidence of such fraud or

concealment by defendants.  The allegations raised in paragraphs

10 and 12 of the DeFazio TAC fail to rise to the necessary level.

Moreover, these allegations fail to identify statements

actually made by Winn or Stempinski or any individual defendant.

When allegations sound in fraud, they must satisfy the heightened

pleading requirements of Federal Rule of Civil Procedure 9(b).

See, e.g., J. Geils Band Employee Benefit Plan v. Smith Barney

Shearson, Inc., 76 F.3d 1245, 1255 (1st Cir. 1996); Larson v.

Northrop Corp., 21 F.3d 1164, 1173 (D.C. Cir. 1994).  Rule 9(b)

provides that "[i]n all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with

particularity."  "To avoid dismissal for inadequacy under Rule

9(b), [a] complaint would need to 'state the time, place, and

specific content of the false representations as well as the

identities of the parties to the misrepresentation.'"  Edwards v.

Marin Park, Inc., 356 F.3d 1058, 1066 (9th Cir. 2004); see also

1   Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993) ("The

2   complaint must specify such facts as the times, dates, places,

3   benefits received, and other details of the alleged fraudulent

4   activity."). Plaintiffs fall well short. Accordingly,

5   defendants Winn and Stempinski's motion to dismiss is granted.

6          Counsel for defendants Herbert and Zwirner appear on

7   the brief submitted by counsel for Winn and Stempinski. Given

8   that Herbert and Zwirner's arguments with respect to the

9   transaction in 1999 are identical to those of Winn and

10  Stempinski, this ruling extends to Herbert and Zwirner. Because

11  this ruling dismissed Winn and Stempinski from the lawsuit,

12  plaintiffs' motion to set aside the judgments obtained in favor

13  of defendants Winn and Stepinski because of acts of fraud,

14  misrepresentation, and concealment is mooted and denied. With

15  respect to plaintiffs' motion to set aside the judgment obtained

16  in favor of Herbert, the court's ruling that the 1999 transaction

17  is barred by the statute of limitations may moot that motion as

18  well. The court denies plaintiffs' motion with respect to

19  Herbert, but will entertain another motion provided that there

20  are claims against Herbert not barred by the statute of

21  limitations and adequate allegations of fraud and concealment on

22  the part of Herbert.

23              b.   Defendants' Motion to Dismiss Certain Votes

24                   by HolliShare Trustees as Not Actionable

25                   (Docket No. 233)

26          Defendants move to dismiss claims based on the votes

27  cast by the Hollishare Trustees in favor of various amendments to

28  the JDS Articles as barred by the statute of limitations. The

1   votes at issue were cast between 1978 and 1999.  (DeFazio ¶¶ 28,

2   54-61; Ellis TAC ¶¶ 31-34.)  Defendants make a strong argument

3   that claims based on these votes are barred by the statute of

4   limitations.  However, portions of these claims that the court

5   has found state a valid claim--namely that defendants breached

6   fiduciary duties--cannot be easily separated from those that are

7   barred by the statute of limitations.  Unlike the motion with

8   respect to Winn and Stempinski, granting this motion would

9   neither dispose of a party nor a claim.  Accordingly, the court

10  denies this motion.

8.   Defendants' Motion to Dismiss Plaintiffs' Claim

that Defendants' Engaged in Prohibited

Transactions (Docket No. 233)

14          Defendants move to dismiss plaintiffs' claim that

15  HolliShare's sale of JDS common shares were prohibited

16  transaction under ERISA, which is the DeFazio plaintiffs' twelfth

17  cause of action.  Plaintiffs allege that HolliShare's fiduciaries

18  engaged in prohibited transactions when HolliShare sold Plan

19  assets to JDS for inadequate consideration in violation of 29

20  U.S.C. §§ 1106(a)(1)(A) and 1108(e)(1).

21          ERISA imposes a fiduciary duty to act "solely in the

22  interest of the participants and beneficiaries."  29 U.S.C.

23  §1104(a).[6]  No defendant argues that he or she is not an ERISA

24

25          [6]   ERISA § 404(a) provides:
               (1) Subject to sections 403(c) and (d), 4042, and 4044 [29
26          U.S.C. §§ 1103(c), (d), 1342, 1344], a fiduciary shall
            discharge his duties with respect to a plan solely in the
27          interest of the participants and beneficiaries and--
               (A) for the exclusive purpose of:
28                (i) providing benefits to participants and

21

fiduciary.  Section 406 of ERISA establishes a blanket

prohibition against certain transactions, such as the sale of

stock to an ERISA plan by a party in interest, because of the

high potential for abuse.  ERISA does, however, provide an

exemption from § 406 for these types of transactions if they meet

certain requirements. § 408(e), 29 U.S.C. § 1108(e). Section

408(e) provides an exemption for the sale or acquisition by a

plan of employer stock if the sale price is for "adequate

consideration." 29 U.S.C. § 1108(e).  When the security is not

traded on a national securities exchange, the term "adequate

consideration" means "a price not less favorable to the plan than

the offering price for the security as established by the current

bid and asked prices quoted by persons independent of the issuer

and of any party in interest." 29 U.S.C. § 1002(18).

Judge Karlton determined that plaintiffs stated a

cognizable claim because plaintiffs allege that HolliShare sold

stock to its parent corporation for less than adequate

consideration. (February 23, 2005 Order 14; April 12, 2006 Order

their beneficiaries; and
(ii) defraying reasonable expenses of
administering the plan;
(B) with the care, skill, prudence, and diligence
under the circumstances then prevailing that a
prudent man acting in a like capacity and familiar
with such matters would use in the conduct of an
enterprise of a like character and with like aims;
(C) by diversifying the investments of the plan
so as to minimize the risk of large losses, unless
under the circumstances it is clearly prudent not
to do so; and
(D) in accordance with the documents and
instruments governing the plan insofar as such
documents and instruments are consistent with the
provisions of this title and title IV.

8.)  Judge Karlton further denied defendants' motion to dismiss because whether "book value" is adequate consideration involves issues of fact.  (Id.)  Plaintiffs argue that "book value," determined according to Section 7.03 of the Plan,[7] is expressly prohibited because it "bears little semblance to the standards set forth by the Department of Labor."  As defendants correctly argue, courts "decline to take cognizance of the proposed regulations . . . because a 'proposed regulation does not represent an agency's considered interpretation of its statute . . . .'"  Cal. Rural Legal Assistance v. Legal Servs. Co., 917 F.2d 1171, 1173 n.5 (9th Cir. 1990) (quoting Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 845 (1986)). Nevertheless, a cognizable claim exists for reasons discussed in Judge Karlton's order.  (February 23, 2005 Order 14; April 12,

---

[7]     Section 7.03 of the Plan, provides:
7.03 The assets in the Trust Fund shall be valued by the Trustees at their respective fair market values as of each December 31st. The fair market value of Common Shares of JDS Inc. held in the Trust Fund shall, subject to the provisions of the remainder of this Section 7.03, be their book value as of the valuation date as reflected on the books of JDS Inc. The Trustees shall accept such book value as the fair market value if such book value is computed in accordance with generally accepted accounting principles. If such book value was not computed in accordance with generally accepted accounting principles, the Trustees shall investigate the actual method of computation. If after investigation they determine that such book value fairly reflects the value of the shares under the circumstances, they shall make such adjustment thereto, taking into consideration generally accepted accounting principles, as they deem reasonable and appropriate to fairly reflect the value of the shares under the circumstances, provided however, that such adjustment shall not exceed the difference between such book value and book value computed in accordance with generally accepted accounting principles.

23

1  2006 Order 8.)[8]  Accordingly, the court denies defendants' motion

2  to dismiss plaintiffs' prohibited transactions claims.

3          9.   Defendant Fremgen's Separate Motion to Dismiss

4               (Docket No. 237)

5          Defendant Fremgen moves separately to dismiss the TACs

6  on the ground that his position as a director of JDS and

7  Hollister does not render him liable for alleged breaches of

8  fiduciary duties in connection with the Plan.

9          Fregmen argues that ERISA permits the same person to

10 serve as both a Plan trustee and a corporate officer, and that

11 acts taken as a corporate officer are not considered acts taken

12 as a Plan fiduciary.  See Pegram v. Herdrich, 530 U.S. 211,

13 225-26 (2000) ("In every case charging breach of ERISA fiduciary

14 duty . . . the threshold question is not whether the actions of

15 some person employed to provide services under a plan adversely

16 affected a plan beneficiary's interest, but whether that person

17 was acting as a fiduciary (that is, was performing a fiduciary

18 function) when taking the action subject to complaint.").

19 Second, Fregmen contends that plaintiffs' allegations fail

20 adequately to specify which fiduciaries violated their duties, or

21 how.

22         As Fregmen asserts, these claims are vague as to which

23 defendants are alleged to have committed the breach.  More

24 important, though, it fails to allege that the defendants were

25

26         [8]   Judge Karlton dismissed DeFazio's original ERISA § 406
   claims on statute of limitations grounds.  (February 23, 2005
27 Order 19.)  This claim--whether the Plan sold JDS stock for a
   promissory note--involves different allegations and is not
28 clearly precluded by the statute of limitations.

1  acting as HolliShare fiduciaries at the time they engaged in the
2  alleged activities.  Thus, these claims are deficient under
3  Pegram, and the court grants defendant Fregmen's motion.

4          10.  Defendants' Motion to Dismiss Co-Fiduciary
5               Liability Claims (Docket No. 233)

6          Defendants move to dismiss claims six through nine of
7  the DeFazio TAC and five through eight of the Ellis TAC, arguing
8  that plaintiffs indiscriminately seek to hold each defendant
9  liable for the acts or omissions of all their co-fiduciaries.
10 Plaintiffs state a cognizable claim on the basis of facts alleged
11 preceding these claims, except as noted above with respect to
12 Winn and Stempinski's motion to dismiss and Fregmen's motion to
13 dismiss.  If defendants are unclear as to which allegations are
14 directed at which defendants, the correct motion is one for a
15 more definite statement.  Accordingly, defendants motion is
16 denied.

17         11.  Defendant Hollister's Motion to Dismiss
18              Plaintiffs' ERISA §§ 104(b)(4) and 502(c) Claims
19              (Docket No. 238)

20         Defendant Hollister separately moves to dismiss
21 plaintiffs' claims that it violated ERISA by failing to provide
22 certain documents to Plan participants and beneficiaries and that
23 it violated ERISA by complying with various orders entered by the
24 Sacramento County Superior Court in the Ellis/DeFazio divorce.
25 For reasons discussed above, the latter request is denied.  For
26 reasons discussed below, the former request is granted.

27         Plaintiffs claim that their attorneys requested certain
28 HolliShare documents from defendants on November 12, 2005, and

1   that defendants have not produced them.  ERISA mandates that a

2   plan administrator "shall, upon written request of any

3   participant or beneficiary, furnish a copy of the latest updated

4   summary, plan description, and the latest annual report, any

5   terminal report, the bargaining agreement, trust agreement,

6   contract or other instruments under which the plan is established

7   or operated."  29 U.S.C. §1024(b)(4).  A court has discretion to

8   award a penalty of up to $100 a day from the date that an

9   administrator fails to respond to a participant's request, or a

10  court may order such other relief as it deems proper.  29 U.S.C.

11  § 1132(c)(1)(B).

12       However, "[t]he clear weight of authority indicates

13  that penalties will not be imposed on a plan administrator absent

14  a showing by the plaintiff that he has suffered some degree of

15  harm resulting from the delay." Kelly v. Chase Manhattan Bank,

16  717 F. Supp. 227, 233 (S.D.N.Y. 1989) (citing Pollock v.

17  Castrovinci, 476 F. Supp. 606, 618 (S.D.N.Y. 1979), aff'd mem.,

18  622 F.2d 575 (2d Cir. 1980)).  Plaintiffs make no argument that

19  they were prejudiced by defendants' failure to furnish these

20  documents.  In fact, while defendants admit that they did not

21  furnish these documents in response to plaintiffs' request, they

22  assert that plaintiffs' attorneys were already in possession of

23  each of the documents in question, having attached copies of them

24  to the FAC.  It is difficult to see how plaintiffs could make an

25  argument that they were prejudiced.

26       Furthermore, plaintiffs' attorneys' request was made in

27  the course of pre-trial discovery, and "requests for plan

28  documents made pursuant to the Rules of Civil Procedure in the

course of pre-trial discovery do not trigger the application of §
1132(c)." <u>Hughes v. Nat. Res. Consultants</u>, 77 Fed. Appx. 973
(9th Cir. 2003); <u>see also</u> <u>Boucher v. Williams</u>, 13 F. Supp. 2d 84,
108 (D. Me. 1998) (Statutory penalties not imposed where
"[p]laintiffs' attorney's requests for virtually every document
related to the Plan were in the nature of litigation discovery
requests."). Accordingly, the court grants Hollister's motion to
dismiss this claim.

      B. <u>Defendants' Motion to Strike Certain Portions of the</u>
          <u>Third Amended Complaint (Docket No. 240)</u>

      Federal Rule of Civil Procedure 12(f) provides that
"redundant, immaterial, impertinent, or scandalous matters" may
be "stricken from any pleading." Such motions are designed "to
avoid the expenditure of time and money that must arise from
litigating spurious issues by dispensing with those issues prior
to trial . . . ." <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697 F.2d
880, 885 (9th Cir. 1983). However, "[m]otions to strike are
generally disfavored." <u>Abney v. Alameida</u>, 334 F. Supp. 2d 1221,
1234 (S.D. Cal. 2004); <u>Bureerong v. Uvawas</u>, 922 F. Supp. 1450,
1478 (C.D. Cal. 1996) ("Rule 12(f) motions are generally
'disfavored' because they are 'often used as delaying tactics,
and because of the limited importance of pleadings in federal
practice.'" (quoting William W. Schwarzer et al., <u>California</u>
<u>Practice Guide: Federal Civil Procedure Before Trial</u> § 9:375)).
"If there is <u>any</u> <u>doubt</u> as to whether the allegations might be an
issue in the action, [the] court [should] deny the motion." <u>In</u>
<u>re 2TheMart.com, Inc. Sec. Litig.</u>, 114 F. Supp. 2d 955, 965 (C.D.
Cal. 2000) (citing <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527

1  (9th Cir. 1993) rev'd on other grounds, 510 U.S. 517, 534-35

2  (1994)).

3        Defendants move to strike the TAC's requests for relief

4  that seek to alter JDS's Articles of Incorporation and to replace

5  JDS and Hollister's directors as well as Zwirner's ability to

6  practice law.  Plaintiffs argue that ERISA preempts Illinois law,

7  under which JDS is incorporated.  Defendants argue that JDS's

8  Articles are fundamental to the corporation and should not be

9  cast aside even if defendants violated ERISA.  To do so,

10  defendants argue, would be to abrogate the rights of other JDS

11  shareholders.

12        ERISA does not preempt state corporations law except

13  where "ERISA and the state law conflict regarding the

14  distribution of an already defined sum." Kreuger Int'l, Inc. v.

15  Blank, 225 F.3d 806, 813 (7th Cir. 2000).  Based on defendants'

16  arguments and Kreuger, defendants are likely correct that

17  ordering JDS to change its Articles of Incorporation would be

18  inappropriate even if plaintiffs were to prevail.

19        However, defendants have not demonstrated why they

20  would be prejudiced by allowing the challenged requests for

21  relief to stand.  While prejudice is not a prerequisite to

22  granting a motion to strike in the Ninth Circuit, Fantasy, 984

23  F.2d at 1528, the decision to grant a motion to strike rests with

24  the discretion of the district court.  Fed. Sav. & Loan v. Gemini

25  Mgmt., 921 F.2d 241, 243 (9th Cir. 1990).  Other circuits take a

26  different view.  See, e.g., Davis v. Ruby Foods, Inc., 269 F.3d

27  818 (7th Cir. 2001).  Accordingly, defendants' motion to strike

28  will be denied with respect to the TAC's requests for relief that

1  seek to alter JDS's Articles of Incorporation and to replace JDS

2  and Hollister's directors.

3         The court grants defendants' motion to strike the

4  DeFazio plaintiffs' request for an order enjoining Zwirner "from

5  providing any further services to ERISA plans." (DeFazio TAC

6  (Docket No. 224) p. 52, Request for Relief No. 13.)  On June 28,

7  2007, in response to a motion seeking to preclude plaintiffs'

8  counsel Lynn and Scottlynn Hubbard from further soliciting

9  Hollister employees, this court wrote:

10        "What defendants ask this court to do extends far
          beyond the purview of its responsibilities.  Under
11        defendants' proposal the court would have to proofread
          and correct all of Hubbard's correspondence to his
12        targeted clientele.  Presumably, in order to maintain
          the adversary process, before approving any
13        correspondence the court would also invite a response
          from defendants and consider their suggestions.  This
14        the court will not do."

15  (June 28, 2007 Order 5.)  Likewise, the court will not enjoin

16  Zwirner from providing any further services to ERISA plans.  The

17  scope of Zwirner's ability to practice law is properly left to

18  the State Bar of Illinois, where he is a licensed attorney.

19  III. Conclusion

20        This order represents the third time that a court in

21  the Eastern District has issued a decision on the merits of

22  whether the allegations in this complaint state cognizable

23  claims.  The parties are urged to proceed onto the discovery

24  phase.  In future motions before this court, the parties are

25  advised that it is the rare request that cannot be effectively

26  argued in less than twenty-five pages.

27        IT IS THEREFORE ORDERED that:

28        (1) defendants Winn and Stempinski's motion to dismiss

for failure to state a claim (Docket No. 232) be, and the same hereby is, GRANTED;

(2) defendants' motion to dismiss for failure to state a claim (Docket No. 233) be, and the same hereby is, DENIED;

(3) defendants' motion to dismiss for lack of subject matter jurisdiction (Docket No. 234) be, and the same hereby is, DENIED;

(4) defendants' alternative motion to dismiss for failure to provide a short and plain statement (Docket No. 249 correcting Docket No. 235) be, and the same hereby is, DENIED;

(5) defendant The Firm of John Dickinson Schneider's separate motion to dismiss for failure to state a claim (Docket No. 236) be, and the same here by is, DENIED;

(6) defendant Fregmen's motion to dismiss for failure to state a claim (Docket No. 237) be, and the same hereby is, GRANTED;

(7) defendant Hollister's motion to dismiss for failure to state a claim (Docket No. 238) be, and the same hereby is, GRANTED, with respect to the ERISA §§ 104(b)(4) and 502(c) claims, but DENIED, with respect to DeFazio and Ellis's QDRO claims;

(8) defendants' motion to strike certain requests for relief from the third amended complaint (Docket No. 240) be, and the same hereby is, DENIED, as to all requests for relief except with respect to the thirteenth request for relief in the DeFazio third amended complaint, which hereby is STRICKEN;

(9) with respect to all other defendants and/or claims, defendants' motions to dismiss and to strike, be, and the same

hereby are, DENIED.

(10) plaintiffs' motion to set aside the judgments obtained in favor of defendants Winn, Stepinski, and Herbert, because of acts of fraud, misrepresentation, and concealment (Docket No. 255 correcting Docket No. 251) be, and the same hereby is, DENIED;

(11) plaintiffs are hereby given thirty days to file a fourth amended complaint consistent with this order or the court will dismiss this action.  Failure to follow this order by including already dismissed causes of action in the fourth amended complaint will result in sanctions.

DATED:  November 1, 2007

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE