Lynn Hubbard III, SBN 69773
Scottlynn J Hubbard IV, SBN 212970
**Law Offices of Lynn Hubbard**
12 Williamsburg Lane
Chico, California 95926
Telephone:   (530) 895-3252
Facsimile:    (530) 894-8244

Counsel for Jim DeFazio, Theresa Beetham, Brenda Dimaro, DeLane Humphries, Hallie Lavick, Michael McNair, Sonya Pace, Judy Seay, Nancy Russell Stanton, and Cindy Wirth

United States District Court

Eastern District Of California

| | |
|---|---|
| Jim DeFazio, <u>et</u> <u>al.</u>, | ) Case No. 04-1358 WBS GGH |
| Plaintiffs | ) |
| | ) **Plaintiffs' Fifth Amended** |
| vs. | ) **Complaint (with Class Action** |
| | ) **Allegations)** |
| Hollister, Inc., <u>et</u> <u>al.</u>, | ) |
| Defendants | ) Fed. R. Civ. P. 9(b) |
| | ) |
| _____ | ) |
| and consolidated cases | ) |
| _____ | ) |

## INTRODUCTION

1.     The Hollister Share Ownership Trust ("HolliShare" or "the Plan") is a defined contribution pension plan designed to provide retirement benefits to more than 1,200 Hollister employees, retirees, and their beneficiaries.  Under the terms of the Plan, the employer made annual contributions to HolliShare, subject to limits specified in the Plan's governing documents; participants do not contribute any amount to the Plan. The Plan provided that employer contributions would be invested in JDS common stock to the "maximum extent practicable and advisable."[1]  In practice, however, the Plan's fiduciaries never exercised their discretion to invest employer contributions in anything other than JDS common stock.

2.     On April 21, 2001, control of the Firm of John Dickinson Schneider, Inc. ("JDS") – the parent company of, and sole shareholder in Hollister, Inc. ("Hollister") – was transferred to the Firm of John Dickinson Schneider, Inc., Preferred Share Trust April 21, 1999 ("the Directors' Trust") – a trust primarily controlled by the current and former directors of Hollister.  It was the end of Hollister's status as an independent/employee owned company, and the final act of a scheme to entrench Hollister's management.

3.     At the time of the transfer, the largest investor in JDS common stock was JDS's pension plan – *viz.*, HolliShare.  At the beginning of 2001, the Plan had invested more than 97% of its assets (over $131 million) in JDS common stock.  This investment constituted over 67% of the outstanding JDS common stock available.

---

[1]    HolliShare Trust Instr., § 11.01(1)(i).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

4.      Control of JDS was transferred to the Directors' Trust for the sole and exclusive purpose of entrenching management, and preventing HolliShare from assuming eventual control over JDS.  By transferring control, the Directors' Trust acquired the absolute control over the company, gained the ability to manipulate the value of JDS common stock, and eliminated any residual value that stock may have had.  HolliShare was thus rendered worthless.

5.      Plan fiduciaries never considered the prudence of continued investment in JDS common stock, or took any action to protect the value of the participants' retirement accounts.  Because of their complete inaction, the Plan lost much of its value and thousands of participants were left with uncertain futures.

6.      When ERISA's strict fiduciary standards are not met, participants have the authority to seek relief under Sections 409 and 502(a) to redress violations and restore plan losses.[2]  Participants may also seek injunctions to prevent those who have violated their fiduciary duties in the past from managing or providing services to employee benefit plans in the future.

7.      At all relevant times, the Plan was managed by three distinct sets of "named" fiduciaries: (1) HolliShare trustees, who were charged with the responsibility to oversee the management of the Plan; (2) Hollister, who was responsible for administering the Plan; and (3) the Hollister Board of Directors ("the Hollister Board"), who was responsible for appointing and monitoring the other named fiduciaries.[3]  Because none of these fiduciaries complied with their obligations under ERISA, they are named as defendants

---

[2]  "ERISA" is Title I of the Employee Retirement Income Security Act of 1974 and, unless specified otherwise, "Section" refers to the corresponding section of ERISA.

[3]  HolliShare Trust Instr., § 11.11.

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 3

herein and are jointly and severally liable for the losses they have caused to the Plan.

8.     HolliShare trustees never effectively monitored, reviewed, analyzed, questioned, altered, slowed or stopped the Plan's investments in JDS common stock. Without ever considering the prudence of this investment, these trustees continued to invest in (and retained all of the Plan's extensive holdings of) JDS common stock.  This conduct continued even after the Directors' Trust was funded and the harmful amendments to the JDS articles of incorporation were made, which substantially reduced the risk of stock failure on no notice.

9.     The Hollister Board was responsible for appointing and overseeing HolliShare's trustees; and, consequently, had fiduciary responsibilities to the Plan.  Even so, they never monitored the performance of HolliShare's trustees; never supplied the trustees with critical adverse information known to them about JDS's financial condition; and never sought to remove HolliShare trustees for failing to discharge their obligations. Further, each director misled plan participants and Hollister employees about JDS's financial health, and the voting power of JDS common shares, concealing the imprudence of investing plan assets in JDS common stock and the disloyalty of plan fiduciaries.

**JURISDICTION AND VENUE**

10.     This action arises under ERISA and is brought by plan participants to obtain relief under Sections 409 and 502(a) to redress violations and enforce the provisions of Title I of ERISA.[4]  Thus, this Court

---

[4]     29 U.S.C. §§ 1109 and 1132(a)(2), (3).

**DeFazio, et al., v. Hollister, et al.,** Case No. 04-1358 WBS GGH
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 4

has subject matter jurisdiction over this action pursuant to Section 502(e)(1).[5]

11. Venue with respect to this action lies in the Eastern District of California pursuant to Section 502(e)(2).[6]

### CLASS ACTION

12. This action is brought by plaintiffs on behalf of themselves and others similarly situated, as a class action under Rule 23 of the Federal Rules of Civil Procedure.

13. Plaintiffs are members of the class they seek to represent and have standing to bring this action because each plaintiff has suffered reduced benefits based on the defendants' breaches of fiduciary duty. The class consists of all individuals who vested as participants and beneficiaries of HolliShare after January 1, 1975.

14. The exact number of members of the class represented by plaintiffs is presently unknown, but it is believed by plaintiffs, based on the facts disclosed within this litigation, that the class consists of at least 2,600 members, which makes joinder of the individual members of the class impracticable.

15. As more fully stated below, there are common questions of law and fact in this action involving both the rights of each member of the class and the relief sought by the entire class.

16. As more fully stated below, the claims being asserted by plaintiffs in this action are typical of the claims of each member of the class and plaintiffs will fairly and adequately represent the interests of the class as a whole.

---

[5]   29 U.S.C. § 1132(e)(1).

[6]   29 U.S.C. § 1132(e)(2).

**DeFazio, et al., v. Hollister, et al.,** Case No. 04-1358 WBS GGH
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 5

17.    Prosecution of separate actions by each member of the class would create a risk of inconsistent results arising from the multiple adjudications, which in turn would establish incompatible standards of conduct for defendants.

18.    Prosecution of separate actions by each member of the class would also create a risk that, as a practical matter, the results of adjudications by some members of the class would be dispositive of the interests of other members of the class who were not party to the adjudications, or would substantially impair the ability of the other members of the class to protect their interests.

19.    Finally, the defendants have acted in a manner inconsistent with the entire class and therefore it is appropriate to grant the equitable relief sought in this action with respect to the class as a whole.

## PARTIES

### Plaintiffs

20.    Plaintiffs are plan participants and beneficiaries who have the authority to enforce the provisions of Title I of ERISA by, among other means, the filing and prosecution of claims against fiduciaries who breach their duties under Title I and against others who knowingly participate in such breaches.[7]

### HolliShare

21.    The Plan is an employee pension benefit plans, as defined in Section 3(2),[8] sponsored by Hollister.

---

[7]    29 U.S.C. §§ 1132(a)(2), (3).

[8]    29 U.S.C. § 1002(2).

**DeFazio, et al., v. Hollister, et al.,** Case No. 04-1358 WBS GGH
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

JDS

22.     JDS is an Illinois corporation with its principal place of business located at 2000 Hollister Drive in Libertyville, Illinois 60048.  JDS is a fiduciary of the Plan pursuant to Section 3(21) because of its *de facto* control over the value of JDS common stock; and its direct appointment, supervision and control over the Hollister Board.

Hollister

23.     Hollister is an Illinois corporation with its principal place of business located at 2000 Hollister Drive in Libertyville, Illinois 60048. Hollister is an "administrator" of the Plan pursuant to Section 3(16)(A);[9] a "sponsor" of the Plan pursuant to Section 3(16)(B);[10] and a fiduciary of the Plan pursuant to Section 3(21). Hollister is responsible for carrying out the duties of the Plan, and for compliance with all applicable law and regulations.

HolliShare Trustees

24.     Trustees for the Plan ("HolliShare trustees" or "plan trustees") included Samuel Brilliant (2000 to Present), James A. Karlovsky (1990-2004), James McCormack (1980-2001), Lori Kelleher (2004-Present), Richard Zwirner (1976-Present), Loretta L. Stempinski (1974-1978), Charles H. Gunderson (1979), Charles C. Schellentrager (1979-1988), Donald. K. Groneber (1976-1979), and Howard I. Simon (1978-1982); and all were designated by the Plan as "named fiduciaries" under Section 3(21).

---

[9]    29 U.S.C. § 1002(16)(A); HolliShare Trust Instr. §§ 3.19, 11.11.

[10]   29 U.S.C. § 1002(16)(B).

**DeFazio, et al., v. Hollister, et al.,** Case No. 04-1358 WBS GGH
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 7

25.     As named fiduciaries, HolliShare's trustees had full authority to control and manage the operations of the Plan[11] and were required by Section 404(a)(1)(A) and Section 404(a)(1)(B) to manage and oversee the Plan's investments in JDS common stock solely in the interest of the Plan's participants and beneficiaries and with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.[12]

### Hollister Board of Directors

26.     On information and belief, the Hollister Board included directors Alan Herbert, Michael Winn, Loretta Stempinski, Richard Zwirner, Donald Groneber, and Richard Fremgen. Because plaintiffs do not know the precise dates each individual served as a member of the Hollister Board (except for Winn and Stempinski, who stepped down in 2001), plaintiffs also aver – on information and belief – that while serving as members of the Hollister Board, each individual director participated in, has co-fiduciary liability for, or concealed the fiduciary breaches identified below.

27.     The Hollister Board was solely responsible for selecting, monitoring and removing HolliShare trustees.[13]  The Plan, by its terms, required HolliShare trustees to report matters concerning the Plan to the board;[14] permitted the board to inspect and audit "[a]ll such records and accounts of [the Plan];"[15] granted the board the right to appoint HolliShare

---

[11]   29 U.S.C. § 1102(a)(1).

[12]   29 U.S.C. §§ 1104(a)(1)(A), (B); HolliShare Trust Instr. § 11.01(1).

[13]   HolliShare Trust Instr. §§ 3.06, 11.11.

[14]   HolliShare Trust Instr. § 11.04.

[15]   HolliShare Trust Instr. § 11.04.

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

trustees;[16] and "remove any [HolliShare t]rustee with or without cause upon written notice to the [t]rustee."[17]  Accordingly, the members of the Hollister Board were fiduciaries of the Plan under Section 3(21) and subject to ERISA's duties of loyalty and prudence.

JDS Board of Directors

28.    On information and belief, the JDS Board of Directors ("JDS Board") included directors Alan Herbert, Michael Winn, Loretta Stempinski, Richard Zwirner, and Richard Fremgen. Once again, because plaintiffs do not know the precise dates each individual served as a member of the JDS Board, plaintiffs aver – on information and belief – that while serving as members of the JDS Board, each individual director participated in, has co-fiduciary liability for, or concealed the fiduciary breaches identified below. Moreover, because the JDS Board was responsible for selecting, monitoring and removing named fiduciaries of the Plan (*viz.*, members of the Hollister Board), and controlled the only entity valuing plan assets (*viz.*, JDS), the members of the JDS Board are fiduciaries under Section 3(21).

Schneider 1977 Trust / Directors' Trust

29.    Prior to its dissolution in April of 2001, the John D. Schneider Preferred Share Trust Dated April 21, 1977 ("the Schneider 1977 Trust") held approximately 97% of the voting shares of JDS stock, *viz.*, the JDS preferred stock. This stock controlled JDS. In April 2001, the corpus of the Schneider 1977 Trust was transferred to the Directors' Trust, under less than auspicious circumstances. Based on that transfer, the Directors' Trust gained the ability to appoint officers and directors of JDS, officers and directors of Hollister, and trustees of the Plan; they controlled management of JDS and

---

[16]    HolliShare Trust Instr. §§ 11.05, 11.07.

[17]    HolliShare Trust Instr. § 11.06.

**DeFazio, et al., v. Hollister, et al.,** Case No. 04-1358 WBS GGH
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 9

Hollister, assigned value to plan assets, and administered HolliShare's operations. This discretionary control over plan assets made the Schneider 1977 Trust, the Directors' Trust, and the trustees of both – *viz.*, Winn, Herbert,[18] Stempinski, and Zwirner – were *de facto* fiduciaries of the Plan under Section 3(21).

30.    Defendants were also parties-in-interest of the Plan pursuant to Section 3(14).[19]

## FACTS

31.    This is an ERISA case involving numerous acts of fraud, concealment, and fiduciary breaches by the Hollister Board – *viz.*, Winn, Stempinski, Herbert, and Zwirner – who used the Plan as a billion dollar piggy-bank; lied to their employees and retirees; stole ultimate ownership of JDS away from the Plan; kept the value of plan assets artificially low; eliminated the market for plan assets; and placed the Plan in financial jeopardy through self-dealing (insider) transactions – all for their personal benefit. But before the plaintiffs can explain how this occurred, a brief synopsis of the defendants' misrepresentations to plan participants and beneficiaries is in order:

**Composition of the Trust**
Common shares of JDS, the parent company of Hollister, constitute the major investment for Hollister employee participants.  This gives each employee participant indirect ownership in Hollister and a share of worldwide earnings through the increase in book value of JDS common shares. As of December 31, 1999, the Plan owned 66% of the outstanding common shares of JDS . . .

---

[18]    Herbert was not a trustee of the Schneider 1977 Trust.

[19]    29 U.S.C. § 1002(14).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 10

**Closely Held Nature of JDS Stock**

JDS common shares, which are valued at their book value, are not publicly traded. They are for all practical purposes not transferable to any person or entity other than JDS itself. They are subject to severe transfer restrictions which require that the Plan first offer them to JDS at their book value. To date, JDS has repurchased common shares from the Plan at their book value to provide the plan with needed cash. Both the Plan's Trustees and JDS expect to continue in this manner; in order to maintain the necessary liquidity and financial integrity of HolliShare.

The ability of JDS to continue this practice depends upon the continued financial strength and liquidity of Hollister. If, for some presently unforeseen reason, JDS were unable to continue to repurchase common shares from the Plan, HolliShare might not be able to sell the common shares, or, at least, might not be able to sell them at a price equal to their book value. In such event, the Plan would not be able to realize its full investment in JDS common shares and the account balances of the employee participants would be reduced, perhaps substantially . . .

Since 1977, JDS has been controlled by the Schneider 1977 Trust. The Schneider 1977 Trust holds all of the preferred shares of JDS, which constitute approximately 97% of JDS's outstanding voting shares. One of the principal purposes of the Schneider 1977 Trust is to maintain JDS and Hollister as employee owned companies. The Schneider 1977 Trust terminates on April 21, 2001, and, in accordance with its terms, the preferred shares were to be distributed to certain employee beneficiaries of the Schneider 1977 Trust.  All currently potential employee beneficiaries have agreed, in writing and irrevocably, to the transfer of any preferred shares which they would otherwise be entitled to receive to a new trust ["the Directors' Trust"].

The Directors' Trust will hold the preferred shares essentially in perpetuity and commits management of JDS and Hollister to adherence to the employee ownership and other principles which have contributed to their financial success.  In 1999, the Trustees of HolliShare voted in favor of allowing the Directors' Trust to become a shareholder of JDS ...

**Asset Valuation and Basis of Accounting**
Under the terms of the Plan, the assets are valued as of each December 31st at their respective fair market values. The common shares of JDS are valued at their book value as of the valuation date, computed from JDS' financial statements, which are audited by independent public accountants.  The Plan's financial statements are reported on the accrual basis of accounting.

Investments, HolliShare Highlight, p. 7 (1999) (modified to the colloquialisms of this complaint).  This passage, drawn from HolliShare's annual report, was the only disclosure of the transfer of preferred shares between the Schneider 1977 Trust and the Directors' Trust ("1999 Transaction")[20] found within a plan document.[21]  For an explanation of why this transfer occurred, the plaintiffs were forced to review past issues of the newspaper Hollister published for its employees, which stated (by way of example) the following:

On April 21, 1977, in an act of unprecedented generosity, John D. Schneider established the Schneider 1977 Trust for the benefit of his employees. Very simply, having no heirs of their own, Mr. and Mrs. Schneider decided to give their legacy - the beneficial ownership of Hollister - to the faithful associates whose hard work and talents had helped place the Company at the forefront of medical products manufacturers.

In a letter dated April 25, 1977, Mr. Schneider wrote to each of his employees (that letter was also published in a special edition of Hollister Highlights). In the letter, Mr. Schneider explained that as the controlling shareholder of Hollister's parent company, JDS, he was ensuring the continuity of Hollister by placing his shares in a Trust

---

[20] Because the Court is treating the April 2001 funding of the Directors' Trust and the April 1999 signing of the Directors' Trust instrument as the same fiduciary breach, plaintiffs have merged these counts into a single heading – *i.e.*, the 1999 Transaction.

[21] *Compare* HolliShare Highlights (1999 – present); *with* HolliShare Highlight (1976 – 1998), Summary Plan Description (1998 – 2006), *and* Form 5500 (1993 – 2005).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 12

under John D. Schneider which they would be voted for a period of 24 years in accordance with the policies and principles on which Hollister was built. When the Schneider 1977 Trust was established, there were time limits on the duration of Trusts[.]

In the letter to his employees, Mr. Schneider explained that, by taking the action of establishing the Schneider 1977 Trust, he was ". . . in this way ensuring that Hollister will continue in the years ahead to operate as an independent, employee-owned manufacturer of quality health care products." In the provisions of the Schneider 1977 Trust, Mr. Schneider specified that Trustees continue to honor the policies and principles "which have been the cornerstones of Hollister's development and success."

The Schneider 1977 Trust principles can be summarized as the following:
- Employee ownership
- Financial and investment management characterized by internal financing and capital development
- Growth through existing products, related new products and natural market expansion
- Conservative investments in plants and other assets outside the United States
- New products, improved products and acquisitions relating logically to Hollister's existing business, sales program and manufacturing processes and facilities
- Quality products, quality services and quality employees

The Schneider 1977 Trust expired on April 21, 2001. Several years before that date, Winn, Stempinski, and Zwirner, anticipating the termination of the Schneider 1977 Trust, began planning for the future. They believed that continued independence, employee ownership, and adherence to the policies and principles of Mr. Schneider, would be in the best interest of Hollister in the future. They prepared a document in which they put forth a formal proposal on the establishment of a new, JDS Trust, and they did this as fellow shareholders, not as Trustees of the existing Schneider 1977 Trust or Directors of the Company.

They were delighted to have their proposal affirmed by other initial grantors of the new Directors' Trust, who agreed in principle to establish –and fund – the new Directors' Trust. Those who were employee common shareholders agreed to the direct transfer to the new Directors' Trust of the preferred shares which would have been theirs when the original Schneider 1977 Trust terminated, and thus agreed to continue the Schneider legacy.  In a show of unanimous support, every single shareholder followed the lead of the grantors, and signed the new Directors' Trust document, which became operative on April 21, 2001.  Since Trust laws have changed and there are no longer time limits, the new Directors' Trust continues into perpetuity, for as long as Hollister exists.

In a special edition of Highlights coinciding with the establishment of the new Directors' Trust, Herbert, emphasized the fact that the continued success of Hollister was critical to the duration of the Directors' Trust.  He said that, "Just as we had 100% solidarity in support of the new Directors' Trust, we must have 100% solidarity in our shared goal of keeping Hollister at the forefront of healthcare products companies worldwide. We must strike a delicate balance, succeeding in the future, global business world while retaining the benefits of our independent, employee-owned 'small is beautiful' company."

Hollister Heritage: Establishment of Original Trust Gives Employees Equity Ownership, Hollister Highlights, Vol. 38, No. 2, pp. 3, 8 (2nd Qtr. 2002), *citing by reference* Hollister Highlights, Vol. 35, No. 2 (2nd Qtr./Special 1999) (modified to the colloquialisms contained within the complaint); Al Herbert Elected to the Board of Directors, Hollister Highlights, Vol. 34, No. 2, p. 1 (2nd Qtr. 1998); Hollister Heritage: Trustees Carry Out Mr. Schneider's Wishes, Hollister Highlights, Vol. 40, No. 2, pp. 2-4 (2nd Qtr. 2004) (same); Hollister Highlight – *Eighty Year Special Edition*, p. 5 (2001); The Transition Complete: Mike Winn Retires, Hollister Highlights, Vol. 37, No. 2, p. 1 (2nd Qtr. 2001).

DeFazio, et al., v. Hollister, et al., **Case No. 04-1358 WBS GGH**
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 14

32.     Repeated at every opportunity for the last 30 years, these statements conflict with the defendants' records, filings, and claims to the Court; and could be viewed as outright fraud.  And, because Rule 9(b) of the Federal Rules of Civil Procedure requires that fraud be pled with "particularity," the plaintiffs have incorporated the defendants' statements (and claims) within the body of this complaint to assure the Court that the following charges are responsible and supported, rather than defamatory and extortionate:

**Fraud regarding the necessity of the Directors' Trust**

33.     The most egregious breach of fiduciary duty, certainly the one best concealed, was when HolliShare fiduciaries – *viz.*, Hollister, Winn, Stempinski, Herbert, Zwirner, Karlovsky and McCormack – tricked Hollister employees who were selected to receive shares of JDS preferred stock from the Schneider 1977 Trust into transferring those shares into the Directors' Trust.

34.     Beginning with a letter sent by trustees of the Schneider 1977 Trust – *viz.*, Winn, Stempinski, and Zwirner – to ninety-one Hollister employees and plan participants on February 17, 1999 ("the 1999 letter"), the trustees falsely claimed that transferring the preferred stock into the Directors' Trust was necessary for Hollister to remain independent and employee-owned; necessary to adhere to the policies and principles set forth by Hollister's founder, John Schneider; and necessary to fulfill Mr. Schneider's dream of establishing a perpetual trust to control JDS.  *Ibid*, pp. 1-2, 15-17, 32.  All of HolliShare's fiduciaries at the time – *viz.*, Winn, Stempinski, Herbert, Zwirner, Karlovsky and McCormack – received courtesy copies of the 1999 letter and knew that it disseminated false information to participants.  *Id.*, p. 33.

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 15

35.     The Directors' Trust instrument, which was enclosed with the 1999 letter, contained these same misrepresentations and concluded with a statement by the initial Grantors – *e.g.*, Winn, Stempinski, Zwirner, Herbert, Karlovsky, and McCormack – that the Directors' Trust was necessary:

> [We] wish to provide for the corporate control, independence, ownership and governance of JDS Inc and Hollister in the future through (1) continued concentration of the controlling Shares of JDS Inc, pursuant to this Trust, and (2) continued adherence to the policies and principles as set forth in this Trust.

Winn et al., letter to employees, Enclosure No. 3, pp. 1, 4-9, Feb. 17, 1999. Again, all of HolliShare's fiduciaries – *viz.*, Hollister, Winn, Stempinski, Herbert, Zwirner, Karlovsky and McCormack – received courtesy copies of the 1999 letter and knew that it disseminated false information to participants.

36.     After establishing the Directors' Trust, a special edition of Hollister's newspaper repeated these same misstatements regarding the necessity of that trust:

> When the original [Schneider 1977] Trust was drafted, there were time limits required by law on the duration of trusts of this type. Mr. Schneider decided that the Trust be in place for 24 years, set to expire April 21, 2001, which coincided with the 80th anniversary of his first business. Trust laws changed eventually and it is now possible for trusts to be established in perpetuity.
>
> [Winn, Stempinski, and Zwirner] were personal friends or trusted employees and advisors of John Schneider, and he named the three of them as his successor to administer his Trust. In planning for the termination of the John Schneider Trust, they believed that continued independence, employee-ownership, and adherence to the policies and principles set forth by John Schneider would be in the best interest of Hollister in the future. . . .

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 16

New Trust Established, Hollister Highlights, Vol. 35, No. 2, p. 1 (2nd Qtr/Special Ed. 1999) (author unknown).

> When we proposed the new [Directors'] Trust to our fellow employee-owners of common shares of [JDS], we advised that we believe the continuation of the independent and employee-owned nature of Hollister, and its governance in accordance with John Schneider's policies and principles, is in the best interests of all Hollister employees. [. . .] Our model of an independent and employee-owned company in perpetuity provides the ideal structure to nurture commitment and loyalty in Hollister's employees.

A Great Company-An Enduring Company, A message from Michael C Winn, Loretta L Stempinski, and Richard T: Zwirner, Hollister Highlights, Vol. 35, No. 2, pp. 3-4 (2nd Qtr/Special Ed. 1999).

> We must strike a delicate balance, succeeding in the future, global business world while retaining the benefits of our independent, employee-owned "small is beautiful" company.

A Commitment to Continued Success, A message from Alan F. Herbert, Hollister Highlights, Vol. 35, No. 2, p.4 (2nd Qtr/Special Ed. 1999).

> Pictured on this and the next several pages are owners of common shares of [JDS]. These photos were taken as each individual signed the new [Directors' Trust] document, showing unanimous support of the [Directors' Trust] and thus ensuring the continuation of the legacy of John Schneider: that Hollister Incorporated remain independent and employee-owned for as long as it continues to exist.

Shareholders Sign Historic Trust Document, Hollister Highlights, Vol. 35, No. 2, p. 6 (2nd Qtr/Special Ed. 1999) (author unknown) (italics removed).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 17

> This vote [of the Schneider 1977 Trust beneficiaries] was the last event required to implement the grantors' historic recommitment of the company as an independent and employee-owned company, subject to John Schneider's policies and principles which have guided it successfully for decades. . . . This vote will serve to preserve for the current and future participants and beneficiaries of these trusts the structure which has produced the financial benefits which have flowed from the ownership of [JDS] common shares.
>
> The Trustees of [the Schneider 1977 Trust and HolliShare], all joined the employee common shareholders in this vote. This vote will serve to preserve for the current and future participants and beneficiaries of these trusts the structure which has produced the financial benefits which have flowed from the ownership of the parent company's common shares.

Parent Company Shareholders Affirm the Grantors' Action in Establishing the New Trust, Hollister Highlights, Vol. 35, No. 2, p. 11 (2nd Qtr/Special Ed. 1999).

37. Two years later, Hollister and its board republished these misstatements regarding the necessity of the Directors' Trust:

> [Winn] notified the members of the Board of Directors of Hollister of his intention to retire in May 2001. Together they identified several important issues that needed to be addressed: the termination of the original [Schneider 1977 Trust] in 2001 and what would replace it; [and] preservation of the values and principles of our founder[.] . . .
>
> Coinciding with [Winn]'s decision to retire, an important change to the laws in Illinois governing trusts was enacted.  This legislation meant that a trust could be established and allowed to continue into perpetuity (which was not the case when the original trust was established).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 18

> Because [the Hollister Board] believed that continued independence, employee-ownership, and adherence to the policies and principles set forth by John Dickinson Schneider would be in the best interest of Hollister in the future, the [Hollister] Board drafted a proposal which they shared with common shareholders who owned shares directly as employees.

The Transition Complete: Mike Winn Retires, Hollister Highlights, Vol. 37, No. 2, p. 1 (2nd Qtr. 2001).

38.    Winn made similar remarks that year in the Eighty Year Special Edition of the company newspaper (although in what capacity is unclear):

> [Winn] was particularly proud of the fact that he was leaving with a new trust in place that would ensure Hollister would remain independent and employee-owned.

Hollister Highlights – *Eighty Year Special Edition*, p. 5 (2001) (emphasis added).

39.    A year after that (three years after the 1999 Transaction), the trustees of the Directors' Trust would repeat these false statements in a subsequent edition of Hollister Highlights, as reprinted in paragraph 32 above.  Hollister Heritage: Establishment of Original Trust Gives Employees Equity Ownership, Hollister Highlights, Vol. 38, No. 2, pp. 3, 8 (2nd Qtr. 2002).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 19

40.   As recently as 2004, Hollister continued to publish claims by the trustees of the Directors' Trust – *viz.*, Winn, Stempinski, Zwirner, and Herbert – that extolled the necessity of that trust:

This year in the month of April, we celebrated two historical events: the 27th anniversary of the establishment of the original [Schneider 1977 Trust], and the 3rd anniversary of the establishment of the "new" [Directors' Trust], both of which were designed to help the Company remain independent and employee-owned. . . . [W]e thought it appropriate to revisit the history of these two Trusts and to take a moment to tell you a little more about each of the trustees and the important role they play in upholding the policies and principles on which Hollister is based.

***

When the original [Schneider 1977] Trust was drafted, there were time limitations imposed by law on trusts of its type. [] It was set to expire April 21, 2001, and, well in advance of that date, [Winn, Stempinski, and Zwirner], began planning for the termination of the original [Schneider 1977] Trust. All had been trusted friends of Mr. Schneider, and they believed that continued independence, employee ownership and adherence to the policies and principles of Mr. Schneider (as enumerated in the original Trust document), would continue to be in the best interest of Hollister Incorporated and its employees going forward.

***

On April 21, 1999, every employee shareholder [] agreed to transfer the preferred shares (which would have been theirs when the original [Schneider 1977] Trust terminated) to the new [Directors'] Trust, thus ensuring that the legacy of Mr. Schneider would continue – and because of changes to the law governing trusts, the new [Directors'] Trust (which became effective on April 21, 1999) will continue into perpetuity.

Hollister Heritage: Trustees Carry Out Mr. Schneider's Wishes, Hollister Highlights, Vol. 40, No. 2, p. 2 (2nd Qtr. 2004)

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 20

41.     Similar statements were also made by the JDS Board – *viz.* Winn, Stempinski, Herbert, and Zwirner – at a shareholders meeting, which Hollister published in 1998:

> Winn advised the plan under development will insure that the Company remains employee owned, private and independent . . . as it has been for decades . . . and will include a successor entity similar in function and purpose to the [Schneider Trust].

Al Herbert Elected to the Board of Directors, Hollister Highlights, Vol. 34, No. 2, p. 1 (2nd Qtr. 1998) (emphasis added).

42.     Despite these statements, the defense concedes that Mr. Schneider had already established a system that guaranteed JDS would remain independent and employee-owned.[22]  Under his system, ownership of JDS Stock was limited to shareholders who owned JDS stock prior to May 5, 1978; directors, officers, and employees of JDS (and its subsidiaries); and deferred benefit plans of JDS (and its subsidiaries).[23]  Shareholders who violate, or attempt to violate, these ownership restrictions are required to transfer their shares back to JDS within 90 days or face legal consequences.[24]  And no shares of JDS stock can be transferred unless those shares are first offered to JDS.[25]

---

[22] New Trust Established, Hollister Highlights, Vol. 35, No. 2, p. 1 (2nd Qtr/Special Ed. 1999); Hollister Heritage: Trustees Carry Out Mr. Schneider's Wishes, Hollister Highlights, Vol. 40, No. 2, p. 2 (2nd Qtr. 2004); Schneider Trust Instr., Art. Sixth, ¶ A.1 (Apr. 21, 1977); Hollister Heritage: Establishment of Original Trust Gives Employees Equity Ownership, Hollister Highlights, Vol. 38, No. 2, p. 3 (2nd Qtr. 2002).

[23] JDS Art. of Inc., Art. Five, ¶ II.C (1984 version).

[24] JDS Art. of Inc., Art. Five, ¶ II.D.6 (1978 version).

[25] JDS Art. of Inc., Art. Five, ¶ II.D.2 (1978 version).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 21

43.     When an individual shareholder is terminated (by death or any other reason), they are required to tender their JDS stock back to JDS for repurchase.[26]  This requirement applies to all individual shareholders, including the employee-beneficiaries who received preferred stock from the Schneider 1977 Trust.[27]  The only individuals beyond the reach of these restrictions were the founder, his wife and any trustees they designate pursuant to Paragraph[28] II.E of the JDS articles of incorporation ("JDS Articles").[29]

44.     Once the Schneider 1977 Trust expired, the trustees were instructed to distribute all shares of JDS stock (held within the corpus of that trust) to Hollister employees that already owned shares of JDS common stock and agreed (in writing) to abide by Mr. Schneider's principles and policies.[30]  This distribution included Mr. Schneider's preferred shares, which accounted for 97% of the voting stock.

45.     Because the Schneider 1977 Trust fell under the Paragraph II.E exemption,[31] it could transfer these preferred shares to these select employees free of the JDS stock restrictions. Hollister employees who received those shares were not so lucky. If the employees who received the preferred shares tried to dispose of those shares, or if they were terminated

---

[26]  JDS Art. of Inc., Art. Five, ¶ II.D.1 (1980 version).

[27]  JDS Art. of Inc., Art. Five, ¶ II.C (1980 version) (ownership limits); *id*. at ¶¶ II.D.1.a, II.D.1.b (buy back provisions); *id*. at ¶ II.D.2.a (right of first refusal).

[28]  Unless specified other wise, "Paragraph" refers to the corresponding paragraph in Article Five of the JDS articles of incorporation.

[29]  JDS Art. of Inc., Article Five, ¶ II.E (1978 version).

[30]  Schneider Trust Instr., Article Fifth, ¶ B.1 (Apr. 21, 1977); Parent Company Shareholders Affirm the Grantors' Action in Establishing the New Trust, Hollister Highlights, Vol. 35, No. 2, p. 1 (2nd Qtr/Special Ed. 1999).

[31]  Schneider Trust Instr., Article Second, ¶ B (Apr. 21, 1977).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 22

from Hollister's employment, then Paragraph II.D would require that they offer them back to JDS for repurchase and cancellation.[32]

46.    By contrast, deferred benefit plans of JDS, *e.g.*, HolliShare, could keep their stock forever since ERISA plans (unlike finite individuals) have an infinite duration and are under no obligation to sell.  As the number (and voting power) of the preferred stock owned by these employees naturally decreased, the voting power of the common stock owned by the Plan, which never has to sell its stock, would automatically increase. Eventually, JDS would purchase all of the outstanding preferred shares; HolliShare would own a majority of the only remaining class stock, *i.e.*, JDS common stock; and Mr. Schneider's goal of indirect employee ownership of his company would be realized.[33]

47.    But now – because a majority of the trustees for the Directors' Trust are "outsiders" – JDS is no longer independent and employee owned;[34] and Hollister is less likely to remain independent and employee owned with control over the preferred shares resting in the hands of the Directors' Trust. Hollister's stock is not bound by the JDS stock restrictions.[35]  Hollister's stock has no buy-back provisions, no rights of first refusal, no designated purchase prices, and no ownership restrictions. While JDS may own 100% of Hollister's stock today, nothing prevents the Directors' Trust from selling

---

[32]  JDS Art. of Inc., Article Five, ¶ II.G (1980 version); Schneider Trust Instr., Article Second, ¶ B.16 (Apr. 21, 1977).

[33]  The Life and Times of John Dickinson Schneider, Hollister Highlights, Vol. 39, No. 1, p. 5 (1st Qtr. 2003) (emphasis added); Mr. Schneider restates Hollister's policies & principles, Hollister Highlights, Vol. 10, No. 5, p. 1 (June 1977) (emphasis added); Schneider Trust Instr., Article Sixth, ¶ A.1.b (Apr. 21, 1977).

[34]  Hollister Heritage: Trustees Carry Out Mr. Schneider's Wishes, Hollister Highlights, Vol. 40, No. 2, p. 3 (2nd Qtr. 2004).

[35]  *Compare*, JDS Art. of Inc., Art. Five, ¶¶ II.C, and II.D (1978 version); *with* Hollister Art. of Inc. (entirety).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 23

that stock tomorrow. By transferring the preferred stock into the Directors' Trust (and control of JDS along with it), all the employees did was guarantee that Hollister would remain independent and employee-owned for as long as it's convenient to the Directors' Trust.[36]

48.     Nor was transferring the preferred shares to the Directors' Trust necessary to implement Mr. Schneider's policies and principles, as the Hollister Board claimed. Statements made by Mr. Schneider in 1977 (and trustees of the Directors' Trust in 2004) explain how control over JDS preferred stock provides only general supervision of Hollister's business; the officers and directors of Hollister actually shoulder the responsibility for integrating his (Mr. Schneider's) policies and practices into the day-to-day operations of Hollister.[37]

49.     Finally, plaintiffs have been unable to locate any evidence that Mr. Schneider desired to establish a trust that would control his company forever, or that that desire was thwarted by the rule against perpetuity.  As such, on information and belief, plaintiffs aver that contrary statements by HolliShare's fiduciaries were false, too.

50.     Because of these false statements, including the ones expressed prior to the passage of the 1999 Transaction, each of HolliShare's fiduciaries – *viz.*, Hollister, Winn, Stempinski, Zwirner, Herbert, Karlovsky, and McCormack – played a role in fraudulently inducing the employee shareholders to support the 1999 Transaction and fund the Directors' Trust.

---

[36]   Directors' Trust Instr., Article Fifth, ¶ G, pp. 23-24 (Apr. 30, 1999).

[37]   Mr. Schneider restates Hollister's policies & principles, Hollister Highlights, Vol. 10, No. 5, p. 1 (June 1977); Hollister Heritage: Trustees Carry Out Mr. Schneider's Wishes, Hollister Highlights, Vol. 40, No. 2, p. 3 (2nd Qtr. 2004).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 24

**Breach of loyalty, care, and prudence in creating the Directors' Trust**

51.    HolliShare's fiduciaries knew of other ways to preserve Hollister's independent/employee-owned status and adhere to Mr. Schneider's policies and practices that did not require HolliShare to surrender majority ownership and eventual control of these companies to the Directors' Trust. By way of example, the Agreement to Vote that was enclosed with the 1999 letter (Enclosure 4), provided a mechanism whereby employees entitled to receive JDS preferred shares would "vote and otherwise deal with all preferred shares" received from the Schneider 1977 Trust in accordance with the policies and principles set forth by John Schneider.[38]

52.    But had ownership of the JDS preferred shares transferred to Hollister's employees, the trustees of the Schneider 1977 Trust would lose their ability to appoint the directors, officers, and managers of JDS and Hollister; and forego their absolute control over the companies.[39]  To eliminate this outcome (and entrench themselves as management), the trustees proposed the Directors' Trust and offered their employees the option of funding that trust (*i.e.*, the 1999 letter).[40]  In so doing, the trustees of the Schneider 1977 Trust created a conflict of interest between HolliShare's fiduciaries and the Plan.

---

[38]  Winn et al., <u>letter to employees</u>, Encl. 4 (Agreement to Vote), pp. 4-7, Feb. 17, 1999, *citing, inter alia*, Schneider Trust Instr., Article Sixth (Apr. 21, 1977); *accord* Schneider Trust Instr., Article Fifth, ¶ B.1 (Apr. 21, 1977)

[39]  Schneider Trust Instr., Article Sixth, ¶ C (Apr. 21, 1977) (emphasis added) (modified).

[40]  *Id*., Encl. 5 (Consent).

<u>DeFazio, et al., v. Hollister, et al.</u>, Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 25

53.     To protect Hollister's independence and employee-owned status, the JDS articles that allowed the JDS Board – *viz.*, Herbert, Stempinski, Winn, and Zwirner – to force shareholders who disregard JDS stock restrictions (*i.e.*, employees scheduled to receive the preferred shares) to sell their shares back to JDS within 90 days of the discovery of such a transgression.[41]

54.     HolliShare's trustees – *viz.*, Zwirner, McCormack and Karlovsky – could block harmful amendments to the JDS articles (*e.g.*, allowing the Directors' Trust to own stock) because Paragraph III required approval of a 2/3 majority in each class of stock to change the JDS stock restrictions and the Plan owned over 66% of the common shares in 1999.

55.     Finally, Hollister's Board – *viz.*, Herbert, Stempinski, Winn, and Zwirner – had oversight of the plan's trustees and could remove them for breaches of fiduciary duty (*e.g.*, voting in favor of harmful amendments).

56.     Because they were personally benefiting from the 1999 Transaction, HolliShare's fiduciaries – *viz.*, Hollister, Winn, Stempinski, Herbert, Zwirner, McCormack, and Karlovsky – ignored these systemic protections, as evinced by: 1.) the failure of the JDS Board to exercise JDS's right to repurchase the preferred stock – contained within the corpus of the Schneider 1977 Trust – as soon Hollister's employees created an interest (both legal and equitable) in favor of the Directors' Trust; 2.) the failure of the HolliShare trustees to vote against the harmful amendments to fund the Directors' Trust; and 3.) the failure of the Hollister Board to remove plan trustees once it became apparent that they would vote – or had voted – for those harmful amendments.

---

[41] JDS Art. of Inc., Art. Five, ¶ II.D.6 (1978 version).

**DeFazio, et al., v. Hollister, et al.,** Case No. 04-1358 WBS GGH
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 26

57.   To avoid liability for these breaches, Winn, Stempinski, and Zwirner fraudulently concealed from employees – in two editions of Hollister Highlights – that they had disavowed the positions that conferred fiduciary when they proposed the Directors' Trust:

> [Winn, Stempinski, and Zwirner] reduced their thoughts to a written proposal which they shared with common shareholders who own shares directly as employees. And they did this as fellow shareholders, not as Trustees of the existing [Schneider 1977] Trust or as directors of the company.

New Trust Established, Hollister Highlights, Vol. 35, No. 2, p.2 (2nd Qtr/Special Ed. 1999).

> All three were also shareholders of the parent company. They wrote a proposal, which they shared with the other individual shareholders who owned common shares, and they did this as fellow shareholders not as trustees of the original Trust or as directors of the Company.

Hollister Heritage: Trustees Carry Out Mr. Schneider's Wishes, Hollister Highlights, Vol. 40, No. 2, p.2 (2nd Qtr. 2004).

58.   In reality, none of the plan's fiduciaries disavowed their fiduciary status when pitching the Directors' Trust to participants and employees. Instead, the 1999 letter cautioned:

> You should be aware that [Winn, Stempinski, and Zwirner] have current and future positions with [JDS], Hollister, [Schneider 1977 Trust] and the [Directors'] Trust, and financial interests in the Common Shares of JDS[], which may be different from yours. . . . Regardless of these differences, however, we believe that we share with you an appreciation for John Schneider's legacy of employee ownership and for the generous manner in which he sought to preserve that legacy for us.

Winn et al., letter to employees, p. 3, Feb. 17, 1999 (modified) (underline added).  The reader was then "encouraged" to review a three-page summary identifying Winn, Herbert, Stempinski, Zwirner, Karlovsky, and

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 27

McCormack as plan trustees or named fiduciary (or both). *Id.*, pp. 4, 30-31, 34-35.

59.     Nor did HolliShare's fiduciaries reveal during the 1999 Transaction that they were placing their desire to entrench themselves as managers of JDS and Hollister (at the expense of plan participants and beneficiaries).

60.     Winn, Stempinski, and Zwirner breached their duty of loyalty by abdicating their fiduciary responsibilities without adequately safeguarding the Plan's interests.

61.     Plaintiffs also aver on information and belief that Winn, Herbert, Stempinski, Zwirner, McCormack and Karlovsky recognized that a conflict of interest existed between themselves and the Plan, yet failed to appoint a neutral fiduciary to represent the interests of the Plan during the 1999 Transaction.

62.     Plaintiffs also aver on information and belief that Winn, Herbert, Stempinski, Zwirner, McCormack and Karlovsky failed to engage in an intensive and scrupulous independent investigation of the Plan's options – to ensure that they act in the best interests of the plan participants and beneficiaries – before engaging in the 1999 Transaction.

**Voting the Plan's JDS stock in an imprudent and disloyal manner**

63.     None of the defendants engaged in an intensive and scrupulous independent investigation of their options, to insure that they act in the best interests of the plan participants and beneficiaries, when voting the Plan's shares of JDS common stock.

64.     This failure to act with care, prudence and loyalty – when voting the Plan's shares of JDS common stock – allowed JDS to burden plan assets with stock restrictions that promoted self-dealing (insider) transactions with plan assets.

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 28

65.     Beginning with the Re-Statement of the JDS Articles, which occurred on May 25, 1978, we see that Zwirner, Stempinski, and Groneberg, as HolliShare trustees voted unanimously in favor of re-establishing the restrictions on the sale of JDS stock:[42]

    a.    Limits on the owners of JDS common stock, to reduce the pool of potential buyers for plan assets.

    b.    A right of first refusal, to guarantee that JDS is the only buyer for plan assets.

    c.    Limits on the purchase price, to secure that JDS never has to pay more than book value.

    d.    Buy-back provisions, to rotate JDS common stock back to JDS on a regular basis.

    e.    Mandatory payment using a promissory note, to ensure that JDS has sufficient cash on hand to execute its rights.

    f.    Prohibitions regarding the sale of 50% or more of JDS common stock without approval of the all common stock owners.

This 1978 amendment is the basis for JDS's absolute (discretionary) control over plan assets.

66.     Most of the stock restrictions contained in the pre-1978 version of the JDS Articles, *i.e.*, the 1972 version, were either inapplicable to the Plan or less onerous than the restrictions the trustees agreed to in 1978.  For example, sales of JDS common stock to JDS were exempt from the stock restrictions;[43] there were no ownership restrictions; the book value buy-back provisions were limited to employee shareholders;[44] and the scope of exempt

---

[42]    JDS Art. of Inc., Art. Five (1978 version).

[43]    JDS Art. of Inc., Art. Five, ¶ II.4 (1972 version).

[44]    JDS Art. of Inc., Art. Five, ¶ II.3 (1972 version).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 29

parties was greater, and included the lineal descendants of Eva Schneider (and the spouse, surviving spouse, trustee of those lineal descendants).[45]

67.    On November 21, 1980, HolliShare's trustees – *viz.*, Zwirner, McCormack, Simon, and Schellentrager – agreed to an amendment that increased the dividends for shareholders of JDS preferred stock from 6% to 12%, and made those dividends "cumulative" rather than "noncumulative."[46] This amendment was harmful, as the Plan primarily invests in JDS common stock and that investment will "substantially" fail if JDS lacks sufficient cash reserves to buy-back that stock. Any increased dividend amounts reduces JDS's cash reserves, and thus increased the risk of plan failure.

68.    On August 13, 1984, trustees of the Plan and the Schneider 1977 Trust – *viz.*, Winn, Stempinski, Zwirner, McCormack, and Schellentrager – amended JDS's articles to strike GAAP as the standard used to value plan assets (*i.e.*, JDS common stock), and permit JDS's auditor to submit "qualified" opinions of JDS's financial status.[47] Of course, accountants only qualify their opinions when they have insufficient evidence supporting the transactions of the businesses being audited.[48] By agreeing to this amendment, HolliShare's trustees granted JDS the right to value plan assets regardless of whether that value is supported by verifiable evidence, and regardless of whether that value was calculated in a manner inconsistent with GAAP. In essence, they gave JDS permission to make-up numbers when valuing JDS common stock.

---

[45]    JDS Art. of Inc., Art. Five, ¶ II.4 (1972 version).

[46]    JDS Art. of Inc., Art. Five, ¶ II.A (1980 version).

[47]    JDS Art. of Inc., Art. Five, ¶ II.D.3.b (1984 version).

[48]    *See* Joel G. Siegel & Jae K. Shim, Dictionary of Accounting Terms, Barron's Educational Series, Inc., at 356 (3rd ed.2000) (defining "Qualification" and "Qualified Opinion").

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 30

69.    On March 18 1999, trustees of the Plan and the Schneider 1977 Trust – *viz.*, Winn, Stempinski, Zwirner, McCormack, and Karlovsky – amended the JDS articles to increase the amount of cash JDS paid shareholders for JDS common stock from $5,000.00 to $250,000.00, and to increase the interest rate payable on promissory notes (from 6%-9%) to 8%-12%.[49]  But, once again, the Plan only survives because JDS has sufficient cash on hand to buy back shares of common stock.  By increasing the amount of cash paid to shareholders who sell JDS stock, these defendants knowingly reduced the amount of cash available to JDS and decreased the long term book value of JDS common stock.

70.    On March 18, 1999, trustees of the Schneider 1977 Trust – *viz.*, Winn, Stempinski, Zwirner – also eliminated any personal liability for monetary damages that the members of the JDS Board and Hollister Board could suffer for breaching their fiduciary duties to shareholders (*i.e.*, HolliShare and JDS).[50]

71.    The indemnity amendment to the Hollister articles was never disclosed to plan participants or beneficiaries.

72.    By contrast, the indemnity amendment to the JDS articles was disclosed to plan participants and beneficiaries in the 1999 letter. Specifically, Enclosure 2 of the 1999 letter falsely stated (on February 17, 1999) that the indemnity amendment was incorporated into the JDS articles when, in fact, that amendment was adopted on March 18, 1999.  Winn et al., letter to employees, Encl. 2 (JDS articles), p. 9, Feb. 17, 1999. Plan fiduciaries – *viz.*, Winn, Herbert, Stempinski, Zwirner, McCormack, and

---

[49]    JDS Art. of Inc., Art. Five, ¶ II.D.4.b (March 1999 version).

[50]    Hollister Art. of Inc., Article Ten; JDS Art. of Inc., Article Six (March 1999).

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 31

Karlovsky – knew that statement was false but never corrected participants' misperception.

73.    The amendment increasing the amount of cash and interest paid by JDS to purchase common stock was also disclosed in the 1999 letter. Like the indemnity amendment, however, Enclosure 2 falsely stated that the increase in cash and interest was already incorporated into the JDS articles when, in fact, it was actually adopted on March 18, 1999. *Id.*, pp. 5-6. Again, plan fiduciaries – *viz.*, Winn, Herbert, Stempinski, Zwirner, McCormack, and Karlovsky – knew that statement was false but never corrected participants' misperception.

74.    On June 23, 1999, trustees of the Plan and the Schneider 1977 Trust – *viz.*, Winn, Stempinski, Zwirner, McCormack, and Karlovsky – made the following changes to the JDS Articles:

   a.    Paragraph II.C was amended so that the Directors' Trust could own JDS stock;[51] and

   b.    Paragraph II.H was added (and concealed) so that Paragraph II.D could be bypassed, and the preferred shares moved to the Directors' Trust.[52]

Without these amendments, the 1999 Transaction would fail as Paragraph II.C prevented the Directors' Trust from maintaining an equitable title in the preferred shares; and Paragraph II.D precluded the transfer of those shares from the Hollister employees to the Directors' Trust.

---

[51]    JDS Art. of Inc., Article Five, ¶ II.C (June 1999 version).

[52]    JDS Art. of Inc., Article Five, ¶ II.H (June 1999 version).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 32

75.    On June 23, 1999, trustees of the Plan and the Schneider 1977 Trust also amended the JDS articles to eliminate Paragraph II.E and the potential market for JDS common stock created by that paragraph (*i.e.*, trustees of Mr. and Ms. Schneider). Unlike the amendments to Paragraphs II.C and II.H, the elimination of Paragraph II.E was never disclosed in the 1999 letter. Winn et al., <u>letter to employees</u>, Encl. 6 (proposed amendments), Feb. 17, 1999. Plaintiffs aver that that omission was an intentional effort by plan fiduciaries – *viz.*, Winn, Herbert, Stempinski, Zwirner, McCormack, and Karlovsky – to conceal their intent to eliminate a potential market for plan assets by falsely omitting key facts.

76.    On June 23, 1999, trustees of the Plan and the Schneider 1977 Trust also amended the JDS articles to prevent natural persons from owning more than 10% of JDS stock.[53]  So, even if an outside buyer willing to purchase 100% of the common shares could be located, JDS articles would preclude such a sale by the Plan if that buyer were a natural person.[54]

77.    Except for the incomplete disclosure in HolliShare's annual report of the amendment allowing the Directors' Trust to own JDS stock, HolliShare fiduciaries concealed every vote of JDS stock that occurred in the 30 years that preceded this lawsuit.

78.    Plaintiffs had no knowledge of the JDS articles; what amendments were passed; when those amendments were passed; and who voted in favor of those amendments prior to the defense's lodging of the JDS articles on November 14, 2005.[55]

---

[53]  JDS Art. of Inc., Art. Five, ¶¶ II.D.8 and II.E (June 1999 version).

[54]  JDS Art. of Inc., Art. Five, ¶ II.D.8 (June 1999 version).

[55]  Case No. 05-1726, Docket 42, Exh. B (Nov. 14, 2005).

<u>DeFazio, et al., v. Hollister, et al.</u>, Case No. 04-1358 WBS GGH
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 33

79.     In 2006, plan trustees broke their silence and included the following statement to HolliShare's Form 5500 filing:

> ***Voting Rights***-The Trustees are required to vote any JDS inc common shares on behalf of the collective best interest of plan participants and beneficiaries subject to terms and conditions of the Trust."

Notes to Financial Statements as of and for the years ended December 31, 2005 and 2004, 2005 Form 5500, p. 5 (Oct. 12, 2006) (emphasis in original).

80.     Plaintiffs aver that this passage was in response to a complaint – filed four months earlier – that included ERISA claims based on breaches of fiduciary duty regarding votes of JDS stock, and designed to lull plan participants and beneficiaries into a false sense of security regarding prior votes of the Plan's common shares; insinuate that all amendments to JDS's articles were in the best interest of the Plan; and avoid uncomfortable questions of whether HolliShare's trustees breached their fiduciary duty.

81.     Even though they knew (or should have known) that using plan assets in such a way would cause JDS to continue undervaluing plan assets and prevent the Plan from ever acquiring control over JDS, HolliShare trustees failed to exercise the Plan's shareholder powers to divert assets to plan fiduciaries (and other insiders), entrench the members of the JDS and Hollister Boards, and direct control over JDS and Hollister to that management group.

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 34

82.    Despite their apparent conflict in loyalty, HolliShare's fiduciaries failed to engage in an intensive and scrupulous independent investigation of their options, to insure that they act in the best interests of plan participants and beneficiaries. In fact, the conflict faced over creation of the Directors' Trust was so extensive that all of fiduciaries who were serving between 1999 and 2001 should have removed themselves from this issue and sought an independent assessment.

### Undervaluing plan assets for the benefit of the employer sponsor

83.    Because of the high potential for abuse, ERISA establishes a blanket prohibition against selling plan assets to employer sponsors unless certain requirements are satisfied at the time of transfer.[56] One such requirement is that the Plan receives adequate consideration when engaging in each prohibited transaction, *e.g.*, the sale of that common stock back to JDS.[57]

84.    The Plan must get fair market value with each sale of stock, as determined in good faith by the trustee or named fiduciary pursuant to the terms of the Plan and in accordance with regulations promulgated by the Secretary.[58] An identical requirement exists when determining the value of retirement benefits that a participant receives under ERISA, except that an orderly liquidation must also be considered.[59] To ensure that minimal standards of competence are maintained, ERISA also requires that plan

---

[56]  29 U.S.C. § 1106(a)(1)(A).

[57]  29 U.S.C. § 1108(e)(1).

[58]  29 U.S.C. § 1002(18) (emphasis added); *Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610, 618-619 (2nd Cir. 2006) (string cite omitted).

[59]  *Foltz v. U.S. News & World Report, Inc.*, 663 F.Supp. 1494, 1516-1518 (D.D.C. June 22, 1987), *citing, inter alia*, 29 U.S.C. § 1002(26) ("Current value" defined); Revenue Ruling 80-155, 1980-1 C.B. 84.

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 35

fiduciaries adhere to duties of loyalty, care, and prudence – especially when engaging in prohibited transactions.[60]

85.    The Plan imposes similar requirements, as Section 11.01(1)(a) requires HolliShare's trustees to exercise their powers in the sole interests of, and for the exclusive purpose of providing benefits to, participants and beneficiaries; Section 11.01(1)(b) requires them to adhere to the prudent person standard; and Section 11.01(1)(b)(ii) bars "prohibited transactions" involving JDS stock.

86.    Despites these duties, none of the defendants acted with "an eye single to the interests" of HolliShare when valuing or selling plan assets, as they instead chose to adhere to Sections 11.01(2) and 7.03, and sell plan assets to JDS for a fraction of what they are worth.

87.    When selling plan assets to JDS, none of the defendants engaged in an intensive and scrupulous independent investigation of their options, to insure that they act in the best interests of plan participants and beneficiaries.

88.    HolliShare's trustees never valued the Plan's assets – *i.e.*, JDS common stock – as they thought they had no discretion to do so.

89.    Members of the JDS and Hollister Board never secured an independent assessment from a financial advisor, appraiser, or legal counsel, when valuing the Plan's shares of JDS common stock. And, to the extent they attempted to secure such an assessment, these board members failed to: (1) investigate the expert's qualifications, (2) provide the expert with complete and accurate information, and (3) make certain that reliance on the expert's advice was reasonably justified under the circumstances.

---

[60]    29 U.S.C. §§ 1104(a)(1)(A)-(D); Adams, Doctrine of Equity, §§ 59-60, pp. 215-216 (3rd ed. 1855).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 36

90. Hollister – who was responsible for carrying out the duties of the Plan and compliance with ERISA – also did nothing to value plan assets.

91. Notwithstanding an obvious conflict of interest, JDS – and by extension the JDS Board – was the only fiduciary valuing plan assets, as HolliShare's fiduciaries have made clear that the only selling price of JDS common stock was the price at which JDS was willing to pay and, if the Plan wanted to sell its shares, it had to sell them at that price.

92. Unfortunately, JDS kept the selling price artificially low for its benefit, rather than at fair market value for the benefit of plan participants and beneficiaries. This was accomplished by redefining "fair market value" so that it is synonymous with book value calculated by JDS in a method that fairly reflects generally accepted accounting principles ("GAAP").[61]

93. This new definition of fair market value, which the defendants have knowingly adopted, departs markedly from both the traditional definition and the method advocated by the DOL, as it lacks a willing seller; a choice of whether to engage in the transaction; free and equal negotiation; application of any business principles; an independent appraisal; an independent fiduciary; a written report regarding value; a prudent investigation; orderly liquidation; good faith determinations; and adherence to the recognized definition of "fair market value."[62]

---

[61] JDS Art. of Inc., Art. Five, ¶ II.D.3.b (1984 version); HolliShare Trust Instr., § 11.01(2).

[62] 53 Fed. Reg. at 17634; Rev.Rul. 59-60, 1959-1 C.B. 237.

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 37

94.  By way of example, if you bought a house in 1970 for $76,000.00, the book value of that house would be $76,000.00.  Thirty seven years later, when the market is selling comparable house in your area for $850,000.00, the book value would still be $76,000.00. Now, if you decided to sell that house, would you sell it for $76,000.00 (book value), or $850,000.00 (market value)? If you're using the traditional definition of fair market value, the house is worth $850,000.00; if you're the defendants using the revised definition, the house is worth $76,000.00. That difference in price is the rub of the defendants' methods and crux of the plaintiffs' claims.

95.  The underlying equity interest in JDS common stock – *i.e.*, the difference between fair market value and book value – reverts back to JDS with every sale of plan assets, and allowed the defendants to use the Plan as a billion dollar tax shelter and piggy-bank (a fact concealed from participants).

96.  Defendants' new definition of fair market value also directly conflicted with requirements of ERISA, as it: 1.) relieved plan fiduciaries from valuing plan assets for sale to JDS; 2.) artificially depressed the amount of benefits each retiree received; and 3.) dictated what constituted loyalty, prudence, and ERISA compliance.

97.  While nothing within this complaint should be viewed as alleging an ERISA claim based on the drafting of HolliShare's trust instrument, *i.e.*, the settlor doctrine, the defendants nevertheless breached their fiduciary duties by adhering to that instrument, and by drafting (and adhering to) other instruments and agreements designed to eliminate their responsibilities and liabilities under ERISA.

98.     Nor did HolliShare's trustees demand that the JDS Board invoke Paragraph II.D.7.a, so that the Plan could avoid the draconian stock restrictions on JDS stock, and negotiate a more favorable purchase price on "other such conditions" as the parties might agree.

99.     Plaintiffs aver that ERISA compliance is an exceptional circumstance that demanded the directors depart from their book-valuation methods, adhere to the DOL's proposed regulations, and buy the Plan's shares at an unrestricted fair market value. Considering the Plan was under no obligation to sell its shares of JDS stock, and could refuse to sell them unless the directors agreed to negotiate a higher purchase price (a valid demand, in light of Mr. Schneider's original system), HolliShare's trustees refusal to press the JDS Board to pay more than book value is inexcusable.

100.    Another breach of care, prudence, and loyalty was the defendants' failure to investigate whether anyone else was interested in purchasing Hollister or JDS; and their failure to recognize that the Plan could, and most likely would, get more than book value if an offer was made. In so doing, they ignored the reality that the Plan was under no duty to sell its common stock; and, with over 50% of the outstanding common shares, could block any sale of JDS unless the JDS Board invoked Paragraph II.D.7.a and offered more than book value.[63]

101.    On information and belief, the plaintiffs aver that outside buyers (*e.g.*, Johnson & Johnson, 3-M) were, and remain, interested in purchasing 100% of JDS common stock or a controlling interest in Hollister.

---

[63]   JDS Art. of Inc., Art. Five, ¶ II.D.5 (1978 version).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 39

**Concealing other potential markets from plan participants**

102.   Defendants also refused to investigate whether other entities were interested in buying common stock, even though the Schneiders' trustees could purchase JDS common stock and not be bound by the draconian restrictions of Paragraphs II.C and II.D.[64]

103.   During their tenure as fiduciaries, each defendant knowingly represented to plan participants and beneficiaries that no other market for JDS stock existed; JDS always had an absolute right to purchase JDS common stock from the Plan at book value; and that right has always been (and would always be) enforced.  *See* HolliShare Highlight (1976 – 1998), Summary Plan Description (1998 – 2006), and Form 5500 (1993 – 2005).

104.   Plan fiduciaries in 1999 – *viz.*, Winn, Herbert, Stempinski, Zwirner, McCormack, and Karlovsky – also fraudulently concealed (or knowingly allowed co-fiduciaries to fraudulently conceal) Ms. Schneider's right to buy and sell unrestricted JDS common stock under Paragraph II.E. Instead, the 1999 letter claimed that Ms. Schneider could own stock because "of her close and continuous working relationship with JDS Inc and Hollister over a long period of time." Winn et al., <u>letter to employees</u>, p.7, Feb. 17, 1999.  This claim conflicts with the ownership restrictions codified in Paragraph II.C, and conceals her rights under Paragraph II.E. Plaintiffs believe that these fiduciaries misrepresented Ms. Schneider's rights under the JDS articles to conceal Winn, Stempinski, and Zwirner's identical right and ability to purchase unrestricted plan assets – *i.e.*, JDS common stock.

---

[64]   JDS Art. of Inc., Art. Five, ¶ II.E (1978 version).

<u>DeFazio, et al., v. Hollister, et al.</u>, Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 40

105.   Plaintiffs have discovered at least two trusts (maybe three) that fall under Paragraph II.E exception – *i.e.*, the Schneider 1977 Trust; Schneider Charitable Trust; and the Schneider 1957 Trust – and that were willing and able to purchase JDS common stock.

106.   Plaintiffs aver that the defendants intentionally and fraudulently concealed the existence of the potential market created by these trusts from plan participants and beneficiaries.

107.   By eliminating this potential market for plan assets, the defendants thus committed a substantial breach of fiduciary duty.

108.   Assuming *arguendo* that neither the Schneider 1977 Trust, the Schneider 1957 Trust, nor the Schneider Charitable Trust fell under the Paragraph II.E exception, plaintiffs aver (on information and belief) that trusts, which do fall under this exception, exist and that HolliShare's fiduciaries failed to investigate their existence, negotiate with them upon discovery, or disclose their existence to plan participants and beneficiaries.

**Zwirner intentionally breached his fiduciary duties to the Plan**

109.   At least one HolliShare trustee, Zwirner, had specific reason to know of JDS's one-sided and disadvantageous transactions with the Plan. As a trustee of the Schneider 1977 Trust and Schneider Charitable Trust, he knew that both trusts fell under Paragraph II.E, and could buy (and sell) JDS common stock without restriction. As a member of the JDS Board, he also knew that JDS common stock was worthless because the board could manipulate its value with no notice or warning.

110.   At the time that he served as HolliShare's trustee, Zwirner knew that JDS common stock was not worth book value and that JDS was taking substantial guaranteed profits at HolliShare's expense. Even so, when acting as a fiduciary and HolliShare trustee, Zwirner failed to disclose to participants, beneficiaries, other-fiduciaries, and the DOL that the Schneider

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 41

1977 Trust, the Schneider 1957 Trust, and Schneider Charitable Trust were potential markets for JDS stock; he failed to offer the Plan's shares of JDS common stock to these Schneider trusts; and failed to question (on behalf of the Plan) the economic rationale for HolliShare's annual no-negotiation sale of plan assets to JDS.

111.   Examples of his failure to disclose are found in every HolliShare Form 5500 filing, summary plan description, and annual report, as none of these documents disclosed the potential market for plan assets created by Paragraph II.E.

112.   Had Zwirner fulfilled his duties, participants, beneficiaries, other fiduciaries, and the DOL would have discovered sooner (rather than later) that the Plan's annual sale of JDS common stock to JDS was for inadequate consideration, and was thus an unexcused prohibited transaction.

113.   Participants, beneficiaries, other fiduciaries, and the DOL would also have learned of the imprudence of the Plan's continued investments in JDS common stock and of the Hollister Board of Directors' disloyalty.

114.   At no time did Zwirner take action to protect the Plan's investments in JDS common stock from loss despite the specific information known to him relating to the potential market for JDS common stock (or lack thereof).

115.   At no time did Zwirner inform the Plan's participants, beneficiaries, other fiduciaries, or the DOL of this potential market, although he knew (or should have known) that the existence of the Schneider 1977 Trust and Schneider Charitable Trust cast doubt on the prudence and loyalty of selling JDS common stock to JDS at book value with no negotiation.

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 42

**Substantial risk of JDS common stock failure because of insider trading**

116.   Mr. Schneider integrated HolliShare into a system, which he created, to ensure that his employees would inherit his company.  In turn, his trustees – *viz.* Winn, Stempinski, and Zwirner – ceremoniously dismantled that system so they could keep their jobs and maintain their absolute control over JDS. One consequence of their *coup d'etat* is that HolliShare only has value because they say so.

117.   Under the system they created, the trustees of the Schneider 1977 Trust can appoint themselves to the JDS Board, and use the JDS stock restrictions to manipulate the value of the common stock so that they alone control the price at which it is sold and, by extension, the value of retirement accounts based on those sales. This poses a serious problem for the Plan, as HolliShare's trustees continue investing in JDS common stock, even though the system that mandated that investment no longer exists and the stock is unmarketable.

118.   What's worse is that plan trustees – *viz.*, Zwirner, McCormack, and Karlovsky – were integral in creating (and implementing) the current system used to undermine the value of plan assets; and were aware, or should have been aware, of the mounting problems generated by their conduct. They played a pivotal role in creating (and funding) the Directors' Trust; eliminating HolliShare's vested ownership of JDS; amending the JDS articles to the detriment of the Plan; and establishing the system that drained all value from the Plan.

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 43

119.   When the 1999 Transaction occurred, and the system that Mr. Schneider established was gutted like a fish, HolliShare's fiduciaries could not have reasonably believed that continued adherence to the Plan's terms, and investment in JDS common stock, was in keeping with Mr. Schneider's wishes or his expectations of how a prudent trustee would operate. In fact, the 1999 Transaction changed the circumstances of the Plan to such an extent that every plan fiduciary to follow should have realized that the only way to effectuate the purposes of the Plan was by deviating from the Plan's direction, or by contracting out investment decisions to an impartial outsider.

120.   At the very least, those fiduciaries should have investigated the propriety of holding that common stock, *e.g.*, get expert opinion or independent evaluation. By failing to diversify the Plan's investments under these circumstances – to minimize the risk of large losses when it was clearly prudent to do so – plan fiduciaries violated ERISA.[65]  Candidly, HolliShare would have been better served investing in Monopoly™ money rather than JDS common stock. (At least Monopoly™ money can be sold on the open market.)

121.   Plaintiffs freely concede that this case does not present a scenario where a company's financial situation is seriously deteriorating, or on the brink of collapse. Rather, they have discovered that the Plan's financial situation has already deteriorated and has already collapsed – assuming *arguendo* that the defendants' method of valuing plan assets is valid.

---

[65]   29 U.S.C. § 1104(a)(1)(c).

**DeFazio, et al., v. Hollister, et al.**, Case No. 04-1358 WBS GGH
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 44

122.   Any value still clinging to the common stock is an illusion, created by sleight of hand and a few accounting tricks, as management could manipulate the book value of the company to zero with no precipitous decline to warn retirees that their accounts are in danger (*e.g.*, Enron or WorldCom). Even the defendants acknowledge that the value of common stock could be "substantially reduced"[66] if JDS chose not to repurchase the Plan's shares.

123.   For example, Hollister is a global supplier of medical equipment with an unrestricted fair market value of over $1.4 billion and a book value of $200 million (assuming the company's ratio of book-to-fair market value matches the current industry average). If the trustees of the Directors' Trust ordered the JDS Board to issue a dividend of $200 million to the preferred shareholders, they (the trustees) would still have control over a billion dollar company and $200 million in cash (courtesy of the Directors' Trust) but JDS would have a book value of zero and the Plan's shares of JDS common stock would be worthless.

124.   This is by no means an impossible scenario. In December 1979 a dividend was issued to the shareholders of JDS preferred stock, which required a restatement of the per share book value of JDS common stock from $9.62 to $9.60.[67]  While limited to 2¢, the dividend could just as easily caused a $9.62 restatement – draining the life out of the Plan.

---

[66]   Closely Held Nature of JDS Stock, HolliShare Highlights (1978-2005); and Trust Earnings and Investments, Summary Plan Description, pp. 15 - 16 (Jan. 1, 1998 – Jan. 1, 2006); Trust Performance, HolliShare Summary Annual Report, p. 4 (1976).

[67]   Schedule of Investments, HolliShare Highlights, fn. 9 (1980).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 45

125. Of course, the opposite is also true, and stock value that departs from the market can also be manipulated upwards – as Enron and WorldCom both demonstrated. On information and belief, plaintiffs aver that the growth rate of JDS common stock was itself artificially inflated to a rate normally reserved for pyramid scams and Ponzi schemes. In fact, the value of JDS common stock grew at an average annual rate of 51% from January 1, 1974 until December 31, 1985; a compound growth rate of 17.53% over the last 30 years (outperforming the Standard & Poors 500 Index by almost 10% during the same period); 67% since this lawsuit was initiated; and has "without exception, increased every year" since the Plan's inception.

126. None of this was disclosed to Hollister's employees. Instead, they were told that the value of HolliShare was dependent on Hollister's performance, and that only through each employee's hard work and dedication would their accounts increase in value:

> Once again, the performance of the Trust has been outstanding. Your efforts to increase sales, improve productivity, and control costs and expenses have resulted in improved operating results for Hollister. We have all shared in these favorable results through HolliShare.

President William E Kuehn, To Each Participant of HolliShare, HolliShare Summary Annual Report, p. 1 (1976).

> HolliShare had an outstanding year in 1977. The Trust's net assets increased 58% during 1977 and, at the end of the year, were in excess of $4 million.

President Michael Winn, To Each Participant of HolliShare, HolliShare Summary Annual Report, p. 2 (1977).

In 1978, the book value of the shares owned by the Trust increased $1.8 million, or 46%. This growth is the direct result of profits earned by Hollister Incorporated and its subsidiaries (Hollister Limited in Canada and Hollister Overseas Ltd. in Ireland). Thus we all shared in the Company's 1978 profits through the Company contribution and through the increase in the book value of the JDS shares in the HolliShare Trust.

President Michael Winn, To Each Participant of HolliShare, HolliShare Summary Annual Report, p. 1 (1978).

In each year since the plan was established, its investments have significantly outperformed the stock and bond market averages and the investment performance of most other funds. The investment results for 1979 were no exception. The Trust's overall investment rate of return was 28.4% which put it in the top 5% (and possibly higher) of all funds measured by the Becker evaluation service.  A 1977 through 1979 comparison of HolliShare's investment performance with major market indices and other profit sharing and pension plans shown on the adjoining page.

Comments on Investment Performance, HolliShare Highlights, p. 7 (1979).

HolliShare, like other profit sharing plans, depends for its success upon the successes of the company and its employees. Your efforts, whether they are made to increase sales, reduce costs and expenses, develop new products or the machines that make them, help assure the company's growth and profitability. In turn, the company shares those profits with you. To date, this plan has been highly advantageous to both parties. I am confident that if each of us continues to put forth our best efforts, Hollister Incorporated will maintain its outstanding record of accomplishment and we, as members of HolliShare, will participate in a significant way from that success.

President Michael Winn, To Each Participant of HolliShare, HolliShare Highlights, p. 1 (1980-1982) (paragraph omitted).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 47

Each and every employee of Hollister plays an important part in the company's growth and success. Our profitably depends on your dedication to performance. In return, the company shares its profits with you through HolliShare, the Hollister Employee Share Ownership Trust. . . . As you constantly strive to put forth your best individual efforts, you will continue to sustain the success of Hollister and add to the growth and profitability of HolliShare.

President Michael Winn, HolliShare Highlights, p. 1 (1983-1984).

This performance in a profit sharing plan is exceptional and would be gratifying to our founder, John D. Schneider, whose principles and goals for the Company inspired our plan. We too often take things for granted. We should each reflect on this from time to time, and recognize that we must put forth our best efforts if we are to sustain the success of Hollister and of HolliShare.

President Michael Winn, HolliShare Highlights, p. 1 (1985).

The profit sharing plan in which we participate, HolliShare, is a unique plan. It rewards us substantial when we have a successful year as a Company, which was the goal of our founder, John D. Schneider, when he approved this plan. I know of no other profit sharing plan that has provided the significant benefits that have been shared among members of HolliShare.  Our past success has been gratifying, and our continued success can be achieved if each and every employee does the best job they are capable of doing. I am confident that we, working together, can further the success of Hollister Incorporated and HolliShare.

President Michael Winn, To Each Participant of HolliShare, HolliShare Highlights, p. 1 (1986-1991) (minor variations in 1991 report).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 48

> The HolliShare profit sharing plan in which we participate provides significant benefits that are shared among the plan's members. That was the goal of John D. Schneider, our founder, when he approved the plan. By each of us doing our job well and working together, we will contribute to Hollister's mission and success and further the success of HolliShare as well.

President Michael Winn, To Each Participant of HolliShare, HolliShare Highlights, p. 2 (1992-2003) (minor variations in later versions).

> HolliShare's performance is a direct reflection of Hollister's success, which results from the performance of you as employees, both individually and as a group. I know you will join me in continuing to work for the Company's success which benefits all of us, both as employees and as HolliShare participants.

President Michael Winn, Summary Plan Description, p. 2 (1979-1998); *see also* President Al Herbert, Summary Plan Description, p. 2 (2006) (same).

127. These statements were designed to conceal that nothing Hollister's employees did (no matter how well they performed or how hard they worked) would have any affect on the value of JDS, unless the JDS Board wanted it to.

### Circumventing ERISA with a Promissory Note

128. JDS articles also require that shareholders of JDS common stock accept a promissory note in payment for any repurchased shares.[68] Specifically, JDS is only required to give the greater of $250,000 (or 10% of the aggregate price) in cash, with the remainder payable with a promissory note in equal installments over ten years (although, prior to 1999, the initial cash payment was limited to $5,000 and the promissory note could be

---

[68] JDS Art. of Inc., Article Five, ¶ II.D.4.a (1978 version); JDS Art. of Inc., Article Five, ¶ II.D.4.a (March 1999 version); Trust Earnings and Investment, HolliShare Summary Plan Description, p. 14 (1979).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 49

stretched over the life span of an average person).[69]  Recipients of a JDS promissory note are entitled to 8% to 12% interest, which was also increased from 6% to 9% in 1999.[70]  JDS can then sell, assign or otherwise transfer its obligations under that promissory note to the Plan, on such terms as JDS and the plan trustees may agree.[71]

129.  Under the terms of HolliShare's original trust instrument, former plan participants and beneficiaries were distributed shares of JDS common stock, which JDS would immediately purchase pursuant to the JDS articles (*i.e.*, with cash and a promissory note).[72]  HolliShare would then repurchase those shares from JDS by assuming payment of these 6% promissory notes, which were payable in varying installments until 2001. But this assumption of debt by an ERISA plan, *e.g.*, HolliShare, for a party in interest (JDS) was an unlawful extension of credit, and therefore a breach of fiduciary duty under ERISA.[73]

**Failure to abandon instruments and agreements that violate ERISA**

130.  The defendants also claim that – despite the explicit language of the HolliShare trust instrument and the JDS articles – JDS disregarded the mandatory promissory note provisions of Paragraph II.D.4 and only paid cash for the Plan's shares of JDS common stock.[74]  If the defendants are correct, then they have the ability to abandon the terms of the Plan and the stock restrictions of the JDS articles when necessary to comply with

---

[69]  JDS Art. of Inc., Article Five, ¶ II.D.4.b (1978).

[70]  JDS Art. of Inc., Article Five, ¶ II.D.4.b (March 1999 version); JDS Art. of Inc., Article Five, ¶ II.D.4.c(3) (1978 version).

[71]  JDS Art. of Inc., Article Five, ¶ II.D.7.b (1978 version).

[72]  HolliShare Summary Annual Report, n. 5 (1976).

[73]  29 U.S.C. § 1106(a)(1)(B).

[74]  *E.g.*, Declaration of Sheila Johnson, Docket 203, ¶¶ 6-9 (June 8, 2007).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 50

ERISA.[75]  If so, the inference can be drawn (and drawn fairly) that they can disregard other mandates from the JDS articles and HolliShare trust instrument that conflict with ERISA.  So, even if Section 7.03 requires a non-trustee to value plan assets, and Section 11.01 (when combined with Paragraph II.D) requires selling plan assets to that non-trustee at that value, the defendants acquiesce that they have the power to disregard those provisions and adhere to ERISA. By refusing to do so, the defendants intentionally used (and are using) Illinois state law stock restrictions to avoid ERISA compliance (*e.g.*, how plan assets should be valued and how much plan assets will be worth), and prevent plan fiduciaries from fulfilling their duties.

131.   Finally, because HolliShare's fiduciaries refused to disregard Sections 7.03 and 11.01(d), they failed to determine the current value of plan assets; were unable to account for, much less calculate, retirement benefits under the Plan; make an accurate distribution to plan participants and beneficiaries; or produce the following documents required under ERISA:

a.   Complete and accurate filings with the DOL (*e.g.*, annual reports, summary plan descriptions, Form 5500 filings);

b.   Written appraisals establishing that the Plan received adequate consideration in prohibited transactions with JDS;[76]

c.   Stock valuations and audit reports calculating the current value of retirement benefits; and

d.   Plan documents that are required to be disclosed under ERISA § 104(b).

---

[75]   29 U.S.C. §§ 1104(a)(1)(D), 1110, 1144.

[76]   Appraisal is endorsed by both the Department of Labor and the Internal Revenue Service ("IRS") as appropriate for determining the fair market value of plan assets (in good faith).  *See*, e.g., *Foltz*, 663 F.Supp. at 1516-1517; *see also* Rev.Rul. 80-155, 1980-1 C.B. 84, 85; Rev.Rul. 59-60, 1959-1 C.B. 237 ("fair market value" of closely held stock to be determined by appraisal).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 51

Many of the documents that the defendants were required to prepare and maintain under ERISA were thus either never prepared or prepared incorrectly.

### Domestic Relations Orders

132.   DeFazio also alleges that HolliShare's fiduciaries violated ERISA by honoring various state court orders requiring disbursements of funds from the HolliShare account of his ex-wife to satisfy his unpaid child support obligations. Unique to DeFazio and Ellis, this ERISA claim is based on the Superior Court of California entering no fewer than eight Domestic Relations Orders ("DROs") (seven support DROs and one community property DRO), which distributed Ellis a portion of his alleged community property share of the vested benefits in HolliShare.

133.   These Sacramento Family Court orders demanded that DeFazio, as an alternate payee of the Plan,[77] have his interest held in a segregated account, pending further order of that court. "Supplemental" DROs were subsequently issued, which the defendants improperly obeyed, that directed the Plan to make a series of partial payments of DeFazio's account to Ellis, her attorney, and his unnamed children for current child support and attorney's fees.

---

[77]   As previously by the Court, the term 'alternate payee' for ERISA purposes means any spouse, former spouse, child, or other dependent of a participant who is recognized by a domestic relations order as having a right to receive all, or a portion of, the benefits payable under a plan with respect to such participant. *DeFazio*, 406 F.Supp.2d at 1094-1095, *citing* 29 U.S.C. § 1056(d)(3)(K).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 52

134.   ERISA plans are required to comply with any valid "qualified" domestic relation order ("QDRO"),[78] and Hollister was responsible for determining whether that requirement was satisfied. Despite this responsibility, Hollister acted on DROs that conflicted with the terms of the Plan, such as requiring multiple distributions; improperly investing DeFazio's segregated account; denying him a right to distribute his interest; and distributing his interest as an alternate payee to another alternate payee. This is not the extent of Hollister's fiduciary breaches regarding the DeFazio / Ellis account.

135.   On January 23, 2008, Hollister and HolliShare moved the Sacramento Family Court ("the January 23rd motion") to relieve themselves of any obligation under the most recent DRO, pending final resolution of this instant lawsuit; to issue a new DRO distributing DeFazio's alternate payee account into an escrow account; and to order DeFazio and Ellis to post a bond sufficient to indemnify Hollister and HolliShare against any liability they may face in this action for violating their fiduciary duties.  They also requested that Ellis and DeFazio pay sanctions for the attorney's fees Hollister incurred when determining whether each DRO was a QDRO.

136.   The Sacramento Family Court tentatively granted the January 23rd motion as to the disbursement of DeFazio's alternate-payee account (but denied their requested bond or fees). Disbursing DeFazio's "alternate payee" account in this fashion not only violates the terms of the Plan and the anti-alienation (and preemption) sections of ERISA,[79] but it will likely force

---

[78]   A DRO is a QDRO if it creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or part of the benefits payable with respect to a participant under an ERISA plan. *DeFazio*, 406 F.Supp.2d at 1094-1095, *citing* 29 U.S.C. § 1056(d)(3)(B).

[79]   HolliShare Trust Instr. (Article Eleven); 29 U.S.C. § 1056(d)(1), and 1144, respectively.

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 53

DeFazio and Ellis to incur needless tax liability.[80]  Further, as a violation of the anti-alienation, rollover, and exclusive benefit provisions of the Internal Revenue Code, it subjects the Plan to tax-disqualification to the potential detriment of all participants.  Nor can the DRO tentatively created by the January 23rd motion satisfy ERISA's QDRO requirements.  DeFazio alleges, on information and belief, that Hollister will impermissibly determine that the DRO obtained by the January 23rd motion is qualified.

137.   The Hollister Board and HolliShare's trustees, both of which are responsible for oversight of Hollister and HolliShare under the terms of the Plan; and the Directors' Trust, JDS, and the JDS Board, all of which have *de facto* control over Hollister and HolliShare, have breached their fiduciary (and co-fiduciary) duties by failing to properly oversee, manage, and supervise Hollister's handling of the DeFazio / Ellis DROs, resulting in the improper maintenance and disbursement of a portion of the benefits payable with respect to Ellis.

### ERISA CLAIMS

138.   Boiled to its essence, the defendants breached their fiduciary duty through a carefully orchestrated scheme to undervalue plan assets and retirement benefits; steal ultimate ownership of a billion dollar company (*i.e.*, Hollister) away from the Plan; use the Plan as an impenetrable piggybank for JDS common stock; and a billion dollar tax shelter for their sole benefit.  Because of the defendants' fraud and concealment, the breaches asserted herein (some of which date back to 1975) were only recently discovered by the plaintiffs within the last two years.[81]

---

[80]   26 U.S.C. §§ 401(a), 401(a)(13), 402(c), and 402(e).

[81]   This statement includes DeFazio, who recognized the inherent fallacy of book value equaling fair market value (*DeFazio*, 406 F.Supp.2d at 1093-1094), but was unaware of the other allegations contained within this brief.

**DeFazio, et al., v. Hollister, et al.,** Case No. 04-1358 WBS GGH
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 54

139.    Liability under the following Counts are limited to those areas where an individual was a named fiduciary with assigned responsibilities; was a *de facto* fiduciary by virtue of its ability to control, manage, administer and dispose of the Plan and its assets; or was a party in interest who knowingly participated in a fiduciary breach. Nothing within these counts should be construed as an effort to seek standing for an ERISA claim beyond the scope provided by the ERSIA.

## FIRST COUNT

### 29 U.S.C. §§ 1103(a), 1103(c)(1)

140.    All assets of HolliShare were required to be held in trust by one or more trustees.[82]  These trustees were named fiduciaries appointed in HolliShare's trust instrument, and had exclusive authority and discretion to manage and control the assets of the Plan.[83]  Despite that authority, HolliShare's trustees allowed assets of the Plan to inure to the benefit of JDS, Hollister, the JDS Board and the Hollister Board, the Schneider 1977 Trust and the Directors' Trust.[84]  Further, they (the HolliShare trustees) failed to hold plan assets for the exclusive purposes of providing benefits to participants in the Plan and their beneficiaries.[85]

141.    As discussed above, all of HolliShare's trustees breached this duty by undervaluing plan assets when selling those assets to JDS under Section 11.01(2); assuming, and paying, the 6% promissory notes; incorrectly determining retirement benefits under Section 7.03; maintaining the Plan's investment in JDS common stock; voting the Plan's shares of

---

[82]    29 U.S.C. §§ 1103(a).

[83]    29 U.S.C. §§ 1103(a); *see also* HolliShare Trust Instr. § 11.11.

[84]    29 U.S.C. §§ 1103(c)(1).

[85]    29 U.S.C. §§ 1103(c)(1).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

common stock in favor of others; and concealing JDS's absolute ability to manipulate the value of plan assets. These acts inured a benefit to entities other than the Plan, and allowed the defendants to use the Plan for a purpose other than providing benefits to the plan participants and beneficiaries.

142.   Zwirner, McCormack, and Karlovsky are liable for his conduct surrounding the 1999 Transaction (and failure to bring suit on behalf of the Plan).

143.   Each trustee is liable for the votes they cast, on behalf of the Plan, while serving as a plan trustee.

144.   Each trustee is liable for misrepresenting, misleading, omitting, or concealing the aforementioned facts while serving as a plan trustee.

145.   Each trustee that had an opportunity to diversify plan assets because of the substantial risk of stock failure based on insider trading (but failed to do so) in the years following the 2001 funding of the Directors' Trust is liable under this section.

146.   Each trustee that served as a trustee after the January 23rd motion was approved for filing in Sacramento Family Court is also liable under this section.

## SECOND COUNT

## 29 U.S.C. § 1104(a)(1)(A)(i)

147.   The duty to act solely in the interest of, and for the exclusive purpose of providing benefits to, participants and their beneficiaries is not limited to HolliShare's trustees. Each fiduciary of the Plan was also burdened with this requirement, and had an identical duty to protect participants and beneficiaries.[86]  This means that each fiduciary of the Plan –

---

[86]   29 U.S.C. § 1104(a)(1)(A)(i); *see* Adams, Doctrine of Equity, §§ 59-60, pp. 215-216 (3rd ed. 1855).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 56

whether named in HolliShare's trust instrument or a *de facto* fiduciary by virtue of their control over plan assets – had a duty to act solely in the interest of, and for the exclusive purpose of providing benefits to, plan participants and their beneficiaries.

148.   But, as discussed above, each defendant breached this duty of loyalty by intentionally undervaluing plan assets for the benefit of others; assuming (and paying) the 6% promissory notes; concealing the worthless (or malleable) value of JDS common stock; and concealing the existence of potential markets for plan assets.

149.   Hollister, Winn, Stempinski, Herbert, Fremgen, Zwirner, McCormack, and Karlovsky are further liable for their conduct surrounding the 1999 Transaction (and failure to bring suit on behalf of the Plan).

150.   Hollister is liable under this section for failing to properly administer the DeFazio / Ellis QDROs in a loyal manner.

151.   Each defendant is liable for any votes they cast as a fiduciary of an entity that owns JDS stock (*e.g.*, HolliShare, the Schneider 1977 Trust), which would affect the control, management, administration and disposal of the Plan (and its assets).

152.   Each defendant is liable for misrepresenting, misleading, omitting, or concealing the aforementioned facts while serving as a plan fiduciary.

153.   Each defendant that had an opportunity to diversify plan assets because of the substantial risk of stock failure based on insider trading (but failed to do so) in the years following the 2001 funding of the Directors' Trust breached their duty of loyalty.

154.   Each defendant that served as a fiduciary after the January 23rd motion was approved for filing in Sacramento Family Court is also liable for their breaches of loyalty.

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 57

155.   Finally, the same acts that exposed HolliShare's trustees to liability under First Count exposed them to the (identical) general ERISA provisions governing fiduciaries in this Count.[87]

## THIRD COUNT

### 29 U.S.C. § 1104(a)(1)(B)

156.   HolliShare's fiduciaries also failed to act with the care, skill, prudence, and diligence under the circumstances (then prevailing) that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.[88]

157.   As discussed above, all of HolliShare's fiduciaries breached the duties of prudence and care by intentionally undervaluing plan assets for the benefit of others; assuming (and paying) the 6% promissory notes; concealing the worthless (or malleable) value of JDS common stock; and concealing the existence of potential markets for plan assets.

158.   Hollister, Winn, Stempinski, Herbert, Fremgen, Zwirner, McCormack, and Karlovsky are further liable for their conduct surrounding the 1999 Transaction.

159.   Hollister is liable for failing to administer the DeFazio / Ellis QDROs in a careful and prudent manner.

160.   Each defendant is liable for any votes they cast on behalf of a fiduciary that owns JDS stock (*e.g.*, HolliShare, the Schneider 1977 Trust), which would affect the control, management, administration and disposal of the Plan (and its assets).

---

[87]   *Compare* 29 U.S.C. § 1104(a)(1)(A)(i); *with id*. §§ 1103(a), 1103(c)(1).

[88]   29 U.S.C. § 1104(a)(1)(B).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 58

161.    Each defendant that had an opportunity to diversify plan assets because of the substantial risk of stock failure based on insider trading (but failed to do so) in the years following the 2001 funding of the Directors' Trust breached their duties of prudence and care.

162.    Each defendant that served as a fiduciary after the January 23rd motion was approved for filing in Sacramento Family Court is also liable under this section for their breaches of care and prudence.

163.    Each defendant is liable for misrepresenting, misleading, omitting, or concealing the aforementioned facts while serving as a plan fiduciary.

### FOURTH COUNT

### 29 U.S.C. § 1104(a)(1)(C)

164.    HolliShare's fiduciaries also failed to diversify the investments of the Plan so as to minimize the risk of large losses, when the circumstances clearly made it prudent to do so.[89]  If the defendants are correct – *i.e.*, JDS is the only market for plan assets and JDS need only pay book value, then the Plan's shares of JDS common stock only have value on paper and are ostensibly worthless. Further, the stock restrictions touted by the defendants leave JDS common stock unmarketable, and guarantee that the only transactions that the Plan could engage in were self-dealing transactions with JDS, where JDS unilaterally assigned a value to plan assets based on insider information.

165.    By failing to recognize that circumstances had changed, and to prudently investigate whether the Plan should continue to invest in JDS stock, each defendant that had an opportunity to diversify plan assets

---

[89]    29 U.S.C. § 1104(a)(1)(C); *In re Syncor Erisa Litigation*, 516 F.3d 1095, 1102-1103 (9th Cir. Feb. 19, 2008), *citing Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1097-1098 (9th Cir. 2004).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 59

because of the substantial risk of stock failure based on insider trading (but failed to do so) in the years following the 2001 funding of the Directors' Trust breached their duty to diversify plan investments.

## FIFTH COUNT

### 29 U.S.C. § 1104(a)(1)(D)

166.  HolliShare's fiduciaries were also required to act in accordance with the documents and instruments governing the Plan, provided those documents and instruments are consistent with ERISA.[90]  This presumably included the Section 11.01(1)(a) of the Plan, which requires that HolliShare's trustees exercise their powers in the sole interests of, and for the exclusive purpose of providing benefits to, participants and beneficiaries; the Section 11.01(1)(b) of the Plan, which requires that those trustees adhere to the prudent person standard; and the Section 11.01(1)(b)(ii) of the Plan, which bars prohibited transactions involving JDS stock. Further, Section 7.03 of the Plan demands that HolliShare's trustees value plan assets at fair market value, when determining the amount of benefits a retiree receives.

167.  Nothing within either the JDS articles or the Plan permitted the wholesale abandonment of ERISA duties (as described above), even if Section 11.01(2) did require that HolliShare's trustees adhere to the JDS articles when selling common stock back to JDS. Nor can these documents dictate ERISA compliance, as Section 7.03 attempts to do when valuing retirement benefits. Yet, each and every defendant did precisely that for 30 years, in an effort to "game" the Plan and use plan assets for their own personal benefit. As such, they breached their fiduciary duty by refusing to

---

[90]  29 U.S.C. § 1104(a)(1)(D); 29 U.S.C. § 1103(a)(1); *see also* Pomeroy, John, <u>Doctrine of Equity Jurisprudence</u>, §§ 1062, 1068-1069, pp. 2426, 2441-2446 (4th ed. 1882).

<u>DeFazio, et al., v. Hollister, et al.</u>, Case No. 04-1358 WBS GGH
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 60

depart from the Plan when it was clearly necessary to do so, and refusing to adhere to the Plan when ERISA required it.

168.   Hollister is liable for failing to properly administer the DeFazio / Ellis QDROs in accordance with the terms of the Plan.

169.   Each defendant that served as a fiduciary after the January 23rd motion was approved for filing in Sacramento Family Court is also liable under this section for failing to adhere to the terms of the plan.

## SIXTH COUNT

### 29 U.S.C. § 1105(a)(1)

170.   Regardless of any other liability they may have under ERISA, HolliShare's fiduciaries are also individually responsible for breaches of fiduciary duty committed by their co-defendants, and liable under ERISA for those breaches.[91]   In this case, plaintiffs aver that each defendant knew of the aforementioned fiduciary breaches that occurred during their tenure as a fiduciary, and that each defendant is liable as a co-fiduciaries for their knowingly participating in, or knowingly concealing, the aforementioned acts (and omissions) of their co-defendants, while knowing that those acts (and omissions) were breaches of fiduciary duty.[92]

## SEVENTH COUNT

### 29 U.S.C. § 1105(a)(2)

171.   The defendants also violated ERISA by failing to satisfy their own fiduciary duties under Section 404(a)(1),[93] which enabled their co-fiduciaries to breach their ERISA duties.[94] In this case, plaintiffs aver that

---

[91]   29 U.S.C. § 1105(a).

[92]   29 U.S.C. § 1105(a)(1).

[93]   29 U.S.C. § 1104(a)(1).

[94]   29 U.S.C. § 1105(a)(2).

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 61

each defendant, as set forth in greater detail above, committed numerous breaches of fiduciary duty during their tenure as a fiduciary, which enabled the other fiduciaries of the Plan to commit breaches of fiduciary duty, too.

## EIGHTH COUNT

## 29 U.S.C. § 1105(a)(3)

172.   The defendants also violated ERISA by failing to make reasonable efforts to remedy known breaches of fiduciary duty committed by their-co-fiduciaries.[95]  In this case, plaintiffs aver that each defendant, as set forth in greater detail above, knew during their tenure as a fiduciary that their co-fiduciaries had committed numerous breaches of fiduciary duty (or were committing numerous breaches), yet took no reasonable steps to cure those breaches.

## NINTH COUNT

## 29 U.S.C. §§ 1103(a), 1105(b)(1)(A).

173.   HolliShare's trustees were also required to use reasonable care to prevent their co-trustees from committing the aforementioned breaches of fiduciary duty.[96]  Needless to say, they failed miserably in that endeavor, as evinced by the trustees' collective failures when approving amendments to the JDS Articles; selling plan assets to JDS; valuing plan assets for retirement benefit; administering QDROs; assuming (and paying) the 6% promissory notes; and conveying plan information to plan participants and beneficiaries.

---

[95]   29 U.S.C. § 1105(a)(3).

[96]   29 U.S.C. §§ 1103(a), 1105(b)(1)(A).

**DeFazio, et al., v. Hollister, et al.,** Case No. 04-1358 WBS GGH
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 62

174.   Plaintiffs therefore allege that each trustee, during their tenure as a plan trustee, failed to use reasonable care to prevent their co-trustees from committing breaches of fiduciary duty. Ergo, even if a trustee may have fulfilled his fiduciary duties, that trustee is still liable for not ensuring that his colleagues did the same.

**TENTH COUNT**

29 U.S.C. § 1110

175.   As discussed above, all defendants breached their fiduciary duty by drafting or adhering to (or both) agreements and instruments that purport to relieve themselves of their fiduciary responsibilities and liabilities under ERISA.[97] Six examples of such a waiver are at issue in this lawsuit:

a.   Article Six of the JDS Articles, which contains an improper waiver of liability for the Directors of JDS (Winn, Stempinski, Zwirner, and Herbert only);

b.   Article Ten of the Hollister Articles, which contains an improper waiver of liability for the Directors of Hollister (Winn, Stempinski, Zwirner, and Herbert only);

c.   The proposal for the Directors' Trust, which purports to relieve Winn, Stempinski, and Zwirner of their fiduciary status while simultaneously advancing a scheme to rob the Plan of control and ownership of JDS;

d.   Section 7.03, which attempts to re-define fair market value, and the methods used to arrive at that value;

e.   Section 11.01(2), which attempts to use the JDS articles to dictate ERISA compliance; and

f.   The requested bond from Sacramento Family Court, which would indemnify Hollister and HolliShare for "any loss they should suffer" in this instant action.

---

[97]   29 U.S.C. § 1110; *see also* Pomeroy, Equity Jurisprudence § 1062, p. 2426.

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 63

These agreements and instruments contain an improper release of ERISA responsibility and liability, and are void as against public policy.

## ELEVENTH COUNT

### 29 U.S.C. §§ 1106(a)(1)(A), 1108(e)(1)

176.   All of HolliShare's fiduciaries also violated ERISA by engaging in prohibited transactions whereby HolliShare sold plan assets to a party-in-interest, *e.g.*, JDS, for inadequate consideration.[98]  So, in addition to breaching their ERISA duties (*e.g.*, care, loyalty, and prudence), each sale of plan assets to JDS was a prohibited transaction, and a violation of ERISA.

## TWELFTH COUNT

### 29 U.S.C. § 1106(a)(1)(B)

177.   All of HolliShare's fiduciaries violated ERISA by improperly extending credit in the sale of plan assets with a party-in-interest.[99]  This includes HolliShare's purchase of JDS common shares by assuming payment of the 6% promissory notes issued to the former participants JDS. To the extent the HolliShare assumed these 6% promissory notes on (or before) July 1, 1974, participants seek to recover payments made under these notes after June 30, 1984.[100]  To the extent they existed after July 1, 1974, participants seek to recover payments made under these notes after January 1, 1975.[101]

178.   Each defendant that served as a fiduciary after the January 23rd motion was approved for filing in Sacramento Family Court is also liable under this section for seeking an impermissible extension of credit.

---

[98]   29 U.S.C. §§ 1106(a)(1)(A), 1108(e)(1).

[99]   29 U.S.C. §§ 1106(a)(1)(B), 1108(e)(1).

[100]   29 U.S.C. §§ 1114(c)(1).

[101]   29 U.S.C. §§ 1114(a).

**DeFazio, et al., v. Hollister, et al.,** Case No. 04-1358 WBS GGH
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 64

## THIRTEENTH COUNT

### 29 U.S.C. § 1140

179.    Each defendant that served as a fiduciary after the January 23rd motion was approved for filing in Sacramento Family Court also violated ERISA by seeking to fine, discipline, and discriminate against a participant (Ellis) and beneficiary (DeFazio) who exercised their rights under ERISA and the Plan; and for testifying (or intending to testify) in this instant action. These defendants are also liable for interfering with the attainment of any right to which DeFazio and Ellis may become entitled under ERISA and the Plan.

### Prayer for Relief

WHEREFORE, the plaintiffs pray for judgment against the defendants, and any and all relief available under ERISA,[102] including an order:

1.    Striking the stock restrictions of Paragraphs II.C and II.D of the JDS Articles;

2.    Striking the waiver of director liability under Article Six of the JDS Articles;

3.    Striking the waiver of director liability under Article Ten of the Hollister Articles;

4.    Instructing the Directors' Trust to transfer the shares of JDS stock (contained within its corpus) back to JDS for repurchase and cancellation;

5.    Removing the Plan's trustees and enjoining future trustees from further violations of ERISA;

6.    Removing the directors of JDS and Hollister, so that a neutral trustee can appoint directors who'll represent the Plan's interests;

---

[102]   29 U.S.C. § 1132.

**DeFazio, et al., v. Hollister, et al.,** Case No. 04-1358 WBS GGH
**Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)**

Page 65

7.    Compelling HolliShare's parties-in-interest and fiduciaries to correct all prohibited transactions with the Plan, and to disgorge all profits (and restore all losses) associated therewith;[103]

8.    Requiring the defendants to determine the fair market value of JDS securities held by the Plan (independent of the aforementioned stock restrictions), and to revalue all participants' accounts accordingly;

9.    Requiring all retired participant's accounts to be revalued at fair market value as of the date of partial distribution thereof, and to distribute the remaining balance as soon as administratively feasible;

10.    Recovering any tax loss incurred (or which may be incurred) by the Plan, in addition to HolliShare's lost assets, any profits made by the defendants, and any other remedies available under ERISA;

11.    Awarding fees, costs, and legal expenses in an amount the Court deems appropriate; and

12.    Any other relief the Court deems necessary.

Dated: July 14, 2008          LAW OFFICE OF LYNN HUBBARD


                              /s/ Scottlynn J Hubbard IV, Esquire /
                              SCOTTLYNN J HUBBARD IV
                              Attorney for Plaintiffs

---

[103] Such correction will (at a minimum) require JDS to repurchase its securities at fair market value – determined without regard to any restrictions as to marketability – and to pay to HolliShare any profits it earned from the prohibited use of Plan assets. In any event, the defendants must put the Plan in no worse of a position than if the highest fiduciary standards had been observed.

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' Fifth Amended Complaint (with Class Action Allegations)

Page 66