UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JAMES P. DEFAZIO, et al., | NOS. CIV. 04-1358 WBS GGH |
| | 05-0559 WBS GGH |
| Plaintiffs, | 05-1726 WBS GGH |
| | CONSOLIDATED |
| v. | ORDER AND MEMORANDUM RE: |
| | DEFENDANTS' MOTION TO DISMISS |
| HOLLISTER, INC., et al., | |
| Defendants. | |

----oo0oo----

I. <u>Factual and Procedural Background</u>

To avoid repetition, the court will refrain from reciting the entire factual and procedural background, which essentially remains the same as in its April 8, 2008 Order. <u>Defazio v. Hollister, Inc.</u>, No. 04-1358, 2008 WL 958185, at *1-2 (E.D. Cal. Apr. 8, 2008).

Presently before the court is defendants' motion to

1

dismiss certain claims in the Fifth Amended Complaint ("HAC").[1]

## II. Discussion

### A. Legal Standards

On a motion to dismiss, the court must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972). To survive a motion to dismiss, a plaintiff needs to plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). Dismissal is appropriate, however, where the plaintiff fails to state a claim supportable by a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see also Conley v. Gibson, 355 U.S. 41, 47 (1957), abrogated on other grounds by Twombly, 127 S. Ct. at 1968 (complaint must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests").

Generally, materials outside the pleadings may not be considered on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). When "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However,

---

[1] Plaintiff Ellis has filed a separate complaint from the other plaintiffs. Ellis's current complaint is the Fourth Amended Complaint, filed January 23, 2008.

certain materials may be considered without converting the motion to one for summary judgment. The court may (1) consider materials necessarily part of the complaint even if they are not attached to it so long as their authenticity is not contested and (2) take judicial notice of matters of public record. Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).

Here, defendants have requested that the court take judicial notice of ten orders and one brief that are part of the record of the proceedings in the Sacramento superior court. (Req. Judicial Notice Exs. A-K.) Both the HAC and Ellis's Fourth Amended Complaint refer to these materials (HAC ¶¶ 132-36; Ellis's Fourth Am. Compl. ¶¶ 69-71), and plaintiffs have not contested their authenticity. Therefore, for the purposes of the present motion to dismiss, the court may consider these materials without converting the motion to one for summary judgment.

B.   January 2008 Superior Court Motion

Plaintiff DeFazio has raised new allegations based upon defendants' January 2008 motion filed in Sacramento Superior Court, including a claim that the filing of the motion violated ERISA section 510 (29 U.S.C. § 1140) by "seeking to fine, discipline, and discriminate against a participant (Ellis) and beneficiary (DeFazio) who exercised their rights under ERISA and the plan[.]" (HAC ¶ 179.) As alleged, Hollister and HolliShare filed a motion in January 2008[2] in Sacramento Superior Court to

---

[2] Plaintiffs allege that the motion was filed on January 23 (HAC ¶ 135), while defendants contend that it was filed on January 18. (Defs.' Mem. Supp. Mot. Dismiss 2:13 n.3.) Since they do not dispute that they are referencing the same motion, the court will simply refer to it as the "January 2008" motion.

3

relieve themselves of any obligation under the most recent domestic relations order (DRO), to have the court issue a new DRO distributing DeFazio's alternate payee account into an escrow account, to have DeFazio and Ellis post a bond to indemnify Hollister and HolliShare from liabilities they may face in the present action regarding ERISA violations related to the DROs, and to have Ellis and DeFazio pay sanctions for attorney's fees incurred in the process of determining the qualified status of the DROs.  (HAC ¶ 135.)

Defendants move to dismiss the claims based upon these new allegations on two grounds: the Noerr-Pennington doctrine and failure to state a cognizable claim under ERISA section 510. (Defs.' Mem. Supp. Mot. Dismiss 4:11-15, 6:12-14.)

 1. *Noerr-Pennington Doctrine*

The Noerr-Pennington doctrine, named for the Supreme Court decisions in E. R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965), "ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved." White v. Lee, 227 F.3d 1214, 1231 (9th Cir. 2000). The doctrine, however, does not protect petitioning in the form of "sham" litigation.  See BE & K Const. Co. v. N.L.R.B., 536 U.S. 516, 525-26 (2002).  Whether a particular action constitutes "sham" litigation requires an analysis of both whether the lawsuit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits" and

4

the litigant's subjective motivation. Prof'l Real Estate Investors v. Columbia Pictures Indus., 508 U.S. 49, 60-61 (1993).

Defendants' argument for protection under the Noerr-Pennington doctrine, as well as the applicability of the "sham" litigation exception to that doctrine, rests in part on the parties' assertions regarding the conduct of DeFazio and Ellis in Sacramento Superior Court. For example, defendants explain that they filed the January 2008 motion in response to "Ellis's and DeFazio's duplicitous use of [DROs] . . . as an artifice to satisfy DeFazio's obligations to Ellis while simultaneously claiming in this [c]ourt that Hollister violated ERISA each time it complied with one of [the DROs]." (Defs.' Mem. Supp. Mot. Dismiss 5:19-22.) Plaintiffs, however, specifically deny that DeFazio took the inconsistent positions defendants allege. (Pls.' Opp'n Mem. 2:22 (citing Docket No. 350 1:13-6:2).) Because resolution of these conflicting assertions concerning the specific conduct of both DeFazio and Ellis before the Superior Court demand consideration of matters outside the allegations of the complaints and the materials currently before the court, the court cannot decide the merits of defendants' immunity under the Noerr-Pennington doctrine at this stage of the proceedings.

2.   Failure to State a Claim Under ERISA § 510[3]

---

[3]   The text of ERISA section 510 states in relevant part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the

5

Plaintiffs allege that as a result of defendants' January 2008 motion, which sought sanctions for attorney's fees and a bond of indemnification in addition to relief from any future DROs from the Superior Court, DeFazio and Ellis will likely incur "needless tax liability." (HAC ¶¶ 135-36.) Further, the HAC alleges that defendants sought "to fine, discipline, and discriminate against a participant (Ellis) and beneficiary (DeFazio) who exercised their rights under ERISA and the Plan; and for testifying (or intending to testify) in this instant action." (Id. ¶ 179.) These allegations state a cognizable claim under ERISA section 510, and are therefore sufficient to survive a motion to dismiss.

Accordingly, the court will deny defendants' motion to dismiss plaintiffs' claims related to the filing of the January 2008 motion.

C. Qualified Domestic Relations Order (QDRO) Claims

Defendants also move to dismiss DeFazio's and Ellis's claims concerning HolliShare's compliance with the domestic relations orders issued by the Sacramento Superior Court. Plaintiffs allege that defendants violated ERISA by complying with these orders that distributed to DeFazio a community property share of Ellis's vested benefits in HolliShare (Ellis's Fourth Am. Compl. ¶ 69), and distributed to Ellis a portion of

---

Welfare and Pension Plans Disclosure Act. It shall be unlawful for any person to discharge, fine, suspend, expel, or discriminate against any person because he has given information or has testified or is about to testify in any inquiry or proceeding relating to this chapter . . . .

29 U.S.C. § 1140.

6

that community property share. (HAC ¶ 132.) They allege that these orders did not meet the statutory requirements of QDROs under ERISA. (See HAC ¶ 134; Ellis's Fourth Am. Compl. ¶¶ 105-111.)

Though this court has previously denied defendants' motions to dismiss the QDRO claims (see Feb. 23, 2008 Order; Nov. 1, 2007 Order), defendants now argue several grounds for dismissal that were not discussed in the court's earlier orders: (1) res judicata, (2) judicial estoppel, (3) the Colorado River doctrine, and (4) the Rooker-Feldman doctrine.

        1.   Res Judicata

Defendants argue that res judicata precludes consideration of the QDRO claims because the issue of the qualified status of the Superior Court's orders was already determined by the Superior Court, and DeFazio and Ellis failed to appeal those determinations. (Defs.' Mem. Supp. Mot. Dismiss 8:18-25.) In response, plaintiffs argue that the Sacramento Superior Court lacked jurisdiction to determine whether its orders are QDROs because federal courts have exclusive jurisdiction over that determination under ERISA. (Pls.' Opp'n Mem. 6:5-7:21, 9:2-17; Ellis's Opp'n Mem. 4:24-5:15.)

Whether state courts have jurisdiction to determine the qualified status of a DRO is not a question the court need decide at this time, as the court finds that the doctrine of res judicata would not preclude the QDRO claims regardless. The preclusive effect of the Superior Court orders is governed by California state law. See Pension Trust Fund for Operating Eng'rs v. Triple A Mach. Shop, Inc., 942 F.2d 1457, 1460 (9th

Cir. 1991) ("The law is well-settled that 'a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.'" (quoting <u>Migra v. Warren City School Dist. Bd. of Ed.</u>, 465 U.S. 75, 81 (1984)). Under California law, "[r]es judicata 'precludes parties or their privies from relitigating a <u>cause of action</u> that has been finally determined by a court of competent jurisdiction.'" <u>Intri-Plex Technologies, Inc. v. Crest Group, Inc.</u>, 499 F.3d 1048, 1052 (9th Cir. 2007) (quoting <u>Rice v. Crow</u>, 81 Cal. App. 4th 725, 734 (2000)).[4]

Unlike collateral estoppel, the doctrine of res judicata only applies when the subsequent litigation is based on the same cause of action. <u>See</u> <u>Border Bus. Park, Inc. v. City of San Diego</u>, 142 Cal. App. 4th 1538, 1563 (2006) (describing the elements of both res judicata and collateral estoppel). California adheres to the primary rights theory, under which "'a "cause of action" is comprised of a "primary right" of the plaintiff, a corresponding "primary duty" of the defendant, and a wrongful act by the defendant constituting a breach of that duty.'" <u>Manufactured Home Communities Inc. v. City of San Jose</u>, 420 F.3d 1022, 1031 (9th Cir. 2005) (quoting <u>Mycogen Corp. v. Monsanto Co.</u>, 28 Cal. 4th 888, 904 (2002)). The content of a primary right, as distinguished from a particular legal theory or remedy, "is simply the plaintiff's right to be free from the particular injury suffered." <u>Mycogen</u>, 28 Cal. 4th at 904

---

[4] California continues to use the term "res judicata" to refer to claim preclusion and "collateral estoppel" to refer to issue preclusion. <u>Johnson v. GlaxoSmithKline, Inc.</u>, 166 Cal. App. 4th 1497, 1507 n.5 (2008).

8

(internal quotations and citations omitted).

Here, plaintiffs' proceedings in the Sacramento Superior Court and the instant action are based on different primary rights.  The relevant primary right in the Superior Court proceedings was the right of ex-spouses to community property and child support obligations following the entry of divorce.  In contrast, the primary right at stake in the instant litigation related to the QDRO claims is the right to have pension benefits properly administered in accordance with the terms of ERISA.  The determination of property rights to pension benefits under state law is a distinct matter from the question of whether such rights are enforceable against a plan because the holder has obtained a QDRO.  See Trs. of the Dirs. Guild of Am. v. Tise, 234 F.3d 415, 420-21 (9th Cir. 2000), amended by 255 F.3d 661 (9th Cir. 2001).  Defendants' alleged violations of ERISA in complying with the Superior Court orders is therefore grounded in a different injury suffered by plaintiffs than that asserted in the Superior Court action under state domestic relations law.  Plaintiffs' instant action is thus based on a different primary right and cause of action.

Defendants urge the court to follow the First Circuit's recent decision in Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 67-68 (1st Cir. 2008), in which the First Circuit found that a party's failure to challenge the qualified status of a DRO in the state court proceedings precluded his federal action under Massachusetts' law of res judicata.  That decision, however, did not discuss whether the state court action was based on the same cause of action as the federal litigation.  In this case,

9

plaintiffs' Superior Court litigation and the instant action concern different primary rights and thus different causes of action under California law. Notwithstanding the First Circuit's decision in Geiger, res judicata is therefore inapplicable.

### 2. Judicial Estoppel

Defendants argue that DeFazio and Ellis are judicially estopped from attacking the qualified status of the Superior Court orders because they stipulated to those orders. (Defs.' Mem. Supp. Mot. Dismiss 18:3-4.) Generally, judicial estoppel "'prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase [or proceeding].'" Zedner v. United States, 547 U.S. 489, 504 (2006) (quoting Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000)).

Similar to defendants' argument concerning the applicability of the Noerr-Pennington doctrine, their judicial estoppel argument rests on assertions of DeFazio and Ellis's conduct and the supposed intentionally inconsistent positions taken in the Superior Court proceedings. (See Defs.' Mem. Supp. Mot. Dismiss 18:21-20:3.) As discussed above, because resolution of these issues requires examination of matters not appropriate for consideration on a motion to dismiss pursuant to Rule 12(b)(6), the court cannot decide defendants' argument for judicial estoppel at this time.

### 3. *Colorado River* Doctrine

Defendants also urge the court to decline jurisdiction over the QDRO claims under the Colorado River doctrine, named for the Supreme Court decision in Colorado River Water Conservation

10

1  *District v. United States*, 424 U.S. 800 (1976).  (Defs.' Mem.
2  Supp. Mot. Dismiss 22:22-23.)  This doctrine allows a federal
3  court to stay or dismiss federal proceedings pending resolution
4  of concurrent state court proceedings based upon considerations
5  of "wise judicial administration."  *Smith v. Cent. Ariz. Water*
6  *Conservation Dist.*, 418 F.3d 1028, 1032-33 (9th Cir. 2005).  The
7  doctrine is only applicable "'in situations involving the
8  *contemporaneous* exercise of concurrent jurisdictions . . . .'"
9  *F.D.I.C. v. Nichols*, 885 F.2d 633, 638 (9th Cir. 1989) (quoting
10 *Colo. River*, 424 U.S. at 817).

11             Based on the information presently before the court, it
12 is not clear that there exists a contemporaneous exercise of
13 jurisdiction by another court over the QDRO claims.  The most
14 recent order from the Superior Court, dated April 23, 2008 (*see*
15 Req. Judicial Notice Ex. B), does not indicate that the qualified
16 status of all of the Superior Court's orders related to
17 plaintiffs' QDRO claims is currently pending or will be resolved
18 by that court.  The court thus will not exercise its discretion
19 to stay or dismiss the present proceedings under the *Colorado*
20 *River* doctrine.  *See Smith*, 418 F.3d at 1033 ("'[T]he existence
21 of a substantial doubt as to whether the state proceedings will
22 resolve the federal action precludes the granting of a [*Colorado*
23 *River*] stay.'" (second alteration in original)(quoting *Intel*
24 *Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 (9th Cir.
25 1993)); *Nichols*, 885 F.2d at 638 (holding that the district court
26 abused its discretion by declining jurisdiction under *Colorado*
27 *River* when no pending or concurrent state court proceeding
28 existed).

11

1        4.   *Rooker-Feldman* Doctrine

2        Defendants argue that the court lacks jurisdiction over the QDRO claims under the Rooker-Feldman doctrine, named for the Supreme Court decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  (Defs.' Mem. Supp. Mot. Dismiss 24:10-11.)  The Rooker-Feldman doctrine, "a fairly narrow preclusion doctrine," Carmona v. Carmona, 544 F.3d 988, 995 (9th Cir. 2008), "provides that federal district courts lack jurisdiction to exercise appellate review over final state court judgments." Henrichs v. Valley View Dev., 474 F.3d 609, 613 (9th Cir. 2007).  In response to inconsistent application of the doctrine in lower courts, the Supreme Court has clarified that the doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

        Because it is not clear from the HAC or the other materials considered for the purposes of this motion that any plaintiff is a "state-court loser" with respect to the issue of the qualified status of the Superior Court's DROs, the court cannot determine at this time whether the Rooker-Feldman doctrine divests it of jurisdiction.

        Accordingly, the court will deny defendants' motion to dismiss plaintiffs' QDRO claims.

    D.   The 1999 Letter

        The HAC adds new claims based upon a letter dated

12

February 17, 1999 ("1999 Letter"), which was allegedly sent by several defendants to Hollister employees and plan participants and described the transfer of JDS preferred stock to the Director's Trust. (HAC ¶ 34.) Defendants present a variety of arguments for why these new allegations do not give rise to any cognizable claim under ERISA.[5] They argue that the preparation and distribution of the 1999 Letter was not a fiduciary act under ERISA, that the alleged misrepresentations and omissions contained in the 1999 Letter were not material, and that plaintiffs lack standing to challenge the 1999 Letter because none of them personally received it. (Defs.' Mem. Supp. Mot. Dismiss 25:9-20.)

Several of defendants' contentions in support of these arguments rely on facts outside the HAC or statements contained in the 1999 Letter that are not alleged in the HAC.[6] Such arguments are more appropriate for consideration on a motion for summary judgment. At this stage of the proceedings, it is

---

[5] While defendants outlined their arguments in their brief in support of the present motion, they did not address them in full. Instead, they incorporated arguments made in portions of earlier briefs regarding a different motion. (Defs.' Mem. Supp. Mot. Dismiss 25:22-26.) Plaintiffs, in turn, followed suit. (Pls.' Opp'n Mem. 12:21-23.) As the docket already has over four-hundred filings, the court will not continue to search through sections of past filings to resolve a pending motion. **On any future motion in this case, therefore, the court will not consider an argument simply incorporated by reference.**

[6] For the purposes of this motion to dismiss, the court takes all allegations in the HAC regarding the 1999 Letter's contents as true and accurate. See Cruz v. Beto, 405 U.S. 319, 322 (1972). Even though a court may, under certain circumstances, consider documents necessarily part of a complaint, Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001), the court cannot do so here with respect to the 1999 Letter because the parties have not filed a copy with the court.

1  sufficient that plaintiffs have alleged that particular plan
2  fiduciaries sent, knew of, or were otherwise responsible for the
3  1999 Letter (HAC ¶¶ 34-35), the letter constituted a "pitch[]" to
4  ninety-one employees and plan participants for approval of the
5  1999 Transaction (id. ¶¶ 34, 58), the letter contained false
6  statements and omissions (id. ¶¶ 71-73, 75, 104), and the 1999
7  Transaction was an element of the transfer of control of JDS to
8  the Directors' Trust for the purpose of preventing HolliShare
9  from eventually assuming control of JDS (id. ¶¶ 4, 33).  The
10 allegations contained in the HAC are thus adequate to survive a
11 motion to dismiss for failure to state a claim.
12         Accordingly, the court will deny defendants' motion to
13 dismiss plaintiffs' claims regarding the 1999 Letter.
14         IT IS THEREFORE ORDERED that defendants' motion to
15 dismiss be, and the same hereby is, DENIED.
16 DATED:  November 19, 2008

                           WILLIAM B. SHUBB
                           UNITED STATES DISTRICT JUDGE