IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES P. DeFAZIO,

    Plaintiff,                      No. CIV S-04-1358 WBS GGH

    vs.

HOLLISTER, INC., et al.,             ORDER

    Defendants.
_____/

INTRODUCTION

        Previously pending on this court's law and motion calendar for November 20, 2008, were two motions to strike expert reports by defendants, filed October 17, 2008 and October 20, 2008. Daniel Wilcoxen and Martin Jensen appeared for plaintiff Ellis, and Scottlynn Hubbard appeared for the DeFazio/Dimaro plaintiffs. Andrew Brehm, James Adducci, and William Gould appeared for defendants. Having heard oral argument and reviewed the record, the court now issues the following order.[1]

        Defendants filed two separate motions to strike experts. In their first motion, filed October 17, 2008, defendants move to strike plaintiffs' expert witness reports by Kevin Long,

---

[1] The court previously ruled that a joint Rule 37-251 statement was not necessary and that the parties could submit argument by regular motion practice.

1

Karen Handorf and the initial report of Dr. Shannon Pratt.[2] Defendants' second motion to strike, filed October 20, 2008, seeks to strike the Pratt valuation report, filed October 17, 2008. Both Pratt reports will be addressed together. *The motion to strike the Pratt reports applies only to the DeFazio/Dimaro plaintiffs.*

DISCUSSION

    I. Long and Handorf Reports

Defendants move to strike the reports of Long and Handorf, claiming that these opinions are solely legal conclusions which invade the province of the court. This part of the motion is not properly before the undersigned as it does not involve discovery. Therefore, it will be denied without prejudice to its renewal before the district judge.

    II. Pratt Reports (DeFazio/Dimaro Plaintiff's Only)

The deadline for rebuttal reports was October 17, 2008. (Dkt. # 321). Moreover, the scheduling order required disclosure of experts and their reports by September 19, 2008, and disclosure and reports "intended solely for rebuttal" by October 17, 2008. Order, filed February 19, 2008, at 2. (Docket #321.) Defendants seek to strike both of the reports submitted by Shannon Pratt on behalf of the DeFazio/Dimaro plaintiffs. Defendants object to the initial report, filed August 26, 2008, as irrelevant and containing only generalities on valuation, i.e., accounting platitudes, but lacking an opinion applying valuation to the specific facts of this case. They also object to the valuation report, served on October 17, 2008, arguing that it is not a rebuttal report but rather, belatedly an initial (specific) report on valuation, and therefore it is untimely.

Rule 26(a)(2), governing required disclosures, provides in part:

> (2) Disclosure of Expert Testimony.
>   (A) *In General.* In addition to the disclosures required by paragraph Rule 26(a)(1), a party must disclose to other parties the identity of any witness it may use at trial to present evidence under

---

[2] The Long report was submitted by plaintiff Ellis and is attached as Exhibit 1 to docket number 410. The Handorf and Pratt reports were submitted by the Defazio/Dimaro plaintiffs and are at docket numbers 395, 385 and 411 respectively.

Federal Rule of Evidence 702, 703, or 705.

(B) *Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report - prepared and signed by the witness - if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the data or other information considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous four years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of compensation to be paid for the study and testimony in the case.

The teeth behind the requirements of expert disclosure are found in Fed. R. Civ. P. 37(c)(1). As seen from this rule, exclusion of a witness for late or incomplete designation is not automatic:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: [may impose other appropriate sanctions].

The burden is on the party facing sanctions to prove harmlessness. <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1107 (9th Cir. 2001).

Supplementary disclosures are intended only to supplement, and are not to be used to provide an extension of the deadline to provide expert reports. <u>Metro Ford Truck Sales, Inc. v. Ford Motor Co.</u>, 145 F.3d 320, 324 (5th Cir. 1998). The <u>Ford</u> court refused to permit a supplemental expert report where the initial expert designation failed to include a written report. To permit the report, submitted three months later, would be tantamount to granting a three month extension of time. Where an initial disclosure is so incomplete that it does not satisfy

Rule 26(a)(2)(B), and the second report contains the information, reasoning, and opinions which must be disclosed in the initial disclosure, the expert may be limited to testifying to only opinions disclosed in the timely initial report.  Keener v. U.S., 181 F.R.D. 639, 642 (D. Mont. 1998).  The Keener court applied the Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir. 1990), factors (includes prejudice) to determine this sanction.

Analogously, in Wong v. Regents of University of California, 410 F.3d 1052 (9th Cir. 2005), the court of appeals upheld the district court's decision to exclude plaintiff's late designated experts.  Significant to that decision was plaintiff's inability to convince the district court "that the necessity of the witness could not have been reasonably anticipated at the time the lists were exchanged," pursuant to the terms of the pretrial order.  Id. at 1060.  The court explained:

> The same status conference order which set the deadline for expert identification and the completion of discovery also set a deadline for resolving pretrial motions, such as the University's motion for summary judgment.  In this instance, it appears that the University filed its motion about as late as it could while still complying with the schedule set by the court.  If Wong had been permitted to disregard the deadline for identifying expert witnesses, the rest of the schedule laid out by the court months in advance, and understood by the parties, would have to have been altered as well.  Disruption to the schedule of the court and other parties in that manner is not harmless.  Courts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to.

Id. at 1062.

Clearly, the Rules do not contemplate sham first reports, only to be "supplemented," after one's adversary shows his hand.  Plaintiffs cite to the undersigned's opinion in Johnson v. Sacramento County, 2007 WL 127799 (E.D. Cal. 2007), in support of their position that Pratt's one-two punch in the initial and supplemental reports respectively were proper.  There, the undersigned found that plaintiff's counsel was *not* justified "in the patently incomplete expression of opinions in the first disclosure." Id. at *3.  In fact, the sanctions

4

imposed there are for the most part appropriate to the circumstances here.

The initial Pratt report will not be stricken because although it contains only general accounting platitudes and is not necessarily helpful, it was timely served.[3] It is also instructive in demonstrating by stark contrast that the second Pratt report is not a rebuttal report but rather a late initial report. The District Judge can determine the probative value of these platitudes in the initial report, if any.

The Pratt valuation report is another matter. It is in actuality an initial report because it renders an opinion on fair market value based on an analysis and reconciliation of indicated values with an adjustment for lack of marketability, and comes to a dollar amount figure of value. (Dkt. 411.) In contrast to the five page initial report of Dr. Pratt, the valuation report is 27 pages long. It was filed on October 17 in the same filing as Pratt's rebuttal report to defendants' expert reports, and Pratt's cover letter clearly states that the production on that date included a "report of the fair market value of The Firm of John Dickinson Schneider, Inc. (JDS) ... *and* our rebuttal of the Expert Report of Roger J. Grabowski and John Levitske, dated September 19, 2008, by Duff & Phelps (D&P report)." (emphasis added) (Dkt. #411.) The two reports are physically separate in the disclosure of October 17. Consequently, defendants do not seek to strike the rebuttal portion of the report. The physical separation of the two reports is further indicative of how they should be treated. The valuation report was clearly not intended to be a rebuttal report.

Although plaintiffs claim that they did not have to provide an expert opinion on fair market value of shares until after defendants' experts raised it in their opinions, this assertion of – "I don't have to give an opinion on an 'affirmative defense' in my initial disclosures"– finds

---

[3] For example, the Pratt Report's concludes that "book value as stated in the interrogatories is not a standard of value but rather an accounting term; that a valuation needs to consider all three approaches to value; and that each approach needs to be justly analyzed for its applicability." (Dkt. 385 at 7.) The approaches referred to in the conclusion are the income approach, the market approach and the asset approach, but this report does not give an opinion as to which approach should be applied to render a value to the JDS shares.

no support in Rule 26. Even assuming that defendants have the burden of proof on the issue of proper valuation, see Howard v. Shay, 100 F.3d 1484, 1490 (9th Cir. 1996), plaintiffs certainly have a burden of production. And that production should have been made in the court-ordered *simultaneous* disclosures; an expert in such a situation must give *all* opinions regardless of whether those opinions are directed to a claim on which the plaintiffs have the burden of proof, do not have the burden of proof, or an affirmative defense. Rebuttals are reserved for those issues on which a party was "surprised" by the initial disclosure of the adversary.

Moreover, the record in this case belies any assertion that specific valuation was a "surprise issue." In fact plaintiffs knew they had to give an opinion on market share valuation because they utilized an expert to give such an opinion in their motion for summary judgment in 2005. (Docket #s 32-37.) In addition, the various motions to dismiss focused like a laser on the issue:

> Judge Karlton's conclusion is that the settlor doctrine cannot insulate defendants from liability for following the terms of the Plan if those terms violate ERISA. And he believes that whether the Plan's terms violate ERISA depends on the fair market value of JDS stock-a question of fact-which means that plaintiffs' claims cannot be decided on a motion to dismiss. Judge Karlton's conclusions are essentially correct.
> ***
> ("[W]hether defendants' utilization of book value constitutes 'adequate consideration' [under 29 U.S.C. § 1108(e) ] is a question requiring examination of evidence and the merits, thus precluding dismissal at this stage."). Judge Karlton was correct. If there was a market for JDS stock at a price above book value, and if the Plan's fiduciaries nevertheless sold Plan shares at book value, then they may have violated ERISA's requirement that securities be sold only for "adequate consideration." 29 U.S.C. § 1002(18).

DeFazio v. Hollister, Inc., 2007 WL 3231670 *5(E.D. Cal. 2007).

Thus, proof of fair market value in excess of book value was a key fact at issue in the litigation.

Furthermore, the fifth amended complaint seeks numerous remedies including distribution of monies based on a fair market valuation. The prayer for relief includes:

> 8. Requiring the defendants to determine the fair market value of JDS securities held by the Plan (independent of the aforementioned stock restrictions), and to revalue all participants' accounts

6

accordingly;
9. Requiring all retired participant's accounts to be revalued at fair market value as of the date of the partial distribution thereof, and to distribute the remaining balance as soon as administratively feasible;

Fifth Am. Compl. at 66 (Docket # 368.) This complaint also contains numerous references to the distinctions between fair market value and book value, and that fair market value is greater than book value. (Id., ¶¶ 92, 94, 95, 99, 123, 138, 175.). See also Item 7 of the prayer which seeks a disgorgement of profits ostensibly based on the alleged improper evaluation.

In striking contrast to the excuses by the DeFazio/Dimaro plaintiffs, plaintiff Ellis provided her valuation reports timely, indicating not only that she knew that valuation was a central issue, but that it was reasonable to include valuation in an initial report.

Also telling of plaintiffs' knowledge that valuation should have been calculated in their initial expert report is the reference in the Pratt valuation report to plaintiffs' request for permission to interview Hollister management. Defendants did give permission with certain restrictions, but plaintiffs did not respond to this offer. These facts indicate that plaintiffs originally attempted to obtain valuation information prior to Pratt's initial report. Plaintiffs also never bothered to conduct a Rule 30(b)(6) deposition of a Hollister representative to obtain information needed for Dr. Pratt's valuation report. Rather than try to slip in an initial report late, plaintiffs could have sought an extension from the court if they needed more time to complete the initial report.

Plaintiffs make much of their argument that a prima facie case does not require a showing of actual harm, but that they need only show breach of fiduciary duty. Defendants, however, cite numerous cases to refute this argument. "To establish a breach of fiduciary duty claim under ERISA, a plaintiff must show a breach of a fiduciary duty and 'a prima facie case of loss to the plan.'" Eckelkamp v. Beste, 315 F.3d 863, 867 (8th Cir. 2002); McDonald v. Provident Indem. Life Ins. Co., 60 F.3d 234, 237 (5th Cir. 1995) (same). See also Chao v. Hall Holding Co., 285 F.3d 415, 430-438 (6th Cir. 2002) (discussing valuation of stock in an ESOP);

7

1  Kuper v. Iovenko, 66 F.3d 1447, 1459-60 (6th Cir. 1995) (finding plaintiff required to show
2  causal link between fiduciary's failure and harm suffered by plan).  These cases show that the
3  valuation of the shares is important to determine if holding them at book value was far less than
4  fair market value, and if so, whether a fiduciary was imprudent for selling them back to the
5  corporation at this value when a retiree desired benefits.

6  Clearly, an opinion specific to valuation was important for plaintiffs' case.
7  Therefore, the court finds that plaintiffs lacked substantial justification for not including the Pratt
8  report in their initial disclosures.

9  Defendants have shown some harm as a result of plaintiffs' late disclosure of
10 initial information.  Defendants' experts had one less month to do their valuation report than did
11 Pratt.  Defendants' experts had no way to rebut Pratt's valuation report, but Pratt was able to
12 rebut defendants' valuation reports.  Pratt also had a one month head start to prepare plaintiffs'
13 counsel for depositions of defendants' experts, but defendants' experts did not have that extra
14 month to prepare defendants for Pratt's deposition.

15 Nevertheless, defendants are incorrect that striking of the report, or exclusion of
16 the witness, is an automatic sanction.  Prejudice does count in the equation.  Although the
17 plaintiff in Wong received the penalty of exclusion of an expert, the same circumstances present
18 in that case are not present here.  The Wong experts to be designated late were proffered after a
19 dispositive motion had been filed.  The Ninth Circuit found that the district court did not abuse
20 its discretion in disallowing the experts because the entire scheduling order would have been
21 placed in jeopardy because of the late designations.  Id at 1062.  In the present case, however, the
22 late disclosure can take place without affecting the other scheduled dates in this litigation.

23 Defendants cannot read the "harmless" or "lesser sanctions" exceptions out of the
24 enforcement rule, Rule 37(c)(1) – especially where the failure to disclose is not accompanied by
25 gamesmanship, bad faith or deliberate disobedience of a court order.  Prejudice is a component of
26 any sanctions analysis as is the need to explore the existence of lesser, yet still effective

1  sanctions.  See Wills v. Amerada Hess, 379 F.3d 32, 51 (2nd Cir. 2004); Collins v. Beazer Homes
2  USA, Inc, 334 F. Supp. 2d 1365, 1371 (N.D. GA. 2004); Engineered Products Co. v. Donaldson
3  Co., 313 F. Supp. 2d 951, 1006 (N.D. Iowa); *compare* El Dorado Irrigation Dist. v. Traylor Bros.,
4  2006 WL 191960 (E.D. Cal. 2006) where the undersigned and Judge Karlton found a late
5  disclosure to be gamesmanship, in direct contravention of court orders against a backdrop of
6  discovery abuse, and not harmless.
7        Defendants' claims of prejudice are not substantial enough for draconian
8  sanctions.  They timely had the benefit of the Ellis expert's valuations, and those valuations are
9  not that different from those of Pratt.  Moreover, the acceptability of defendants' valuations will
10 stand on their own for the large part, and not so much on impeachment of Pratt's valuations.
11 Impeachment is important, but it is certainly not the end-all and be-all of the valuation which the
12 district judge or trier of fact will finally accept.  Finally, there are remedies which the court can
13 fashion which will mitigate any prejudice.  This is not to say that a party may ignore the
14 scheduling order requirements – these orders are important in order to preserve the fairness of
15 proceedings.  However, the penalty must fit the crime.
16        Although one can validly question the bona fides of plaintiffs' counsel in delaying
17 the Pratt evaluation in light of the clear importance of the valuation of fair market value, given
18 the above discussion, the court ultimately does not find the gamesmanship which would permit
19 greater sanctions.  Plaintiffs' counsel Hubbard was clearly wrong, but appeared to the court to be
20 sincere in his error.
21        The court fashions a less drastic remedy as follows.  As discussed at hearing,
22 depositions of the experts will take place.  Plaintiffs are to proffer Pratt first.  Defendants will not
23 have to pay this expert for his time at deposition.  Also, defendants' expert(s) may express
24 opinions outside of his/her/their current report *insofar* as impeachment of Pratt's report is
25 concerned.  They are free to comment at will about the Pratt valuation report; any rebuttal report
26 to the Pratt valuation report is unnecessary.

CONCLUSION

Accordingly, IT IS ORDERED that:

1. Defendants' motion to strike the expert witness reports of plaintiffs' experts Kevin Long and Karen Handorf, filed October 17, 2008, (docket # 409), is denied without prejudice to renew the matter before the district judge.

2. Defendants' motions to strike the expert witness reports of plaintiffs' expert Shannon Pratt, filed October 17 and 20, 2008, (docket #s 409, 412), are denied.

    a. Defendants are permitted to take this expert's deposition prior to plaintiffs taking the depositions of any of defendants' experts on the same subject matter.[4]

    b. The DiFazio/Dimaro plaintiffs shall pay the expenses of Pratt's deposition, insofar as such expenses are charges made for Pratt's time.

Dated: December 1, 2008

/s/ Gregory G. Hollows

U.S. MAGISTRATE JUDGE

GGH:076/Defazio1358.str

---

[4] The discovery deadline of January 30, 2009 is in effect.

10