*James P. DeFazio v. Hollister Incorporated et al.*
*Kathleen Ellis v. Hollister Incorporated et al.*
*Brenda Dimaro et al. v. Hollister Incorporated et al.*
Master Case No.: CIV.S-04-1358 WBS GGH
(Consolidated)


**Item 5**

of the

**Appendix of Documents Submitted In Support Of Defendants'
Motions For Summary Adjudication On Various Claims**


Exemplar of the February 17, 1999 Letter from
Winn, Stempinski and Zwirner to the
Contingent Employee/Shareholder Beneficiaries of the 1977 Trust

[Followed by Enclosures 1 through 6 thereto]

February 17, 1999



Dear Mr. ███████:

The three of us are writing in our capacity as owners of Common Shares of The Firm of John Dickinson Schneider Inc. ("JDS Inc") to each of you who also owns Common Shares of JDS Inc and who is an employee of Hollister Incorporated or its Canadian subsidiary Hollister Limited ("Hollister").

### *Summary of Proposal*

*We are writing at this time, in light of the impending termination of the John D. Schneider Preferred Share Trust ("John Schneider Trust") on April 21, 2001, to explain to you our proposal for the governance of JDS Inc and Hollister.  Our proposal is to maintain the companies as independent and employee owned companies governed and managed in accordance with the policies and principles established by John Schneider.  The John Schneider Trust holds all the Preferred Shares of JDS Inc ("Preferred Shares") and, when it terminates, they will be distributed to the then employees of Hollister who own directly Common Shares of JDS Inc.  The Preferred Shares greatly outnumber the Common Shares and, since each share has one vote, the Preferred Shares control the election of the directors of JDS Inc and, through it, the election of the directors of Hollister.*

H 02267
CONFIDENTIAL

*We believe that it is desirable to establish a new trust, perpetual in duration, which would own the Preferred Shares (the "New Trust"). The New Trust would maintain the independent and employee-owned nature of the companies and would continue the governance of them in accordance with the policies and principles of John Schneider. There would be five individual trustees, three of whom would not be involved in the management of the business and two of whom would be directors or officers of Hollister. The initial trustees in 2001 would be the three of us, Alan F. Herbert, Hollister's President and chief operating officer, and Donna J. Matson (Carpenter), a retired Hollister Manager.*

*We request each Hollister employee who owns Common Shares of JDS Inc to join with us and commit to give all Preferred Shares which he or she may be entitled to receive in 2001 to the New Trust. We believe that continuation of the independent and employee-owned nature of the companies, and of their governance in accordance with John Schneider's policies and principles, is in the best interests of the shareholders and employees of Hollister.*

*This letter sets forth the background, terms and consequences of our proposal. Please read it carefully. There will be a meeting on March 4, 1999 to permit you to ask any questions you may have. We will then ask you to agree in writing that any Preferred Shares which you may be entitled to receive in 2001 will be transferred directly to the New Trust. As more fully explained in this letter, it is your decision whether to do so.*

-2-

H 02268
CONFIDENTIAL

*If you do not do so, your alternative will be, as an employee holding Common Shares of JDS Inc on April 21, 2001, to receive your share of the Preferred Shares subject to a written agreement by you to vote them in accordance with John Schneider's policies and principles. You would then hold and vote your Preferred Shares and receive the 12% dividends thereon. JDS Inc would have the right to repurchase them at their par value of $.01 per share upon termination of your employment.*

*As you read this proposal letter and consider our views and opinions, you should be aware that the three of us have current and future positions with JDS Inc, Hollister, the John Schneider Trust and the New Trust, and financial interests in the Common Shares of JDS Inc, which may be different from yours. See "Positions and Interests of Those Forming the New Trust" on page 30. Regardless of these differences, however, we believe that we share with you an appreciation for John Schneider's legacy of employee ownership and for the generous manner in which he sought to preserve that legacy for us.*

*This letter and its enclosures contain confidential information. You may of course describe the situation generally if you wish to your spouse. Otherwise, however, we expect you not to share any of the contents of these documents with any other persons except to the extent that you deem necessary or appropriate to obtain legal or financial or tax advice. To the extent of disclosure for purposes of obtaining such advice, you need to advise any legal or financial or tax advisers of the confidentiality of these documents and take reasonable steps to insure that they are maintained as confidential by your advisers.*

-3-

H 02269
CONFIDENTIAL

### Background

JDS Inc and its predecessor previously operated a printing business and in the 1970s became the holding company for Hollister. As you know, Hollister is engaged in the development, manufacture, marketing and sale of ostomy products, other medical devices and healthcare products.

JDS Inc has two classes of stock, Preferred Shares and Common Shares. There are outstanding 61,750,000 Preferred Shares and 1,938,397 Common Shares. All of the Preferred Shares are owned by the John Schneider Trust. Approximately 69% of the Common Shares are owned by Hollister's tax-qualified profit sharing plan, the Hollister Employee Share Ownership Trust ("HolliShare") and the Trustees of HolliShare vote its Common Shares. There are three HolliShare Trustees, James J. McCormack ("McCormack"), James A. Karlovsky ("Karlovsky") and Richard T. Zwirner ("Zwirner"). As you know, McCormack is Senior Vice President Finance and Chief Financial Officer of Hollister and has been an employee since 1981; Karlovsky is Vice President Human Resources of Hollister and has been an employee since 1989; and Zwirner is a corporate director of JDS Inc and Hollister and has been the non-employee (outside) General Counsel of the companies since 1977. Another approximately 7% of the Common Shares are owned by the Hollister Foreign Employee Share Ownership Trust and other benefit plans. The balance, or approximately 24% of the Common Shares, are owned directly by 91 individuals (including the three of us) who are corporate directors, officers, directors, managers and other key employees of Hollister.

-4-

H 02270
CONFIDENTIAL

Each Preferred Share and each Common Share is entitled to one vote. Directors of JDS Inc are elected by the two classes voting together. Because the Preferred Shares constitute approximately 97% of the total votes, the John Schneider Trust controls the composition of the Board of Directors of JDS Inc and, through it, the composition of the Board of Directors of Hollister. Voting is required by the two classes of stock separately on other important proposals, meaning that there must be a majority or supermajority of each of the Preferred Shares and the Common Shares voting in favor of a proposal in order for it to pass. For example, a merger, a sale of all the assets or a liquidation would require approval of each of the two classes of stock voting separately by a vote of 66-2/3% of the outstanding shares of each class.

Each Preferred Share has a stated value of $0.01 per share. JDS Inc pays dividends on the Preferred Shares at the rate of 12% per year of the stated value. Dividends on all the outstanding Preferred Shares total $74,100 per year.

John D. Schneider ("Schneider"), one of the founders of JDS Inc and Hollister, had previously reorganized JDS Inc in a manner which allowed Hollister employees to own the Common Shares (i.e., the equity) of JDS Inc while he retained the Preferred Shares. On April 21, 1977, he placed all the Preferred Shares in the John Schneider Trust. For the period of 24 years ending in 2001, the Preferred Shares are voted by the Trustee, after which they are to be distributed in accordance with the John Schneider Trust to those employees of Hollister who own Common Shares of JDS Inc and agree in writing to vote them in

-5-

H 02271
CONFIDENTIAL

accordance with the policies and principles in the John Schneider Trust. The purpose of the 12% dividend on the Preferred Shares was to give Schneider and his wife, Minnie R. Schneider, a return on their investment in JDS Inc and to provide cash to the Trustee to pay any expenses.

Schneider was actively engaged in the printing business and then in Hollister's business for approximately 50 years until his retirement as the principal officer of Hollister in 1972. Schneider deeply appreciated the contributions made by Hollister's employees to its business success and firmly believed that these contributions were enhanced by the close identification of the employees with the interests of Hollister. He determined that the key to this success was the concept of employee common share ownership of the company and governance of the company in accordance with the policies and principles set forth in the John Schneider Trust. He expressed his appreciation and this firm belief in the form of the John Schneider Trust. A copy of the Trust is included with this letter as Enclosure 1.

There were several purposes for establishing the John Schneider Trust. One was to see that the companies were maintained as independent and employee owned companies. A second purpose was to see that the companies continue to be governed, managed and operated in accordance with six basic policies and principles (the "Policies/Principles") which he had developed over his 50 years in business. The John Schneider Trust mandates that its Trustee always vote the Preferred Shares in a manner which insures continued implementation of these Policies/Principles. A third purpose was that control of the companies remain

-6-

H 02272
CONFIDENTIAL

concentrated in Schneider's hands (as Trustee) and later in the hands of a few individuals (as Trustee) whose motivation and intentions he trusted and in whose competency he believed.

The following is a summary of the Policies/Principles in the John Schneider Trust.

## 1. Employee Owned Companies

The Common Shares of JDS Inc shall be owned directly and indirectly by the employees. The term employees was construed at the time the John Schneider Trust was established in 1977 to permit his wife, Minnie R. Schneider, to own Common Shares, although not an employee, in light of her close and continuous working relationship with JDS Inc and Hollister over a long period of time. Similarly, the term employees has been construed since then to permit our outside corporate directors to own Common Shares, although not employees. Under this construction, two of our current outside directors, Zwirner and Loretta L. Stempinski ("Stempinski"), own Common Shares.

JDS Inc shall continue to sell its Common Shares directly to selected employees of Hollister. Hollister shall continue to maintain an employee share ownership plan such as HolliShare so as to extend the principle of indirect share ownership to as many employees of Hollister as possible, excluding union employees. Examples of application of this principle in recent years are the extension of ownership of Common Shares to managers and other key employees of Hollister's foreign subsidiaries through the Hollister Foreign Employee Share

-7-

H 02273
CONFIDENTIAL

Ownership Trust and the provision of Common Share ownership to one of our corporate directors and several of our officers through a restricted stock grant award program.

## 2. Financial and Investment Policies

JDS Inc and Hollister shall continue their conservative financial and investment policies. The companies should retain earnings to fund capital development as opposed to borrowing money or using outside financing such as mortgages, bank borrowings and public offerings of stock or other securities. JDS Inc's primary long term debt is comprised of the subordinated promissory notes held by its former employee-common shareholders, which is not considered borrowed money for these purposes.

This has been construed to allow the companies to borrow from banks and to give mortgages on its real estate as long as the companies have, overall, a substantial and positive net liquidity. Net liquidity is the difference between our cash and short-term investments on the one hand and the amount of our borrowings, including bank borrowings and any other mortgages, on the other hand. Hollister also borrows money for tax planning and cash flow reasons.

The conservative financial and investment policies are intended to prevent a violation of the principle of employee share ownership.

-8-

H 02274
CONFIDENTIAL

### 3. Growth

Growth in sales and expansion of operations shall continue to result primarily from successful marketing of existing products and related products, and the natural expansion of the markets for those products in the foreseeable future. Growth should not be a goal in and of itself. Growth is not to jeopardize efficient operations or continued application of the principles of employee share ownership and conservative financial and investment policies.

### 4. Expansion in Foreign Markets

Investments in plant and other assets (including acquisitions) outside the United States should be approached on a cautious and conservative basis. Foreign investments should only be made when anticipated retained earnings are sufficient to exceed anticipated working capital and other foreseeable cash needs.

### 5. Expansion of Product Line and Acquisitions of Assets

Introductions of new and improved products and acquisitions of all kinds of assets, including businesses, shall be judged by these standards: (1) Hollister shall conscientiously develop the major markets for its existing products. (2) New and improved products should ordinarily be logical extensions of the existing product line and otherwise consistent with then-existing sales efforts, channels of distribution and manufacturing processes and facilities of Hollister. (3) Extensions into other types of products should be approached on a conservative and cautious basis.

-9-

H 02275
CONFIDENTIAL

### 6. General Policies and Philosophy of Operation

The John Schneider Trust includes general policies and a philosophy of operation which Schneider himself often expressed to his key managers: Hollister should sell products of a very high quality. It should hire, retain and compensate commensurately employees whose competence, integrity and identification with the interests of Hollister are constantly evaluated by its Board of Directors and officers. Hollister should be guided by the principle that it is in business to provide rewarding jobs with fair compensation as well as financial gain for its employee-shareholders.

The Policies/Principles must be applied by the Trustees in an understanding and intelligent fashion to an ever-changing business over the years. The Trustees have the ability to deviate from these Policies/Principles but only after thorough, deliberate and careful consideration and discussion, and on the further condition that such deviation is essential to meet the goals of financial stability and the continued manufacture and distribution of high-quality healthcare products.

The full text of the Policies/Principles appears in ARTICLE SIXTH of Enclosure 1.

The world has changed significantly since Schneider established his Trust and entrusted his companies to our care as his successor Trustee. The market for Hollister's ostomy products has grown and matured. The nature of medicine and of medical practices have been transformed. The world marketplace has opened to price and other forms of

-10-

H 02276
CONFIDENTIAL

competition. Hollister has changed to meet the needs and challenges of the changing marketplace. As part of its evolution and development, Hollister has adopted and modified and is managing its business in accordance with the Hollister Mission Statement and Strategic Corporate Objectives. In addition, Michael C. Winn ("Winn"), Hollister's Chairman and chief executive officer, has written and promulgated his Vision Statement. The Mission Statement, Vision Statement and the Strategic Corporate Objectives are consistent with the Policies/Principles in the John Schneider Trust.

Hollister's Mission Statement provides in part:

> Hollister has the unique advantage of building on the solid foundations of "quality products, quality service, quality employees," a legacy of our found-er, John Dickinson Schneider.

> We are pledged to maintaining an independent company -- employee owned -- and, to that end, will continue to manage our company as an internally financed and profitable business.

Hollister's four Strategic Corporate Objectives are as follows:

1. To define, implement and develop fully a "market needs" company;

-11-

H 02277
CONFIDENTIAL

2. To regain the leading market share position in ostomy markets worldwide;

3. To develop two non-ostomy businesses each comprising at least 30% of total company sales; and

4. To focus business development and acquisitions in support of the global strategic plan.

The responsibility for the John Schneider Trust remained with Schneider until he was unable to continue handling his business and personal affairs in 1981. Since that time, Winn, Stempinski and Zwirner, as successor Trustee to Schneider, have had that responsibility. Winn was the President of Hollister from 1977 until 1997 and continues as the Chairman and chief executive officer of Hollister. Stempinski was an employee of Hollister for approximately 19 years who, at the end of her career, was Manager of the Customer Service Department. Zwirner, as noted, has been the General Counsel of Hollister since 1977. The three of us as Trustee (and any successors to us) are responsible for the John Schneider Trust through its termination on April 21, 2001.

We have also served since 1980 as directors of JDS Inc and of Hollister. Alan F. Herbert ("Herbert"), President and chief operating officer of Hollister, became a director of the companies in May 1998, and Richard I. Fremgen, Professional Specialist on the accountancy faculty at the University of Notre Dame, became a director in January 1999.

-12-

H 02278
CONFIDENTIAL

## Termination of the John Schneider Trust

The John Schneider Trust terminates on April 21, 2001 and all the Preferred Shares will be distributed to those employees of Hollister who then hold Common Shares of JDS Inc and who agree in writing to abide by the Policies/Principles. For simplicity, we will refer to you and the other Hollister employees who then hold Common Shares as the "Employee/Beneficiaries" of the John Schneider Trust. The 61,750,000 Preferred Shares are to be distributed to those employees in the proportion by which the number of Common Shares then held by each such employee bears to the total number of Common Shares held by all such employees as a group.

Under the terms of the John Schneider Trust as construed by the Trustee, the Preferred Shares will not be distributed to (1) HolliShare because it is a trust (an entity) and not a Hollister employee; (2) the Hollister Foreign Employee Share Ownership Trust and the other benefit plans owning Common Shares because they are also trusts and not Hollister employees; or (3) Stempinski and Zwirner because they are not Hollister employees.

After distribution of the Preferred Shares, the balance of the assets in the John Schneider Trust, consisting of money market funds and marketable securities, are distributable to charity. We have decided to distribute them to The John D. and Minnie R. Schneider Charitable Trust.

-13-

H 02279
CONFIDENTIAL

Once distributed to the Employee/Beneficiaries, the Preferred Shares for all practical purposes would not be transferable to any person or entity other than JDS Inc itself. This is because of the transfer restrictions and repurchase provisions set forth in JDS Inc's Restated Articles of Incorporation ("Restated Articles"), which are designed to keep JDS Inc employee-owned. In accordance with the Restated Articles, any Preferred Shares held by employees of Hollister would be subject to repurchase by JDS Inc upon termination of employment with Hollister for any reason. The repurchase price would be $0.01 per share. The same transfer restrictions and repurchase provisions in the Restated Articles allow JDS Inc to repurchase Common Shares owned by an employee upon termination of employment with Hollister. JDS Inc has consistently exercised its right under the Restated Articles and repurchased Common Shares from departing employees. The transfer restrictions and repurchase provisions of the Restated Articles cannot be changed without the approval of 66-2/3% of the Preferred Shares and 66-2/3% of the Common Shares. A copy of the Restated Articles is included with this letter as Enclosure 2.

We cannot predict with certainty the percentages of the Preferred Shares which would be distributed to the various Employee/Beneficiaries in April 2001 because there probably will be changes in the employee-owners of Common Shares of JDS Inc between now and that date. Some of the current employee-shareholders may leave Hollister and new shareholders may be added as the result of the annual offerings and sales of Common Shares by JDS Inc. We can estimate, however, the number of Preferred Shares which will be distributed to each Employee/Beneficiary. Our present estimate is that Winn will receive approximately 45.25%

-14-

H 02280
CONFIDENTIAL

of the Preferred Shares.  Our present estimate as to the percentage of the Preferred Shares you would receive is set forth later in this letter.

Many of you have expressed an interest in knowing how the companies will be governed upon termination of the John Schneider Trust; how they will be maintained as independent and employee owned; how the Policies/Principles will be applied to their ongoing management and operations; and the effect of the termination of the John Schneider Trust on the company's control, management, finances and stability.  The proposal set forth here addresses these questions.

### Planning

Winn has served as the principal officer of Hollister for 22 years and has announced his retirement in May 2001.  Plans have been developed and are being implemented providing for continuity and succession in management and leadership of the company.  Important first steps in those plans have been the (1) division of the principal officer's duties between executive and operating responsibilities, (2) appointment of Winn to the position of Chairman and chief executive officer, (3) creation of the new position of President and chief operating officer, (4) recruitment and appointment of Herbert to the position of President, and (5) expansion of the Board of Directors of Hollister to include Herbert and Richard I. Fremgen.

-15-

H 02281
CONFIDENTIAL

The three of us have discussed at length the future governance of JDS Inc and Hollister. We have duly noted that the two companies for decades have been preserved through Schneider's legacy as independent and employee owned companies governed, managed and operated in accordance with the Policies/Principles. This has been achieved by concentrating ownership of the Preferred Shares with Schneider and later with the John Schneider Trust.

We have also examined JDS Inc's universal practice of selling and repurchasing Common Shares at their book value and have concluded that this has been and is critical to the ability of JDS Inc and Hollister to continue as independent and employee owned companies. The Board of Directors of JDS Inc has without exception authorized the sale of Common Shares to employees at prices equal to their book value and, in accordance with the Restated Articles, all repurchases of Common Shares from employees and from HolliShare have been at prices equal to book value. Pursuant to the directive set forth in the HolliShare trust, all Common Shares owned by the trust are valued once a year as of December 31 at their book value.

We have for approximately three years been giving studied consideration to the consequences of termination of the John Schneider Trust and to continuation of the companies as independent and employee owned, governed and managed in accordance with the Policies/Principles. We have developed our own thoughts on how this should be accom-

-16-

H 02282
CONFIDENTIAL

plished and have obtained the advice of legal counsel. We have also reviewed the capital structure of our companies and have obtained the advice of financial consultants.

Based on our study and this professional advice, we have concluded that we wish as individuals, joined by others, to create a New Trust which will provide for the governance of JDS Inc and Hollister beginning April 21, 2001 (1) through ownership of the controlling Preferred Shares of JDS Inc by the New Trust (to be known as The Firm of John Dickinson Schneider, Inc. Preferred Share Trust April 21, 1999), (2) by maintaining them as independent and employee-owned companies; (3) by continued adherence to the Policies/Principles, and (4) through administration of the New Trust by five trustees, a majority of whom will not be involved in the management of Hollister. We believe that independence, employee ownership and adherence to the Policies/Principles have been and continue to be in the financial and other best interests of the employee-common shareholders of JDS Inc as well as those of all other employees of Hollister.

### The New Trust

The three of us are joined by Herbert, McCormack, James P. O'Connor ("O'Connor"), William D. Sauerland ("Sauerland"), Denis R. Chevaleau ("Chevaleau"), Jerome A. Saxon ("Saxon") and Karlovsky. As you know, O'Connor is the Controller of Hollister and has been an employee since 1978; Sauerland is Hollister's Director of Treasury Operations and has been an employee since 1976; Chevaleau is the Vice President Corporate Development/Medical Systems Division and has been an employee since 1983; and Saxon is

-17-

H 02283
CONFIDENTIAL

the Vice President Law and has been an employee since 1976. The ten of us have agreed in principle to establish and fund the New Trust with cash and contingent rights to receive Preferred Shares from the John Schneider Trust. We are committing ourselves to be the initial grantors of the New Trust. We propose that you and the other potential Employee/Beneficiaries -- i.e. those eligible to receive distributions of Preferred Shares from the John Schneider Trust in April 2001 -- join us and agree now to the direct transfer into the New Trust of the Preferred Shares which you would otherwise be entitled to receive from the John Schneider Trust.

The New Trust will be perpetual in duration.

The New Trust will provide for five trustees. Beginning June 2001, three of them, a majority, are required to be individuals not involved in the management of Hollister, and two of them, a minority, may be directors, officers, managers or employees of Hollister. The majority may, and preferably should, include persons who have retired from Hollister. The initial trustees will be Winn, Stempinski, Zwirner, Herbert and Donna J. Matson, known to many of us as Donna Carpenter. Donna worked at Hollister from September 1963 until June 1984. She began her career in Hollister's Sales Department after receiving a Bachelors Degree in Marketing from the University of Illinois. For the next several years, she held various positions, including Sales Promotion Coordinator. In January 1974, Donna joined the Marketing Department as an Assistant Product Manager and in 1976 was promoted to the position of Product Manager for identification bands, obstetric and other birth related

-18-

H 02284
CONFIDENTIAL

products. In 1980, Donna moved from the Marketing Department to Sales Services Manager in the Sales Department, replacing Loretta Stempinski upon her retirement. Donna retired from this position in June 1984.

Each trustee of the New Trust will serve as long as he or she is willing and able. When any trustee becomes unwilling or unable to act, the remaining trustees shall appoint a successor trustee selected by them in their sole discretion in order to keep the number of trustees at five. Each successor trustee appointed shall have such experience, such knowledge of Hollister and such judgment, integrity, independence and other personal qualities as would make him or her effective in insuring continued adherence to the Policies/Principles. Due consideration shall be given to persons who have retired and whose last employment was with Hollister. The trustees shall exercise their best judgment to select suitable successor trustees and each appointment shall be made only after thorough and careful consideration and discussion. All successor trustees shall be individuals.

The New Trust provides for some overlap in the individuals serving as trustees and those serving as directors of JDS Inc and Hollister, but at the same time provides for some independence of the trustees from the directors. The following is a summary of these interrelationships.

Beginning June 1, 2001 a majority of the trustees must be "disinterested persons". A "disinterested person" is one who is neither (1) a director, officer, manager, employee,

-19-

H 02285
CONFIDENTIAL

consultant or otherwise similarly compensated by JDS Inc or Hollister, nor (2) a shareholder, director, officer, manager, employee, consultant or otherwise affiliated with any business or entity providing goods or services to JDS Inc or Hollister, such as a customer, supplier or law or auditing firm. A retiree of Hollister receiving benefits (or the proceeds of benefits) earned while an employee will not be considered to be a non-disinterested person solely by virtue of receiving such benefits (or proceeds). If at any time because of, for example, death or resignation of a trustee, a majority of the trustees of the New Trust are not disinterested persons, a mechanism is included in the New Trust for prompt rectification of the situation.

If the trustees filling a vacancy are unable to agree on who should be appointed, those trustees who are disinterested persons shall determine who is appointed.

The Trustee of the New Trust (consisting of the five individual trustees) shall exercise its best judgment to select suitable directors for JDS Inc and Hollister. The Trustee is directed to maintain the number of directors of each of JDS Inc and Hollister at five or the smallest number in excess of five which the Trustee deems proper. The Trustee is also to insure that (1) at all times trustees are also serving as directors of JDS Inc and Hollister; (2) those trustees serving as directors together constitute only a minority of each such board; (3) a majority of each such board are "disinterested directors", as defined; (4) the Trustee, through those trustees serving as directors and its nominees, constitute at least a majority of each such board; and (5) the chief executive officer of Hollister is elected as a director if not already so serving by virtue of being a trustee or nominee.

-20-

H 02286
CONFIDENTIAL

A "disinterested director" is defined as one who is neither (1) an officer, manager, employee, consultant or otherwise similarly compensated by JDS Inc or Hollister, nor (2) a shareholder, director, officer, manager, employee, consultant or otherwise affiliated with any business or entity providing goods or services to JDS Inc or Hollister, such as a customer, supplier or law or auditing firm. A director who is paid a fee for serving as a director or who owns Common Shares of JDS Inc because of being a director, or both, will not be considered a non-disinterested director solely by virtue of receiving such fee or owning such Common Shares or both.

The New Trust requires its Trustee to insure corporate governance in accordance with the Policies/Principles. Hollister's existing Mission Statement, Vision Statement and Strategic Corporate Objectives have been included in the New Trust as examples of the implementation and amplification of the Policies/Principles.

The Trustee is also directed to use its best efforts to cause JDS Inc to continue to sell and repurchase its Common Shares only at prices equal to their book value. The companies are to resist any attempt by any agency of the United States or any state government or by any other person or entity, to change the present system of sale and repurchase of Common Shares at book value or any change in the valuation of such shares for purposes of HolliShare or for any other purpose.

-21-

H 02287
CONFIDENTIAL

The Trustee is also directed to use its best efforts to insure that no natural person shall own directly and indirectly (excluding indirect ownership through a company-sponsored non-discriminatory tax-qualified retirement plan such as HolliShare) more than 10% of JDS Inc's outstanding Common Shares. As to any natural person who may come to own more than 10% as of any year-end, the Restated Articles are proposed to be amended to require the repurchase of enough shares from such person to reduce his ownership below 10% of the then outstanding Common Shares.

Winn and Stempinski have announced their intentions to retire as directors of JDS Inc and Hollister at the annual meeting of shareholders to be held in 2001. Zwirner and Herbert have indicated that they are willing to continue as directors of the companies after that time. If elected as directors in 2001, Herbert and Zwirner would be non-disinterested directors and would be two trustees of the New Trust also serving as directors of JDS Inc and Hollister. They would, as provided in the New Trust, constitute a minority of each such board of directors. Three disinterested directors chosen by the Trustee of the New Trust in due course would also be elected in 2001.

Each trustee of the New Trust will have one vote. If there is a difference of opinion among the trustees, the votes of three of the five trustees will be required for them to act. In exceptional circumstances, described below, the vote of all five trustees will be required.

-22-

H 02288
CONFIDENTIAL

The Trustee of the New Trust may deviate from the Policies/Principles only if the Trustee determines that this is essential in order to (1) preserve the financial stability and soundness of JDS Inc and Hollister, (2) continue the manufacture and distribution of high quality healthcare and other products, or (3) compete in the marketplace occupied by their principal competitors. Any such deviation will be determined by the Trustee only after thorough, deliberate and careful consideration and discussion and only by the affirmative vote of all five trustees.

Also, the Trustee may cause the sale or liquidation of JDS Inc and Hollister if the Trustee determines that the companies have become incapable of continuing as independent companies governed by the Policies/Principles and competing in the marketplace occupied by their principal competitors. Such action can be authorized by the Trustee only after thorough, deliberate and careful consideration and discussion and only with the affirmative vote of all five trustees. In such event, the New Trust would terminate and its assets would be distributed to employees of Hollister who then hold Common Shares of JDS Inc.

The New Trust is included with this letter as Enclosure 3.

The New Trust will receive from JDS Inc the 12% cash dividends on the Preferred Shares and use them to pay expenses. Each of the trustees will receive a reasonable annual cash fee for serving as a trustee unless he is receiving a cash fee for serving as a director, in which case he will receive only the one fee. In addition, the trustees will be reimbursed for

-23-

H 02289
CONFIDENTIAL

any expenses incurred in attending quarterly meetings of the Trustee. Additional funding for the New Trust will be provided to meet these and any unanticipated expenses. Any excess funds which accumulate in the New Trust will be paid to The John D. and Minnie R. Schneider Charitable Trust or, if unavailable, to one or more other charitable organizations.

Winn has agreed to form the New Trust and to fund it with cash and the Preferred Shares which he would be entitled to receive from the John Schneider Trust, which will be transferred directly from the John Schneider Trust into the New Trust. We estimate that Winn would be entitled to receive approximately 45.25% of the Preferred Shares. Stempinski, Zwirner, Herbert, McCormack, O'Connor, Sauerland, Chevaleau, Saxon and Karlovsky have also agreed to form the New Trust and to fund it with cash and any rights they have to receive Preferred Shares. The latter seven employee owners of Common Shares have also agreed that the Preferred Shares which they would be entitled to receive will be transferred directly into the New Trust. We estimate that they would be entitled to receive approximately 30.95% of the Preferred Shares. In total, we estimate that the eight employee owners of Common Shares who have so agreed would be entitled to receive approximately 76.20% of the Preferred Shares.

### JDS Inc's Financial Performance

Under the New Trust, the JDS Inc system will be continued by which it sells Common Shares directly and indirectly to employees of Hollister and repurchases them in accordance with its Restated Articles at prices equal to their book value. The financial

-24-

H 02290
CONFIDENTIAL

performance of JDS Inc and Hollister under this system has been good.  The annual percent-
age increases in the book value of JDS Inc's Common Shares are compared in the chart
below to the annual percentage changes in the market prices of publicly traded common
stocks of comparably sized companies, for the years 1977 through 1998. *

| Year | JDS Inc Book Value | Mid/Small Capitalization Stocks** | Small Capitalization Stocks*** |
|------|------|------|------|
| 1977 | 57.83% | 7.50% | 25.38% |
| 1978 | 46.36 | 12.50 | 23.46 |
| 1979 | 32.78 | 37.10 | 43.46 |
| 1980 | 26.88 | 31.90 | 39.88 |
| 1981 | 56.24 | 3.50 | 13.88 |
| 1982 | 59.80 | 26.00 | 28.01 |
| 1983 | 33.18 | 28.70 | 39.67 |
| 1984 | 29.36 | -1.20 | -6.67 |
| 1985 | 33.82 | 31.80 | 24.66 |
| 1986 | 39.15 | 13.30 | 6.85 |
| 1987 | 48.67 | -1.50 | -9.30 |
| 1988 | 41.34 | 22.60 | 22.87 |
| 1989 | 9.67 | 23.10 | 10.18 |
| 1990 | 17.37 | -12.90 | -21.56 |
| 1991 | 13.31 | 44.30 | 44.63 |
| 1992 | 15.18 | 16.70 | 23.35 |
| 1993 | 17.60 | 16.90 | 20.98 |
| 1994 | 20.96 | -2.20 | 3.11 |
| 1995 | 22.25 | 32.30 | 34.46 |
| 1996 | 21.99 | 17.50 | 17.62 |
| 1997 | 16.41 | 24.20 | 22.78 |
| 1998 | 25.41 | Not Available | -7.31 |

*     Expressed as percentages.  Annual changes include income and assume the reinvestment of all dividend
and capital gain distributions for all categories except JDS Inc.  As to JDS Inc, annual increases include
income and exclude the $40.00 per common share dividend paid in 1988.

**    University of Chicago, Center for Research in Security Prices, as reprinted in John F. Merrill,
Outperforming the Market  (McGraw Hill 1998).  Mid/Small capitalization stocks are common

H 02291
CONFIDENTIAL

stocks of companies with market capitalizations ranging from $260 million to $4 billion. The market capitalization of a publicly traded common stock is the price of one share of common stock multiplied by the number of common shares outstanding. Small capitalization stocks are companies with market capitalization under $260 million. Based on the current consolidated balance sheet of JDS Inc, JDS Inc may be compared with companies in one or both of these categories.

*** Ibbotson Associates, Stocks, Bonds, Bills and 1998 Inflation Yearbook 39 (Table 2-5)(1998); Ibbotson Associates, Stocks, Bonds, Bills and 1999 Inflation Yearbook 39 (Table 1)(1999).

Increases in the book value of JDS Inc's Common Shares also compare favorably to changes in the market prices of the large market capitalization companies in the Standard & Poor's 500 Index, which have an average annual increase of 16.75% over the last 22 years.*

---

\* There are many other ways of measuring the performance of common stocks. It is common, for example, to consider compounded annual rates of return and the effects of limited liquidity, inflation, capital gains and income taxes, as well as transaction costs, on rates of return. These additional factors may be helpful in analyzing the risks, volatility and overall performance of the JDS Inc Common Shares versus the market-traded common stocks of comparably sized companies.

The performance of the JDS Inc Common Shares measured by increases in book value is not in all respects comparable to the performance of a market-traded common stock. The past increases in book value of JDS Inc Common Shares are not necessarily indicative of future performance. You are cautioned not to rely on historical data as necessarily predicting future results. Changes at Hollister and in the economy, business markets, competition and medical practices, among other factors, could cause future increases in the book value of JDS Inc's Common Shares to differ materially from historical performance.

-26-

H 02292
CONFIDENTIAL

### Your Choice

You have the right to receive Preferred Shares on April 21, 2001 from the John Schneider Trust and retain them while you continue as an employee of Hollister on condition that you sign an Agreement to Vote your Preferred Shares in accordance with the Policies/Principles. A copy of the Agreement to Vote is included with this letter as Enclosure 4.

Alternatively, you can join us in establishing and implementing the New Trust. As noted above, Winn, Herbert, McCormack, O'Connor, Sauerland, Chevaleau, Saxon and Karlovsky have consented to the direct transfer to the New Trust of any Preferred Shares which they would be entitled to receive on April 21, 2001. We are asking you also to consent to the direct transfer to the New Trust of any Preferred Shares which you may be entitled to receive on April 21, 2001 by signing and returning to us a written Consent to this effect by March 22, 1999. The Consent is irrevocable: once given, you cannot change your mind and withdraw it. A copy of the Consent is included with this letter as Enclosure 5.

Prior to April 21, 2001, you need to provide us with either the Agreement to Vote or the Consent. Otherwise, you will not be eligible to receive any Preferred Shares from the John Schneider Trust on April 21, 2001.

We have estimated the percentage and number of Preferred Shares to which each of the Employee/Beneficiaries will be entitled. Set forth below is our estimate for you.

-27-

H 02293
CONFIDENTIAL

| | | |
|---|---|---|
| Number of Common Shares Owned by You (and Subject to any Restricted Stock Grant Held by You) | ▬▬ | |
| Total Number of Common Shares Owned and Subject to Grants Held by Employee/ Beneficiaries | 389,375 | |
| Your Percentage | ▬▬▬ | |
| Total Preferred Shares and their Value | 61,750,000 | $617,500.00 |
| Preferred Shares to which You Would Be Entitled and their Value | ▬▬ | ▬▬ |

If you decide to receive directly your Preferred Shares from the John Schneider Trust, you will own those Preferred Shares until you cease to be an employee of Hollister. While you own them, you will receive dividends at the rate of 12% per year based on their value of $0.01 per share. When you cease to be an employee, JDS Inc will repurchase them in accordance with its Restated Articles at $0.01 per share. If you decide to consent to the direct transfer of your Preferred Shares to the New Trust, you will not receive any dividends on them and will not be paid $0.01 per share for them.

-28-

H 02294
CONFIDENTIAL

## Other Information

### 1. Preferential Right of the Preferred Shares Upon Liquidation

A holder of Preferred Shares is entitled to a distribution of $0.01 per share if JDS Inc were to be liquidated before any amount would be distributed to the holders of Common Shares. Holders of the Preferred Shares would receive in total $617,500. The balance of all liquidation proceeds would then be paid to the holders of Common Shares. A complete statement of the rights of the Preferred Shares is set forth in the Restated Articles.

### 2. Amendment of the Restated Articles

The Restated Articles of JDS Inc will have to be amended in order to permit implementation of the New Trust. Specifically, the Restated Articles will have to be amended to permit the New Trust to own Preferred Shares, enabling the direct transfer of Preferred Shares from the John Schneider Trust to the New Trust. The New Trust and the Consents will not be effective unless this amendment is approved. In addition, consistent with the New Trust, there will be a proposed amendment to add a mechanism to the Restated Articles limiting the ownership of Common Shares by any one individual to no more than 10% of the class. These amendments will be submitted to the shareholders of JDS Inc at its annual meeting of shareholders to be held in April 1999. The proposed amendments are included with this letter as Enclosure 6.

Approval of these amendments will require the vote of 66-2/3% of the Preferred Shares and 66-2/3% of the Common Shares. The John Schneider Trust will vote 100% of

-29-

H 02295
CONFIDENTIAL

the Preferred Shares in favor of the proposal. HolliShare holds approximately 69% of the Common Shares and its approval of the amendment is required. Its Trustee (McCormack, Karlovsky and Zwirner) has obtained advice of counsel and is considering this matter.

### 3. Informational Meeting

We wish to provide you and the other Employee/Beneficiaries with an opportunity to ask us questions and to hear the answers we provide to the questions of other Employee/Beneficiaries. We will hold an informational meeting in a JDS Conference Room at Hollister's principal office in Libertyville, Illinois at 9:30 a.m. on March 4, 1999. We will answer every question posed. Additionally, each of you as an Employee/Beneficiary is encouraged to address questions to us in writing before the meeting. Written questions should be directed to us in care of Dian J. Thielitz in Libertyville.

You may be inclined to speak with one of us rather than wait and address us together at the meeting. We prefer for all three of us to hear your questions and to discuss and collaborate on our answers to your questions. As a result, we will not answer any questions individually but will respond to your questions as a group at the informational meeting.

### 4. Positions and Interests of Those Forming the New Trust

There is a three-page Schedule attached to this letter setting forth information concerning the three of us and the other seven persons forming the New Trust. The first two pages list the current and future positions of the ten of us and Donna J. Matson with the John

-30-

H 02296
CONFIDENTIAL

Schneider Trust, the New Trust, JDS Inc, Hollister, HolliShare and the Hollister Foreign Employee Share Ownership Trust. The third page lists the common shareholdings of the ten of us and the estimated percentages and numbers of the Preferred Shares which will be transferred directly to the New Trust on our behalf. You are encouraged to review this information.

### 5. Tax Treatment

If you sign the Agreement to Vote and receive Preferred Shares from the John Schneider Trust in April 2001, there is one transaction for tax purposes and this is the transfer to you of Preferred Shares. If you sign the Consent to the direct transfer to the New Trust of any Preferred Shares which you would be entitled to receive from the John Schneider Trust, there are two transactions for tax purposes. The first is the transfer of Preferred Shares from the John Schneider Trust and the second is the transfer to the New Trust of any Preferred Shares which you would be entitled to receive.

These transfers may be gifts, may have gift tax consequences and/or may have income tax consequences based upon interpretation of the relevant tax laws and your personal tax situation. The transfer of Preferred Shares from the John Schneider Trust was treated as a bequest to you at John Schneider's death and estate/gift tax was paid. Under federal gift tax law, an argument can be made that your transfer of Preferred Shares to the New Trust is a gift and an argument can be made that it is not a gift. Under federal income tax law, an

-31-

H 02297
CONFIDENTIAL

argument can be made that your receipt of Preferred Shares from the John Schneider Trust is income to you and an argument can be made that it is not income to you.

Since the three of us are making this proposal to you in our capacity as fellow common shareholders of JDS Inc, we are not in a position to advise you further as to the tax consequences of signing the Agreement to Vote or the Consent. Nor should any officer or other employee of JDS Inc or Hollister advise you as to any tax consequences. You will have to make your own determination and be responsible for filing any necessary tax returns and paying any federal and any state taxes. We urge you to consult your tax adviser as to the gift or income or any other tax consequences of signing the Agreement to Vote or the Consent.

### Your Decision

We request your Consent to the direct transfer to the New Trust of any Preferred Shares which you would be entitled to receive upon termination of the John Schneider Trust. As the result of our long association and considerable experience with Hollister and the John Schneider Trust, we believe that maintaining JDS Inc and Hollister as independent and employee owned companies, governed, managed and operated in accordance with the Policies/Principles, form fundamental reasons why Hollister has been financially successful and why Hollister has provided challenging and rewarding employment and a beneficial working environment. We believe that continuation of the companies as independent and employee owned, managed in accordance with the Policies/Principles, will significantly

-32-

H 02298
CONFIDENTIAL

enhance the future of Hollister for the benefit of its employee shareholders and its employees generally. We believe it is prudent to provide for such continuation through the New Trust.

By executing and returning a Consent, you will be joining us as grantors of the New Trust in perpetuating the Schneider legacy, which he preserved for all of us upon his establishment of the John Schneider Trust in 1977. By that act, he transferred his controlling interest in the company -- the company which he had patiently guided, nurtured and developed over the decades -- to a trust for the benefit of the employee shareholders with whom he had shared his goals and aspirations and who had joined with him in working to realize them. This is our shared legacy. By continuing the legacy, we believe that future employee shareholders, as well as all employees, will continue to share the benefits of our governance structure.

Sincerely yours,

Michael C. Winn

Loretta L. Stempinski

Richard T. Zwirner

cc:    Alan F. Herbert
       James J. McCormack
       James P. O'Connor
       William D. Sauerland
       Denis R. Chevaleau
       Jerome A. Saxon
       James A. Karlovsky

-33-

H 02299
CONFIDENTIAL

# Those Forming the New Trust

## Positions

| | Positions, with starting dates | Immediately Previous Positions |
|---|---|---|
| Michael C. Winn | • Trustee, New Trust 2001<br>• Trustee, John Schneider Trust 1981<br>• Director, JDS Inc and Hollister 1978<br>• President, JDS Inc 1981<br>• Chairman, Hollister 1997<br>• Chief Executive Officer, Hollister 1981 | • President and Chief Operating Officer, Hollister 1977-1997 |
| Loretta L. Stempinski | • Trustee, New Trust 2001<br>• Trustee, John Schneider Trust 1981<br>• Director, JDS Inc 1980<br>• Director, Hollister 1980 | • Manager of Sales/Customer Service, Hollister 1961-1980 |
| Richard T. Zwirner | • Trustee, New Trust 2001<br>• Trustee, John Schneider Trust 1981<br>• Director, JDS Inc 1978<br>• General Counsel, JDS Inc 1977<br>• Director, Hollister 1978<br>• General Counsel, Hollister 1977<br>• Trustee, HolliShare 1977<br>• Trustee, Hollister Foreign Employee Share Ownership Trust 1981 | • Vice President Corporate Development, Hollister 1991-1994<br>• Vice President International Sales and Marketing, Hollister 1991-1994 |
| Alan F. Herbert | • Trustee, New Trust 2001<br>• Director, JDS Inc and Hollister 1998<br>• President, Hollister 1997<br>• Chief Operating Officer, Hollister 1997 | • Amersham International PLC 1990-1997<br>  • President, Amersham Holdings Inc.<br>  • President, Medi-Physics Inc. |
| James J. McCormack | • Treasurer, JDS Inc 1981<br>• Chief Financial Officer, Hollister 1998<br>• Senior Vice President Finance, Hollister 1994<br>• Treasurer, Hollister 1995<br>• Trustee, HolliShare 1981 | • Vice President Finance, Hollister 1981-1994 |
| James P. O'Connor | • Controller, Hollister 1980 | |

Case 2:04-cv-01358-WBS-GGH    Document 487    Filed 04/30/09    Page 35 of 37

H 02300
CONFIDENTIAL

| | Positions, with starting dates | Immediately Previous Positions |
|---|---|---|
| William D. Sauerland | • Director Treasury Operations, Hollister 1993 | • Assistant Treasurer, Hollister 1986-1992 |
| Denis R. Chevaleau | • Vice President Medical Systems Division, Hollister 1995<br>• Vice President Corporate Development, Hollister 1994 | • Treasurer, Hollister 1983-1995 |
| Jerome A. Saxon | • Secretary, Hollister 1987<br>• Vice President Law, Hollister 1996 | • Director of Legal Affairs, Hollister 1986-1996 |
| James A. Karlovsky | • Vice President Human Resources, Hollister 1989<br>• Trustee, HolliShare 1989 | |
| Donna J. Matson (Carpenter) | • Trustee, New Trust 2001 | • Sales Services Manager, 1980-1984 |

H 02301<br>CONFIDENTIAL

# Those Forming the New Trust

## Shareholdings and Share-Based Retirement Benefits

| | JDS Inc Common Shareholdings as of 12-31-98 and Restricted Stock Grants Vesting Prior to 4-21-01 | | | | | Preferred Shares to be Received Based on 12-31-98 Common Shareholdings Including Restricted Stock Grants Vesting Prior to 4-21-01 | | |
|---|---|---|---|---|---|---|---|---|
| | Number of Common Shares Owned 12-31-98 | Number of Restricted Stock Grant Shares Vesting Before 4-21-01 | Total Common Shares | Percent of Common Share Class | Value as of 12-31-98 | Number of Preferred Shares | Percent of Preferred Share Class | HolliShare Account Balance |
| Michael C. Winn | 176,210 | — | 176,210 | 9.0% | $18,794,558.60 | 27,944,700 | 45.25% | $14,401,984.60 |
| Loretta L. Stempinski | ███ | ███ | ███ | ██ | ████ | — | — | — |
| Richard T. Zwirner | ███ | — | ███ | ██ | ████ | | | ████ |
| Alan F. Herbert | ███ | ███ | ███ | ██ | ████ | ███ | ███ | — |
| James J. McCormack | ███ | ███ | ███ | ██ | ████ | ████ | ███ | ████ |
| James P. O'Connor | ████ | ███ | ███ | ██ | ████ | ████ | ███ | ████ |
| William D. Sauerland | ███ | — | ███ | ██ | ████ | ████ | ███ | ████ |
| Denis R. Chevaleau | ███ | ███ | ███ | ██ | ████ | ████ | ███ | ████ |
| Jerome A. Saxon | ███ | — | ███ | ██ | ████ | ████ | ███ | ████ |
| James A. Karlovsky | ███ | ███ | ███ | ██ | ████ | ████ | ███ | ████ |
| Donna J. Matson | — | — | — | — | — | — | — | — |

\* Book Value of JDS Inc Common Shares Held in a segregated fund with voting rights for Zwirner's benefit in the Schuyler, Roche & Zwirner, P.C. Profit Sharing Trust (not in HolliShare)

Case 2:04-cv-01358-WBS-GGH    Document 487    Filed 04/30/09    Page 37 of 37

H 02302
CONFIDENTIAL