Enclosure 4

## AGREEMENT TO VOTE

This AGREEMENT TO VOTE dated _____ ____, _____ ("Agreement") is entered into between Michael C. Winn, Loretta L. Stempinski and Richard T. Zwirner as trustees (together, the "Trustees") of the John D. Schneider Preferred Share Trust dated April 21, 1977 ("Trust") and _____, an employee (the "Employee/Beneficiary" and an "employee/beneficiary") of Hollister Incorporated, an Illinois corporation, or Hollister Limited (Canada), an Ontario corporation (together, "Hollister"), who owns directly common shares of The Firm of John Dickinson Schneider Inc. ("JDS Inc"):

WHEREAS John Dickinson Schneider ("John Schneider") formed the Trust and transferred to it 617,500 preferred shares of JDS Inc (par value $1.00 per share);

WHEREAS JDS Inc declared a split of its preferred shares effective May 12, 1978, resulting in 61,750,000 preferred shares (par value $.01 per share) (the "preferred shares"), all of which continue to be held by the Trustees;

WHEREAS the Trust provides that it will terminate on April 21, 2001;

WHEREAS the Trust provides in Paragraph B.1 of ARTICLE FIFTH that, at its termination, the Trustees "shall distribute all shares of JDS Inc which form part of the trust estate to such persons as (1) are then living, (2) are then employees of Hollister, (3) then hold common shares of JDS Inc, and (4) agree in writing to abide by the same policies and principles as are imposed upon the Trustees as provided in ARTICLE SIXTH" of the Trust;

H 02390
CONFIDENTIAL

WHEREAS the Trustees have determined that entering into this Agreement shall satisfy the condition that an employee/beneficiary "agree in writing to abide by the same policies and principles as are imposed upon the Trustees as provided in ARTICLE SIXTH" of the Trust;

WHEREAS Employee/Beneficiary has received and reviewed a letter (including all enclosures) dated February 17, 1999 ("Letter") from Michael C. Winn, Loretta L. Stempinski and Richard T. Zwirner, which is hereby adopted by them as Trustees, discussing in part the preconditions which must be satisfied before the Trustees will make a distribution of preferred shares to an employee/beneficiary;

WHEREAS Employee/Beneficiary has had an opportunity to consult with legal, financial and/or tax advisers and has had an opportunity to ask questions concerning the Letter at a meeting of the employee/beneficiaries and has received answers to all of his questions;

WHEREAS the Trust does not provide for distribution of any other portion of the trust estate to Employee/Beneficiary or any other employee/beneficiary;

WHEREAS Employee/Beneficiary desires to enter into this Agreement to satisfy one of the preconditions to distribution of preferred shares by the Trust; and

WHEREAS an employee/beneficiary who has not as of April 21, 2001 signed and returned to the Trustees a counterpart of either this Agreement or the Consent referenced in the Letter will not receive any distribution of preferred shares from the Trustees;

- 2 -

H 02391
CONFIDENTIAL

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and for other good and valuable consideration, the receipt of which is acknowledged, the parties agree as follows:

1.    Employee/Beneficiary's Contingent Right to Preferred Shares, Agreement and Release.

a.    Employee/Beneficiary has been informed and acknowledges that he has a contingent right to receive a portion of the preferred shares, subject to his satisfying conditions set forth in Paragraph B.1 of ARTICLE FIFTH of the Trust.

b.    Any transfer from the Trust of preferred shares made hereafter to Employee/Beneficiary constitutes full and complete satisfaction by the Trustees of the requirement set forth in the Trust for distribution of preferred shares, subject to Employee/Beneficiary's continued adherence to the policies and principles of John Schneider set forth in Section 2 hereof.

c.    Employee/Beneficiary releases and discharges the Trustees and each of them, and each of their heirs, executors, administrators and personal representatives, from all actions, suits, claims, accounts and demands for or in respect of all the shares, securities, moneys and other property which now are or at any time were subject to the Trust, or the income thereof, or any part thereof, or for or on account of any matter or thing made, done, permitted, omitted or neglected by the Trustees or any of them concerning the administration of the Trust, or for or on account of any other thing in any way related

- 3 -

H 02392
CONFIDENTIAL

to the preferred shares. Employee/Beneficiary represents and warrants to the Trustees and their respective heirs, executors, administrators and personal representatives that he has not executed or done or knowingly suffered or been party or privy to any deed or agreement or thing, other than this Agreement, whereby his interest in or portion of the preferred shares held by the Trustees are or may be in any manner encumbered or affected or whereby he is disentitled to share in the distribution of preferred shares by the Trustees. Employee/Beneficiary shall execute any other release, certificate or document that may be reasonably required by the Trustees to transfer preferred shares to him. The provisions of this Section 1.c. shall survive the termination of this Agreement.

2.   Employee/Beneficiary's Agreement to Abide by the Policies and Principles of John Schneider. Employee/Beneficiary shall vote and otherwise deal with all preferred shares received by him from the Trustees, and any other preferred shares which he may hereafter own or hold, in accordance with the policies and principles set forth in ARTICLE SIXTH of the Trust. A copy of Paragraphs A and B of ARTICLE SIXTH of the Trust is attached hereto and incorporated by reference herein.

3.   Trustees' Agreement to Distribute Preferred Shares to Employee/Beneficiary. If Employee/Beneficiary is on April 21, 2001 then living and an employee of Hollister who holds common shares of JDS Inc, and has not filed any claim, lawsuit, motion or other objection to the signing of this Agreement as a precondition to distribution of preferred shares by the Trustees and distribution is not prevented by any rule of law in the judgment of the Trustees, the Trustees shall distribute to Employee/Beneficiary the number of preferred shares determined in accordance with Paragraph B.1 of ARTICLE FIFTH of the Trust.

- 4 -

H 02393
CONFIDENTIAL

4.      Enforceability of this Agreement.  Employee/Beneficiary understands that, if there is a breach by him or another employee/beneficiary of any duty under this or a counterpart of this Agreement, the other employee/beneficiaries may sustain irreparable injury and may not have an adequate remedy at law.  As a result, in the event of any such breach, any other employee/beneficiary or successor thereof, including JDS Inc, may, in addition to any other remedies available, bring an action or actions for injunction, specific performance or both, and have entered a temporary restraining order, preliminary or permanent injunction, or other order compelling specific performance or rescission of any transfer of preferred shares to an employee/beneficiary.  No failure or delay by any other employee/beneficiary, or successor thereof, in exercising any right, power or privilege under this Section 4 shall operate as a waiver thereof, nor shall any single or partial exercise thereof preclude any other or further exercise of any right, power or privilege hereunder.

5.      Transfer Restrictions Applicable to Preferred Shares.  Any preferred shares transferred to Employee/Beneficiary are subject to the ownership restrictions, transfer restrictions and repurchase provisions set forth in the Restated Articles of Incorporation ("Restated Articles") of JDS Inc (in addition to the agreements and restrictions in this Agreement), and Employee/Beneficiary shall comply with all such restrictions and provisions.  Employee/Beneficiary has been informed and understands that the transfer restrictions and repurchase provisions include the following:

a.      As provided in the Restated Articles, preferred shares and common shares of JDS Inc are essentially non-transferable.  As a practical matter, they can only be sold

- 5 -

H 02394
CONFIDENTIAL

to JDS Inc itself. Further, they must (unless JDS Inc waives its rights) be sold to JDS Inc upon termination of Employee/Beneficiary's employment with Hollister. Even absent the foregoing restrictions, preferred shares and common shares are not registered under the Securities Act of 1933, any applicable state or foreign blue sky law or other securities law and they could not be sold (except to JDS Inc) unless they were so registered or exemptions from registration were available. To date, JDS Inc has repurchased, in accordance with the system set forth in the Restated Articles, all of its common shares owned by terminating employees of Hollister (none of its preferred shares having been owned by employees since they were issued to John Schneider).

b.      Upon termination of Employee/Beneficiary's employment with Hollister, JDS Inc can require him to sell all of his preferred shares to it in accordance with the Restated Articles and receive for them a price equal to $0.01 per share plus the amount of any dividends declared but not paid prior to the repurchase date.

c.      Any preferred share certificate or certificates issued to Employee/Beneficiary shall contain the following legend:

> "Ownership, voting and transfer of these shares are severely restricted. Under certain conditions, these shares may be purchased by the Corporation without the owner's consent and without surrender of this certificate. These shares may not be sold or transferred except in accordance with the Corporation's Restated Articles of Incorporation

- 6 -

H 02395
CONFIDENTIAL

and the Agreement to Vote. These shares have not been registered under the federal Securities Act of 1933 or any applicable state blue sky or securities law.

Copies of the Restated Articles of Incorporation and the Agreement to Vote, which contain a statement, in full, of all the ownership, voting and transfer restrictions, repurchase provisions, designations, preferences, qualifications, limitations, restrictions, and special or relative rights of the shares of each class, will be furnished by the Corporation to any shareholder upon request and without charge."

6.    Term. This Agreement shall continue until all preferred shares distributed to Employee/Beneficiary have been repurchased by JDS Inc (or it has waived its right to do so), unless earlier terminated pursuant to Section 7 hereof.

7.    Termination. This Agreement shall terminate if Employee/Beneficiary has transferred all his preferred shares to The Firm of John Dickinson Schneider Inc. Preferred Share Trust April 21, 1999 (or another person or entity who is a permissible holder of shares and as to whom JDS Inc has waived its right of repurchase).

8.    Cooperation. Employee/Beneficiary shall vote and otherwise deal with preferred shares consistent with the terms of this Agreement.

- 7 -

H 02396
CONFIDENTIAL

9.      Non-Amendment.  This Agreement cannot be amended, modified or otherwise changed, and none of its provisions may be waived.

10.      Non-Assignment and Binding Effect.  This Agreement cannot be assigned, in whole or in part, by either party.  This Agreement shall be binding upon the parties hereto and their personal representatives or successors.

11.      Controlling Law.  The validity and provisions of this Agreement shall be governed by and shall be administered, interpreted and construed in accordance with the laws of the State of Illinois, excluding its choice of law rules.  In the event of any litigation arising out of, in connection with or in any way related to this Agreement, (1) such litigation must be commenced only in and submitted only to the jurisdiction of the Chancery Division of the Circuit Court of Cook County, Illinois, and (2) either party to this Agreement hereby consents to the personal jurisdiction over him of the Chancery Division of the Circuit Court of Cook County, Illinois.  If any one or more provisions of this Agreement is or are declared invalid or unenforceable by a court, then the remainder of the provisions of this Agreement shall be interpreted and construed so as to continue and further the policies and principles of John Schneider.

12.      Entire Agreement.  This Agreement and the expressly incorporated provisions of the Trust constitute the entire agreement between the parties hereto with respect to the subject matter hereof and supersede any and all prior understandings and/or agreements of the parties. This Agreement is intended to be construed consistent with the Trust.

- 8 -

H 02397
CONFIDENTIAL

13.    Gender. When used in this Agreement, depending upon the identity of the Employee/Beneficiary, the word "he" or "his" may mean instead the word "she" or "her".

14.    Counterparts. This Agreement may be executed in three counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

IN WITNESS WHEREOF, the parties hereto have entered into this Agreement as of the date first above written.

John Dickinson Schneider Preferred Share Trust
dated April 21, 1977

_____
Michael C. Winn, Trustee

_____
Loretta L. Stempinski, Trustee

_____
Richard T. Zwirner, Trustee

Witnessed by:                                   Employee/Beneficiary

_____            _____
                                                Signature

_____            _____
                                                Printed Name

- 9 -

H 02398
CONFIDENTIAL

The Firm of John Dickinson Schneider, Inc., an Illinois corporation (the "Corporation"), acknowledges the existence and provisions of the John D. Schneider Preferred Share Trust dated April 21, 1977, and of the Agreement to which this sentence is appended.

The Firm of John Dickinson Schneider, Inc.

Dated: _____ ___, _____       By: _____
                                              Michael C. Winn, President

- 10 -

H 02399
CONFIDENTIAL

ARTICLE SIXTH

A.    Notwithstanding any other provisions of this instrument, the Trustees, after my death or during any period of my incapacity, shall retain all shares of capital stock of JDS Inc and, subject to paragraph B, vote and otherwise deal with all shares of capital stock of JDS Inc in order to further the following policies and principles:

1.    Except as provided in this instrument, JDS Inc and Hollister shall be continued as corporations in which the entire equity interest (presently the preferred and common shares of JDS Inc) is owned by employees of one or both of these corporations (this principle is herein referred to as "employee share ownership"). This employee share ownership shall be a combination of both direct and indirect ownership and should include the following:

a.    JDS Inc should continue to sell its common shares for cash directly to selected employees of Hollister. The selection of various employee-offerees and the determination of the number of shares offered to each shall be made by the Board of Directors of JDS Inc after due consideration of the recommendations of the chief executive officer of Hollister. With Hollister's present structure and operations, selected employees include management personnel and various technical, professional and scientific personnel, members of the field sales force, and marketing research and development personnel. Over time and with changes in the

- 11 -

H 02400
CONFIDENTIAL

structure and operation of Hollister, this description of who constitute selected employees of Hollister will of course change. Basically, however, the term selected employees should include those whose positions involve substantial responsibility, supervision of other employees, or exercise of discretion.

For JDS Inc to sell common shares directly to those selected employees described above, JDS Inc or Hollister may be required to prepare and file a registration statement pursuant to the Securities Act of 1933 and applicable state blue sky laws and at some point in the future to register its common shares as a class of equity security pursuant to Section 12 of the Securities Exchange Act of 1934. The Trustee and the Board of Directors of JDS Inc shall consider periodically the advisability of filing the necessary registration statements.

b. Hollister should continue to maintain an employee share ownership plan such as the present Hollister Employee Share Ownership Trust. The benefits of indirect employee share ownership should in this or a comparable way be extended to as many employees of Hollister as possible excluding only, to the extent lawful, union employees.

2. JDS Inc and Hollister shall continue their conservative financial and investment policies. JDS Inc and Hollister should continue to retain sufficient earnings to provide the funds necessary for capital development. JDS Inc

- 12 -

H 02401
CONFIDENTIAL

and Hollister have consciously followed this form of capital development as opposed to borrowing money or using other sources of outside financing such as mortgages, bank borrowings and public offerings of stock or other securities. Presently JDS Inc's only long term debt is the subordinated promissory notes held by former employee-holders of its common shares.

One of the purposes of conservative financial and investment policies is to insure that the corporations do not make such financial commitments or other extensions of their resources or credit as would require them to seek financing from sources outside the corporations (such as mortgages, bank borrowings or sales of securities) which would or could ultimately lead to a violation of the principle of employee share ownership.

3.    Growth in sales and expansion of operations should result primarily from the successful marketing of Hollister's existing products and related new products and from the natural expansion during the foreseeable future of the markets for those products.  Growth should not at any time be a goal in and of itself and should not be permitted to jeopardize efficient operations or continued application of the principles of employee share ownership and conservative financial and investment policies.

4.    Investments in plant and other assets in countries outside of the United States should be approached on a cautious and conservative basis.  Unsound investments in foreign countries could easily erode the corporations' finan-

- 13 -

H 02402
CONFIDENTIAL

cial resources and, as a result, foreign investments should only be made when anticipated retained earnings exceed anticipated working capital and other foreseeable needs.

Ordinarily, Hollister should develop conscientiously the markets for its products in the United States before introducing them elsewhere. After careful consideration of the prospects for successfully selling products in a country or area and the political and economic risks involved, Hollister may invest in that country or area if it feels it must in order effectively to produce, promote or sell the products there.

5. The introduction of new and improved products and acquisitions of all kinds, including acquisitions of products, product ideas, intangibles with respect to potential products, and all other purchases of assets or business entities which may result in new or improved products, shall be judged by the following standards:

a. Hollister shall at all times conscientiously develop to its optimum advantage the major markets for its existing products.

b. New and improved products should ordinarily be logical extensions of the existing product line and otherwise compatible and consistent with Hollister's then existing sales program, sales force, channels of distribution, manufacturing processes and manufacturing facilities.

c. Hopefully Hollister will be able to continue to promote and develop new and improved products which

- 14 -

H 02403
CONFIDENTIAL

are necessary or useful to people, such as its ostomy products, other medical devices and health care products. Extensions into other types of products should be approached on a cautious and conservative basis.

6. The following general policies and philosophies should govern the operation of Hollister:

a. Hollister products should always be of a very high quality. JDS Inc and Hollister have for years used the expression "Only first class is good enough." This expression is a reflection of the quality products, quality employees and quality sales approach which are at the heart of the financial success of Hollister.

b. Hollister should always hire competent employees and pay them commensurately. Hollister's directors and officers should constantly evaluate and re-evaluate the management personnel, weeding out where necessary managers who do not display the competence and integrity associated with Hollister management. Further, the directors and officers shall promote the personal identification of all employees with the management that is often associated with smaller businesses.

c. Hollister directors and officers should always be guided by the principle that Hollister is in business to provide quality service as well as products to its customers and to provide rewarding jobs with

- 15 -

H 02404
CONFIDENTIAL

fair compensation to all of its employees, as well as financial gain of its employee-shareholders.

B.    The Trustee may deviate from the policies and principles specified in paragraph A only if the Trustee, after thorough, deliberate and careful consideration and discussion, determines that such a deviation is essential in order to preserve the financial stability and soundness of either JDS Inc or Hollister or to continue the manufacture and distribution of high quality health care and other products.

- 16 -

H 02405
CONFIDENTIAL