**PORTER | SCOTT**
A PROFESSIONAL CORPORATION
Russell G. Porter, SBN 041020
Martin N. Jensen, SBN 232231
350 University Ave., Suite 200
Sacramento, California 95825
(916) 929-1481 (telephone)
(916) 927-3706 (facsimile)

**WILCOXEN, CALLAHAM, LLP**
**MONTGOMERY & DEACON**
Daniel E. Wilcoxen, SBN 054805
2114 K Street
Sacramento, California 95816
(916) 442-2777 (telephone)
(916) 442-4118 (facsimile)

Attorneys for Plaintiff Kathleen Ellis

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jim DeFazio, <u>et al.</u>,<br><br>    Plaintiffs,<br><br>    vs.<br><br>Hollister, Inc., <u>et al.</u>,<br><br>    Defendants,<br>_____<br><br>And related cases.<br>_____ | Case No. 04-1358 WBS GGH<br><br>**PLAINTIFFS' (PROPOSED)**<br>**FINDINGS OF FACT AND**<br>**CONCLUSIONS OF LAW** |

<u>**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**</u>
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**
{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

## TABLE OF CONTENTS

I.   FINDINGS OF FACT ...................................................................................................1

   A. The Parties.............................................................................................................1
      1.   Plaintiffs ..................................................................................................1
      2.   Defendant Fiduciaries and Key Players .................................................3
            a.   HolliShare Trustees ...................................................................3
            b.   Hollister and Herbert.................................................................5
            c.   JDS ............................................................................................5
            d.   Winn..........................................................................................6

   B. JDS's Shares Are Subject to Ownership and Transfer Restrictions, and Rights of
      Repurchase ...........................................................................................................7
      1.   Ownership Restrictions ...........................................................................8
      2.   Transfer Restrictions ..............................................................................8
            a.   Two Methods for Sale and Purchase of JDS Common Shares ..........9
                  i.    Right of First Refusal – Sale Price Set at Month End Book
                        Value in Month of Transaction .................................................9
                  ii.   Exceptional Circumstances – No Restrictions on
                        Sales Price ...............................................................................10
            b.   JDS's About-Face in Position As to Which Provision Used
                  To Sell Plan's JDS Common Shares .......................................10

   C. Mr. Schneider's Business Policies and Principles ...............................................11
   D. HolliShare, Its Trustees, and Its Operations.......................................................11
   E. JDS Direct Stock Ownership Program.................................................................16
   F. The 1977 Preferred Share Trust ..........................................................................18
   G. Transfer of the JDS Preferred Shares in the 1977 Preferred Share
      Trust to the 1999 Preferred Share Trust..............................................................19
   H. The 1999 Amendments to the JDS Articles.........................................................20
   I. Scheme to Undervalue Plan Assets......................................................................22
   J. Effect of Differential Treatment of HolliShare's And
      Direct Shareholders' Shares ................................................................................26
   K. Plan Fiduciaries Conduct No Meaningful Investigation into Value of Shares Sold
      by Plan to JDS .....................................................................................................28
      1.   Inadequate, if Any, Investigation into Share Value .............................28
      2.   Fiduciaries Were Aware of Facts to Suggest Value
            Used Was Not the Fair Market Value of Shares ...................................32

i

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

L.   Misrepresentation and Concealment of Scheme to Benefit Direct
     Shareholders at Expense of Plan ...................................................................35
     1.   Concealment and Misrepresentation in HolliShare Highlights...................35
     2.   Fraud and Concealment in Response to Inquiry from Plan
          Beneficiary ...........................................................................................38
     3.   Defendants Provided False Information to the Department of
          Labor .....................................................................................................38
     4.   Defendants Provided False Information to the Court...............................39

M.   Harm Suffered by the Plan and Ellis...........................................................40
     1.   Harm Suffered Because of Failure to Receive Current
          Month End Book Value...........................................................................40
     2.   Harm Suffered Because of Failure to Receive Appraised
          Fair Market Value ..................................................................................57
     3.   Summary of Harm to Ellis and the Plan...................................................61

II.  CONCLUSIONS OF LAW.............................................................................63
A.   Jurisdiction and Venue ...............................................................................63
B.   Standing........................................................................................................63
C.   Statute of Limitations is Tolled ..................................................................64
     1.   Defendants Engaged in Concealment and Fraud Via
          HolliShare Highlights..............................................................................67
     2.   Defendants Provided False Information to a Plan Beneficiary
          In Direct Response to an Inquiry About the Manner in Which
          The Plan's Shares Are Valued .................................................................68
     3.   Defendants Provided False Information to the Department of
          Labor .....................................................................................................68
     4.   Defendants Provided False Information to This Court ..............................69

D.   Defendants Are Strictly Liable for Numerous
     Non-Exempt Prohibited Transactions ........................................................71
     1.   Defendants Failed to Acquire Adequate Consideration Because
          They Used a Stale Previous Year End Book Value Rather than
          Current Month End Book Value at the Time of the Sales
          Transactions ...........................................................................................74
     2.   Defendants Failed to Acquire Adequate Consideration Because
          They Used Book Value Rather Than a Prudently Appraised
          Fair Market Value ..................................................................................75
     3.   Defendants Failed to Engage in a Good Faith Investigation of
          The Sales Price ........................................................................................76

ii

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

4.  The Value of the JDS Shares was not Determined by the Plan Trustees or Named Fiduciaries, it was Determined by JDS...............................79

E.  Defendants Breached Their Fiduciary Duties .........................................................80
   1.  The Fiduciaries Violated the Exclusive Purpose (Duty of Loyalty) Provision ...............................................80
      a.  Conflict Due to Dual Roles as HolliShare Fiduciaries And Direct Shareholders ...........................................81
      b.  Conflict Due to Dual Roles as HolliShare Fiduciaries And JDS/Hollister Officers and Directors ..........................82
         i.   The Conflict is Evident by the Fiduciaries' Conduct...........83
         ii.  Trial Testimony Exposes Incontrovertible Conflict..........................................................85
      c.  The Fiduciaries Failed to Keep the Participants and Beneficiaries Properly Informed .............................86
   2.  The Fiduciaries Failed to Value the Plan's Assets With the Care, Skill, and Prudence Required by ERISA ....................................88
      a.  The Fiduciaries Imprudently Valued the Assets by Not Using Current Month End Value ..........................89
      b.  The Fiduciaries Imprudently Valued the Assets by Not Using Fair Market Value...............................93
      c.  The Fiduciaries Failed to Follow the Plan Documents ....................94
   3.  HolliShare Fiduciaries Breached ERISA by Allowing Co-Fiduciaries to Breach Duties ..............................................95

F.  HolliShare Fiduciaries Violated 29 U.S.C. § 1105(a) as it Relates to Amendments to the JDS Articles in 1999 .............................................98

G.  Remedies .........................................................................................99
   1.  Ellis May Recover On Her Own Behalf and On Behalf of the Plan..........100
      a.  Recovery Under § 502(A)(2) .........................................100
      b.  Recovery Under § 502(A)(3) ........................................101
         i.   The Court May Order Rescission of the Transactions And Place the Unnecessarily Sold Shares Back Into The Plan ..............................102
         ii.  The Court May Order Imposition of a Surcharge to Provide Relief.........................................................103
             A.  Failure to Obtain Month End Book Value ...................104
             B.  Failure to Obtain Prudently Appraised Fair Market Value .......................................................104

iii

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

2.    Ellis Requests an Award of Prejudgment Interest  for the Restitution Surcharge Award..........................................................................105

3.    Pursuant to ERISA § 502(A)(2) and (3), Ellis Seeks A Preliminary and Permanent Injunction Against The Breaching Fiduciaries From Acting In Any Capacity With Respect To The Plan and Seeks Removal of the Fiduciaries ......................................................................................108

4.    Pursuant To ERISA §502(a)(2), Ellis Requests Appointment of An Independent Trustee And An Independent Plan Administrator To Replace Hollister To Carry Out The Orders of the Court.............................................................................109

5.    Plaintiffs Are Also Entitled to Attorneys' Fees Pursuant To ERISA §502(G)(1), 29 U.S.C. §1132(G)(1) .............................................110

H.  Conclusion...............................................................................................112

iv

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

## TABLE OF AUTHORITIES

**Supreme Court Cases**

CIGNA Corporation v. Amara
131 S. Ct. 1866 (2011)................................................................................103

Firestone Tire & Rubber Co. v. Bruch
489 U.S. 101 (1989) .....................................................................................63

Hardt v. Reliance Standard Life Insurance
130 S. Ct. 2149 (2010) ...............................................................................111

Harris Trust & Say Bank v. Salomon Smith Barney Inc.
530 U.S. 238 (2000) .....................................................................................71

LaRue v. DeWolff, Bovert & Assoc
522 U.S. 248 (2008)...........................................................................63, 100

Massachusetts Mut. Life Ins. Co. v. Russell
473 U.S. 134 (1985) ...................................................................................100

Osterneck v. Ernst & Whinney
489 U.S. 169 (1989) ...................................................................................106

Varity Corp. v. Howe
516 U.S. 489 (1996) .....................................................................................86

**Ninth Circuit Cases**

Amalgamated Clothing v. Murdock
861 F.2d 1406 (9th Cir. 1988) .....................................................................64

Barker v. American Mobil Power Corp.
64 F.3d 1397 (9th Cir. 1995) ................................................................65, 86

Blankenship v. Liberty Life Assurance Co. of Boston
486 F.3d 620 (9th Cir. 2007) .....................................................................107

California Ironworkers Field Pension Trust v. Loomis Sayles & Co.
259 F.3d 1036 (9th Cir. 2001) .....................................................................86

v

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

*Dishman v. UNUM Life Ins. Co. of Am.*
    269 F.3d 974 (9th Cir. 2001) ........................................................................106

*Donovan v. Mazzola*
    716 F.2d 1226 (9th Cir. 1983) ......................................................88, 108, 109

*Grosz-Salomon v. Paul Revere Life Ins. Co.*
    237 F.3d 1154 (9th Cir. 2001) ......................................................................107

*Harris v. Amgen, Inc.*
    573 F.3d 728 (9th Cir. 2009) ........................................................................100

*Howard v. Shay*
    100 F.3d 1484 (9th Cir. 1996) ...........................................................72, 75, 77, 80

*Hummell v. Rykoff*
    634 F.2d 446 (9th Cir. 1980) ........................................................................110

*Kim v. Fujikawa*
    871 F.2d 1427 (9th Cir. 1989) ......................................................................101

*Kuntz v. Reese*
    785 F.3d 1410 (9th Cir. 1986) ........................................................................63

*Landwehr v. DuPree*
    72 F.3d 726 (9th Cir. 1995) ..........................................................................106

*M & R Inv. Co. v. Fitzsimmons*
    685 F.2d 283 (9th Cir. 1982) ........................................................................103

*Nieto v. Ecker*
    845 F.2d 868 (9th Cir. 1988) ........................................................................102

*Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan*
    750 F.2d 1458 (9th Cir. 1985) ......................................................................106

*Springate v. Weighmasters Murphy, Inc. Money Purchase Pension Plan*
    217 F.Supp 2d 1007 (C.D. Cal. 2002), aff'd, 73 Fed.App. 317 (9th Cir. 2003).....................96

*Stewart v. Thorpe Holding Co. Profit Sharing Plan*
    207 F.3d 1143 (9th Cir. 2000) ........................................................................95

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

*Waller v. Blue Cross of California*
    32 F.3d 1339 (9th Cir. 2004) ....................................................................................64

*Wright v. Or. Metallurgical Corp.*
    360 F.3d 1090 (9th Cir. 2004) ....................................................................................6

**Unpublished Ninth Circuit Case**

*Vaughn v. Bay Environmental Management*
    2008 WL 4276603 (9th Cir. 2008) ...........................................................................63

**Other Circuit Cases**

*Eaves v. Penn*
    587 F.2d 453 (10th Cir. 1978) ................................................................................ 102

*Martin v. Feilen*
    965 F.2d 660 (8th Cir. 1992) ...........................................................................101, 108

*Roth v. Sawyer-Cleator Lumber Co.*
    61 F.3d 599 (8th Cir. 1995) .....................................................................................101

*Brock v. Robbins*
    830 F.2d 640 (7th Cir. 1987) ...................................................................................108

*Eyler v. Commissioner*
    88 F.3d 445 (7th Cir. 1996) ...................................................................72, 77, 78, 89

*Leigh v. Engle*
    727 F.2d 113 (7th Cir. 1984) .............................................................................80, 88

*Radiology Ctr., S.C. v. Stifel, Nocolaus & Co.*
    919 F.2d 1216 (7th Cir. 1990) ..................................................................................65

*Solis v. Current Dev. Corp.*
    557 F.3d 772 (7th Cir. 2009) ............................................................................109, 110

*Chao v. Hall Holding Co.*
    285 F.3d 415 (6th Cir. 2002) ....................................................................................72

*Donovan v. Cunningham*
    716 F.2d 1455 (5th Cir. 1983) .............................69, 71, 72, 73, 74, 76, 77, 89, 90

vii

<u>**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**</u>
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

*Beck v. Levering*
    947 F.2d 639 (2nd Cir. 1991) ....................................................................................108

*Donovan v. Bierwirth*
    680 F.2d 263 (2nd Cir. 1982) ..............................................................................80, 88

*Donovan v. Bierwirth*
    754 F.2d 1049 (2nd Cir. 1982) ...............................................................................101

*Katsaros v. Cody*
    744 F.2d 270 (2nd Cir. 1984) .................................................................................109

*Marshall v. Snyder*
    572 F.2d 894 (2nd Cir.1978) ..................................................................................109

**Federal Cases**

*Cosgrove v. Circle K Corp.*
    915 F.Supp. 1050 (1995 DC Ariz.) ..........................................................................73

*Harris v. Koenig*
    722 F.Supp. 2d 44 (D.DC 2010) ........................................................................65, 66

*Hawkins-Dean v. Metro. Life Ins. Co.*
    514 F. Supp. 2d 1197 (C.D. Cal. 2007) ..................................................................106

*Kanawi v. Bechtel Corp.*
    590 F.Supp. 2d 1213 (N.D. Cal. 2008) ....................................................................65

*Minton v. Deloitte & Touche*
    631 F. Supp. 2d 1213 (N.D. Cal. 2009) ..................................................................107

**Unpublished Federal Case**

*Ellis v. Hollister, Inc. et. al.*
    2006 U.S. Dist. LEXIS 27611, 16-20 ......................................................................64

**Statutes**

28 U.S.C. § 1961 ........................................................................................................107

29 USC §§ 1001-1169 .................................................................................................101

viii

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

29 USC § 1002(14)(E) ..........................................................................................71

29 USC § 1002(18)(B) ....................................................39, 69, 72, 73, 75, 76, 79

29 U.S.C. § 1104(a)(1) ........................................................................................98

29 USC § 1104(a)(1)(A) ..................................................................................80, 88

29 USC § 1104(a)(1)(B) ........................................................................................88

29 USC § 1104(a)(1)(D) ..................................................................................94, 95

29 U.S.C. § 1105(a) ..............................................................................................98

29 USC §§ 1105(a)(1)-(3) ....................................................................................96

29 U.S.C. § 1105(a)(2) ..........................................................................................98

29 U.S.C. § 1105(a)(3) ..........................................................................................98

29 USC § 1106(a) ..................................................................................................71

29 USC § 1106(1)(A) ............................................................................................71

29 USC § ........................................................................................................71, 75

29 U.S.C. § 1108(e)(1) ..........................................................................................79

29 U.S.C. § 1109 ....................................................................................................63

29 USC § 1113 ......................................................................................................65

29 U.S.C. §1132(a)(2) ....................................................................................63, 100

29 U.S.C. § 1132(a)(3) ........................................................................................101

29 U.S.C. § 1132(e)(2) ..........................................................................................63

29 U.S.C. § 1132(g)(1) ........................................................................................110

IRC § 6621(a)(2) ................................................................................................107

IRC § 6621(c)(1) ................................................................................................107

ix

<u>DeFazio, et al., v. Hollister, et al.</u>, Case No. 04-1358 WBS GGH
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

**ERISA Sections**

ERISA § 3(7) ........................................................................................................63

ERISA § 3(18) ......................................................................................................71

ERISA § 404 ...................................................................................................89, 100

ERISA § 404(a) ....................................................................................................77

ERISA § 404(a)(1) ................................................................................................96

ERISA § 404(a)(1)(A) ..........................................................................................80

ERISA § 404(a)(1)(B) ..........................................................................................88

ERISA § 404(a)(1)(D) ..........................................................................................94

ERISA § 405(a) ....................................................................................................95

ERISA § 406(a) ....................................................................................................71

ERISA § 408 ...................................................................................................71, 79

ERISA § 408(e) ....................................................................................................72

ERISA § 409 .........................................................................................................63

ERISA § 409(a) ...................................................................................................100

ERISA § 413 .........................................................................................................65

ERISA § 502(a) ....................................................................................................63

ERISA § 502(a)(2) .............................................................................99, 100, 108, 109

ERISA §502(a)(3) ..............................................................................99, 100, 101, 103

ERISA § 502(e)(2) ................................................................................................63

ERISA § 502(g) ..............................................................................................110, 111

x

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

ERISA § 502(g)(1) ...................................................................................................................110

**Other**

DOL Proposed Reg. 2510.3-18(b)(1)(i)(A) .................................................................................73

DOL Proposed Reg. 2510.3-18(b)(2)(i) ......................................................................................73

DOL Proposed Reg. 2510.3-18(b)(2)(ii) ................................................................................73, 74

DOL Proposed Reg. 2510.3-18(b)(2)(iii) ...................................................................................73

DOL Proposed Reg. 29 CFR 2510.3-18(b), n.2. .........................................................................73

xi

<u>DeFazio, et al., v. Hollister, et al.</u>, Case No. 04-1358 WBS GGH
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

The bench trial in this matter commenced on August 16, 2011, and presentation of the evidence concluded on September 9, 2011. Plaintiff Kathleen Ellis ("Ellis") submits the following proposed findings of fact and conclusions of law. Due to the nature of the issues that were tried, some of the findings of fact may be considered conclusions of law, and vice versa. Further, for the purposes of context, some of the proposed findings of fact are included and restated with the proposed conclusions of law.

## I.

## FINDINGS OF FACT

**A.    The Parties**

**1. Plaintiffs**

Brenda DiMaro was an employee of Hollister, Inc. ("Hollister") and a participant in the Hollister Employee Share Ownership Trust ("HolliShare" or the "Plan"). Her employment at Hollister ended in 1999 and she received a distribution of $29,518 attributable to her HolliShare account.[1]

Hallie Lavick was an employee of Hollister and a participant in HolliShare. Her employment at Hollister ended in 2000 and she received a distribution of approximately $9,445.18 attributable to her HolliShare account.[2]

Theresa Beetham was an employee of Hollister and a participant in HolliShare. Her employment at Hollister ended in 2006 and she received a distribution of $176,050 attributable to her HolliShare account.[3]

---

[1] Stipulated Facts, Docket No. 630, Fact No. 1.
[2] Stipulated Facts, Docket No. 630, Fact No. 2.

1

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

DeLane Humphries was an employee of Hollister and a participant in HolliShare. Her employment at Hollister ended in 1998 and she received a distribution of $104,811 attributable to her HolliShare account.[4]

Michael McNair was an employee of Hollister and a participant in HolliShare. His employment at Hollister ended in 2002 and he received approximately $4,998 attributable to her HolliShare account.[5]

Sonya Pace was an employee of Hollister and a participant in HolliShare. Her employment at Hollister ended in 2003 and she received a distribution of $155,911 attributable to her HolliShare account.[6]

Judy Seay was an employee of Hollister and a participant in HolliShare. Her employment at Hollister ended in 1999 and she received a distribution of $731,809 attributable to her HolliShare account.[7]

Nancy Stanton was an employee of Hollister and a participant in HolliShare. Her employment at Hollister ended in 2002 and she received a distribution of $159,483 attributable to her HolliShare account.[8]

Cindy Wirth was an employee of Hollister and a participant in HolliShare. Her employment at Hollister ended in 2006 and she received a distribution of $84,218 attributable to her HolliShare account.[9]

---

[3] Stipulated Facts, Docket No. 630, Fact No. 3.
[4] Stipulated Facts, Docket No. 630, Fact No. 4.
[5] Stipulated Facts, Docket No. 630, Fact No. 5.
[6] Stipulated Facts, Docket No. 630, Fact No. 6.
[7] Stipulated Facts, Docket No. 630, Fact No. 7.
[8] Stipulated Facts, Docket No. 630, Fact No. 8.
[9] Stipulated Facts, Docket No. 630, Fact No. 9.

2

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

Ellis was an employee of Hollister and a participant in HolliShare. Her employment at Hollister ended in 2004 and she received a distribution of $1,750,032.68 attributable to her HolliShare account.[10]

James DeFazio ("DeFazio") is the former spouse of Kathleen Ellis for whom an alternate payee account was created in 2002 in the amount of $841,707.34.[11]

## 2.    Defendant Fiduciaries and Key Players

At all relevant times, HolliShare was managed by three distinct sets of "named" fiduciaries: (a) plan trustees, who were charged with the responsibility of overseeing the management of the Plan; (b) Hollister, who was responsible for administering the Plan; and (c) the Hollister Board of Directors ("the Hollister Board"). [12]

### a.    HolliShare Trustees

Richard Zwirner ("Zwirner") is a member of both the JDS and Hollister Boards of Directors. Zwirner became a trustee of HolliShare in approximately 1977 and has consistently served as a HolliShare trustee. He is also outside legal counsel to JDS and Hollister and serves as a consultant on commercial transactions and business matters for Hollister. Zwirner is the primary drafter of the provisions of the JDS Articles of Incorporation ("JDS Articles") significant to this case: the right of first refusal provision and the exceptional circumstances provision.[13]

James McCormack ("McCormack") began his employment with Hollister in May of 1981 with the titles of Vice President of Finance, Treasurer, and Chief Financial Officer. McCormack

---

[10] Stipulated Facts, Docket No. 630, Fact No. 10.
[11] Stipulated Facts, Docket No. 630, Fact No. 11.
[12] Exhibit 9-9.14 § 11.11.
[13] *Zwirner Testimony*, TT 1982:18 – 1983:21, 1986:18-22, 1994:6-12, 1995:12-19, 1996:2-21, 1998:22-24, 2023:22 – 2024:2, 2024:17 – 2025:4, 2095:6-13, 2223:21-23, 2257:21 – 2258:20.

3

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

became a trustee of HolliShare in 1981 and remained a trustee until he retired from Hollister in 2000.[14]

James Karlovsky ("Karlovsky") joined Hollister in September 1989 as Vice President of Human Resources. He was appointed as a HolliShare trustee shortly thereafter. Karlovsky retired from the company in 2004; prior thereto, he gave up his position as trustee of HolliShare.[15]

Samuel Brilliant ("Brilliant") began employment with Hollister in 1998 as the Vice President of Finance and Treasurer. In 2000, Brilliant became Chief Financial Officer of Hollister and a HolliShare trustee.[16]

Lori Kelleher ("Kelleher") was a Plan trustee from 2004 to 2011.[17]

Plan trustees had responsibility and full authority to control and manage HolliShare's operations.[18] They are required under the written instrument governing HolliShare [HolliShare Employee Share Ownership Trust ("Plan Instrument")] to exercise their powers in the sole interests of, and for the exclusive purpose of providing benefits to, participants and beneficiaries,[19] to adhere to the prudent person standard,[20] and to avoid "prohibited transactions."[21]

---

[14] *McCormack Testimony*, TT 722:2 – 723:4.
[15] *Karlovsky Testimony*, TT 337:21 – 338:15, 341:12-17, 509:15-19, 510:10-13.
[16] *Brilliant Testimony*, TT 1263:3 – 1265:16, 1266:1-9.
[17] Stipulated fact No. 17.
[18] Exhibit 9-9.14 § 11.01(1).
[19] Exhibit 9-9.14 § 11.01(1)(a).
[20] Exhibit 9-9.14 § 11.01(1)(b).
[21] Exhibit 9-9.14 § 11.01(1)(b)(ii).

4

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

Zwirner, Karlovsky, McCormack, Brilliant, and Kelleher were each appointed as trustees and were to be monitored by the Hollister Board of Directors. HolliShare trustees are expressly listed as fiduciaries in the Plan Instrument.[22]

### b.    Hollister and Herbert

The Hollister Board is solely responsible for selecting, monitoring, and removing Plan trustees, who are required to regularly report matters concerning the Plan.[23] The Hollister Board can appoint and remove any Plan trustee with or without cause upon written notice.[24] The Hollister Board was also supposed to inspect and audit "[a]ll such records and accounts of [the Plan.]"[25]

Allan Herbert ("Herbert") joined Hollister in 1997 as President and Chief Operating Officer and retired from the company in May 2011. Herbert was a member of the Hollister and JDS Boards of Directors beginning in 1998.[26]

### c.    JDS

The Firm of John Dickinson Schneider, Inc.'s ("JDS") predecessor company was founded in 1921 by John Dickinson Schneider as a family limited partnership. Mr. Schneider created an organizational framework based upon his vision for the entirety of the company that included a pension plan for employees and a way for selected employees to own direct shares of JDS stock. Mr. Schneider was born in 1898, became incapacitated in 1981, and passed away in 1983.

---

[22] Exhibit 9-9.14, § 11.11.
[23] Exhibit 9 - 9.14 §§ 3.06, 11.04, 11.11.
[24] Exhibit 9 - 9.14 §§ 11.05, 11.06, 11.07
[25] Exhibit 9 – 9.14 § 11.04.
[26] *Herbert Testimony*, TT 1495:24 – 1496:9, 1497:2-16.

5

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

JDS is not a named fiduciary of HolliShare but it is a Plan fiduciary because it exercised discretionary control and authority over the management of HolliShare's common stock. (*Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004).) JDS controlled the sale of the Plan's assets from the mid-1980s; this is evidenced by the following facts: (1) JDS proposed that the previous December 31 audited book value be used as the sale price for shares sold by HolliShare to JDS; (2) JDS proposed that there only be one sale transaction per year with HolliShare; (3) JDS repurchased shares from the Plan at a price that has always been lower than the fair market value as well as lower than the current month end book value; and, (4) testimony was elicited that trustees considered the possibility of selling the Plan's JDS common shares at prices higher than book value but reached the conclusion that JDS would never entertain that concept because of its record and history of repurchasing the shares at December 31 book value.[27]

### d.   Winn

Michael Winn ("Winn") is an integral figure in the factual background of this case and was a HolliShare fiduciary as a Board Member of JDS and Hollister. Winn began employment with Hollister in 1974 as Vice President of Legal Affairs, serving as the only in-house counsel. Winn later served as Chief Executive Officer and Chairman of the Board of Directors for Hollister. He also served as a member of the Board of Directors for JDS. Winn retired in 2001, and at that time, he gave up his Board Member positions for JDS and Hollister.[28]

/ / /

/ / /

---

[27] *Zwirner Testimony*, TT 2059:25 – 2060:7, 2070:17-19, 2373:6-20.
[28] *Winn Testimony*, TT 36:24-25, 37:1-13.

6

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

**B.** **JDS's Shares Are Subject to Ownership and Transfer Restrictions and Rights of Repurchase.**

JDS is a holding company; Hollister is a wholly-owned subsidiary of JDS (and its primary income producer). JDS has two classes of shares – preferred and common. Each JDS preferred share, and each common share, is entitled to one vote. Between 1974 and the present, the JDS preferred shares constituted between 92% and 99% of JDS's outstanding voting shares.[29]

While certain matters require an affirmative vote (either by a majority or a super-majority) of each class of shares voting as a class, control of JDS has always rested with its preferred shareholders except for matters that required approval by a majority of each class of stock. Historically, Mr. Schneider controlled the outstanding preferred shares. By 1977, he owned all the preferred shares of JDS and, as explained below, transferred those shares into a trust, which, at his direction, required that the JDS preferred shares be voted in accordance with certain policies and principles articulated in the trust instrument. The Schneider 1977 Trust terminated on April 21, 2001, and the corpus of the trust was transferred to the Firm of John Dickinson Schneider, Inc. Preferred Share Trust April 21, 1999. The terms of that trust require its trustees to vote the preferred shares in accordance with John Schneider's policies and principles, including maintaining JDS as an independent, employee-owned entity.

/ / /

/ / /

/ / /

---

[29] Exhibit 538.

7

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

### 1.  Ownership Restrictions

The JDS Articles restricted the persons who could own JDS shares. Zwirner, general counsel for JDS, drafted revisions to the JDS Articles in 1972, 1974, 1978, and 1984.[30] It was not until 1984 that officers and directors of JDS/Hollister could own common shares.[31] In 1984, Article Five, ¶ II.C of the JDS Articles provided that:

> Subject to the exception set forth in paragraph E below, the following are the only classes of persons entitled to be holders of shares of any class: holders of shares of the Corporation [JDS] as of May 5, 1978; directors and officers of the Corporation or of Hollister Incorporated who (in the opinion of the Corporation's Board of Directors) have performed substantial and continuing services for the Corporation or Hollister Incorporated; employees of the Corporation, of Hollister Incorporated or of any other corporation controlled by one or more of such corporations; and any deferred benefit plan maintained for the exclusive benefit of such directors, officers, or employees. [32]

### 2.  Transfer Restrictions

Article Five, ¶ II.D of the JDS Articles set forth the transfer restrictions and the repurchase rights to which JDS shares, common and preferred, were subject. The introductory provision of paragraph D stated:

> Except as provided in this paragraph D and subject to the restrictions set forth in paragraph C above, shares of the Corporation shall not be transferred, directly or indirectly, to any person, firm, corporation, trust, entity or other holder, whether by cash sale, contract, deed, gift, operation of law, sale pursuant to lien, pledge, security agreement or judicial process, or otherwise. No transfer or attempted transfer of any one or more shares of the Corporation, or of any interest, legal or equitable, or claimed interest in such shares, shall be effective unless and until the following conditions shall have been satisfied… [33]

///

///

///

---

[30] *Zwirner Testimony*, TT 2023:22 – 2024:4.
[31] Exhibits 531, pg 4, Article Five II.C., 8–8.7 pg 6, Article Five II.C.
[32] Exhibit 8–8.7, pg 6, Article Five II.C.
[33] Exhibit 531, pg 4.

8

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

a.      **Two Methods for Sale and Purchase of JDS Common Shares**

i.      **Right of First Refusal –Sale Price Set at Month End Book Value in Month of Transaction**

The conditions on transfer set forth in the introductory paragraph of ¶ II.D provided that before any JDS shareholder could transfer his or her shares, he or she was required to comply with the right of first refusal, which in ¶ II.D.2.a provided that:

If any owner, person, personal representative, firm, corporation, trust, entity or other holder desires or intends to transfer any one or more shares of the Corporation, or to create any interest, legal or equitable, in such shares, *such holder shall first offer* in writing, at least 30 days prior to such transfer or creation of an interest, *to sell to the Corporation all shares of the Corporation which such holder desires or intends to transfer*, or in which such holder desires or intends to create an interest, at the price and in the manner set forth in [subsequent provisions of the JDS Articles].[34]

Paragraph II.D.3 *sets forth the sale price to be used*:

*The price of each common share shall be its book value as of the end of the calendar month in which the Repurchase Date occurs*, plus the amount of any dividends declared but not paid prior to the Repurchase Date. The book value of each common share shall be the book value as reflected on the books of the Corporation and a report by an independent certified public accountant retained by the Corporation stating such book value shall be conclusive proof thereof, regardless of whether the accountant's opinion is qualified.[35]

For purchases over a certain amount, JDS must pay for the stock purchased under its right of first refusal with a promissory note. [36]   JDS may only pay the greater of $250,000 (or 10% of the aggregate price) in cash, with the remainder payable with a promissory note in equal installments over ten years (although, prior to 1999, the initial cash payment was limited to

---

[34] Exhibit 531, pg 5 (Emphasis added.)
[35] Exhibit 8-8.7, pg 8, Article Five, § II.D.3.b (Emphasis added.)
[36] Exhibit 531, Article Five, ¶ II.D.4.a; Exhibit 535, Article Five, ¶ II.D.4.a.

9

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

$5,000 and the promissory note could be stretched over the life span of an average person).[37] Recipients of JDS promissory notes are entitled to 8% to 12% interest (increased from 6% to 9% in 1999). [38]  JDS can then sell, assign or otherwise transfer its obligations under those promissory notes to the Plan, on such terms as JDS and the plan trustees may agree. [39]

ii.    **Exceptional Circumstances – No Restrictions on Sale Price**

Under exceptional circumstances and in the discretion of the JDS Board of Directors, shares of JDS common stock may be repurchased by JDS at such *other times*, upon such *other terms*, in such *other manners*, over such *other periods of time*, or on such *other conditions* as JDS and the owner or holder of such shares may *agree* under ¶ II.D.7.a.[40]

The exceptional circumstances provision includes *no restrictions or guidelines on any sales terms at all*, including the sale price, and instead sets forth that the seller and JDS are to come to an agreement on such terms, i.e., to negotiate.[41]

The JDS Articles provide that any amendment of the ownership and transfer restrictions and repurchase rights of Article Five of the JDS Articles must be approved by a two-thirds vote of each class of shares, each voting as a class.[42]

b.    **JDS' About-Face in Position As to Which Provision Used to Sell Plan's JDS Common Shares**

Prior to this lawsuit, and even years into the litigation, Defendants vigorously and repeatedly pronounced that all of the sales of JDS common shares from HolliShare to JDS were

---

[37] Exhibit 535, Article Five, ¶ II.D.4b; Exhibit 531, Article Five, ¶ II.D.4b.
[38] Exhibit 535, Article Five, ¶ II.D.4.b; Exhibit 531, Article Five, ¶ II.D.4.c(3).
[39] Exhibit 531, Article Five, ¶ II.D.7.b.
[40] Exhibit 531, Article Five, ¶ II.D.7 (Emphasis added.).
[41] Exhibits 531-536, JDS Articles, Article 5, ¶ II.D.7.
[42] Exhibit 531, pg 22.

10

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

(and had been) pursuant to the right of first refusal provision. These representations were made in the HolliShare Highlights publications, in direct response to a Plan beneficiary's inquiry, in response to an investigation by the Department of Labor, and to the Court during this litigation. In approximately 2009, Defendants abruptly changed their position, arguing emphatically that all sales of JDS common shares of stock from HolliShare to JDS were conducted pursuant to the exceptional circumstances provision. During trial, the fiduciaries repeatedly averred, under penalty of perjury, that all of the subject sales were pursuant to the exceptional circumstances provision.[43]

### C.   Mr. Schneider's Business Policies and Principles

Mr. Schneider's intention was to keep Hollister and JDS independent, employee-owned, and private. Schneider believed that the book value method for valuing JDS's shares, the ownership and transfer restrictions, and JDS's right to repurchase JDS's shares had been specially designed (1) to promote continuity in management, (2) to avoid outside appraisals and interference from third parties (including competitors), (3) to support the continuation of employee ownership, and (4) to maintain independence.

### D.   HolliShare, Its Trustees, and Its Operations

HolliShare is a non-contributory, tax qualified defined contribution profit sharing plan designed to provide retirement benefits to Hollister's U.S. non-union employees.[44] HolliShare

---

[43] *Zwirner Testimony*, TT 2027:4-5; *Karlovsky Testimony*, TT 350:10 – 366:12, 527:16-18; *McCormack Testimony*, TT 858:1-15.

[44] Stipulated Facts, Docket No. 630, Fact Numbers 26, 27.

11

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

was funded as a profit sharing plan in 1974.[45]  HolliShare is governed by a written instrument, the HolliShare Employee Share Ownership Trust ("Plan Instrument").

The predominant (and nearly exclusive) asset of the Plan consists of common shares of JDS.  HolliShare is mandated by the Plan Instrument, to invest, to the maximum extent practicable, in the common shares of JDS.[46]

In 1974, HolliShare received 11,950 common shares of JDS.[47]  In exchange, HolliShare assumed the obligation to pay the long term promissory notes issued to former shareholders from JDS to purchase those shares.[48]  In late 1974, the Plan transferred 4007 shares back to JDS along with the related promissory note obligations, leaving the Plan with 7,943 shares.[49]  HolliShare has not purchased any JDS shares since 1975.[50]  The number of JDS common shares held by HolliShare has only increased due to two 100-for-1 stock splits and a 9-for-1 stock dividend (one of the 100-for-1 stock splits occurred in 2011).[51]

Since HolliShare's inception, all Hollister employees in the United States, except those who are members of the collective bargaining unit for union workers at Hollister's Kirksville, Missouri plant, have been eligible to participate in the Plan. An eligible employee is enrolled as a HolliShare participant on either January 1 or July 1, following the completion by that

---

[45] Stipulated Facts, Docket No. 630, Fact No. 25.
[46] Exhibit 9-9.14, § 11.01.
[47] *Zwirner Testimony*, TT 1991:1-15.
[48] *Zwirner Testimony*, TT, 1992:9-12.
[49] *Zwirner Testimony*, 2078:24 – 2079:7.
[50] Exhibit 252-252.28, p.4.
[51] *Zwirner Testimony*, TT 2287:10-11.

12

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

employee of one year of service at Hollister. HolliShare currently has approximately 1,100 participants.[52]

HolliShare is funded solely through cash contributions by Hollister made each year from its profits and from cash paid by JDS for the repurchase of stock held by the Plan. HolliShare participants are neither required nor permitted to contribute to HolliShare. In recent years, Hollister's contribution has ranged from 7.5% to 8.5% of each participant's eligible compensation to HolliShare.[53]

HolliShare has three Trustees (the "HolliShare Trustees"), each of whom is appointed by Hollister's Board of Directors. The management of HolliShare involves financial, legal, and personnel matters. Accordingly, over the years, a practice developed whereby Hollister's Board of Directors appointed Hollister's Chief Financial Officer, its General Counsel, and the head of its Human Resources Department as HolliShare's Trustees.[54]

At HolliShare's inception, the HolliShare Trustees were Arnold A. Rivin, Loretta L. Stempinski, and L. Victor Dickinson. Richard Zwirner has served as Hollister's General Counsel since 1977 and became a HolliShare Trustee briefly in 1974 and again in late 1976 or 1977.[55] He has continued to serve as a HolliShare Trustee from that time to the present. Since 1979, Hollister's Chief Financial Officers also served as HolliShare's Trustees. They have been (in succession): Charles Gunderson, James McCormack, and Samuel Brilliant.[56] Beginning in the late 1970s, and continuing to the present, the heads of Hollister's Human Resources Department

---

[52] *Zwirner Testimony*, TT, 1993:12-1993:24, 2349:25-2350:3; Exhibit 538.
[53] Exhibit 776.
[54] *Winn Testimony*, Trial Testimony, 664:3-664:13.
[55] *Zwirner Testimony*, TT, 1994:6-1994:12-2095:6-2095:13.
[56] *McCormack Testimony*, TT, 722:14-722:17, 723:1-723:4, *Brilliant Testimony*, TT, 1266:1-1266:9.

13

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

have also served as HolliShare trustees. In succession, they have been Simon, Charles Schellentrager, Karlovsky, and Kelleher.[57]

An individual account is maintained for each HolliShare participant. The balance in each participant's account is generally based on the participant's *pro rata* percentage of the value of the entire HolliShare Trust Fund. The value of HolliShare's assets, *i.e.,* Trust Fund, and the balance of each participant's HolliShare account, is determined once a year, as of December 31 of that year.[58] This is a trustee responsibility.[59] Upon the termination of a HolliShare participant's employment with Hollister, that person becomes entitled to a distribution of an amount equal to the vested portion of his or her HolliShare account balance as of December 31 of the prior year, *i.e.,* the year preceding the employee's termination of employment.[60] The Plan has been amended and restated on numerous occasions.

The Plan trustees have the sole responsibility and full authority to control and manage HolliShare investments.[61] HolliShare's investment in JDS common shares typically comprises in excess of 95% of the value of the HolliShare Trust Fund. The JDS common shares held by HolliShare are owned by HolliShare. HolliShare participants have no legal or equitable ownership interest in any of the HolliShare assets, including (without limitation) the JDS common shares owned by HolliShare.[62] HolliShare cannot purchase any additional shares.[63]

---

[57] *Karlovsky Testimony*, TT, 341:12-341:14-509:15-509:19.
[58] Exhibit 9-9.14, § 7.03.
[59] Exhibit 9-9.14, §§ 7.01, 7.02.
[60] Exhibit 9-9.14, Section 8.
[61] Exhibit 9-9.14, § 11.01(1).
[62] Exhibit 9-9.14, Section 11.03.
[63] *Winn Testimony*, TT, 616:5-617:25.

14

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

The JDS common shares owned by the HolliShare Trust Fund are valued at their respective fair market value as of December 31 of a given year which the Plan dictates to be their book value as of their valuation date.[64] Because HolliShare invests primarily in JDS's common shares, the principal factor that determines the change in value of each HolliShare participant's account is the annual decline or appreciation in the book value of JDS's common shares and the proceeds of any sale of those shares during the year. According to the terms of the Plan, the value of a HolliShare participant's account is also affected by: (a) Hollister's cash contributions to the Plan; (b) gains or loss on the comparatively small amount of the HolliShare Trust Fund that is invested in the assets other than JDS common shares; (c) the allocation of forfeitures of the unvested portions of the account balances of former HolliShare participants; and (d) any expenses incurred by HolliShare.[65]

It was not part of the Plan design that HolliShare would sell common shares to JDS; it was anticipated that the Hollister profit sharing contribution would be sufficient to meet the cash needs of the Plan.[66] Because the Hollister contributions have not been adequate to meet the cash needs of the Plan, HolliShare has sold its JDS common shares to JDS to bridge the gap.

The Plan Instrument does not dictate a set price to be used to sell its shares. Section 7.03 of the Plan Instrument document does not require HolliShare trustees to sell common stock to JDS at the previous December 31 audited book value.[67] Section 11.01(1)(ii) permits the sale of common shares of HolliShare so long as the sale is in accordance with the JDS Articles.[68] The

---

[64] Exhibit 9-9.14, Section 7.03.
[65] *Zwirner Testimony*, TT 2348:24-2349:1.
[66] *Zwirner Testimony*, TT 2085:25 –2086:12.
[67] *McCormack Testimony*, TT 932:11-932:14, Exhibit 9.11 Section 7.03.
[68] *McCormack Testimony*, TT 937:7-937:19, Exhibit 9.11 Section 11.01(1)(ii).

15

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

JDS Articles' right of first refusal provision mandates that the sales price be the current month end book value.[69] The exceptional circumstances provision of the JDS Articles does not say what the sales price should be in a sale of common shares to JDS but states that JDS and HolliShare are to come to an agreement on price.[70]

HolliShare publishes an annual newsletter to its participants and beneficiaries disclosing material information relevant to the assets that are funding their retirement. This publication is entitled "HolliShare Highlights."

### E. JDS Direct Stock Ownership Program

Individual employees who are selected by JDS/Hollister management are permitted to purchase and own JDS common stock directly. The direct stock ownership program is reserved for Hollister employees who are with the company for a number of years, have individual discretion, and have made material contributions towards its success.[71] Hollister's Human Resources department compiles a list of people recommended for eligibility to the direct stock ownership program from which the directors of JDS choose.[72]

Although the direct shareholders own precisely the same type of asset as owned by HolliShare (JDS common shares of stock), the direct shareholders' common shares are treated much differently than HolliShare's common shares. The selected participants purchase the JDS common stock at the previous December 31 audited book value price, even though the purchase transaction does not take place until six to nine months after the year end book value has been

---

[69] *McCormack Testimony*, TT 934:14-934:19; Exhibit 8-8.7, p. 8, Article 5, ¶ II.D.3.b..
[70] *McCormack Testimony*, TT 935:15-937:2; Exhibits 531-536, JDS Articles, Article 5, ¶ II.D.7.
[71] *Winn Testimony*, TT 200:19-201:19; *McCormack Testimony*, TT 724:16-20, 725:15 – 726:5.
[72] *Karlovsky Testimony*, TT 339:22 – 340:15.

16

<u>DeFazio, et al., v. Hollister, et al.</u>, Case No. 04-1358 WBS GGH
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

established.[73] When the direct shareholders sell their shares back to JDS, instead of selling at the previous December 31 audited book value like the Plan does for its beneficiaries, the direct shareholders are paid the current month end book value at the time of sale, consistent with the right of first refusal provision of the JDS Articles (except Zwirner, who is the only one who sells at the December 31 book value price).[74]

Each of the individual Plan fiduciaries who are Defendants in this case have participated in and greatly benefitted from the direct share ownership program. For example, Zwirner is a participant in the direct share ownership plan. In 1983, Zwirner received a total of 8,113 common shares (despite the fact that he was not a permitted shareholder according to the JDS Articles in effect at that time). He was later "offered" more shares in the late 1980s, which he purchased.[75] By 2006, Zwirner had sold approximately $11,300,000 of his shares. When questioned at trial about his direct share ownership profits made since 2006, he testified that he has sold more shares in the range of $5,000,000 to $20,000,000, although he could not state a more specific dollar amount. He still owns roughly ten percent of all JDS common shares, with a value of approximately $45,000,000.[76] Brilliant was selected as a participant in the direct share ownership program in 2000, purchasing common shares at the previous December 31 book value.[77] Herbert participated in the direct share ownership program; he owned approximately 20,000 common shares when he retired, and he sold those shares at month end book value in the month of the sale

---

[73] *Karlovsky Testimony*, TT 558:6-17.
[74] Karlovsky Testimony, TT 557:2 – 559:5; Exhibits 531-536, Article 5, ¶ II.D.3.b.
[75] *Zwirner Testimony*, 1985:11-17, 2004:4-18, 2013:20 – 2014:2.
[76] *Zwirner Testimony, TT* 2014:22-24, 2016:10 - 2017:14.
[77] *Brilliant Testimony*, TT 1272:14 – 1273:14.

17

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

transaction for $18,000,000.[78]  Karlovsky was a participant as well, selling his shares in 2006 for approximately $3,212,111.34.[79]  McCormack participated in the program and sold his shares for approximately $3,870,300 in 2000.[80]  Winn sold his 176,210 shares in the direct share holder program for approximately $23,000,000.[81]

### F.    The 1977 Preferred Share Trust

On April 21, 1977, Mr. Schneider established the John D. Schneider 1977 Preferred Share Trust ("1977 Preferred Share Trust").[82]  At that time, he owned all the outstanding JDS preferred shares, which represented control of JDS.

The 1977 Preferred Share Trust obligated the Trustees of that trust to elect JDS directors who were committed to the Schneider policies and principles, which were expressly set forth in the 1977 Preferred Share Trust Instrument.[83]

To this end, Mr. Schneider placed all of his outstanding JDS preferred shares in the 1977 Preferred Share Trust. Those preferred shares represented control over JDS, and, by the trust's terms, were to be held in the trust for 24 years. Mr. Schneider was the initial trustee of that trust. Given that the trust owned all of the preferred shares of JDS, it had the voting power to select the members of the JDS Board of Directors.

/ / /

/ / /

/ / /

---

[78] *Herbert Testimony*, TT 1496:16 – 1497:1, 1512:19-24, 1513:24 – 1514:4.
[79] *Karlovsky Testimony*, TT 496:21 – 497:11.
[80] Exhibit 10, Shareholder 242.
[81] *Winn Testimony*, TT 50:13-18.
[82] Exhibit 635.
[83] Exhibit 635, 1977 Preferred Share Trust, Article Six.

18

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

**G.     Transfer of the JDS Preferred Shares in the 1977 Preferred Share Trust To the 1999 Preferred Share Trust**

In 1981, Mr. Schneider became incapable of managing his own affairs, and Winn, Stempinski, and Zwirner became the trustees of the 1977 Preferred Share Trust.[84]

By its terms, the 1977 Trust (and with it, the control of Zwirner, Winn and Stempinski over JDS) was to expire on April 21, 2001.[85] The 1977 Preferred Share Trust provided that upon its expiration, the JDS preferred shares owned by it were to be distributed to those Hollister employees who then personally owned JDS common shares, and who agreed in writing to abide by the Schneider policies and principles.

For several years prior to April 21, 2001, Winn, Stempinski, and Zwirner discussed the potential impact of the expiration of the 1977 Trust on the future operations of Hollister.

Winn, Stempinski, and Zwirner proposed to the employee/shareholder beneficiaries of the 1977 Preferred Share Trust that they consent to the transfer of the JDS preferred shares from that trust to a newly formed trust ("1999 Preferred Share Trust"). Winn, Stempinski, and Zwirner proposed that the new trust be perpetual in duration and that it require its trustees to agree in writing to adhere to the Schneider policies and principles. Article 5, section D of the 1999 Preferred Share Trust also required its trustees to "use [their] best efforts to cause JDS Inc. to continue to sell and repurchase the common shares only at prices equal to their book value."[86] *This same section required the trustees to resist any attempt by the United States Department of Labor, the Internal Revenue Service or any other governmental or quasi-governmental*

---

[84] Exhibit 635, p. 19.
[85] Exhibit 635, 1977 Preferred Share Trust, Article Five, ¶ B.
[86] Exhibit 126, pg 24, Article Five, Section D.

19

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

*body or entity by any shareholder or employee of JDS, Inc. or Hollister, or by any other person or entity, to require that either (1) JDS sell or repurchase its common shares at any price in excess of (or less than) their book value* (regardless of the mandates of ERISA), or (2) JDS common shares be valued for purposes of the Hollister Employee Share Ownership Trust or for any other purpose in excess (or less than) their book value.[87] The initial trustees of the 1999 Preferred Share Trust were Zwirner, Winn, Stempinski and two others.[88]

The new trust, the 1999 Preferred Share Trust, was signed April 21, 1999. In order to implement the terms of the 1999 Preferred Share Trust, it was necessary for the JDS shareholders to approve an amendment to the JDS Articles allowing the trust to be a shareholder. This approval required a two-thirds vote by each class of JDS shares, voting as a class. Given the number of common shares owned by HolliShare, any amendment to the JDS Articles necessarily required its approval.

Under the HolliShare trust instrument, the HolliShare Trustees were solely responsible for determining how HolliShare would vote its shares. At the time this amendment was proposed, and throughout 1999, the HolliShare trustees were McCormack, Karlovsky, and Zwirner.

H.      The 1999 Amendments to the JDS Articles

Several amendments were approved at a Special Meeting of the JDS shareholders held on January 28, 1999. The following amendments were approved:

---

[87] Exhibit 126, pg 24, Article Five, Section D.
[88] Exhibit 127, Article 7, p. 28.

20

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

1.  An amendment which (i) increased the amount of cash paid by JDS to individual common shareholders from whom JDS redeems its common shares from $5,000.00 to the greater of $250,000 or 10% of the amount of the transaction; and (ii) increased the interest rate payable on promissory notes provided in connection with such redemptions from a range of 6% to 9% to a range of 8% to 12%.

2.  An amendment which added a new Article Six to the JDS Articles, and provided as follows:

> No director of the Corporation shall be personally liable to the Corporation or its shareholders for monetary damages for breach of fiduciary duty as a director, except for liability (1) for any breach of the director's duty of loyalty to the Corporation or its shareholders, (2) for acts or omissions not in good faith or that involve intentional misconduct or a knowing violation of law, (3) under Section 8.65 of the Business Corporation Act, or (4) for any transaction from which the director derived an improper personal benefit. If, after adoption by the shareholders of this ARTICLE SIX, the Business Corporation Act is amended to permit the further elimination or limitation of the personal liability of directors, then the liability of directors of the Corporation shall be eliminated or limited to the fullest extent permitted by the Business Corporation Act as so amended. This ARTICLE SIX shall not eliminate or limit the liability of a director of the Corporation for any breach of fiduciary duty occurring before March 19, 1999. The right set forth in this ARTICLE SIX is in addition to: any indemnification or other right eliminating or limiting the personal liability of directors to which a director may be entitled by any by-law, agreement, vote of shareholders or disinterested directors, or otherwise…[89]

The amendments approved at the January 28, 1999 Special Meeting of the JDS shareholders were filed with the Illinois Secretary of State on March 19, 1999.

At the April 30, 1999 JDS Annual Shareholders' Meeting, the JDS shareholders (including HolliShare) unanimously voted in favor of an amendment to the JDS Articles that

---

[89] Exhibit 535.

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

permitted the 1999 Preferred Share Trust to own JDS shares. [90] At that meeting, the JDS shareholders also approved an amendment to the JDS Articles which provided that no natural person would be permitted to own more than 10% of the outstanding JDS common shares. An amendment that deleted Article Five, ¶ II.E (an exemption from the otherwise applicable transfer restrictions and repurchase rights in the JDS Articles for John D. Schneider, Minnie R. Schneider, and trustees designated in writing by either or both of them) was also approved. These amendments, approved at the April 30, 1999 JDS Annual Shareholders' Meeting, were filed with the Illinois Secretary of State on June 14, 1999.[91] The HolliShare Trustees who voted HolliShare common shares in favor of these amendments were Karlovsky, McCormack, and Zwirner.

On April 21, 2001, all of the JDS preferred shares were transferred from the 1977 Preferred Share Trust to the 1999 Preferred Share Trust.

## I.    Scheme to Undervalue Plan Assets

In approximately 1981, Mr. Schneider became incapacitated. It was at this time that Zwirner and Winn developed and implemented their strategy to benefit direct shareholders at the expense of HolliShare through the creation of the alleged "mid-80s agreement" (which altered the terms of the sale of HolliShare JDS stock) and the amendment of the JDS Articles (which allowed directors and officers of JDS and Hollister, such as Zwirner, to become permitted shareholders of JDS common shares).

---

[90] Exhibit 646, Minutes of April 30, 1999 Meeting.
[91] Exhibit 536.

22

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

In 1983, ownership of JDS stock was restricted to employees of JDS and Hollister, HolliShare, and certain family members of John Schneider's.[92] Hollister and/or JDS Directors were not included in the exclusive list of those who were allowed to own JDS common stock. Although Zwirner had worked closely with Mr. Schneider since the early 1970s, while Mr. Schneider was active in the company, he never offered to give or sell Zwirner stock.[93] Nevertheless, in 1983, shortly after Mr. Schneider became incapacitated, Winn and Zwirner arranged for Zwirner to acquire 8,113 shares of JDS common stock; at the time, this was in direct violation of the JDS Articles.[94] Zwirner was allowed to acquire 8,113 common shares of JDS; some of these were provided to Zwirner at no cost (for past services allegedly rendered), and some of these he purchased for cash.[95] The price of the stock that Zwirner purchased was the previous December 31 book value ($30.41) even though the current month end book value at the time he purchased them was $39.41.[96] In 1984, there was an amendment to the JDS Articles allowing members of the JDS/Hollister Board of Directors to own shares of JDS stock. This amendment, which became effective in August 1984, ratified the transfer of the 8,113 shares to Zwirner the previous December.[97]

Also in approximately 1983, Winn and Zwirner began confidential discussions between themselves to alter the terms under which HolliShare was to sell its primary asset (JDS common shares of stock) to JDS to generate the cash necessary to fund the benefits of retiring employees. Up until this time period, and consistent with the right of first refusal provision in the JDS

---

[92] *Zwirner Testimony*, TT 1998:4-12, 1995:25 – 1999:19.
[93] *Zwirner Testimony*, TT 2002:14-25; *Winn Testimony*, TT 305:25 – 306:5.
[94] *Zwirner Testimony*, TT 2004:1-14, 2005:4-6.
[95] Exhibit 253.21, p. 1 last ¶ - p. 3.
[96] Exhibit 253.21, p. 1 last ¶ to end of p. 3; Exhibit 4-4.8 p. 9 , ¶ 4.
[97] *Zwirner Testimony*, TT 2006:7-16, 2009:2-7.

23

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

Articles, the price paid by JDS to the Plan was current month end book value.[98] Sometime shortly after Mr. Schneider became incapacitated, Winn (on behalf of JDS) and Zwirner (on behalf of HolliShare, despite also sitting on the JDS Board of Directors) entered into secret negotiations whereby HolliShare would sell the shares required to pay the benefits of the HolliShare retirees back to JDS at the ***previous December 31 book value*** (regardless of how many months had passed since the previous December 31 at the time of the sale).[99] This agreement was referred to at trial as the "mid-80s agreement." They selected the previous December 31 book value as the sale price for share sales occurring months later despite knowing that the book value of JDS common shares was consistently and significantly rising.[100] Winn admitted that he and Zwirner never considered any other price than the December 31 audited book value for the sale of shares from HolliShare to JDS.[101] Winn testified that he relied solely on the advice of Zwirner that the use of the previous December 31 audited book value as the sale price was legally permissible.[102]

The terms of the alleged "mid-80s agreement" were: (1) all purchases between HolliShare and JDS would be for cash; (2) HolliShare trustees would provide projections (prepared by Hollister employees) of the cash needs of the Plan in advance; (3) there would only be one sale per year; (4) JDS would buy all shares to meet the cash needs as recommended by the HolliShare trustees; and, (5) the cash needed to fund benefits would be translated into a number of shares based on the previous December 31 audited book value.[103] Zwirner testified to the following

---

[98] *Winn Testimony*, TT 166:8-14; Exhibits 531-536, JDS Articles, Article 5, ¶ II.D.3.b.
[99] *Winn Testimony*, TT 191:7-20.
[100] *Winn Testimony*, TT 195:12-15; *Zwirner Testimony*, TT 2064:16-18, 2416:7-25.
[101] *Winn Testimony*, TT 186:16 – 187:19.
[102] *Winn Testimony*, TT 184:14 – 185:10, 255:8-18.
[103] *Zwirner Testimony*, TT 2056:14 – 2058:2.

24

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

additional terms of the "mid-80s agreement:" it was open ended and renewed every year (unless both parties gave notice of termination), and there was no reasonable notice requirement.[104]

Zwirner testified that it was Winn's idea (on behalf of JDS) to set the price of the Plan's shares at the previous December 31 book value, regardless how late in the following year the sale was conducted.[105]   Winn believed he was representing JDS for the purposes of the "mid-80s agreement" and that Zwirner was representing both the Plan and JDS.[106]

There is *no documentation of the terms of this "mid-80s agreement."*[107]   There was no vote or written consent of the HolliShare trustees approving the "mid-80s agreement." [108]

Curiously, the existence and terms of the mid-eighties agreement was not disclosed until well into this litigation.  Specifically, no HolliShare fiduciary deposed in this case ever mentioned the "mid-eighties agreement" except Zwirner.   However, at trial, virtually each benefitting fiduciary who testified was consistent with the existence of the "mid-eighties agreement."

The significance of both of these major developments and their timing cannot be overstated.   Once Mr. Schneider was no longer in control, Zwirner and Winn effectively manipulated the system with their claimed oral agreement which resulted in considerable personal gain for themselves and other direct shareholders at the expense of the Plan by limiting the amount the Plan would receive for its stock and restraining the growth of the Plan's benefits.  Zwirner, acting on behalf of HolliShare, sacrificed the Plan (by lowering the per share price, thereby ensuring that the Plan would have to sell more shares to reach the amount necessary to pay out

---

[104] *Zwirner Testimony*, TT 2120:14-20, 2121:11-13.
[105] *Zwirner Testimony*, TT 2059:25 – 2060:7.
[106] *Winn Testimony*, TT 191:7-20.
[107] *Zwirner Testimony*, TT 2020:22 – 2021:8; *Winn Testimony*, TT 48:22 – 49:21.
[108] *Zwirner Testimony*, TT 2056:7-13, 2491:3-11.

25

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

required retirement benefits almost every year) whilst making sure he was a member of the group that would benefit from HolliShare's sacrifice (direct shareholders).

### J.     Effect of Differential Treatment of HolliShare's and Direct Shareholders' Shares

The Plan had an average (mean) increase per year of 26.79% for the past 34 years.[109]  By June 30th (sales between HolliShare and JDS took place in March, April, May, June, or July, and more recently only in June or July), the book value of shares had increased by approximately 13% but the Plan's shares were sold at the book value they had on the previous December 31.[110] Because the amount of money that HolliShare needed to generate each year was a pre-determined number, the fact that HolliShare was selling shares at a lower price than current month end value meant that the Plan had to sell more shares to reach that number of dollars required by the retiring participants and beneficiaries.

Not only were the HolliShare fiduciaries selling the Plan's JDS common shares for the previous December 31 price when the value at the time of the sales had increased by as much as 13%, but as briefly described above, the fiduciaries were treating the JDS common shares offered and sold to direct shareholders very differently.  First, in June or July of each year, JDS/Hollister was making offerings to sell shares to direct shareholders (those Hollister employees thought to be deserving, and thanks to Winn and Zwirner, later JDS/Hollister directors and officers) at the prior December 31 price.[111]  If a direct shareholder purchased shares in June, he purchased them at the previous December 31 book value.  Because the book value of JDS shares increased nearly every

---

[109] Exhibit 754.
[110] Exhibit 754.
[111] *Zwirner Testimony*, TT 2004:1 – 2005:9, 2006:7-16, 2009:2-7.

26

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

month,[112] the direct shareholders realized a gain in value immediately upon the purchase of those shares. Second, when direct shareholders sold their JDS common shares back to JDS, their shares were sold at the current month end book value on the date of sale (consistent with the terms in the right of first refusal provision), not the previous December 31 book value (as the Plan's shares were), allowing the direct shareholders to take advantage of the ever-increasing value of the JDS common shares.[113]

Accordingly, every time JDS purchased shares from HolliShare, it was saving money because it purchased shares for the value assigned to those shares approximately 4-6 months prior to the transaction date. JDS then sold those shares to the selected direct shareholders for less than current month end book value, giving the direct shareholders an immediate gain in value.

Perhaps most significantly, every time that HolliShare sold its JDS common shares, the other holders of JDS common shares (the direct shareholders, including each of the individual fiduciary Defendants) realized an instantaneous increase in the value of their shares.[114] The Plan was being harmed by selling too many shares and/or getting less money for each share; in effect, by selling to the direct owners on different terms, the Plan fiduciaries were passing the loss in

---

[112] *Karlovsky Testimony*, TT 352:15-19.
[113] Defendants claim that because the direct shareholders could only cash in up to $250,000 worth of their stocks immediately, and the rest was provided for in a ten year promissory note, that somehow offsets the fact that the direct shareholders received (the always higher in value) current month end book value at the time of their sale while the Plan received a 4-6 month stale value for their shares (which was always less than current month end book value). This argument is without merit. First, the direct shareholders received interest in a range of 8-12% on the note (Exhibit 535, Article 5, II.D.4.b; *Herbert Testimony*, TT 1961:5-22), which is more than any standard rate of return that a participant could obtain for his/her money upon receiving the full cash value of his/her interest in the Plan. Second, upon receiving the promissory note, the direct shareholder becomes a creditor of JDS/Hollister, which means that as a creditor, that direct shareholder is paid before the Plan in the event of a bankruptcy. This is true, even in the event in which the bankruptcy is caused by the direct shareholders cashing in their shares.
[114] *Herbert Testimony*, TT 1519:5-10, *Zwirner Testimony*, TT 2042:15 – 2043:14.

27

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

value to the Plan as an increase in value to the direct shareholders selected by the JDS Board of Directors.

This manipulation of the value of shares is showcased by the astonishing benefit realized by Winn and Zwirner as direct shareholders. At one time, Winn and Zwirner together owned in excess of 20% of the outstanding JDS common shares of stock. Winn sold his shares owned as a direct shareholder for approximately $23,000,000.[115] Zwirner has received at least $16 million for sale of his direct owned common shares of JDS stock, and he still owns approximately $45 million worth of shares.[116]

The effect of the disparate manner in which the Defendants treated the sales of HolliShare owned shares is two-fold: (1) by selling HolliShare's shares at a lower price than current month end book value, HolliShare had to sell more shares to reach the sum certain required to pay out retirement benefits;[117] (2) by selling more shares out of HolliShare, the value of the direct shareholders' shares increased, thereby transferring value from HolliShare to direct shareholders.[118]

### K.   Plan Fiduciaries Conducted No Meaningful Investigation into Value of Shares Sold by Plan to JDS

#### 1.   Inadequate, if Any, Investigation into Share Value

As a consequence of the concerted effort on the part of Zwirner and Winn to stem the growth of HolliShare, any thorough investigation into the value of the share price on the date of the sales transaction by plan fiduciaries was virtually eliminated. All evidence developed at trial

---

[115] *Winn Testimony*, TT 50:13-18.
[116] *Zwirner Testimony*, TT 2016:10 - 2017:14; Exhibit 10.
[117] *Winn Testimony*, TT 170:19-23
[118] *Herbert Testimony*, TT 1519:5-10, *Zwirner Testimony*, TT 2042:15 – 2043:14l.

28

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

reveals that the Plan fiduciaries did not engage in a thorough investigation to determine the value of the common shares when they sold those shares to JDS; rather, the fiduciaries used a stale previous year end book value as the value of the Plan assets at the time of their sale, which occurred three, four, five, six, or even seven months later.

Karlovsky admitted that the trustees did nothing to value the common shares of JDS held by HolliShare other than to confirm the previous December 31 audited book value figure.[119] Sales between HolliShare and JDS were taking place in June or July using the previous December 31 audited book value, and Karlovsky had no way of knowing whether or not the previous December 31 audited book value price was representative of the fair market value on the date of sale because no valuation was conducted as of that date.[120] Karlovsky knew that the Plan was being forced to deplete its shares more rapidly by using the previous December 31 book value price in its sales to JDS than it would have if the Plan had used the current month end book value at the time of the sale. However, he never determined how many more shares would have stayed in HolliShare if the current month end book value would have been used as the sale price. [121]

Karlovsky purportedly performed an analysis of the impact of selling shares for less than current month end book value when he first joined the company but never updated it. Significantly, this analysis was mentioned for the first time at trial and there were no documents to verify this ever introduced into evidence.[122]

---

[119] *Karlovsky Testimony*, TT 471:8-20.
[120] *Karlovsky Testimony*, TT 368:10-369:14.
[121] *Karlovsky Testimony*, TT 360:7-24.
[122] *Karlovsky Testimony*, TT 464:20 – 435:10.

29

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

McCormack engaged in no investigation at all into the actual value of the share price, despite his testimony that: (1) he would expect to receive the fair market value on the date of disposition for other Plan assets, such as short term investments or treasury bills; (2) he knew that the Plan was receiving a sale price for its primary asset which was less than its actual value at the time of the transaction; and, (3) he knew that the unrestricted fair market value of the common shares of JDS was as high as three times the book value.[123]  Chief Financial Officer McCormack further testified that he understood that he had the right to acquire an independent appraisal of JDS common stock to assist him and the other trustees in assigning a prudent and accurate value to the Plan's shares.  However, he never requested an independent appraisal because he accepted the "mid-80s agreement" as binding on him to use the previous December 31 book value.[124]

Once the "mid-80s agreement" was in place, McCormack did not worry about the current month end book value or what the most recently available book value was because HolliShare was selling at the previous December 31 audited book value.[125]  Once the "mid-80s agreement" was in place, the trustees never attempted to negotiate any other price and only used the previous December 31 audited book value.[126]

Chief Financial Officer and trustee Brilliant *never considered whether the Plan was receiving adequate consideration* for the sale of its assets.  He did not discuss with anyone whether selling the Plan's assets for less than current month end book value reduced the value of the Plan for the participants.[127]  He never questioned why HolliShare was not receiving current

---

[123] *McCormack Testimony*, TT 767:11-19, 929:14 – 930:9; *Winn Testimony*, TT 101:19-25.
[124] *McCormack Testimony*, TT 861:2 – 862:12897:19 – 899:1, 1027:23 – 1028:3.
[125] *McCormack Testimony*, TT 862:7-862:12.
[126] *McCormack Testimony*, TT 898:8-899:1.
[127] *Brilliant Testimony*, TT 1344:7-14.

30

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

month end book value in its sales transactions with JDS.[128]  Brilliant did not even read or ask to review the JDS Articles before the litigation in this case was well underway.[129]  He had never even heard of the exceptional circumstances provision of the JDS Articles prior to the litigation in this case.[130]  Moreover, Brilliant admitted at trial that he thought that the right of first refusal provision specifically provided for use of the prior December 31 book value – he was not even aware that the right of first refusal provision requires the use of month end book value in the month in which the transaction takes place.  It was only in March of 2009, as a result of this litigation, that he "knew" otherwise.[131]

Herbert, as Plan monitor, had no recollection of any discussion at the Hollister Board level of the impact on HolliShare of selling its assets for below the current month end book value.[132] Herbert never considered how much of a disparity between the previous December 31 audited book value and current month end book value on the date of the transaction with JDS there would have to be in order to cause him any concern.[133]

Zwirner, the architect of the plan to stem the growth of HolliShare, engaged in a superficial analysis which failed to take into account or question the value of the common shares on the date of the sales transaction. At trial, Zwirner carefully testified that the trustees (when "investigating" the value of JDS shares) took into account the share ownership restrictions, repurchase rights and transfer restrictions contained in the JDS Articles, analyzed the size of the sales transaction and the potential market, the financial condition of JDS including its cash

---

[128] *Brilliant Testimony*, TT 1299:12 – 1300:10.
[129] *Brilliant Testimony*, TT 1276:20 – 1277:14; 1278:12-20, 1295:14 – 1296:1.
[130] *Brilliant Testimony*, TT 1280:22 – 1281:4.
[131] *Brilliant Testimony*, TT 1297:24 – 1298:3.
[132] *Herbert Testimony*, TT 1876:1-14.
[133] *Herbert Testimony*, TT 1886:18-23.

31

<u>DeFazio, et al., v. Hollister, et al.</u>, Case No. 04-1358 WBS GGH
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

position and future financial prospects, the audited financial statements of JDS, regulatory agency reviews and changes in the law.[134] Yet, his admission that he simultaneously considered the interests of JDS and Hollister while discharging his fiduciary duties to HolliShare is revealing of his actual level of concern for the interests of the Plan in valuing its shares.[135]

Regardless of the reason, the evidence overwhelmingly shows that there was no documented investigation into fair market value. In fact, the term "fair market value" cannot be found in any minutes of the trustees nor in any minutes of JDS approving any sale by the trustees, nor in any minutes of the directors of Hollister (the monitors of the trustees per ERISA).

### 2. Fiduciaries Were Aware of Facts to Suggest the Value Used was Not the Fair Market Value of Shares

All plan fiduciaries knew that the book value on the date of the sales transaction was higher than the previous December 31 book end value used as the sale price. The Plan fiduciaries knew the value of JDS common shares was consistently and rapidly rising in value.[136]

None of the plan fiduciaries *ever* had the common shares held by HolliShare independently appraised, even after the enactment of ERISA.[137]

Plan trustee McCormack knew that the unrestricted fair market value of the common shares of JDS was as high as three times the book value.[138] McCormack admitted that he knew

[134] *Zwirner Testimony*, TT 2358:24-2362:16.
[135] *Zwirner Testimony*, TT 2504:13-2505:3.
[136] *Zwirner Testimony*, TT 2064:16-18; *Karlovsky Testimony*, TT 352:15-19; *McCormack Testimony*, TT 767:5-7.
[137] *Karlovsky Testimony*, TT 393:21-393:23, *McCormack Testimony*, TT 1027:23-1028:3, *Zwirner Testimony*, TT 2101:3-2101:8, *Herbert Testimony*, TT 1889:10-1889:17.
[138] *Winn Testimony*, TT 101:19-101:25.

32

<u>DeFazio, et al., v. Hollister, et al.,</u> Case No. 04-1358 WBS GGH
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

that each year the value of the JDS common stock continued to go up.[139] McCormack admitted that in each of the sales of common shares to JDS that he approved, the month-end book value was higher than the sales price.[140] If the plan sold common shares to JDS in June of a given year, McCormack knew that the current month end book value was generally higher than the previous December 31 audited book value.[141]

As Chief Financial Officer, Brilliant was aware that the sales by the Plan to JDS of shares used the previous December 31 book value which was less than the current book value at the time of sale.[142] Brilliant knew that the later in the year that the sales to JDS took place, the greater the difference between the current month end book value and the previous December 31 audited book value.[143]

Zwirner admitted that the value of JDS common stock has risen every single year.[144] Zwirner admitted that he was aware that the current month end book value of the common shares was increasing, but in his role as a plan trustee never tried to determine how sales to JDS for the previous December 31 audited book value would affect HolliShare monetarily.[145]

Zwirner believed that he as a trustee had the power to negotiate the terms of sales with JDS,[146] but he never asked that the purported mid-1980's agreement be amended so that

---

[139] *McCormack Testimony*, TT 767:5-767:7.
[140] *McCormack Testimony*, TT 1034:5-1034:9.
[141] *McCormack Testimony*, TT 1034:5-1034:9.
[142] *Brilliant Testimony*, TT 1324:23 – 1325:6.
[143] *Brilliant Testimony*, TT 1325:11-1325:15.
[144] *Zwirner Testimony*, TT 2064:16-2064:18.
[145] *Zwirner Testimony*, TT 2416:7-2416:25.
[146] *Zwirner Testimony*, TT 2116:9-2116:15.

33

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

HolliShare would once again receive current month end book value in sales transactions with JDS.[147]

Zwirner admitted that if JDS sold shares at current month end book value as opposed to previous year December 31 audited book value, it would have to sell fewer shares to generate the same cash need.[148] Zwirner admitted that by using current month end book value as opposed to the previous December 31 audited book value in sales with JDS that in the first year HolliShare would have to sell less shares and at the end of the year the plan would have more shares which means it would have a larger percentage of the net equity of the of the company, and, therefore, the Plan and the individual account balances would be worth more.[149]

Zwirner admitted that using month end book value rather than audited year end book value would have increased the value of the Plan, leading to the possibility of early retirement by Plan participants and a competition for cash to pay Plan benefits and to fund the continued operations of Hollister.[150] However, Zwirner has never performed any calculations to support this possibility.[151] In addition, Zwirner has never seen any documentation that supports this possibility.[152]

Even when the appraisal was prepared by Defendants' expert Grabowski for the purposes of this litigation, trustee Zwirner never reviewed it.[153]

/ / /

---

[147] *Zwirner Testimony*, TT 2064:19-2065:9.
[148] *Zwirner Testimony*, TT 2046:2-2050:17.
[149] *Zwirner Testimony*, TT 2384:5-2384:12.
[150] *Zwirner Testimony*, TT 2384:7-2385:20.
[151] *Zwirner Testimony*, TT 2434:10-2434:25.
[152] *Zwirner Testimony*, TT 2435:1-2435:3.
[153] *Zwirner Testimony*, TT 2495:19-2495:25.

34

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

**L.      Misrepresentation and Concealment of Scheme to Benefit Direct Shareholders at Expense of Plan**

**1.      Concealment and Misrepresentation in HolliShare Highlights**

No disclosure was provided in the HolliShare Highlights publication given to each Plan participant indicating that HolliShare was selling its common shares to JDS pursuant to the oral "mid-80s agreement" under the exceptional circumstances provision or that they were valuing the shares using the previous December 31 audited book value as opposed to current month end book value on the date of sale.  The trustees boldly testified at trial that they thought that the amount of money the Plan was receiving for its shares (which was funding employee retirements) was *immaterial* to Plan participants.[154]   Plan fiduciaries admitted that most of the HolliShare *participants would not be aware of the terms and conditions of the sale* of the stock between the Plan and JDS.[155]   These types of comments, combined with the knowledge that the participants would have no way of knowing the true terms of transactions involving their retirement assets, reveal the bold breaches of fiduciary duty that were suffered by the rank and file employees, those whose interests the fiduciaries were charged with protecting.

Not only did they conceal the true terms of the sales transactions between HolliShare and JDS, but they lied about those terms for the purpose of misleading participants and beneficiaries, affirmatively stating in the HolliShare Highlights publication that the Plan had to first offer the shares to JDS at book value under the right of first refusal provision (which required use of month end book value in the month of the sale).

---

[154] *McCormack Testimony*, TT 880:13-19, 909:18 – 906:2; *Karlovsky Testimony*, 372:9-20: *Herbert Testimony*, TT 1567:6-16; *Winn Testimony*, TT 81:2-6.

[155] *Brilliant Testimony*, TT 1334:21-25; *Winn Testimony*, TT 90:11 – 91:1.

35

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

In 1982, the HolliShare Highlights informed Plan participants and beneficiaries that, "As a practical matter *[JDS common shares] can only be sold to JDS*, the parent company of Hollister Incorporated.  To date, JDS has *repurchased common shares from the Trust at their book value* in order to provide the Trust with needed cash."[156]  In 1989, the HolliShare Highlights disclosed to Plan participants and beneficiaries that "JDS common shares, which are valued at book value, are not publicly traded  They are subject to severe transfer restrictions and *can only be sold to JDS*, the parent company of Hollister Incorporated.  To date, JDS has repurchased common shares from the Trust *at their book value* in order to provide the Trust with needed cash."[157]

In 1993, the HolliShare Highlights told Plan participants and beneficiaries that:

> "JDS common shares, which are valued at their book value, are not publicly traded.  They are for all practical purposes not transferable to any person or entity other than JDS itself.  They are subject to severe transfer restrictions which *require that the Trust first offer them to JDS*, the parent company of Hollister Incorporated, at *their book value*.  To date, JDS has repurchased common shares from the Trust at their book value in order to provide the Trust with needed cash."[158]

From 1993 onward, this language quoted above was the disclosure language provided in the HolliShare Highlights to Plan participants.[159]  By stating that the Plan was selling their shares for book value, that the Plan could only *sell* their shares to JDS,[160] and that the Plan had to first *offer* the shares to JDS,[161] the fiduciaries were effectively representing to the participants and

[156] Exhibit 4-4.7, p. 7 Heading Closely Held Nature of JDS Stock, H01745 Heading Closely Held Nature of JDS Stock (Emphasis added.

[157] Exhibit 4-4.14, p. 7, Heading Closely Held Nature of JDS Stock, H01855 Heading Closely Held Nature of JDS Stock (Emphasis added.

[158] Exhibit 4-4.17, p. 7, Heading Closely Held Nature of JDS Stock, H01915 Heading Closely Held Nature of JDS Stock (Emphasis added.

[159] *McCormack Testimony*, TT 967:13-18.

[160] Exhibits 4-4.7, 4-4.14.

[161] Exhibit 4-4.17.

36

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

beneficiaries that the shares were being sold pursuant to the right of first refusal. This representation was false, as all sales of common shares to JDS were under the exceptional circumstances provision of the JDS Articles which had no restrictions on the sale/purchase of shares, and HolliShare never complied with the terms outlined in the right of first refusal (which required the amount paid by JDS to be "its book value as of the end of the calendar month in which the Repurchase Date occurs").[162]

Despite informing the participants and beneficiaries that all sales from the Plan to JDS were being conducted pursuant to the right of first refusal using book value, several years after this lawsuit was filed, the HolliShare trustees finally admitted that all sales between HolliShare and JDS were pursuant to the exceptional circumstances provision.[163]

Upon reading the information in the Highlights, a participant would logically conclude that HolliShare sold its assets pursuant to the right of first refusal which called for current month end book value as the sale price. Indeed, HolliShare trustee Brilliant admitted that the average participant would have reason to believe that the Plan's assets were being sold pursuant to the right of first refusal and that the Plan was receiving current month end book value at each sale.[164]

The Summary Plan Descriptions provided to participants likewise contained no indication that the Plan was selling its common shares to JDS at previous December 31 book value.[165]

/ / /

/ / /

---

[162] Exhibits 531-536, JDS Articles, Article 5, ¶ II.D.
[163] *McCormack Testimony*, TT 906:25 – 907:3; *Zwirner Testimony*, TT 2027:4-5; *Karlovsky Testimony*, TT 350:10 – 366:12, 527:16-18.
[164] *Brilliant Testimony*, TT 1286:9-19; 1334:21-25.
[165] Exhibits 506-512.

37

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

## 2.   Fraud and Concealment in Response to Inquiry from Plan Beneficiary

In response to a Plan beneficiary's inquiry, a letter written on behalf of the Plan's trustees was sent to explain the manner in which the trustees valued the Plan's shares of JDS. In this correspondence to the beneficiary, the trustees stated: "***JDS has always exercised its right of first refusal*** and repurchased such shares at book value." [166] This is in direct conflict with Defendants' position at trial that they always sold the Plan's shares to JDS pursuant to the exceptional circumstances provision.[167]

## 3.   Defendants Provided False Information to the Department of Labor.

Moreover, Defendants outright ***lied to the Department of Labor*** during a Department investigation. This lie was for the purpose of concealing that the fiduciaries were failing to receive adequate consideration for Plan assets in accordance with their scheme to slow the growth of the Plan to the benefit of direct shareholders. In response to a Department of Labor investigator's request for documents evidencing sales of the Plan's assets to JDS, Defendants provided the Department of Labor with a document indicating that sales of the Plan's common shares of JDS stock took place on January 1, 1995, January 1, 1996, January 1, 1997, and January 1, 1998 using the previous December 31 audited book value.[168] If the sales in these years took place on January 1, then by using the previous year's December 31 audited value, only one day

---

[166] Exhibit 176, p. 3, ¶ 1 (Emphasis added.)
[167] *Zwirner Testimony*, TT 2027:4-5; *Karlovsky Testimony*, TT 350:10 – 366:12, 527:16-18; *McCormack Testimony*, TT 858:1-15.
[168] The Court allowed Exhibit 54 into evidence, over objection, as Department of Labor witness Karen Handorf testified that the stamp (which appears backwards) that is visible on the Exhibit was consistent with the pattern and practice of the Department stamping the back of the page when receiving documents from parties they were investigating. The stamp reads May 12, 1998, which is the very date that the Department of Labor investigator appeared at Hollister to perform the investigation and gather documents. (*Handorf Testimony*, TT 1424:16 – 1426:2; 1437:21 – 18, 1439:24 – 1440:12.)

38

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

would have passed between the value date and the sale date, which could not have caused the Department concern over a stale sale price or lack of adequate consideration.[169] However, the truth is that rather than occurring on January 1 of each year, they took place as follows: March 1995, May 1996, March 1997, and March 1998.[170] Of course, with the value of the JDS common shares rising nearly every month, a sale conducted three to five months after the assigned value would not represent adequate consideration at the time of the transaction as required by ERISA. (29 USC § 1002(18)(B)[171]

### 4.     Defendants Provided False Information to the Court

In at least two documents filed with the Court in the course of this litigation, Defendants have strongly asserted that HolliShare sold its JDS common shares of stock to JDS under the right of first refusal provision of the JDS Articles, in direct contradiction to their position taken at trial (i.e., that each sale of common shares from HolliShare to JDS was pursuant to the exceptional circumstances provision).[172]

In a brief filed in October 2006, Defendants *vehemently denied use of the exceptional circumstances clause* to conduct HolliShare's sale of shares to JDS to fund retirement benefits, stating: "It cannot seriously be argued that a routine and commonplace sale by HolliShare of JDS common shares involves any 'extraordinary circumstances.'"[173]

In another brief filed in October 2007, Defendants' reiterated their position that the right of first refusal provision was used, claiming: "JDS had the right to buy any of its common shares

---

[169] *Handorf Testimony*, TT 1426:17-24.
[170] Stipulated Facts Nos. 34-37.
[171] *Handorf Testimony*, TT 1418:25 – 1419:13; 1422:2 – 1423:2.
[172] *Zwirner Testimony*, TT 2027:4-5; *Karlovsky Testimony*, TT 350:10 – 366:12, 527:16-18; *McCormack Testimony*, TT 858:1-15.
[173] Defendants' Reply MPA In Support Of Motion To Dismiss First Amended Complaint, 11:15-17.

39

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

offered for sale at book value, that JDS has consistently and invariably exercised that right, and that JDS intends to continue that practice."[174] In response to the Plaintiffs suggestion that the Defendants must have used the exceptional circumstances provision to sell the Plan's shares to JDS because they did not use month end book value at the time of the transaction (as required by the right of first refusal provision), the Defendants again scoffed at the purported ridiculousness of such a suggestion, "Plaintiffs do not suggest what 'exceptional circumstances' exist that would – or even may – justify a decision by the JDS Board to treat HolliShare's periodic offers to sell some of its JDS common shares differently from offers to sell made by all other JDS shareholders."[175]

### M.    Harm Suffered by the Plan and Ellis

#### 1.    Harm Suffered Because of Failure to Receive Current Month End Book Value

JDS purchased common shares from HolliShare in the years 1982, 1985, 1986, 1987, 1993, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, 2011.[176]

On February 17, 1982, the JDS Board of Directors ratified the purchase of common shares of JDS from HolliShare.[177] In that meeting, the JDS Board of Directors resolved to purchase $725,000 worth of common stock from the Plan with a transaction date of January 27, 1982 at the December 31, 1981 book value price.[178] The completed transaction resulted in JDS purchasing

---

[174] Reply MPA ISO Certain Defendants' Motion to Dismiss for Failure to State a Claim, 11:16-18.
[175] Reply MPA ISO Certain Defendants' Motion to Dismiss for Failure to State a Claim , 12:3-6.
[176] Stipulated Facts Docket 630, 29-46.
[177] Exhibit 253.15 p.1, ¶ 6.
[178] Exhibit 253.15 p.1 ¶ 6.

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

38,000 shares from HolliShare for $19.03 totaling $723,140.00.[179] The current month end book value of a JDS common share in January of 1982 was $19.98.[180] As a result of the 1982 transaction, HolliShare failed to receive $36,100. Alternatively, HolliShare sold 1,807 more shares than it should have as a result of selling the shares for less than the current month end book value. The calculation of excess shares sold by HolliShare includes: (1) taking the cash proceeds from a sale, dividing that number by the December 31 prior year end book value to determine the amount of shares actually sold; (2) taking the cash proceeds from a sale, dividing that number by the current month end book value of the month in which the shares were actually sold; (3) subtracting the figure arrived at in (2) from the figure arrived at in (1). In 1982, this would be done by: (1) dividing $723,140.00 by $19.03 to arrive at 38,000; (2) dividing $723,140.00 by $19.98 to arrive at 36,193.19; (3) subtracting 36,193 from 38,000 to arrive at 1,807. Thus, the Plan sold 1,807 too many shares by using the prior year end book value rather than the current month end book value. This same analysis is replicated for each sale transaction as it relates to the Plan.

Ellis' account balance in 1982 was $31,580.35.[181] The total value of HolliShare in 1982 was $20,589,383.[182] Dividing Ellis' account balance by the total value of HolliShare in 1982 establishes that she had a 0.15 percent interest in the plan. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month end book value establishes that her account balance would have been $54.15 higher in 1982.

However, alternatively, in some years, *no stock sales at all were required*, in that in 1982, the profit sharing contribution from Hollister was $1,226,899 and the payment of retirement

---

[179] Stipulated Fact No. 29.
[180] Exhibit 754 – this Exhibit is used to estimate the current month end book value where used.
[181] Exhibit 613.
[182] Exhibit 4-4.7 p. 8.

41

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

benefits was $617,313, establishing that there was sufficient cash in the Plan from Hollister's profit sharing contribution to fund Plan benefits in 1982.[183]

In 1983, the profit sharing contribution from Hollister was $1,423,794 and the payment of retirement benefits was $1,337,386, establishing that there was sufficient cash in the Plan from Hollister's profit sharing contribution to fund Plan benefits in 1983.[184]

In 1984, the profit sharing contribution from Hollister was $1,559,640, and the payment of retirement benefits was $1,600,149. Despite approximately $50,000 difference between the contribution and the outgoing benefits, when taking into account the short-term investments the Plan had in 1984, there was sufficient cash in the plan from Hollister's profit sharing contribution to fund Plan benefits in 1984.[185]

HolliShare's next sale of common shares to JDS was in 1985.[186] In 1985 the profit sharing contribution from Hollister was $1,647,120, and the payment of retirement benefits was $3,300,442, with short term investments totaling $7,140,611, establishing that there was sufficient cash in the Plan from Hollister's profit sharing contribution to fund Plan benefits in 1985.[187] McCormack admitted that for the years of 1982 through 1985, HolliShare did not have to sell *any* common shares to meet the cash needs of the Plan.[188]

---

[183] *McCormack Testimony*, TT 871:12-872:3, Exhibit 4-4.7 p. 8 under Assets Heading and p. 9 under Deductions Heading, H01746 under Assets Heading and H01747 under Deductions Heading.
[184] *McCormack Testimony*, TT 976:18-977:23, Exhibit 4-4.8 p. 11 under Assets Heading and p. 12 under Deductions Heading, H01762 under Assets Heading and H01763 under Deductions Heading.
[185] *McCormack Testimony*, TT 977:24-979:20, Exhibit 4-4.9 p. 11 under Assets Heading and p. 12 under Deductions Heading, H01780 under Assets Heading and H01780 under Deductions Heading.
[186] *McCormack Testimony*, TT 870:5-870:7.
[187] *McCormack Testimony*, TT 980:16-983:9, Exhibit 4-4.10 p. 11 under Assets Heading and p. 12 under Deductions Heading, H01798 under Assets Heading and H01799 under Deductions Heading.
[188] *McCormack Testimony*, TT 983:4-983:9.

42

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

Thus, if HolliShare would have sold the 38,000 common shares in 1985, instead of in 1982 when it did not have to, it would have received $70.11 for the shares which was substantially more (than the $19.03/share received in 1982).[189] By selling the JDS common shares too early, HolliShare failed to receive $1,941,040.00, which is the difference between the December 31, 1982 book value and the December 31, 1985 book value multiplied by the 38,000 shares had they been sold on December 31, 1985.

Ellis' account balance in 1985 was $86,594.21.[190] The total value of HolliShare in 1985 was $43,280,691.[191] Dividing Ellis' account balance by the total value of HolliShare in 1985 establishes that she had a 0.20 percent interest in the Plan.   Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for selling the 38,000 common shares too early establishes that her account balance would have been $3,882.08 higher in 1985.

In December of 1985, the JDS Board of Directors approved the purchase of common shares of JDS from HolliShare.[192]   In that meeting the JDS Board of Directors resolved to purchase 20,000 JDS common shares from HolliShare in December of 1985 at the November 30, 1985 book value. (The use of the November 30, 1985 book value is clearly inconsistent with the alleged "mid-80s agreement" that prior December 31 audited book value was to be used for each such transaction.)   The transaction took place on December 6, 1985, and JDS purchased 20,000 shares from HolliShare for the $68.42 per share, the November month end book value, totaling $723,140.00.[193]   The current month end book value as of December of 1985 was $70.11.[194] As a

---

[189] *McCormack Testimony*, TT 994:11-995:17.
[190] Exhibit 613.
[191] Exhibit 4-4.10 p. 11.
[192] *Winn Testimony*, TT 310:12-313:2, Exhibit 253.35 p. 2 ¶ 3- end.
[193] Stipulated Fact No. 30.

43

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

result of the December of 1985 sale transaction, HolliShare failed to receive $33,800. Alternatively, HolliShare sold 482 more shares than it should have as a result of selling the shares for less than the current month end book value.

As calculated above, Ellis had a 0.20 interest in the Plan. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month end book value establishes that her account balance would have been $67.60 higher because of this transaction in 1985.

In December of 1985, the JDS Board of Directors resolved to purchase a further 100,000 JDS common shares from HolliShare in January of 1986 at the December 31, 1985 book value.[195] The actual sale transaction was for the sale of 180,000 common shares at the December 31, 1985 book value price of $70.11 for cash proceeds of $12,619,800.00.[196] The current month end book value of a JDS common share in January of 1986 was $72.40.[197] As a result of the January of 1986 sale transaction HolliShare, failed to receive $412,200.00. Alternatively, HolliShare sold 5,693 more shares than it should have as a result of selling the shares for less than the current month end book value.

Ellis' account balance in 1986 was $123,738.22.[198] The total value of HolliShare in 1986 was $43,458,477.[199] Dividing Ellis' account balance by the total value of HolliShare in 1986 establishes that she had a 0.29 percent interest in the Plan. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month

---

[194] Exhibit 4-4.10 p. 9.
[195] *Winn Testimony*, TT 310:12-313:2, Exhibit 253.35 p. 2 ¶ 3-end.
[196] Stipulated Fact No. 31.
[197] Exhibit 754.
[198] Exhibit 613.
[199] Exhibit 4-4.11 p. 8.

44

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

end book value establishes that her account balance would have been $1,195.38 higher from the transaction in 1986.

In January of 1987, JDS purchased 100,000 shares from HolliShare for the December 31, 1986 book value of $97.56 per share with the total cash proceeds amounting to $9,756,000.00.[200] The current month end book value of a JDS common share in January of 1987 was $101.52.[201] As a result of the January of 1987 sale transaction, HolliShare failed to receive $396,000.00. Alternatively, HolliShare sold 3,901 more shares than it should have as a result of selling the shares for less than the current month end book value.

Ellis' account balance in 1987 was $173,574.56.[202] The total value of HolliShare in 1987 was $58,755,621.[203] Dividing Ellis' account balance by the total value of HolliShare in 1987 establishes that she had a 0.30 percent interest in the Plan. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month end book value establishes that her account balance would have been $1,188.00 higher in 1987.

There are no sales between HolliShare and JDS for the years 1988, 1989, 1990, 1991 and 1992.[204] The probable reason for no such sales was that in 1988 HolliShare received a cash dividend in the amount of $12,200,000 from JDS.[205]

In February of 1993, JDS purchased 75,000 shares from HolliShare for the December 31, 1992 book value of $344.40 per share with total cash proceeds amounting to $25,830,000.00.[206]

---

[200] Stipulated Fact No. 32.
[201] Exhibit 754.
[202] Exhibit 613.
[203] Exhibit 4-4.11 p. 8.
[204] Exhibit 770, Stipulated Facts.
[205] *Winn Testimony*, TT 616:5-617:25.
[206] Stipulated Fact No. 33.

45

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com