The current month end book value of a JDS common share in February of 1993 was $348.54 per share.[207]  As a result of the February of 1993, sale transaction HolliShare failed to receive $310,500.00. Alternatively, HolliShare sold 891 more shares than it should have as a result of selling the shares for less than the current month end book value.

Ellis' account balance in 1993 was $568,112.94.[208] The total value of HolliShare in 1993 was $112,063,490.[209] Dividing Ellis' account balance by the total value of HolliShare in 1993 establishes that she had a 0.46 percent interest in the Plan.  Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month end book value establishes that her account balance would have been $1,428.30 higher in 1993.

HolliShare trustees even attempted to accelerate their goal to stem the growth of HolliShare by selling shares to JDS to cover two years of funding needs. On February 12th of 1993, James McCormack reported that the HolliShare trustees recommended that JDS purchase 75,000 common shares from HolliShare.[210] The recommendation was made to fund anticipated cash needs for 1993 and 1994.[211]  On February 11, 1992, the trustees of HolliShare met.[212]  The trustees recommended selling 75,000 common shares to fund anticipated retirements for 1993 and 1994 at the December 31, 1992 audited book value price.[213]  Selling enough shares in one year to meet the liquidity needs for two years was not consistent with the intended practice of HolliShare (of investing to the maximum extent practicable in JDS common shares) according to

---

[207] Stipulated Fact No. 47.
[208] Exhibit 613.
[209] Exhibit 4-4.18 p. 9.
[210] *Karlovsky Testimony*, TT 595:21-596:1.
[211] Exhibit 253.42, p.2, ¶¶1-2, MIN 04141 ¶¶ 1-2.
[212] Exhibit 252.60 p. 20-21, MIN 04954-04955.
[213] Exhibit 252.60 p. 20, ¶ 3, MIN 04954, ¶ 3.

46

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

Karlovsky.[214] The normal practice would have been to sell only enough shares for 1993, which was estimated to be 40,000 common shares.[215]

If HolliShare would have sold 40,000 common shares in 1993, instead of 75,000 when it did not have to, the Plan would have only sustained a loss of $165,000.00 (selling the shares for the December 31, 1992 book value price of $344.40 instead of the current month end price of $348.54 in February of 1993). However, by selling the 35,000 shares one year too early the Plan received the December 31, 1992 book value of $344.40 for the shares instead of the current month end book value in February of 1994 which was $417.80. By selling the JDS common shares one year too early HolliShare failed to receive $2,569,000.00 which is the difference between the December 31, 1992 book value and the February, 1994 book value multiplied by the 35,000 shares sold.

Ellis had a 0.46 percent interest in the Plan in 1993. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling 40,000 shares in 1993 for less than the current month end book value establishes that her account balance would have been $759.00 higher in 1993. Ellis' account balance in 1994 was $685,579.46.[216] The total value of HolliShare in 1994 was $119,424,358.[217] Dividing Ellis' account balance by the total value of HolliShare in 1994 establishes that she had a 0.57 percent interest in the Plan. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares one year too early in 1993 and for less than the current month end book value establishes that her account balance would have been $14,747.86 higher in 1994.

---

[214] *Karlovsky Testimony*, TT 596:22-597:9.
[215] *Karlovsky Testimony*, TT 599:14-599:18.
[216] Exhibit 613.
[217] Exhibit 4-4.19 p. 9.

47

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

In March of 1995, JDS purchased 30,000 shares from HolliShare for the December 31, 1994 book value of $489.91 per share with total cash proceeds amounting to $14,697,300.00.[218] The current month end book value of a common share of JDS in March of 1995 was $517.16.[219] As a result of the March of 1995 sale transaction, HolliShare failed to receive $817,500.00. Alternatively, HolliShare sold 1,581 more shares than it should have as a result of selling the shares for less than the current month end book value.

Ellis' account balance in 1995 was $836,078.20.[220] The total value of HolliShare in 1995 was $127,924,071.[221] Dividing Ellis' account balance by the total value of HolliShare in 1995 establishes that she had a 0.65 percent interest in the Plan.  Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month end book value establishes that her account balance would have been $5,313.75 higher in 1995.

In 1995 there was a 9 to 1 stock dividend by JDS, which is the equivalent to a 10 to one stock split.[222]

In May of 1996, JDS purchased 166,973 shares from HolliShare for the December 31, 1995 book value of $59.89 per share with cash proceeds amounting to $10,000,012.97. [223]  The current month end book value of a JDS common share in May of 1996 was $64.61 per share.[224] As a result of the May of 1996 sale transaction, HolliShare failed to receive $788,112.56.

---

[218] Stipulated Fact No. 34.
[219] Exhibit 754.
[220] Exhibit 613.
[221] Exhibit 4-4.20 p. 9.
[222] Exhibit 538.
[223] Stipulated Fact No. 35.
[224] Stipulated Fact No. 48.

48

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

Alternatively, HolliShare sold 12,198 more shares than it should have as a result of selling the shares for less than the current month end book value.

Ellis' account balance in 1996 was $1,020,811.20.[225] The total value of HolliShare in 1996 was $139,820,661.[226] Dividing Ellis' account balance by the total value of HolliShare in 1996 establishes that she had a 0.73 percent interest in the Plan. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month end book value establishes that her account balance would have been $5,753.22 higher in 1996.

In March of 1997, JDS purchased 135,000 shares from HolliShare for the December 31, 1996 book value of $73.06 per share with cash proceeds of $9,863,100.00.[227] The current month end book value of a JDS common share in March of 1997 was $76.06.[228] As a result of the March of 1997 sale transaction, HolliShare failed to receive $405,000.00. Alternatively, HolliShare sold 5,325 more shares than it should have as a result of selling the shares for less than the current month end book value.

Ellis' account balance in 1997 was $1,194,150.60.[229] The total value of HolliShare in 1997 was $148,613,485.[230] Dividing Ellis' account balance by the total value of HolliShare in 1997 establishes that she had a 0.80 percent interest in the Plan. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month end book value establishes that her account balance would have been $3,240.00 higher in 1997.

---

[225] Exhibit 613.
[226] Exhibit 4-4.21 p. 9.
[227] Stipulated Fact No. 36.
[228] Exhibit 754.
[229] Exhibit 613.
[230] Exhibit 4-4.22 p. 9.

49

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

In March of 1998, JDS purchased 250,000 shares from HolliShare for the December 31, 1997 book value of $85.05 per share with cash proceeds of $21,262,500.00.[231] The current month end book value of a JDS common share in March of 1998 was $88.59.[232] As a result of the March of 1998 sale transaction HolliShare failed to receive $885,000.00. Alternatively, HolliShare sold 9,990 more shares than it should have as a result of selling the shares for less than the current month end book value.

In June of 1998, JDS purchased 120,000 shares from HolliShare for the December 31, 1997 book value of $85.05 per share with cash proceeds of $10,206,000.00.[233] The current month end book value of a JDS common share in June of 1998 was $93.76.[234] As a result of the June of 1998 sale transaction, HolliShare failed to receive $1,045,200.00. Alternatively, HolliShare sold 11,148 more shares than it should have as a result of selling the shares for less than the current month end book value.

Ellis' account balance in 1998 was $1,488,210.78.[235] The total value of HolliShare in 1998 was $148,056,668.[236] Dividing Ellis' account balance by the total value of HolliShare in 1998 establishes that she had a 1.00 percent interest in the Plan. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month end book value establishes that her account balance would have been $19,302.00 higher in 1998.

---

[231] Stipulated Fact No. 37
[232] Stipulated Fact No. 49.
[233] Exhibit 253.56, p. 2.
[234] Stipulated Fact No. 50.
[235] Exhibit 613.
[236] Exhibit 4-4.23 p. 9.

50

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

In May of 1999, JDS purchased 200,000 shares from HolliShare for the December 31, 1998 book value of $106.66 per share with cash proceeds of $21,332,000.00.[237] The current month end book value of a JDS common share in May of 1999 was $112.29.[238] As a result of the May of 1999 sale transaction, HolliShare failed to receive $1,126,000.00. Alternatively, HolliShare sold 10,028 more shares than it should have as a result of selling the shares for less than the current month end book value.

Ellis' account balance in 1999 was $1,733,612.36.[239] The total value of HolliShare in 1999 was $147,440,493.[240] Dividing Ellis' account balance by the total value of HolliShare in 1999 establishes that she had a 1.18 percent interest in the Plan. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month end book value establishes that her account balance would have been $13,286.80 higher in 1999.

In June of 2000, JDS purchased 150,000 shares from HolliShare for the December 31, 1999 book value of $124.53 per share with cash proceeds of $18,679,500.00.[241] The current month end book value of a JDS common share in June of 2000 was $129.01.[242] As a result of the June of 2000 sale transaction, HolliShare failed to receive $672,000.00. Alternatively, HolliShare sold 5,209 more shares than it should have as a result of selling the shares for less than the current month end book value.

/ / /

/ / /

---

[237] Stipulate Fact No. 38.
[238] Stipulated Fact No. 51.
[239] Exhibit 613.
[240] Exhibit 4-4.24 p. 9.
[241] Stipulated Fact No. 39.
[242] Stipulated Fact No. 52.

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

Ellis' account balance in 2000 was $1,824,554.37.[243] The total value of HolliShare in 2000 was $133,702,220.[244] Dividing Ellis' account balance by the total value of HolliShare in 2000 establishes that she had a 1.37 percent interest in the Plan. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month end book value establishes that her account balance would have been $9,206.40 higher in 2000.

In June of 2001, JDS purchased 220,000 shares from HolliShare for the December 31, 2000 book value of $134.50 per share with cash proceeds of $29,590,000.00.[245] The current month end book value of a JDS common share in June of 2001 was $138.86.[246] As a result of the June of 2001 sale transaction, HolliShare failed to receive $959,200.00. Alternatively, HolliShare sold 6,908 more shares than it should have as a result of selling the shares for less than the current month end book value.

Ellis' account balance in 2001 was $1,970,665.50.[247] The total value of HolliShare in 2001 was $121,758,844.[248] Dividing Ellis' account balance by the total value of HolliShare in 2001 establishes that she had a 1.62 percent interest in the Plan. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month end book value establishes that her account balance would have been $15,359.04 higher in 2001.

In June of 2002, JDS purchased 46,250 shares from HolliShare for the December 31, 2001 book value of $155.12 per share with cash proceeds of $7,174,300.00.[249] The current month end

---

[243] Exhibit 613.
[244] Exhibit 4-4.25 p. 9.
[245] Stipulated Fact No. 40.
[246] Stipulated Fact No. 53.
[247] Exhibit 613.
[248] Exhibit 673 p. 9.
[249] Stipulated Fact No. 41.

52

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

book value of a JDS common share in June of 2002 was $170.16.[250] As a result of the June of 2002 sale transaction, HolliShare failed to receive $695,600.00. Alternatively, HolliShare sold 4,088 more shares than it should have as a result of selling the shares for less than the current month end book value.

Ellis' account balance in 2002 was $1,388,914.47.[251] [252] The total value of HolliShare in 2002 was $138,594,536.[253] Dividing Ellis' account balance by the total value of HolliShare in 2002 establishes that she had a 1.00 percent interest in the Plan. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month end book value establishes that her account balance would have been $6,956.00 higher in 2002.

In June of 2003, JDS purchased 44,750 shares from HolliShare for the December 31, 2002 book value of $189.73 per share with cash proceeds of $8,490,417.00.[254] The current month end book value of a JDS common share in June of 2003 was $207.65.[255] As a result of the June of 2003 sale transaction, HolliShare failed to receive $801,920.00. Alternatively, HolliShare sold 3,862 more shares than it should have as a result of selling the shares for less than the current month end book value.

Ellis' account balance in 2003 was $1,750,032.68.[256] The total value of HolliShare in 2003 was $161,512,728.[257] Dividing Ellis' account balance by the total value of HolliShare in 2003

---

[250] Stipulated Fact No. 54.
[251] As a result of her divorce, a portion of Ellis' HolliShare account was segregated and allocated to her former husband in 2002, resulting in a lower individual account balance that what she had in 2001.
[252] Exhibit 613.
[253] Exhibit 674 p. 9.
[254] Stipulated Fact No. 42.
[255] Stipulated Fact No. 55.
[256] Exhibit 613.
[257] Exhibit 675 p. 9.

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

establishes that she had a 1.08 percent interest in the Plan. Multiplying Ellis' percentage ownership interest by the total loss to the Plan for selling shares for less than the current month end book value establishes that her account balance would have been $8,660.74 higher in 2003. This is the last year that Ellis participated in HolliShare.

In June of 2004, JDS purchased 50,000 shares from HolliShare for the December 31, 2003 book value of $238.16 per share with cash proceeds of $11,908,000.00.[258] The current month end book value of a JDS common share in June of 2004 was $263.06.[259] As a result of the June of 2004 sale transaction HolliShare failed to receive $1,245,000.00. Alternatively, HolliShare sold 4,733 more shares than it should have as a result of selling the shares for less than the current month end book value.

In July of 2005, JDS purchased 22,000 shares from HolliShare for the December 31, 2004 book value of $287.96 per share with cash proceeds of $6,335,120.00.[260] The current month end book value of a JDS common share in July of 2005 was $308.72.[261] As a result of the July of 2005 sale transaction, HolliShare failed to receive $456,720.00. Alternatively, HolliShare sold 1,479 more shares than it should have as a result of selling the shares for less than the current month end book value.

In June of 2006, JDS purchased 26,500 shares from HolliShare for the December 31, 2005 book value of $328.96 per share with cash proceeds of $8,717,400.00.[262] The current month end

---

[258] Stipulated Fact No. 43.
[259] Exhibit 754.
[260] Stipulated Fact No. 44.
[261] Stipulated Fact No. 56.
[262] Stipulated Fact No. 45.

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

book value of a JDS common share in June of 2006 was $356.37.[263] As a result of the June of 2006 sale transaction, HolliShare failed to receive $726,405.00. Alternatively, HolliShare sold 2,038 more shares than it should have as a result of selling the shares for less than the current month end book value.

In July of 2007, JDS purchased 85,500 shares from HolliShare for the December 31, 2006 book value of $397.74 per share with cash proceeds of $34,006,770.00.[264] The current month end book value of a JDS common share in July of 2007 was $443.66.[265] As a result of the July of 2007 sale transaction, HolliShare failed to receive $3,926.160. Alternatively, HolliShare sold 8,849 more shares than it should have as a result of selling the shares for less than the current month end book value.

In June of 2008, JDS purchased 25,000 shares from HolliShare for the approximate December 31, 2007 book value of $484.71 per share with cash proceeds of approximately $12,117,750.00.[266] The current month end book value of a JDS common share in July of 2008 was approximately $546.27.[267] As a result of the July of 2008 sale transaction, HolliShare failed to receive $1,539.000. Alternatively, HolliShare sold 2,817 more shares than it should have as a result of selling the shares for less than the current month end book value.

In June of 2009, JDS purchased 40,500 shares from HolliShare for the approximate December31, 2008 book value of $607.83 per share with cash proceeds of approximately

---

[263] Stipulated Fact No. 57.
[264] Stipulated Fact No. 46.
[265] Stipulated Fact No. 58.
[266] Exhibits 538, 754.
[267] Exhibit 754.

55

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

$24,617,115.00.[268]  The current month end book value of a JDS common share in June of 2009 was approximately $657.67.[269] As a result of the June of 2009 sale transaction, HolliShare failed to receive $2,018,520. Alternatively, HolliShare sold 3,069 more shares than it should have as a result of selling the shares for less than the current month end book value.

In June of 2010, JDS purchased 42,500 shares from HolliShare for the approximate book value of $707.51 per share with cash proceeds of approximately $30,069,175.00.[270]  The current month end book value of a JDS common share in June of 2010 was approximately $769.95.[271] As a result of the June of 2010 sale transaction, HolliShare failed to receive $2,653,700. Alternatively, HolliShare sold 3,447 more shares than it should have as a result of selling the shares for less than the current month end book value.

In June of 2011, JDS purchased 37,259 shares from HolliShare for the approximate book value of $832.00 per share with cash proceeds of approximately $30,999,488.00.[272]  The current month end book value of a JDS common share in June of 2011 was approximately $950.[273] As a result of the June of 2011 sale transaction, HolliShare failed to receive $4,396,562. Alternatively, HolliShare sold 4,628 more shares than it should have as a result of selling the shares for less than the current month end book value.

Ellis, who participated in the plan from 1978 through her retirement in 2004, suffered harm in the amount of $91,011.38 if the 1982 and 1993 sales are held to be appropriate.  In the event that the court finds that the sales in 1982 and 1992 was too early, then the harm suffered by Ellis is

---

[268] Exhibits 538, 754.
[269] Exhibit 754.
[270] Exhibits 538, 754.
[271] Exhibit 754.
[272] Exhibit 538, *Zwirner Testimony*, TT 2045.
[273] *Brilliant Testimony*, TT 1374:6-12..

56
**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

$108,917.87. These figures do not include interest. The approximate amount of shares that should be allocated to Ellis's account as an indirect owner is 1,694. This number is calculated by taking Ellis' yearly percentage ownership and multiplying the figure by the excess shares sold in a given year and adjusted for the 9 to 1 stock dividend in 1995.

Harm to the Plan for the time period between 1982 through 2011 for selling plan assets to a party in interest for less than current month end book value resulted in harm amounting to $26,346,159.56 if the 1982 and 1993 sales are held to be appropriate. In the event that the court finds that the sale in 1982 and 1993 sale was too early, then the harm suffered by the plan is $30,674,599.56. The approximate amount of shares that should be allocated to the Plan is 243,366. These figures do not include interest.

### 2.    Harm Suffered Because of Failure to Receive Appraised Fair Market Value

The undisputed evidence at trial established that JDS common shares had never been independently appraised at fair market value by HolliShare or by its trustees. It was also established by Defendants' expert Grabowski that the appraised value of a minority interest of a JDS common share held by HolliShare was higher than the December month end book value for each year from 1997 to 2007. However, none of the appraisals considered the book value of the shares on the actual dates of sale and instead used December 31 book value of each year as its basis. The unchallenged evidence at trial established that the appraised December 31 value was always greater than the book value as of December 31st.

The testimony of the experts does not provide a complete analysis of the difference between the previous December 31 book value and the properly appraised fair market value on the

57

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

dates of the transactions from years 1982 through the present. Defendants' expert was only asked to consider the years 1997-2007; Plaintiffs' expert only considered 2003. Moreover, the experts only calculated the difference between the value used by Defendants (previous December 31 book value) and the appraised fair market value on each December 31. This analysis is not precise enough because the sales were not conducted on December 31, but later in the following year, and ERISA requires that the value be determined on the date of the sale. However, this testimony provides the Court with a powerful illustration of the fact that the value used by Defendants on the dates of the sales transactions (previous December 31 book value) was markedly less than a prudently appraised fair market value on the dates of the transactions. Defendants' own expert proved this clearly, as described in more detail below.

In 1997 the appraised value as of December 31 was 1.4 times the book value ($85.05 x 1.4 = $119.07) of a minority interest of a JDS common share held by HolliShare.[274] In 1998 the appraised value as of December 31 was 1.4 times the book value ($106.66 x 1.4=$149.32) of a minority interest of a JDS common share held by HolliShare.[275] In 1999 the appraised value as of December 31 was 1.2 times the book value ($124.53 x 1.2=$149.44) of a minority interest of a JDS common share held by HolliShare.[276] In 2000 the appraised value as of December 31 was 1.3 times the book value ($134.50 x 1.3=$174.85) of a minority interest of a JDS common share held by HolliShare.[277] In 2001 the appraised value as of December 31 was 1.1 times the book value ($155.12 x 1.1=$170.63) of a minority interest of a JDS common share held by

---

[274] *Grabowski Testimony*, TT 2571:20-2571:23.
[275] *Grabowski Testimony*, TT 2571:24-2571:25.
[276] *Grabowski Testimony*, TT 2572:1-2572:4.
[277] *Grabowski Testimony*, TT 2572:1-2572:4.

58

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

HolliShare.[278]  In 2002 the appraised value as of December 31 was 1.3 times the book value ($189.73 x 1.3=$246.65) of a minority interest of a JDS common share held by HolliShare.[279]

The expert for Plaintiffs, Korschott, determined that the unrestricted fair market value of a minority interest in JDS common stock held by HolliShare was $425 as of December 31, 2003.[280] The book value of the JDS common shares as of December 31, 2003 was $238 at share.[281] The appraised value by Defense expert Roger Grabowski as of December 31, 2003 was 1.4 times the book value ($238.16 x 1.4=$333.42) of a minority interest of a JDS common share held by HolliShare.[282]  In 2004 the appraised value as of December 31 was 1.3 times the book value ($287.96 x 1.3=$374.35) of a minority interest of a JDS common share held by HolliShare.[283]  In 2005 the appraised value as of December 31 was 1.8 times the book value ($328.96 x 1.8=$592.13) of a minority interest of a JDS common share held by HolliShare.[284]  In 2006 the appraised value as of December 31 was 1.4 times the book value ($397.74 x 1.4=$556.84) of a minority interest of a JDS common share held by HolliShare.[285]  In 2007 the appraised value as of December 31 was 1.1 times the book value ($484.71 x 1.1=$533.18) of a minority interest of a JDS common share held by HolliShare.[286]

Following the same mathematical framework as outlined above to determine the harm to HolliShare and to Ellis in failing to receive current month end book value also establishes the

---

[278] *Grabowski Testimony*, TT 2572:1-2572:4.
[279] *Grabowski Testimony*, TT 2572:1-2572:4.
[280] *Korschott Testimony*, TT 1691:6-1691:17.
[281] *Korschott Testimony*, TT 1660:23-1661:2.
[282] *Grabowski Testimony*, TT 2572:1-2572:4.
[283] *Grabowski Testimony*, TT 2572:1-2572:4.
[284] *Grabowski Testimony*, TT 2572:1-2572:4.
[285] *Grabowski Testimony*, TT 2572:1-2572:4.
[286] *Grabowski Testimony*, TT 2572:1-2572:4.

59

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

harm to HolliShare for not receiving the appraised fair market value. Using that mathematical framework establishes harm to the Plan of $12,587,400 in 1998 (two transactions $8,505,000 and $4,082,400), $8,532,800 in 1999, $3,735,900 in 2000, $8,877,000 in 2001, $717,430.00 in 2002, $2,547,125.25 in 2003, $4,763,200 in 2004, $1,900,536 in 2005, $6,973,952 in 2006, $13,602,708 in 2007, $1,211,775 in 2008.[287] The total amount of harm to the Plan for selling shares for less than the appraised fair market value on December 31 from 1997 through 2007 was $65,449,826.25, or $70,028,626.25 if the Korschott appraisal is used for 2003. The harm suffered by Ellis under this theory is $369,866.50 using figures from the Defense expert and $395,741.97 implementing the appraisal of Plaintiffs expert for 2003. This calculation is based on Ellis' percentage interest ownership from 1997-2003 as detailed above, and, does not represent the true harm suffered by Ellis because only a portion of years was considered and because the calculations do not rely upon the fair market value on the dates of sale, only on each December 31 of years considered.

In the alternative, HolliShare sold too many shares for the time frame between 1998 and 2008 because it should have received the higher appraised fair market value. The Plan sold 105,714 too many shares in 1998, 57,142 too many shares in 1999, 25,000 too many shares in 2000, 50,769 too many shares in 2001, 4,204 too many shares in 2002, 10,326 too many shares in 2003, 14,285 too many shares in 2004, 5,076 too many shares in 2005, 11,777 too many shares in 2006, 24,428 too many shares in 2007, and 2,272 too many shares in 2008. The Plan, in all sold 310,999 too many shares during the 1997-2008 time period relying on the Defense expert, and 318,695 if Plaintiffs' expert calculations are included for 2004 sales. The appraised value of a

---

[287] Stipulated Fact No. 37-45.

60

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

common share of JDS as of 2011 would need to be determined to estimate the current value of the excess shares that need to be returned to the Plan.

Using the calculations of the experts, it is clear that Ellis was shorted at least 1,757 shares (relying on the Defense expert), and 1,800 (if Plaintiffs' expert calculations are included for 2004 sales). Of course, because these experts only considered a portion of the years at issue and because they only considered the difference between the value used by Defendants (previous December 31 book value) and the appraised fair market value on each December 31, these numbers provide only an example of the harm, not the actual harm.

### 3. Summary of Harm to Ellis and the Plan

**Harm to Ellis**: If this Court determines that month end book value should have been used to value the shares at the time of the sales to JDS, then Ellis' harm **$91,011.38** if the 1982 and 1993 sales are held to be appropriate. In the event that the Court finds that the sales in 1982 and 1992 were too early, then the harm suffered by Ellis is **$108,917.87**. The approximate amount of shares that should be allocated to Ellis's account under this theory is **1,694**.

If this Court determines that a prudently appraised fair market value should have been used to value the shares, then Ellis' harm is **at least $369,866.50 using figures from the Defense expert and at least $395,741.97 implementing the appraisal of Plaintiffs expert**. This calculation is based on Ellis' percentage interest ownership from 1997-2003 as detailed above. The **approximate amount of shares** that should be allocated to Ellis's account as an indirect owner is **at least 1,757 relying on the Defense expert, and 1,800 if Plaintiffs' expert calculations are included**. The figures addressing harm for failure to use appraised fair market value are not fully developed and simply illustrate the disparity between the value assigned by the

61
**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

Defendants and the true fair market value. A neutral appraiser, retained by an independent trustee appointed by this Court will be able to conduct the calculations necessary to determine the accurate fair market value and total losses to Ellis and HolliShare.

These figures do not include any assessment for interest.

**Harm to Plan**: If this Court determines that month end book value should have been used to value the shares at the time of the sales to JDS, then the Plan's harm for the time period between 1982 through 2011 is **$26,346,159.56**, or **243,366 too many shares**. In the event that the court finds that the sales in 1982 and 1993 sale were too early, then the harm suffered by the Plan is **$30,674,599.56**.

If this Court determines that a prudently appraised fair market value should have been used to value the shares, then the harm to the Plan is **at least $65,449,826.25 using figures from the Defense expert and at least $70,028,626.25 implementing the appraisal of Plaintiffs expert. The minimum amount of shares that should be allocated to the Plan is 310,999 for the 1997-2007 time period relying on the Defense expert, and 318,695 if Plaintiffs' expert calculations are included**. The figures addressing harm for failure to use appraised fair market value are not fully developed and simply illustrate the disparity between the value assigned by the Defendants and the true fair market value. A neutral appraiser, retained by an independent trustee appointed by this Court will be able to conduct the calculations necessary to determine the accurate fair market value and total losses to Ellis and HolliShare.

These figures do not include any assessment for interest.

/ / /

/ / /

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

## II.

## CONCLUSIONS OF LAW

### A.    Jurisdiction and Venue

This action arises under ERISA and is brought by Plan participants to obtain relief under §§ 409 and 502(a) to redress violations and enforce the provisions of Title I of ERISA.  (29 U.S.C. §§ 1109 and 1132(a)(2), (a)(3).)  Venue with respect to this action lies in the Eastern District of California pursuant to ERISA § 502(e)(2).  (29 U.S.C. § 1132(e)(2).)

### B.    Standing

Case law has made clear that a former employee and participant in a pension plan governed by ERISA is a participant and, therefore, has a valid claim for relief because she has a colorable claim to vested benefits.  (*See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948 (1989); citing *Kuntz v. Reese*, 785 F.3d 1410, 1411 (9th Cir.), cert denied, 479 U.S. 916 (1986).)  In *Vaughn v. Bay Environmental Management*, 2008 WL 4276603 (9th Cir. 2008), the court held that the plaintiff was a participant because he alleged he had not received everything due to him under the plan.  The court stated that its holding "is consistent with that of every Circuit Court of Appeals to have considered the issue to date…[Five] other circuits have held that former employees who have cashed out their individual accounts but alleged they are entitled to additional benefits…have standing as 'participants…'"  Moreover, in *LaRue v. DeWolff, Bovert & Assoc.*, the court held that despite the fact that the participant withdrew funds from the plan, the term "participant" as defined in ERISA § 3(7) may include a former employee with a colorable claim to benefits.  (*LaRue*, 552 US at 254, 256 n.6, 128 S. Ct. at 1024-26 n.6.)  Ellis is a participant under the HolliShare Plan and will benefit by a proper ruling remedying the illegal

63

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

transactions and conduct engaged in by Defendants. Ellis has a colorable claim because she has not received everything due to her under the Plan.

Moreover, this very issue was raised by Defendants in 2006 and resolved by The Honorable Lawrence Karlton in his Order addressing the Defendants' motion to dismiss. Citing *Amalgamated Clothing v. Murdock*, 861 F.2d 1406, 1418 (9th Cir. 1988)(plan participants have standing where they allege that fiduciaries "personally profited" from a breach of their duty of loyalty to the plan even when those participants have already received their vested benefits) and *Waller v. Blue Cross of California*, 32 F.3d 1339 (9th Cir. 2004)(holding that even after defendants terminated its retirement plan, plaintiffs had standing to bring suit under ERISA to pursue "equitable remed[ies] of a constructive trust to distribute defendants' allegedly ill-gotten profits to the former participants and beneficiaries under the plan), ***the Court found that Ellis has standing*** as a participant in the Plan because she alleges that the Defendants breached their fiduciary duties, sought to profit from the Plan, used the Plan for their own benefit rather than the exclusive benefit of Plan participants and beneficiaries, and she seeks the equitable remedy of disgorgement of Defendants' ill-gotten profits. (*Ellis v. Hollister, Inc. et. al.*, 2006 U.S. Dist. LEXIS 27611, 16-20; Ellis' Fourth Amended Comp.)

C.     The Statute of Limitations is Tolled

The facts of this case reveal that the HolliShare fiduciaries' self-interest led them to misrepresent the terms of the Plan's sales of common shares to JDS. As a result of these material misrepresentations, Defendants were able to covertly continue their illegal operations to the benefit of direct shareholders, such as themselves, and to the detriment of the Plan. Because Defendants' concealment and misrepresentation prevented Ellis and the other Plaintiffs from

64

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

discovering the facts demonstrating prohibited transactions and fiduciary breaches under ERISA, Plaintiffs must be allowed to remedy all harm suffered on their own behalf and on behalf of the plan dating back to 1982, when the ERISA violations (as well as the misrepresentation and concealment) commenced.

ERISA § 413 provides that where the defendant has concealed his wrongdoing, a plaintiff in an ERISA action will have six years after the date of discovery of the conduct prohibited under ERISA to bring her action. (29 USC § 1113) Without fraud or concealment, a plaintiff must file a claim within six years of the date of the last act constituting a part of the alleged violation, regardless of when the plaintiff actually learned of the violation. (*Kanawi v. Bechtel Corp.*, 590 F.Supp. 2d 1213, 1225 (N.D. Cal. 2008).)

An ERISA fiduciary can delay a wronged beneficiary's discovery of his claim either by misrepresenting the significance of the facts the beneficiary is aware of or by hiding facts so that the beneficiary never becomes aware of them. (*Radiology Ctr., S.C. v. Stifel, Nocolaus & Co.*, 919 F.2d 1216, 1220 (7th Cir. 1990).) For the "six years from discovery" rule to apply, a plaintiff must put forth evidence that the defendant either attempted to defraud the plaintiff or concealed its fiduciary breach. (*See Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1401 (9th Cir. 1995).)

In *Harris v. Koenig*, 722 F.Supp. 2d 44 (D.DC 2010), former employees sued fiduciaries of the company's profit sharing plan. The court found fraud and concealment which tolled § 413 and allowed the plaintiffs to bring their lawsuit within six years of their discovery of the illegal conduct. The suit involved violations related to the Plan's purchase of inflated shares of company stock. The Plaintiffs alleged that Defendants fraudulently misstated, or caused to be fraudulently

65

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

misstated, material financial information, made misstatements to the plan accountant, and made misstatements to participants that misstated the true value of the company stock. *The court found that the plaintiff's allegation that the Defendants purposefully misled the accountant which resulted in inaccurate filings with the DOL* sufficiently alleged that Defendants knowingly engaged in active concealment, separate from the underlying breaches of fiduciary duty, to prevent Plan participants and beneficiaries from discovering ERISA claims. (*Harris,* 722 F.Supp 2d at 59-60 (Emphasis added.).)

Here, the record is replete with evidence that the Defendants attempted to both defraud the participants, including Plaintiff Ellis, and conceal their fiduciary breaches and prohibited transactions. Although the fiduciaries definitively declared under penalty of perjury at trial that each sale transaction was pursuant to the extraordinary circumstances provision, they used multiple opportunities to provide contradictory information to Plan participants and beneficiaries, the Department of Labor, and this Court. Defendants expressly and repeatedly informed Plan participants and beneficiaries that all sales of Plan assets were pursuant to the right of first refusal (which required use of month end book value in the month of the sale). In addition, Defendants provided the Department of Labor with false information in order to conceal the fact that the Plan was not receiving adequate consideration. Furthermore, Defendants made false representations to this Court regarding the terms of the sales of the Plan's assets to JDS. As a result of these material misrepresentations, Plan participants should be capable of remedying all harm suffered as individuals and the Plan going back to 1982, when the prohibited transactions and breaches began, as well as the fraud and concealment.

/ / /

66

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

## 1. Defendants Engaged in Concealment and Fraud Via HolliShare Highlights

No disclosure was provided in the HolliShare Highlights publication given to each Plan participant indicating that HolliShare was selling its common shares to JDS pursuant to the oral "mid-80s agreement" under the exceptional circumstances provision or that they were valuing the shares using the previous December 31 audited book value as opposed to current month end book value on the date of sale.

Not only did the fiduciaries conceal the true terms of the sales transactions between HolliShare and JDS, but they lied about those terms for the purpose of misleading participants and beneficiaries.[288]    The fiduciaries represented to the participants and beneficiaries that the shares were being sold pursuant to the right of first refusal.    This representation was false, as all sales of common shares to JDS were under the exceptional circumstances provision of the JDS Articles which had no restrictions on the sale/purchase of shares, and HolliShare never complied with the terms outlined in the right of first refusal (which required the amount paid by JDS to be "its book value as of the end of the calendar month in which the Repurchase Date occurs").[289]

Upon reading the information in the Highlights, a participant would logically conclude that HolliShare sold its assets pursuant to the right of first refusal which called for current month end book value as the sale price.    Indeed, HolliShare trustee Brilliant admitted that the average participant would have reason to believe that the Plan's assets were being sold pursuant to the right of first refusal and that the Plan was receiving current month end book value at each sale.[290]

---

[288] Exhibits 4-4.7, 4-4.14.
[289] Exhibits 531-536, JDS Articles, Article 5, ¶ II.D.
[290] *Brilliant Testimony*, TT 1286:9-19; 1334:21-25.

67

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

**2. Defendants Provided False Information to a Plan Beneficiary in Direct Response to an Inquiry About The Manner in Which the Plan's Shares Are Valued**

In response to a Plan beneficiary's inquiry, a letter written on behalf of the Plan's trustees was sent to explain the manner in which the trustees valued the Plan's shares of JDS. In this correspondence to the beneficiary, the trustees stated: "***JDS has always exercised its right of first refusal*** and repurchased such shares at book value." [291] This is in direct conflict with Defendants' position at trial that they always sold the Plan's shares to JDS pursuant to the exceptional circumstances provision.[292]

**3. Defendants Provided False Information to the Department of Labor**

Moreover, Defendants outright *lied to the Department of Labor* during a Department investigation. This lie was for the purpose of concealing that the fiduciaries were failing to receive adequate consideration for Plan assets in accordance with their scheme to slow the growth of the Plan to the benefit of direct shareholders. In response to a Department of Labor investigator's request for documents evidencing sales of the Plan's assets to JDS, Defendants provided the Department of Labor with a document indicating that sales of the Plan's common shares of JDS stock took place on January 1, 1995, January 1, 1996, January 1, 1997, and January 1, 1998 using the previous December 31 audited book value.[293] If the sales in these years took

---

[291] Exhibit 176, p. 3, ¶ 1 (Emphasis added.)

[292] *Zwirner Testimony*, TT 2027:4-5; *Karlovsky Testimony*, TT 350:10 – 366:12, 527:16-18; *McCormack Testimony*, TT 858:1-15.

[293] The Court allowed Exhibit 54 into evidence, over objection, as Department of Labor witness Karen Handorf testified that the stamp (which appears backwards) that is visible on the Exhibit was consistent with the pattern and practice of the Department stamping the back of the page when receiving documents from parties they were investigating. The stamp reads May 12, 1998, which is the very date that the Department of Labor investigator appeared at Hollister to perform the investigation and gather documents. (*Handorf Testimony*, TT 1424:16 – 1426:2; 1437:21 – 18, 1439:24 – 1440:12.)

68

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

place on January 1, then by using the previous year's December 31 audited value, only one day would have passed between the value date and the sale date, which could not have caused the Department concern over a stale sale price or lack of adequate consideration.[294]  However, the truth is that rather than occurring on January 1 of each year, they took place as follows: March 1995, May 1996, March 1997, and March 1998.[295]  Of course, with the value of the JDS common shares rising nearly every month, a sale conducted three to five months after the assigned value would not represent adequate consideration at the time of the transaction as required by ERISA. (29 USC § 1002(18)(B); *Cunningham*, 716 F.2d at 1468-69.[296]

### 4.    Defendants Provided False Information to This Court

In at least two documents filed with the Court in the course of this litigation, Defendants have strongly asserted that HolliShare sold its JDS common shares of stock to JDS under the right of first refusal provision of the JDS Articles, in direct contradiction to their position taken at trial (i.e., that each sale of common shares from HolliShare to JDS was pursuant to the exceptional circumstances provision).[297]

In a brief filed in October 2006, Defendants ***vehemently denied use of the exceptional circumstances clause*** to conduct HolliShare's sale of shares to JDS to fund retirement benefits, stating: "It cannot seriously be argued that a routine and commonplace sale by HolliShare of JDS common shares involves any 'extraordinary circumstances'."[298]

---

[294] *Handorf Testimony*, TT 1426:17-24.
[295] Stipulated Facts Nos. 34-37.
[296] *Handorf Testimony*, TT 1418:25 – 1419:13; 1422:2 – 1423:2.
[297] *Zwirner Testimony*, TT 2027:4-5; *Karlovsky Testimony*, TT 350:10 – 366:12, 527:16-18; *McCormack Testimony*, TT 858:1-15.
[298] Defendants' Reply MPA In Support Of Motion To Dismiss First Amended Complaint, 11:15-17.

69

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

In another brief filed in October 2007, Defendants' reiterated their position that the right of first refusal provision was used, claiming: "JDS had the right to buy any of its common shares offered for sale at book value, that JDS has consistently and invariably exercised that right, and that JDS intends to continue that practice."[299]  In response to the Plaintiffs suggestion that the Defendants must have used the exceptional circumstances provision to sell the Plan's shares to JDS because they did not use month end book value at the time of the transaction (as required by the right of first refusal provision), the Defendants again scoffed at the purported ridiculousness of such a suggestion, "Plaintiffs do not suggest what 'exceptional circumstances' exist that would – or even may – justify a decision by the JDS Board to treat HolliShare's periodic offers to sell some of its JDS common shares differently from offers to sell made by all other JDS shareholders."[300]

Because of the fiduciaries' strategic operation to mislead the Plan participants, the Department of Labor, and this Court, the plaintiffs are entitled, under the law, to the limitations period which allows for the filing of a complaint within six years of the participant's discovery of the prohibited conduct under ERISA.  Here, Defendant's fraud and concealment prevented Ellis and the other plaintiffs from discovering the fiduciary breaches and prohibited transactions. Because of these misrepresentations, it was not until well into this lawsuit and during the discovery phase that Ellis and the other Plaintiffs learned that the wrongful conduct began in 1982. Accordingly, Ellis and the Plaintiffs must be able to remedy the harm from 1982 onward.

/ / /

---

[299] Reply MPA ISO Certain Defendants' Motion to Dismiss for Failure to State a Claim, 11:16-18.
[300] Reply MPA ISO Certain Defendants' Motion to Dismiss for Failure to State a Claim, 12:3-6.

70

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

**D.     Defendants Are Strictly Liable for Numerous Non-Exempt Prohibited Transactions**

Pursuant to ERISA § 406(a), a fiduciary is prohibited from engaging in a transaction in which the plan sells property to a party in interest. (29 USC § 1106(a).) This is a blanket prohibition on transactions between a plan and a party in interest because such transactions "...entail a high potential for abuse." (*Donovan v. Cunningham*, 716 F.2d 1455, 1465 (5th Cir. 1983).) The prohibited transaction provision "supplements the fiduciary's general duty of loyalty to the plan's beneficiaries by categorically banning certain transactions deemed likely to injure the pension plan." (*Harris Trust & Say Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 241-42 (2000) (citation and quotes omitted).)

According to ERISA, JDS is a party in interest to the HolliShare Plan because it is the parent corporation of Hollister. (29 USC § 1002(14)(E).) Plaintiffs established at trial that JDS purchased common shares from Hollister in the years 1982, 1985, 1986, 1987, 1993, 1995, 1996, 1997, 1998, 1999, 2000, 2001, 2002, 2003, 2004, 2005, 2006, 2007, 2008, 2009, 2010, and 2010.[301] All of these sales were, by definition, prohibited transactions because they took place between the Plan (HolliShare) and a party in interest (JDS). (29 USC §§ 1106, (1)(A), 1102(14)(E).)

ERISA § 408 provides an exemption to this prohibition where the purchase of Plan assets is made for adequate consideration. (29 USC § 1108) ERISA § 3(18) defines adequate consideration for assets which have no generally recognized market: adequate consideration means "the ***fair market value*** of the asset as ***determined in good faith*** by the trustee or named

---

[301] Stipulated Facts Docket, 630, 29-46.

71

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

fiduciary pursuant to the terms of the plan and in accordance with the regulations promulgated by the Secretary [of Labor]." (29 USC § 1002(18)(B) (Emphasis added.).)

Significantly, *the burden of proof is on the ERISA fiduciary* claiming the exemption to establish that the plan received adequate consideration. (*Cunningham*, 716 F.2d at 1467 n.27 (Emphasis added.); see also, *Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996) cert. denied, 520 U.S. 1237 (1997) ("A fiduciary who engaged in a self-dealing transaction pursuant to [ERISA § 408(e)] has the burden of providing that he fulfilled his duties of care and loyalty and that the [plan] received adequate consideration."); *Eyler v. Commissioner*, 88 F.3d 445, 454 (7th Cir. 1996); *Chao v. Hall Holding Co.*, 285 F.3d 415, 437 (6th Cir. 2002), cert. denied, 537 U.S. 1168 (2003).) This burden of proof "is a heavy one," which requires at a minimum, that defendants engaged in an intensive and scrupulous independent investigation of their options before the transaction to ensure that they are acting in the best interests of the plan fiduciaries. (*See Howard*, 100 F.3d at 1488-89 (citations and quotations omitted); see also *Hall Holding Co.*, 285 F.3d at 426; *Eyler,* 88 F.3d at 455; *Cunningham*, 716 F.2d at 1467-68 ([S]ubjective good faith – a pure heart and an empty head are not enough.").)

Although never enacted, the Department of Labor issued proposed regulations which are directly on point and expound upon the above-described ERISA provisions. While not binding authority, these *proposed regulations provide guidelines based in case law* for the courts and the ERISA legal community. These regulations were created in response to case law, particularly *Donovan v. Cunningham*, 716 F.2d 1455, and they reiterate *the ERISA test* for adequate consideration, explaining that (1) the value assigned to the asset *must reflect fair market value*, and (2) the value assigned to the asset must be the product of a *determination made in good faith*

72

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

by the trustee or named fiduciary.  (DOL Proposed Reg. 2510.3-18(b)(1)(i)(A) (Emphasis added.); 29 USC § 1002(18)(B); *Cunningham,* 716 F.2d at 1467.)  Fair market value is defined as: "the price at which an asset would change hands between a willing buyer and a willing seller when the former is not under any compulsion to buy and the latter is not under any compulsion to sell, and both parties are able, as well as willing, to trade and are well informed about the asset and the market for such asset." (DOL Proposed Reg. 2510.3-18(b)(2)(i); *Cosgrove v. Circle K Corp.,* 915 F.Supp. 1050 (1995, DC Ariz.).)  Fair market value ***must be determined at the time of the transaction***.  (DOL Proposed Reg. 2510.3-18(b)(2)(ii) (Emphasis added.); *Cunningham,* 716 F.2d at 1468-69.)  This requirement governing the timing of the determination of fair market value was specifically drafted to prevent situations such as arose in *Donovan v. Cunningham*, where the plan fiduciaries relied on a 1975 appraisal to set the value of employer securities purchased by an ESOP during 1976 and thereafter, and failed to take into account significant changes in the company's business condition in the interim.  The court found that this reliance was unwarranted, and therefore the fiduciaries' valuation failed to reflect adequate consideration under section 3(18)(B).  *(Cunningham,* 716 F.2d at 1468-69.)  Finally, the fair market value of the asset in question must be reflected in a written document.  (DOL Proposed Reg. 2510.3-18(b)(2)(iii).)  This regulation was also drafted to comply with *Donovan v. Cunningham*, as the burden of proof is upon the party seeking to make use of the statutory exemption to show that all the requirements of the provision are met. (*Cunningham,* 716 F.2d at 1467 n.27.)  In the Department's view, written documentation relating to the valuation is necessary for a determination of how, and on what basis, an asset was valued, and therefore whether that valuation reflected an asset's fair market value. (Department of Labor Preamble to Proposed Regulations 29 CFR 2510.3-18(b), n.2.)

73

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

In order to avoid a prohibited transaction in the purchase of stock between JDS and HolliShare, the Defendants bear the burden to prove separately for each such purchase that JDS paid adequate consideration, meaning fair market value, to the plan *on the date that the transaction took place*. (*See Cunningham*, 716 F.2d at 1468-69; DOL Proposed Reg. 2510.3-18(b)(2)(ii).) The Defendants must also prove that the Plan fiduciaries engaged in a good faith determination of the value of the plan assets on the date of the sale transaction. Known as the prudent expert standard, a plan fiduciary must act as a person of like capacity who is familiar with such matters should act. (*Cunningham*, 716 F.2d at 1488-89.)

The fiduciaries' own testimony reveals that many of them didn't even know what a prohibited transaction was or how to qualify for an exemption, rendering it impossible for the Defendants to meet their burden of proof on this issue.[302]

Two independent and alternative reasons exist to support the conclusion that the trustees failed to sell Plan assets for adequate consideration: (1) trustees sold HolliShare assets for prior year end book value rather than current month end book value; or (2) trustees sold HolliShare assets for book value rather than a prudently determined fair market value.

**1.      Defendants Failed to Acquire Adequate Consideration Because They Used a Stale Previous Year End Book Value Rather than Current Month End Book Value at the Time of the Sales Transactions**

The Defendants cannot meet their burden to establish that HolliShare received fair market value for sales of common shares to JDS. Even under the book value formula pricing system advanced by Defendants, and assuming that it equates to fair market value, the clear evidence established that the plan was cheated in each sales transaction since 1982.

---

[302] *Winn Testimony*, TT 96:24 – 97:11; *Brilliant Testimony*, TT 1301:10-15; *Karlovsky Testimony*, TT 403:20 – 404:6.

74

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

The only price referenced in the JDS Articles is contained in the right of first refusal which establishes that the price to be paid for the JDS common shares is the ***current month end book value related to the date of sale***. In all sales transactions after 1982 HolliShare received a price that was less than the book value prescribed in the JDS Articles. The Defendant ***fiduciaries admitted that the December 31 previous year end book value was less than the current month end book value*** in the month in which the sales took place.[303]

The trustees did not calculate book value of the shares on the transaction dates, and, therefore, failed to acquire adequate consideration for the Plan's assets under ERISA. (See 29 USC §§ 1108, 1002(18)(B); *Cunningham*, 716 F.2d at 1468-69.) Instead, the trustees caused the Plan to sell JDS common shares at the prior December 31 book value, despite the facts that the subject transactions were occurring months later into the following year and the value of the common shares was increasing almost every month.[304]

> **2.   Defendants Failed to Acquire Adequate Consideration Because They Used Book Value Rather than a Prudently Appraised Fair Market Value**

The Defendants had the burden to establish that when HolliShare sold Plan assets to JDS that the Plan was receiving fair market value on the date of the sales transaction. (*Howard v. Shay*, 100 F.3d 1484, 1488 (9th Cir. 1996).) The unchallenged evidence at trial established that the appraised value was always greater than the book value as of December 31st.

Book value, as calculated, was always significantly less than fair market value. Only as part of this litigation did the fiduciaries hire an alleged independent outside appraiser to arrive at a

---

[303] *McCormack Testimony*, TT 767:11-19, 929:14 – 930:9, 1034:5-9; *Brilliant Testimony*, TT 1324:23 – 1325:6, 1325:11-15

[304] *Karlovsky Testimony*, TT 352:15-19.

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

calculation of the fair market value of JDS common shares. The expert they retained for the purposes of this litigation considered the market and income approach to determine the unrestricted fair market value for years 1997 through 2007 and then applied a discount for lack of marketability to arrive at a final value.[305] Even this expert, hired by Defendants, determined that in the years 1997 through 2007 (the years he was asked to consider), the fair market value of JDS common shares in December 31 of each year was between 1.1 and 1.8 times the December 31 book value (as of that date) used by Defendants.[306] The Defendants' own expert underscores the conclusion that the book value was artificially low and did not represent the fair market value of the JDS common shares of stock; accordingly, book value could not represent adequate consideration.

While it has already been established that appraised value was greater than the current book value for each year from 1997 to 2007, the transactions in question here occurred in varying months of the year, and an appraisal on the date of sale for each transaction from 1982 to the present would reveal the true extent of harm suffered by HolliShare and Ellis.

### 3. Defendants Failed to Engage in a Good Faith Investigation of the Sales Price

In addition to proving that adequate consideration was received, in order to meet their burden of proof to establish an exemption to the prohibited transaction rule, the Defendants must prove that the Plan fiduciaries engaged in a good faith determination of the value of the plan assets. (29 USC § 1002(18)(B).) Known as the prudent expert standard, a plan fiduciary must act as a person of like capacity who is familiar with such matters should act. (*Cunningham*, 716 F.2d

---

[305] *Grabowski Testimony*, TT 2570:10-20.
[306] *Grabowski Testimony*, TT 2571:20-2572:4.

76

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

at 1467-68.) The inquiry into whether the Plan received adequate consideration focuses on the thoroughness of the fiduciary's investigation. (*Howard*, 100 F.3d at 1488.) As set forth above, Defendants must show that they engaged in an intensive and scrupulous independent investigation of their options before the transaction to ensure that they are acting in the best interests of the plan fiduciaries. (*See Howard*, 100 F.3d at 1488-89 (citations and quotations omitted); see also *Hall Holding Co.*, 285 F.3d at 426; *Eyler*, 88 F.3d at 455; *Cunningham*, 716 F.2d at 1467-68 ([S]ubjective good faith – a pure heart and an empty head are not enough.").)

The standard to be used in determining whether a determination of value was made in good faith is the same standard used in the "prudence" provision of ERISA § 404(a). This standard is also discussed below in the "prudence" section of this brief under fiduciary breaches. In applying the prudence test, the court must consider whether, at the time of the challenged transactions, the fiduciaries used appropriate methods to structure the transaction, i.e., an objective good faith standard. (*Eyler*, 88 F.3d at 454-55.) In *Eyler*, the court found that the fiduciaries acted without good faith, relying heavily on the fact that Defendants could provide ***no evidence that the fiduciaries sought independent information on the fair market value*** of the stock. (*Id.* at 456.)

As set forth above, in the *Donovan v. Cunningham* case, the court determined that the fiduciaries violated ERISA by engaging in prohibited transactions. Noting that the burden of proof rests on the ERISA fiduciary claiming the exemption, the court found that the fiduciaries failed to ensure that the information used in the appraisal they relied upon was complete and up-to-date and, therefore, the fiduciaries could not establish that adequate consideration was paid. (*Cunningham*, 716 F.2d at 1469, 1474.)

77

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

Here, the evidence clearly reveals that the Plan fiduciaries failed to engage in a good faith, thorough investigation to determine the value of the common shares held by the Plan when sold shares to JDS.   Instead, they used a stale previous year end book value as the value of the Plan assets at the time of their sale, which occurred three, four, five, six, or even seven months later.   The fiduciaries knew, at a minimum, that the previous December 31 book value being used was less than the current month end book value at the time of each transaction between the Plan and HolliShare.[307]

As in *Eyler*, there is no evidence that even one fiduciary sought independent information on the fair market value of the stock.  (*Eyler*, 88 F.3d at 456.)  ***None of the fiduciaries ever had the common shares held by HolliShare independently appraised*** to assist them in determining the value of the Plan's shares.[308]   Even when an appraisal was prepared by Defendants' expert Grabowski for the purposes of this litigation, ***Zwirner never reviewed it***.[309]

Finally, Zwirner's admissions at trial conclusively prove the fiduciaries' lack of good faith in determining the value of the Plan's shares.  Zwirner admitted that he understood that if the trustees had valued the Plan's JDS common shares at current month end book value at the time of the sales transactions to JDS, the Plan would have had to sell fewer shares to JDS to generate the cash needed to pay out benefits to retiring employees.  He further admitted that if the trustees had valued the Plan's shares using the current month end book value at the time of the sales transactions to JDS, the Plan would own a larger percentage of the outstanding JDS shares (and

---

[307] *Brilliant Testimony*, TT 1324:23 – 1325:6; *McCormack Testimony*, TT 767:11-19, 929:14 – 930:9, 1034:5-9.
[308] *Karlovsky Testimony*, 393:31-23; *McCormack Testimony*, TT 1027:23 – 1028:3; *Zwirner Testimony*, TT 2101:3-8; 2495:14-18; *Herbert Testimony*, TT 1889:10-17.
[309] *Zwirner Testimony*, TT 2495:19-25.

78

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

therefore a larger percentage of the net equity of the company), and each participant's account balances would be worth more.[310]

In the face of this knowledge, Zwirner, and the other fiduciaries, caused the Plan to sell at a price that was not the product of a prudent investigation and was motivated by a desire to benefit parties other than the participants and beneficiaries.

### 4. The Value of the JDS Shares was not Determined by the Plan Trustees or Named Fiduciaries, it was Determined by JDS

In order to be exempt from the prohibited transaction rule it is required that the value of the asset in question be determined "… by the trustee or named fiduciary." (29 U.S.C. §§ 1108(e)(1), 1002(18)(B).)  The evidence at trial established that JDS, and JDS alone, determined the price at which sales transactions occurred and that the trustees were powerless to challenge the price JDS was willing to pay.  All sales since the mid 1980s between the Plan and JDS have purportedly occurred pursuant to the "mid-80s agreement," an essential term of which is that the previous December 31 audited book value is used as the sale price.  This term was requested by JDS.[311]  Zwirner testified that although HolliShare trustees considered the possibility of selling JDS common shares at prices higher than book value, JDS would not agree to it.[312]  This evidence makes clear that it was JDS that established the sales price, and the trustees had no real choice but to accept the price set by JDS.  Because it was JDS and not the trustees establishing the price at which Plan assets were being sold, the Defendants fail to meet this requisite element for exemption under ERISA § 408. (29 USC §§ 1108(e)(1), 1002(18)(B).)

---

[310] *Zwirner Testimony*, TT 2039:9- 2040:10, 2046:2 – 2050:17; 2384:5-12.
[311] *Zwirner Testimony*, TT 2059:25 -2060:7.
[312] *Zwirner Testimony*, TT 2373:6-20.

79

<u>DeFazio, et al., v. Hollister, et al.</u>, Case No. 04-1358 WBS GGH
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

### E.   Defendants Breached Their Fiduciary Duties

ERISA imposes multiple duties on plan fiduciaries and holds them to high standards of conduct.  These duties include acting solely in the interest of plan participants and beneficiaries, valuing the plan assets prudently, and following the plan so long as it is consistent with ERISA. These fiduciary obligations are the **highest known to law**.  *(See Howard,* 100 F.3d at 1488 (Emphasis added.).)  Defendants repeatedly violated these duties.  Winn even admitted that he was unaware of what his duties were, rendering compliance dubious.[313]

### 1.   The Fiduciaries Violated the Exclusive Purpose (Duty of Loyalty) Provision

ERISA § 404(a)(1)(A) requires that a fiduciary discharge his duties *solely in the interest of the participants and the beneficiaries* and for the *exclusive purpose of providing benefits* to the participants and their beneficiaries.  (29 USC § 1104(a)(1)(A) (Emphasis added.).)  This section imposes a "duty of loyalty," requiring fiduciaries to act with "complete and undivided loyalty to the beneficiaries of the trust" and with an "eye single to the interests of the participants and beneficiaries." *(Donovan v. Bierwirth,* 680 F.2d 263, 271 (2nd Cir. 1982); see, e.g., *Leigh v. Engle,* 727 F.2d 113, 123 (7th Cir. 1984).)

Because the HolliShare fiduciaries were also direct shareholders and because many of the HolliShare fiduciaries were also JDS and/or Hollister Board Members and/or trustees of the 1977 or 1999 Preferred Share Trusts, their very circumstances prevented them from meeting their duty of loyalty because: (1) by virtue of holding direct shares they had a competing interest with the shares held by the Plan, particularly where the Plan's shares and the direct shareholders' shares

---

[313] *Winn Testimony,* TT 44:20 – 45:2.

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

were treated unequally; and, (2) by virtue of representing the interests of JDS, the company buying the shares from HolliShare, they had competing interests with the Plan. The Plan fiduciaries did not act in the sole interest of the participants and beneficiaries and instead were hopelessly conflicted with their own interests as direct shareholders and the interests of JDS as JDS/Hollister Board Members; as such, the fiduciaries exposed themselves to liability for breaching the duty of loyalty.

a.      **Conflict Due to Dual Roles as HolliShare Fiduciaries and Direct Shareholders**

The fiduciaries' own testimony perfectly illustrates their failure to act solely in the interest of the Plan participants and beneficiaries for the exclusive purpose of providing benefits. Repeatedly, HolliShare fiduciaries admitted that each time the Plan received previous year end audited book value for the shares sold to JDS, the direct shareholders received an instantaneous benefit.[314] These HolliShare fiduciaries were also the very direct shareholders who received the instantaneous benefit upon each sale of the Plan's common shares to JDS at the previous year end audited book value.[315] By forcing the HolliShare Plan to accept the previous year end book value, which therefore provided an instant benefit to the HolliShare fiduciaries as direct shareholders, the fiduciaries failed to act solely to protect the interest of the Plan. In fact, each time the Plan fiduciaries knowingly allowed the Plan to sell for the prior year end book value, they acted in a way to increase their own personal interests at the expense of the Plan. Moreover, these Plan fiduciaries knew that each time direct shareholders sold their JDS common shares of stock back to

---

[314] *Karlovsky Testimony*, TT 555:14-19; *Brilliant Testimony*, TT 1367:13 – 1368:9; *Herbert Testimony*, TT 1519:5-10; *Zwirner Testimony*, TT 2042:15 – 2043:14.
[315] *Karlovsky Testimony*, TT 391:9-15; *McCormack Testimony*, TT 724:21 – 725:2; *Brilliant Testimony*, TT 1272:14 – 1273:14; *Herbert Testimony*, TT 1496:16 – 1497:1; *Zwirner Testimony*, TT 2005:1-9.

81

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

JDS, the direct shareholders received the extra benefit of current month end book value. The Plan fiduciaries, who were also direct shareholders, knew that they were getting a better price than the Plan did for sales of the very same JDS common shares of stock. By allowing the Plan to receive a lower per share price than the direct shareholders received upon selling the same type of asset (JDS common shares), the Plan fiduciaries failed to act solely in the interest of the Plan.

####     b.    Conflict Due to Dual Roles as HolliShare Fiduciaries and JDS/Hollister Officers and Directors

The fact that the fiduciaries concurrently served as fiduciaries to JDS/Hollister and HolliShare made it impossible for them to avoid breaching the duty of loyalty. Winn, who served as a Board Member of JDS and Hollister and was a Plan fiduciary, admitted that he did not separate the interests of JDS and HolliShare.[316] Zwirner has served concurrently as a HolliShare Trustee and a JDS Board Member, outside counsel to JDS and Hollister, and as a trustee of the 1977 and 1999 Preferred Share Trusts. Zwirner admitted that as he discharges his fiduciary duties to HolliShare, *he believes that what is good for JDS/Hollister is good for the Plan.*[317] Moreover, the 1999 Preferred Share Trust requires that the directors of JDS *must* value the shares at book value.[318] Zwirner explained that if a JDS director failed to use book value, that director would be removed or would not be re-elected.[319] McCormack, Karlovsky, and Brilliant have served concurrently as HolliShare trustees and Hollister officers/directors. McCormack also testified that he believed that what was good for Hollister was good for the Plan.[320] Herbert admitted that he

---

[316] *Winn Testimony*, TT 161:20 – 162:20.
[317] *Zwirner Testimony*, TT 2504:13-22.
[318] Exhibit 641, § (d).
[319] *Zwirner Testimony*, TT 2365:10 – 2366:3.
[320] *McCormack Testimony*, TT 1041:19-21.

82

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

relied on Zwirner as outside counsel to alert him if the Plan engaged in ERISA prohibited conduct, yet Zwirner was impossibly conflicted himself, rendering this reliance futile.[321]

JDS's interests conflict with HolliShare because JDS, as the parent company, has an interest in keeping the Plan smaller so as to have to pay out as little as possible in benefits to retiring employees (as benefits are based on the value of the Plan's assets).  Winn admitted that (1) he participated in discussions with HolliShare trustees in which the topic was how to slow the growth of HolliShare because it was growing too rapidly and was not considered in the best interests of JDS; and, (2) selling HolliShare's common shares of JDS stock for the previous December 31 book value rather than current month end book value slowed the growth of HolliShare.)[322]

### i.   The Conflict is Evident by the Fiduciaries' Conduct

The conduct of the fiduciaries further reveals how the conflict was fatal to their duty to act solely in the interest of the Plan and for the exclusive purpose of providing benefits to the participants and beneficiaries.  Shortly after the creation of the Plan, Plan trustees became concerned that the Plan was becoming too lucrative to the participants and beneficiaries, and JDS considered the rapid pace of HolliShare's growth problematic (a violation of their fiduciary duties on its face.)[323]

In September of 1980, Winn openly expressed at a JDS Board of Directors' meeting that it was beneficial to slow the growth rate of the HolliShare accounts and that the sale of shares would

---

[321] *Herbert Testimony*, TT 1901:8-15.
[322] *Winn Testimony*, TT 210:5-19; 211:13-23.
[323] *Zwirner Testimony*, TT 2083:18 – 2084:7; *Winn Testimony*, TT 236:4-11, 235:16-24.

83

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

accomplish that task.[324]   At that meeting, the JDS Board of Directors resolved to purchase $200,000 worth of common stock from the Plan at current month end book value.[325]   In April 1981, the JDS Board of Directors resolved to purchase $997,227 worth of common stock from the Plan at current month end book value.  With Mr. Schneider present at these meetings,[326] Winn and Zwirner were obliged to use current month end book value sale price.  That practice was about to change.

1982 was a watershed year for HolliShare and for this litigation.  Mr. Schneider became incapacitated in 1981, and with him (as owner and leader of the companies) out of the picture and no longer exercising control, the HolliShare trustees were free to fully engage their operation to stem the growth of the Plan.  This year is critical because of two key facts: (1) the fiduciaries sold 38,000 of HolliShare's assets (JDS common shares of stock) *despite the fact* that they did not need to in order to pay the benefits of employees retiring that year (they already had enough money through existing balances and the Hollister contribution), and (2) they implemented their secret growth retarding plan: assigning a lower value to the shares being sold (previous December 31 book value rather than current month end book value), thereby requiring more shares to be sold to reach the sum certain to fund retirements.[327]   Two of the three HolliShare trustees (McCormack and then-trustee Schellentrager) raised an objection to selling these shares because the Hollister profit sharing contribution provided enough money in the Plan to meet the Plan obligations to retiring employees that year.[328]   Despite these documented objections, all three trustees

---

[324] *Winn Testimony*, 241:5-11, Exhibit 253.12, p. 2, ¶ 4 to end of page.
[325] *Winn Testimony*, TT 241:15 – 242:4; Exhibit 253.12 p. 2, ¶ 4 to end of page.
[326] Exhibits 253.12, 253.13.
[327] Exhibit 253.15, p. 1; Exhibit 252.27, p. 1-3.
[328] Exhibit 252.27, p. 1, ¶ 3; page 2, ¶ 1.

84

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

nevertheless resolved to sell 38,000 common shares to JDS for *less than* current month end book value.[329]

Several years later, HolliShare fiduciaries accelerated their plan to stem the growth of HolliShare by selling enough shares in one year to cover two years of funding needs. In February 1993, with the knowledge that the shares were significantly rising in value, the trustees recommended selling nearly twice as many shares as necessary to fund retirement benefits in 1993.[330]

### ii.    Trial Testimony Exposes Incontrovertible Conflict

Zwirner admitted that if the Plan had sold its JDS common shares at current month end book value rather than at the previous December 31 audited book value, HolliShare would have had to sell fewer shares to JDS to generate the cash needed to pay out benefits to retiring employees. Accordingly, the Plan would have owned a larger percentage of the outstanding JDS shares (and therefore a larger percentage of the net equity of the company) and *each participant's account balances would have been worth more*.[331] Zwirner's testimony at trial divulged his undeniable conflict: despite knowing the incredible benefit the Plan and its participants would have received by using the current month end value of the shares at the time of the sale to JDS, **Zwirner believed that this would not be in the best interest of Hollister and JDS.**[332] The fiduciaries' duty of loyalty to the Plan required them to make a determination of whether it was necessary to sell shares to JDS "with an eye single" to providing benefits to the Plan's participants and beneficiaries, not with regard to the interests of another party, and not in a premeditated

---

[329] Exhibit 252.27, p. 3.
[330] Exhibit 252.60, p. 20, ¶ 3; MIN 04954, ¶ 3; *Karlovsky Testimony*, TT 596:22 – 597:9, 599:14-18.
[331] *Zwirner Testimony*, TT 2046:2 – 2050:17; 2384:5-12.
[332] *Zwirner Testimony*, TT 2384:7 – 2385:20.

85

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

fashion to limit Plan benefits. The objectives of Zwirner and the other fiduciaries on behalf of JDS/Hollister interfered with their ability to sell the Plan's shares under terms which were in the best interest of the Plan participants and beneficiaries.

### c. The Fiduciaries Failed to Keep the Participants and Beneficiaries Properly Informed

Falling within this duty of loyalty is a fiduciary's obligation to convey complete and accurate information which is material to the beneficiary's circumstance, even when a beneficiary has not specifically asked for the information. (*Barker*, 64 F.3d at 1403.) ERISA imposes upon fiduciaries a general duty to disclose facts material to investment issues. (*See California Ironworkers Field Pension Trust v. Loomis Sayles & Co.*, 259 F.3d 1036, 1045-46 (9th Cir. 2001).) To participate knowingly and significantly in deceiving a plan's beneficiaries in order to save the employer money at the beneficiaries' expense is obviously not acting "solely in the interest of the participants and beneficiaries." (*Varity Corp. v. Howe*, 516 U.S. 489, 506, 116 S. Ct. 1065, 1074-75 (1996).) As discussed in the previous section addressing the statute of limitations, there exists overwhelming evidence that the Defendants concealed and misrepresented the true terms of the sales of the Plan's assets.

Defendant fiduciaries testified that each sale of HolliShare's common shares of JDS stock to JDS was pursuant to the exceptional circumstances provision.[333] The exceptional circumstances provision sets no restrictions of any kind, including on the sale price/purchase price of the shares, but states that JDS and the seller (HolliShare) are to come to an agreement over the terms, i.e., negotiate a sale price. Accepting Defendants' trial position as true, it is clear that the fiduciaries

---

[333] *Zwirner Testimony*, TT 2027:4-5; *Karlovsky Testimony*, TT 350:10 – 366:12, 527:16-18; *McCormack Testimony*, TT 858:1-15.

86

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

repeatedly and deliberately breached their duty to keep the participants and beneficiaries informed of material information related to the assets funding their retirement.

Not only did the fiduciaries fail to ensure that the HolliShare Highlights publication inform participants and beneficiaries that the sales of HolliShare's JDS common shares were being conducted pursuant to the exceptional circumstances provision and that the Plan was receiving the stale December 31 audited book value rather than current month end book value in the month of the sale in exchange for the shares, but the fiduciaries deliberately misled the participants and beneficiaries by publishing that such sales were being conducted pursuant to the right of first refusal provision which required that the price paid for common shares purchased by JDS be the current month end book value.[334]

Furthermore, as set forth in a previous section addressing the statute of limitations, in response to a direct inquiry from a Plan beneficiary regarding how Plan assets are valued, the fiduciaries unambiguously advised that beneficiary that all sales from the Plan to JDS were pursuant to the right of first refusal.[335]

Demonstrating their unabashed failure to obey the rules governing their conduct as fiduciaries, at trial, the fiduciaries' testimony revealed their cavalier attitude - they believed that keeping the participants and beneficiaries properly informed was trivial and irrelevant. Plan trustee McCormack testified that *he did not think it was important* for participants to know whether the trustees were selling Plan assets for current value at the time of each sale

---

[334] *Brilliant Testimony*, TT 1286:9-19; Exhibit 4-4.17, p. 7 Heading Closely Held Nature of JDS Stock, H01915 Heading Closely Held Nature of JDS Stock Exhibit 4-4.5, p. 8, ¶1-2; 1334:21-25; *Karlovsky Testimony*, TT 372:9-372:20; Exhibits 531-536, Article 5, ¶ (II)(D).

[335] Exhibit 176.

87

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

transaction.[336]  Likewise, Winn admitted that he ***does not believe it was his responsibility*** to insure that the participants were informed of any changes in the valuation of their retirement benefits (e.g., from month end book value to previous year end book value).[337]  Karlovsky testified that no disclosure was provided to participants and beneficiaries that HolliShare was selling its shares to JDS at the previous December 31 book value as opposed to the current month end book value because the trustees ***did not view it as material***.[338]

The fiduciaries' failure to convey accurate information regarding the assets funding the Plan participants' and beneficiaries' retirement constitutes an outright breach of the duty of loyalty.  This failure to keep their participants and beneficiaries informed is utterly inconsistent with their duty to act with an "eye single to the interests of the participants and beneficiaries." (*Bierwirth*, 680 F.2d at 271; see, e.g., *Leigh*, 727 F.2d at 123; 29 USC § 1104(a)(1)(A).)

### 2.    The Fiduciaries Failed to Value the Plan's Assets with the Care, Skill, and Prudence Required by ERISA

ERISA § 404(a)(1)(B) requires that a fiduciary value stock "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." (29 USC § 1104(a)(1)(B).)  When applying the prudence rule, the primary question is whether the fiduciaries, "at ***the time they engaged in the challenged transactions***, employed the appropriate methods to investigate the merits of the investment and to structure the investment." (*Donovan v. Mazzola*, 716 F.2d 1226, 1232 (9th Cir. 1983) (Emphasis added); see

---

[336] *McCormack Testimony*, TT 880:13-19.
[337] *Winn Testimony*, TT 90:11- 91:1.
[338] *Karlovsky Testimony*, TT 372:9-20.

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

also *Eyler*, 88 F. 3d at 454-55 (applying standard to a claim of fiduciary breach based on the imprudent valuation of closely-held stock).)

### a.    The Fiduciaries Imprudently Valued the Assets by Not Using Current Month End Value

In *Donovan v. Cunningham*, fiduciaries breached their duties of prudence under ERISA § 404 by failing to conduct a prudent investigation into the circumstances then prevailing and to prove that adequate consideration was paid.  (*Cunningham,* 716 F.2d 1455.)   The fiduciaries valued the company stock by relying on a stale valuation at the time of stock transactions that occurred months later.  The court noted that the ***crucial question was whether this valuation was accurate in the later months***.  (*Id.* at 1469.)   The fiduciaries testified that they knew the projections relied upon by the appraiser had not been met, but they relied upon their knowledge of contract negotiations (obtained by virtue of their management positions) and their belief that new contracts would be acquired in the near future.  The court held that while the fiduciaries were entitled to consider this information, the consideration of that information, in and of itself, did not establish a sufficient investigation.  (*Ibid.*)   The court determined that the insufficiency of the fiduciaries' investigation lay in their failure to identify the facts and assumptions underlying the appraisal and to consider whether they remained valid at the time of the stock transactions.  (*Id.* at 1469-70.)   The court determined that the fiduciaries failed to conduct an investigation sufficient to determine that the appraisal remained a reasonable approximation of the fair market value of the company stock at the time they relied on it.  (*Id.* at 1473.)

In this case, while the fiduciaries were free to consider a variety of factors in reaching their conclusions about the value of the Plan's common shares of JDS stock (including the previous

89
**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

year end audited book value), they were obligated to ensure that the value they assigned (prior year end audited book value) remained valid when they used it months later at the time of the transaction. (*Cunningham*, 716 F.2d at 1469.)  There is no evidence to suggest that they met this duty; in fact, all evidence points in the opposite direction – the fiduciaries actively pre-determined that the year end book value was to be used as the sale price for the Plan's shares to JDS and never questioned its propriety or equity.

As in *Donovan v. Cunningham*, in this case, no true investigation took place into whether the stale previous December 31 value assigned to the shares was accurate when used months later at the time of the sale.  The admissions of the fiduciaries prove this repeatedly. Karlovsky admitted that sales between HolliShare and JDS were taking place in June or July using the previous December 31 audited book value, and *he had no way of knowing whether or not the previous December 31 audited book value price was representative of the fair market value on the date of the sale.*[339]  Moreover, he knew that the book value of the common shares of JDS stock increased nearly every single month.[340]  He knew that Hollister computed the current month end book value of JDS common shares throughout the year and that he could have accessed that information had he asked for it.[341]  Karlovsky never determined how many more shares would have stayed in HolliShare if they had used the current month end book value as the sale price rather than year end book value, although he was aware that HolliShare would have had to sell less if they had used the current month end book value price.[342]

---

[339] *Karlovsky Testimony*, TT 368:10 – 369:14.
[340] *Karlovsky Testimony*, TT 352:15-19.
[341] *Karlovsky Testimony*, TT 468:20 – 469:5.
[342] *Karlovsky Testimony*, TT 360:7-24.

90

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

Karlovsky admitted that neither he, nor the trustees as a group, did anything to value the common shares of JDS held by HolliShare other than to confirm the previous December 31 audited book value figure.[343]   Further, he stated that had there been any trustee deliberations regarding the valuation of the common shares held by HolliShare, it would have been documented in the HolliShare meeting minutes.[344]

McCormack knew that HolliShare's primary asset, JDS common stock, was rising in value each year.[345]   He knew that for each sale of JDS common shares from HolliShare to JDS that he approved, the *month end book value as of the date of the transaction was higher than the sale price used* (previous December 31 book value).[346]

Trustee Brilliant *never considered* whether the Plan was receiving adequate consideration for the sale of its assets.  He *blindly accepted the existing practice without ever even trying to understand the terms of the practice.*  He knew that *the price being used to sell the shares (prior December 31 audited book value) was less than the current month end book value on every date of sale* and that the *later in the year that the sales took place to JDS, the greater the difference between current month end book value and the previous December 31 audited book value.*[347]  He never questioned why HolliShare was not receiving current month end book value in its sales transactions with JDS.[348]

/ / /

/ / /

_____

[343] *Karlovsky Testimony*, TT 471:8-20.
[344] *Karlovsky Testimony*, TT 481:22 – 482:2.
[345] *McCormack Testimony*, TT 767:5-7.
[346] *McCormack Testimony*, TT 766:20 – 767:19; 1034:5-9.
[347] *Brilliant Testimony*, TT 1324:1 – 1325:11.
[348] *Brilliant Testimony*, TT 1299:12 – 1300:10.

91

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

Incredibly, Brilliant (as an officer of Hollister and a trustee of the Plan) did not even read or ask to review the JDS Articles before the litigation in this case was well underway.[349] It is impossible that he could have conducted a prudent investigation without even reading the documents that govern the sale of the Plan's primary asset, JDS common shares.

Zwirner received monthly financial information for Hollister which included the current monthly book value calculation.[350] Although he was aware that the current month end value of the shares was increasing, he claims he never tried to determine how sales to JDS for the previous December 31 audited book value would affect HolliShare monetarily.[351] Although Zwirner believes that as a trustee, he had the power to negotiate the terms of sales with JDS, he never asked that the terms of the mid-80s agreement be amended so that HolliShare would once again receive current month end book value rather than prior December 31 audited book value for sales of HolliShare's common shares to JDS.[352]

Herbert, as plan monitor, could not recall any discussion at the Hollister Board level of the impact on HolliShare of selling its assets for below the current month end book value.[353] Herbert never considered how much of a disparity between the previous December 31 audited book value and current month end book value on the date of the transaction with JDS there would have to be in order to cause him any concern.[354]

In analyzing the thoroughness and prudence of the "investigation" undertaken by the Plan's fiduciaries, it is critical to understand that each fiduciary possessed or had access to

---

[349] *Brilliant Testimony*, TT 1276:20 – 1277:14; 1278:12-20, 1295:14 – 1296:1.
[350] *Zwirner Testimony*, TT 2016:6-9.
[351] *Zwirner Testimony*, TT 2416:7-25.
[352] *Zwirner Testimony*, TT 2064:19 – 2065:9; 2116:9-15.
[353] *Herbert Testimony*, TT 1876:1-14.
[354] *Herbert Testimony*, TT 1886:18-23.

92

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

accurate alternative valuation tools that were either not utilized or ignored. All the plan fiduciaries knew that the book value on the date of the transactions was higher than the value used to determine the sale price. The Plan fiduciaries had access to each month's current book value of the JDS common shares.[355] This monthly computed book value was accurate and was used to pay participants in the direct share ownership program.[356]

The fiduciaries violated the duty of prudence by failing to thoroughly investigate the use of timely month end book value as opposed to the stale year end book value or intentionally ignored that knowledge.

### b. The Fiduciaries Imprudently Valued the Assets by Not Using Fair Market Value

Zwirner's testimony on this subject was clearly well thought out and, on its surface, suggested something other than an utter failure to investigate the true value of the shares. In reality, his testimony was superficial as exposed by a basic review of the facts. Zwirner testified that the trustees investigated the value of the JDS shares by taking into account the share ownership restrictions, repurchase rights, and transfer restrictions in the JDS Articles, analyzing the size of the sales transaction and the potential market, the financial condition of JDS, the audited financial statements of JDS, and considering regulatory agency reviews and changes in applicable laws.[357]

In reality, Zwirner's "investigation" entirely failed to take into account or question the actual value of the shares on the date of the transaction. This conclusion is underscored by his

---

[355] *McCormack Testimony*, TT 1105:4-20.
[356] *McCormack Testimony*, TT 1105:25 – 1106:13; *Zwirner Testimony*, TT 2143:5 – 2144:13; Exhibit 10.
[357] *Zwirner Testimony*, TT 2358:24 – 2362:16.

93

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

admission that although he had the power to negotiate the terms of sales with JDS, he summarily concluded that JDS (on whose board he sits) would not agree to purchase shares from HolliShare at a higher price.[358]

Winn and McCormack knew that the unrestricted fair market value of the common shares of JDS was as high as three times the book value.[359]  Despite all this, McCormack never requested an independent appraisal nor requested a higher sale price because of the existence of the mid-80s agreement, which he understood to have been negotiated and entered into by Zwirner and Winn.[360]

The fiduciaries never had the Plan's shares appraised; and the only thing they did to value the shares was to confirm the previous December 31 audited book value.[361]  Highlighting the **utter failure to consider the true value** of HolliShare's primary asset and the **collective indifference**, when an appraisal of fair market value of JDS common shares of stock was prepared for the purposes of this litigation, Zwirner never even looked at it.[362]

c.    **The Fiduciaries Failed to Follow the Plan Documents.**

ERISA § 404(a)(1)(D) **requires that a fiduciary follow the plan documents so long as the plan documents are consistent with ERISA.**  (29 USC § 1104(a)(1)(D).)

Section 11.01(1)(i) of the HolliShare Plan document states that the Trustees are to invest in JDS common shares to the maximum extent practicable and advisable.[363]  This provision of the Plan is consistent with and part of the Plan's fundamental character as an Eligible Individual

---

[358] *Zwirner Testimony*, TT 2064:19 – 2065:9; 2116:3-15, 2373:6-20.
[359] *Winn Testimony*, TT 101:19-25.
[360] *McCormack Testimony*, TT 861:2 – 862:1, 862:7-12; 898:8 – 899:1; 888:12-21.
[361] *Karlovsky Testimony* TT 393:21-23, 471:8-20; *McCormack Testimony*, TT 1027:23 – 1028:3; *Zwirner Testimony*, TT 2101:3-8; *Herbert Testimony*, TT 1889:10-17.
[362] *Zwirner Testimony*, TT 2495:19-25.
[363] Exhibit 9-9.14, § 11.01.

94

<u>DeFazio, et al., v. Hollister, et al.,</u> Case No. 04-1358 WBS GGH
Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

Account Plan (EIAP) which is designed to invest in employer securities. This provision of the Plan is consistent with ERISA if followed in a prudent manner. The HolliShare fiduciaries were therefore ***required by the Plan to sell no more shares than necessary*** to meet their obligations under the terms of the Plan.

Contrary to this mandate, by selling HolliShare's assets at an artificially low price, the Trustees were forced to sell more shares than necessary in order to reach the pre-determined dollar figure to pay employees their benefits at retirement each year. The trustees were aware that the value of JDS common shares was increasing in the 80s, 90s, and 2000s by approximately 26% each year,[364] and by selling a larger number of shares than required, they were selling without capturing that gain.[365] In addition, in both 1982 and 1993, the fiduciaries forced the Plan to sell more shares than was necessary to fund the retirement benefits in each of those years (regardless of the assignment of value per share), further stunting the growth of the Plan.[366] Defendants' position that they needed to sell the stock to retard the growth of the Plan ignores the express language and plain mandate of the plan and is contrary to ERISA.[367]

### 3. HolliShare Fiduciaries Breached ERISA by Allowing Co-Fiduciaries to Breach Duties

In *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, the court stated that ERISA § 405(a) imposes on every ERISA fiduciary an affirmative duty to prevent other fiduciaries from breaching their duties for which they are jointly and severally liable. (*Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1157 (9th Cir. 2000).) A plan fiduciary is liable for a

---

[364] Exhibit 754.
[365] *Karlovsky Testimony*, TT 352:15-19; *McCormack Testimony*, TT 766:20 – 767:19, 1034:5-9; *Brilliant Testimony*, TT 1324:1 – 1325:11.
[366] Exhibits 253.15 p.1, 252.27 p. 1-3, 252.60 p. 20 ¶ 3.
[367] Exhibit 9-9.14, § 11.01; 29 USC § 1104(a)(1)(D).

95

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

breach of fiduciary responsibility of another fiduciary, if that fiduciary: (1) participates knowingly in, or knowingly undertakes to conceal, an act or omission of another fiduciary; or, (2) enables another fiduciary to commit a breach, or, (3) fails to make reasonable efforts to remedy a known breach. (29 USC § 1105(a)(1)-(3).) 29 U.S.C. § 1105(a)(2) imposes liability on a fiduciary for the losses caused by the co-fiduciary's breach when he or she enabled the co-fiduciary's breach by breaching a fiduciary duty under ERISA § 404(a)(1). (*Springate v. Weighmasters Murphy, Inc. Money Purchase Pension Plan*, 217 F.Supp 2d 1007, 1025 (C.D.Cal. 2002), aff'd, 73 Fed.App. 317 (9th Cir. 2003).)

As set forth above, the fiduciaries violated the following fiduciary duties required under ERISA:

- *Duty of Loyalty*: the fiduciaries failed to discharge their duties solely in the interest of the participants and the beneficiaries and for the exclusive purpose of providing benefits to the participants and beneficiaries because of their conflicts as direct shareholders and as officers and directors of JDS/Hollister which resulted in ing actions which were not in the best interest of the Plan's participants and beneficiaries;

- *Duty of Prudence*: the fiduciaries failed to prudently value the Plan's assets by not using an appraised fair market value or by not using current month end book value to value the shares at the time of the sale from HolliShare to JDS; and,

- *Duty to Follow Plan Documents*: the fiduciaries ignored the Plan Instrument's clear mandate to invest in JDS common shares to the maximum extent practicable and advisable by selling more shares than necessary when the value of those shares was rapidly increasing, thereby depleting the assets of the Plan and selling those assets without capturing the gain for the Plan.

///

///

///

///

96

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

McCormack knew that the unrestricted fair market value of the common shares of JDS was as high as three times the book value and that the Plan was getting less than book value at the time of the sale but never requested an appraisal nor requested a higher sale price.[368]

Brilliant and Karlovsky admitted that they were aware that the HolliShare Highlights publication failed to disclose that HolliShare was selling its JDS common shares for less than current month end book value and both failed to remedy this breach.[369]

Winn testified that he knew Zwirner simultaneously served as a Board Member for JDS, outside counsel for JDS and Hollister, and HolliShare trustee but never questioned Zwirner as to whether there was a conflict of interest in serving in these multiple capacities at one time, except when considering Zwirner's compensation.[370]

Karlovsky had no concerns as a trustee that the purported "mid-80s agreement" was arranged by Winn and Zwirner, both of whom had fiduciary obligations to JDS and HolliShare.[371]

Herbert, as a board of director of Hollister and Plan monitor, knew that the Plan was selling shares to JDS for less than current month end book value.[372] Yet in his monitoring role, he claims he never considered how much of a disparity between the December 31 audited book value and current month end book value would have to exist to cause him concern for sales transactions with JDS.[373]

All of the fiduciaries knowingly *participated* in each other's breaches, *enabled* others to commit breaches, and/or *failed to make reasonable efforts to remedy* the breaches.

---

[368] *McCormack Testimony*, TT 861:2 – 862:1, 862:7-12, 898:8 – 899:1; *Winn Testimony*, TT 101:19-25.
[369] *Brilliant Testimony*, TT 1286:9-19, 1287:14-1287:17, 1334:21-25; *Karlovsky Testimony*, TT 372:9-20.
[370] *Winn Testimony*, TT 38:21 – 40:18, 253:25 – 254:7, 254:8-14.
[371] *Karlovsky Testimony*, TT 464:7 – 465:9.
[372] *Herbert Testimony*, TT 1505:8-17.
[373] *Herbert Testimony*, TT at 1886: 18-23.

97

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}