**F.    HolliShare Fiduciaries Violated 29 U.S.C. § 1105(a) as it Relates to Amendments to the JDS Articles in 1999**

In 1999, the JDS Articles were amended to severely restrict the amount of shares individuals could own.[374]   The HolliShare Trustees, voting the JDS common stock held by the Plan, had to vote in favor of the amendment to the JDS Articles to have sufficient voting interest to approve the changes. Voting in favor of this amendment was a breach of fiduciary duty governed by 29 U.S.C. § 1104(a)(1) as it eliminated a potential market to sell common stock held by the Plan.  Given that the JDS Articles are a matter of public record and require strict compliance as a HolliShare Trustee, Brilliant, Kelleher and Zwirner were aware of or should have been aware of the amendment restricting ownership of the common shares. However, these individuals failed to take the necessary corrective action to protect the plan.

In 1999, trustees Zwirner, McCormack and Karlovsky voted in favor of adding a provision limiting the liability of JDS directors.[375]   The limitation of liability provision shifted fiduciary liability from the directors to the company, and prevented the Plan from recovering from the individual directors of JDS in the event of a breach of fiduciary duty. Zwirner was a JDS board of director member at the time.  Such a modification worked to prevent outside recovery by the Plan in the event of a breach of fiduciary duty by JDS and was a clear conflict of interest for Zwirner.

A fiduciary is liable for the breach of another fiduciary if "he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach." (29 U.S.C. §1105(a)(3)). Trustees capable of challenging the 1999 amendments to

---

[374] Exhibit 536, Article Five, ¶ II.D.8.
[375] Exhibit 535, Article Six.

98

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

the JDS Articles approved by HolliShare included Brilliant, Kelleher and Zwirner. The amendments to the JDS Articles are a matter of public record filed with the Illinois Secretary of State. HolliShare trustees were familiar with the JDS Articles. The 1999 amendments to the JDS Articles were harmful to the plan because they restricted the market for Plan assets and restricted liability of de facto Plan fiduciary JDS. Yet neither Brilliant, Kelleher nor Zwirner took any steps to remedy the breach of duty by their fellow fiduciaries.

### G.    Remedies

ERISA provides for separate remedies under each enforcement provision. ERISA §§ 502(a)(2) and 502(a)(3) are the enforcement provisions in this matter. Section 502(a)(2) provides that the **breaching fiduciary is personally liable** for all losses to the plan resulting from each such breach, and must restore any profits to the plan. Section 502(a)(2) also provides for other **equitable or remedial relief** as the court may deem appropriate, including removal of the fiduciaries.

The remedy under a § 502(a)(3) claim is **injunction** of the act or practice which violates ERISA, or **other appropriate equitable relief** to redress the violation or to enforce any provision under ERISA.

The relief sought by Ellis in this case, on her own behalf and on behalf of the Plan, is **within the scope of ERISA** statutory provisions, may be **calculated with certainty**, is straightforward, **non-controversial**, and will require **little or no supervision by this Court** for execution or oversight. The remedies sought are as set forth in detail below.

/ / /

/ / /

99

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

**1.    Ellis May Recover On Her Own Behalf and On Behalf of the Plan**

Ellis is entitled to recover on behalf of herself and the Plan for prohibited transactions and fiduciary breaches under ERISA §§ 502(a)(2) and 502(a)(3).

**a.    Recovery Under § 502(A)(2)**

Ellis can recover for the fiduciary breaches under ERISA § 502(a)(2). (29 U.S.C. § 1132(a)(2).) Section 502(a)(2) allows for "appropriate relief" including rescission, disgorgement of profits and equitable remedies. (*Harris v. Amgen, Inc.*, 573 F.3d 728, 734 (9th Cir. 2009).) However, individuals who sue under § 502(a)(2) may do so only on behalf of the plan as a whole. (*Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 105 S. Ct. 3085 (1985).) While this section does not provide a remedy distinct from plan injuries, it does authorize recovery for fiduciary breaches that impair the value of the plan assets in a participant's individual account. (*LaRue*, 552 U.S. at 254, 256, 128 S. Ct. at 1024-26.) ***Ellis may, therefore, recover for the fiduciary breaches under § 502(a)(2) because the breaches impaired the value of the Plan assets including Ellis' individual account.***

Plaintiffs may recover under ERISA § 502(a)(2) on behalf of the Plan for losses resulting from the trustees' breaches of fiduciary duty under ERISA § 404. This case directly involves the defendants' breaches of their loyalty, prudence, and co-fiduciary duties to the Plan; with respect to prohibited transactions, those transactions have been committed by the fiduciaries in connection with the sale of HolliShare stock to JDS. ERISA § 409(a) imposes personal liability on those who breach a fiduciary duty to a pension Plan. That section provides that any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed by

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

ERISA shall be "personally liable to make good to such Plan any losses to the Plan resulting from each such breach". (29 USC §§ 1001-1169).

The law requires that courts look to common law principles and remedies under trust law to determine the measurement of harm. (*Bierwirth*, 754 F.2d at 1052-58.) Under trust law, the basic remedy for a fiduciary breach is to "restore the Plan participants to the position in which they would have occupied but for the breach of trust." (*Martin v. Feilen*, 965 F.2d 660, 672 (8th Cir. 1992).) Specifically, in stock manipulation cases, the courts have consistently measured harm as the ***difference between the amount paid for the securities and the amount that would have been paid had the market price not been manipulated***. Furthermore, the courts generally hold that ***ambiguities in measuring losses should be resolved against the breaching fiduciary***. (*Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 602 (8th Cir. 1995); *see also Kim v. Fujikawa*, 871 F.2d 1427, 1430-31 (9th Cir. 1989).)

Relief to the Plan can be calculated based upon the amount paid by JDS for the shares in any given year measured against the price per share that the Plan should have received had JDS purchased shares in that year at the correct value, which can be determined by this Court as either month end book value or prudently appraised fair market value.

### b.    Recovery Under § 502(A)(3)

Ellis can recover under ERISA § 502(a)(3), which provides that a participant, beneficiary or fiduciary may bring an action to (A) enjoin any act or practice which violates any provision of Title I of ERISA or the terms of the plan, or (B) obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of Title I of ERISA or the terms of the plan including actions for breach of fiduciary duty. (29 USC §1132(a)(3).)

101

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

i.     **The Court May Order Rescission of the Transactions and Place the Unnecessarily Sold Shares Back into the Plan**

As described in this brief, the Plan Instrument requires that the Plan *invest in the common shares of JDS to the maximum extent practicable and advisable.*[376] The true manner in which to provide relief consistent with the directives of the Plan is to replace the unnecessarily sold shares in the Plan by rescinding those sales of additional shares and putting them back in the Plan. This is an equitable remedy given the mandates of the Plan and is a genuine mechanism that returns Plaintiffs to the position they would have been in but for the Defendants' unlawful acts. Once the shares are placed back into the Plan, a court-appointed independent trustee can properly allocate shares to each participant's account for each year.

*The Court has the equitable power and authority to compel JDS to return to HolliShare the excess shares redeemed in the series of prohibited transactions.* The shares may be recovered in the form of equitable rescission. In one of the earliest and leading cases in this area of law, and specifically involving an eligible individual account plan (EIAP) which had been imprudently transacting employer securities, a district court ordered equitable relief designed to restore the plan and its participants to the positions in which they would have been but for the defendants' unlawful acts. That relief included rescission of the sale transaction, restoration of lost income to the plan, and removal of the culpable fiduciaries. The circuit court upheld the district court's scope of remedies. (*See Eaves v. Penn*, 587 F.2d 453, 462-62 (10th Cir. 1978).)

Further case law makes clear that the Court can draw upon the law of trust in fashioning an appropriate equitable remedy to redress violations of ERISA. (*Nieto v. Ecker*, 845 F.2d 868, 875

---

[376] Exhibit 9-9.14, § 11.01.

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

(9th Cir. 1988).)  Insofar as JDS is a party to the redemptions, which were purchase and sale transactions and which constituted prohibited transactions, HolliShare must be permitted to rescind the transactions to the extent of the excess shares sold. Rescission has long been an accepted remedy in cases involving prohibited transactions with pension plans that are required to be primarily invested in employer's securities, as is the circumstance with HolliShare. Further regarding this form of equitable remedy, the Ninth Circuit has ruled that if a transaction would create an illegal prohibited transaction, a court will not enforce it.  (*M & R Inv. Co. v. Fitzsimmons*, 685 F.2d 283, 287 (9th Cir. 1982).)  Based thereon, the Court may order the rescission of the prohibited transactions and restoration of each participant's account with the excess shares for each year that such prohibited transactions occurred.

### ii.    The Court May Order Imposition of a Surcharge to Provide Relief

In *CIGNA Corporation v. Amara*, 131 S. Ct. 1866 (2011), the Court found that § 502(A)(3) gives **wide latitude to courts in determining the type of equitable relief** to impose, citing the equitable maxim that "equity suffers not a right to be without a remedy." (*CIGNA*, 131 S. Ct. at 1879.)  Included are the remedies of reforming contracts and imposing a **surcharge** (monetary compensation for a loss resulting from a trustee's breach of duty or to prevent the trustee's unjust enrichment).  (*Id.* at 1879-82.)  This surcharge would be calculated based upon the difference between the value used by Defendants to value Plan shares sold to JDS (previous December 31 book value) and either the current month end book value in the month of each sale to JDS for years 1982 through 2011 or a prudently appraised fair market value in the month of each sale to JDS for years 1982 through 2011.

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

### A.    Failure to Obtain Month End Book Value

Ellis, who participated in the Plan from 1978 through her retirement in 2004, suffered harm in the amount of **$91,011.38** if the 1982 and 1993 sales are held to be appropriate. In the event that the Court finds that the sales in 1982 and 1992 were too early, then the harm suffered by Ellis is **$108,917.87**. These figures do not include interest.

The approximate amount of shares that should be allocated to Ellis's account as an indirect owner is **1,694**. This number is calculated by taking Ellis' yearly percentage ownership and multiplying the figure by the excess shares sold in a given year and adjusted for the 9 to one stock dividend in 1995, and after the segregation of her account in 2001.

Harm to the Plan for the time period between 1982 through 2011 for selling Plan assets to a party in interest for less than current month end book value resulted in harm amounting to **$26,346,159.56** , or **243,366 too many shares**. In the event that the court finds that the sales in 1982 and 1993 sale were too early, then the harm suffered by the Plan is **$30,674,599.56**. These figures do not include interest.

### B.    Failure to Obtain Prudently Appraised Fair Market Value

If this Court determines that a prudently appraised fair market value should have been used to value the shares, then the harm suffered by Ellis is **at least $369,866.50 using figures from the Defense expert and at least $395,741.97 implementing the appraisal of Plaintiffs expert**. This calculation is based on Ellis' percentage interest ownership from 1997-2003 as detailed above, and these figures do not include interest. The approximate amount of shares that should be allocated to Ellis's account as an indirect owner is **at least 1,757 relying on the Defense expert, and 1,800 if**

104

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

**Plaintiffs' expert calculations are included**. Because the experts only analyzed years 1997-2007 and did not appraise the shares on the dates of each transaction but only on December 31 of the years considered, these figures are not fully developed and simply illustrate the disparity between the value assigned by the Defendants and the true fair market value. A neutral appraiser, retained by an independent trustee appointed by this Court will be able to obtain accurate figures from JDS and Hollister and conduct the calculations necessary to determine the true extent of the harm suffered by Ellis.

If this Court determines that a prudently appraised fair market value should have been used to value the shares, then the harm to the Plan capturing years 1997-2007 is **at least $65,449,826.25 using figures from the Defense expert and at least $70,028,626.25 implementing the appraisal of Plaintiffs expert** (interest is not included in these figures). The minimum amount of shares that should be returned to the Plan for losses sustained during 1997-2007 is **310,999 relying on the Defense expert, and 318,695 if Plaintiffs' expert calculations are included**. Again, these figures are not fully developed and simply illustrate the disparity between the value assigned by the Defendants and the true fair market value. A neutral appraiser, retained by an independent trustee appointed by this Court will be able to obtain accurate figures from JDS and Hollister and conduct the calculations necessary to determine the true extent of the harm suffered by the Plan.

    **2.**     **Ellis Requests an Award of Prejudgment Interest for the Restitution Surcharge Award**

Ellis, as an individual and on behalf of the Plan, seeks an award of pre-judgment interest. "Whether to award prejudgment interest to an ERISA plaintiff is 'a question of fairness, lying

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

within the court's sound discretion, to be answered by balancing the equities.'" (*Landwehr v. DuPree,* 72 F.3d 726, 739 (9th Cir. 1995) (quoting *Shaw v. Int'l Ass'n of Machinists & Aerospace Workers Pension Plan,* 750 F.2d 1458, 1465 (9th Cir. 1985)).)   Prejudgment interest "is an element of compensation, not a penalty, and is primarily concerned with making an aggrieved party whole." (*Hawkins-Dean v. Metro. Life Ins. Co.,* 514 F. Supp. 2d 1197, 1200 (C.D. Cal. 2007) (citing *Dishman v. UNUM Life Ins. Co. of Am.,* 269 F.3d 974, 988 (9th Cir. 2001)).)

In deciding whether to award prejudgment interest, a court considers a number of factors, including:

> whether prejudgment interest is necessary to compensate the plaintiff fully for his injuries, the degree of personal wrongdoing on the part of the defendant, the availability of alternative investment opportunities to the plaintiff, whether the plaintiff delayed in bringing or prosecuting the action, and other fundamental considerations of fairness.
> (*Osterneck v. Ernst & Whinney,* 489 U.S. 169, 176, (1989).)

It is within this Court's power to consider and recognize that the Plan is a specific type of plan with a specific investment mandate; i.e. to invest in JDS stock, an investment opportunity that it was systematically deprived of by the breaching fiduciaries.   The intentional, repetitive, premeditated, prearranged, and continuous fiduciary breaches were entirely focused on creating a diversion of JDS stock from the Plan. Therefore this case must be evaluated on the equities in a fashion to achieve a full recovery to the Plan.  If the Plan's relief is to be restitution of the lost value of the sale of the shares, or a surcharge to restore the Plan's losses, then the recovery must also reflect how the plan would have invested, but for the breach.  Pre-judgment interest would help restore the Plan to status quo.

Generally in ERISA cases of lost benefits "the interest rate prescribed for post-judgment

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

interest under 28 U.S.C. § 1961 is used for fixing the rate of pre-judgment interest unless the trial judge finds, on substantial evidence, that the equities of that particular case require a different rate." (*Blankenship v. Liberty Life Assurance Co. of Boston,* 486 F.3d 620, 628 (9th Cir. 2007*)* (quoting *Grosz-Salomon v. Paul Revere Life Ins. Co.,* 237 F.3d 1154, 1164 (9th Cir. 2001).) The pre-judgment rate of interest under this statute is generally a one year Treasury Bill rate of interest. In this matter, due to the nature of the harm suffered by the Plan, an award prejudgment interest to the Plan is called for at a rate that "reasonably reflects the conservative investment income the plaintiffs would have been able to have earned had they received the funds." (*Minton v. Deloitte & Touche* 631 F. Supp. 2d 1213 (N.D. Cal. 2009).)

Therefore, in this case, due to the nature of the Plan requiring investment in shares of JDS, the appropriate rate of prejudgment interest must be commensurate with the lost investment potential. To determine an appropriate rate of interest due to the Plan, the Court should look to the published rates of interest required by the U.S Department of Labor' Employee Benefits Security Administration (EBSA) in connection with its procedures for correcting fiduciary breaches to defined contribution plans. The EBSA publishes its rate of interest, which it deems to be an appropriate rate of recovery for such a plan in connection with its Voluntary Fiduciary Correction Program (VFCP). That rate of interest is based on the IRC §§ 6621(a)(2) and (c)(1) underpayment rates in effect during the time period of the breach and the corresponding factors from IRS Revenue Procedure 95-17 (IRS Factors), which reflect daily compounding. Under the VFCP special rules for transactions involving large losses or large restorations, the EBSA re-computes the amount of lost earnings using the applicable IRC § 6621(c)(1) interest rates. The EBSA rates of interest applicable to correction of fiduciary breaches are published by the EBSA and are

107

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

readily available to the Court and to an independent trustee on behalf of the Plan. The EBSA interest rate more accurately compensates Ellis and the Plan for the harm incurred by the Defendants and should therefore be applied to all improper transactions or breaches.

### 3. Pursuant to ERISA §§ 502(a)(2) and (3), Ellis Seeks A Preliminary And Permanent Injunction Against The Breaching Fiduciaries From Acting In Any Capacity With Respect To The Plan And Seeks Removal Of The Fiduciaries

This Court has the power to enjoin the fiduciaries from acting in any fiduciary capacity with respect to the Plan. In *Beck v. Levering*, 947 F.2d 639 (2nd Cir. 1991, cert. denied), the court upheld a permanent injunction against the principals of an investment firm from ever serving in an ERISA capacity again. The Eighth Circuit held it was an abuse of discretion ***not to bar*** individuals from being fiduciaries to an ERISA plan. (*Martin*, 965 F.2d 660.) A court may even enjoin persons from acting in a fiduciary capacity if no loss to the plan has occurred. (*Brock v. Robbins*, 830 F.2d 640, 646-47 (7th Cir. 1987).) It is clear that this Court has the power to enjoin the breaching fiduciaries from acting in a fiduciary capacity with respect to the Plan.

This Court also has the power to remove the fiduciaries. Where there are continuous and pervasive breaches of fiduciary duties, the Court should grant a removal of the fiduciaries. The Court has the authority to order the removal as an equitable remedy pursuant to *Donovan v. Mazzola*, which stated:

> The district court found that ERISA violations would continue unless the individual appellants ceased to control the Pension Fund's investment assets.
>
> At common law, a court could completely remove a trustee if the court found that continuation as a trustee would harm the beneficiary's interests . . . . Under the broad remedial provision of ERISA courts have also found removal of fiduciaries to be an appropriate remedy upon findings of imprudence, divided loyalties, and prohibited transactions . . . . Thus, in the

108

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

present case where the trustees committed numerous ERISA violations, the district court acted well within its broad discretion in divesting the individual appellants of their investment functions as trustees of the Pension Fund."

(*Mazzola*, 716 F.2d 1226, 1238-1239.)  If the court finds that there were prohibited transactions and thus breaches of fiduciary duty, the Plan and Ellis are entitled to an injunction removing the breaching fiduciaries, including the trustees and Hollister as the Plan administrator.

> **4.      Pursuant to ERISA § 502(a)(2), Ellis Requests Appointment of An Independent Trustee and An Independent Plan Administrator To Replace Hollister To Carry Out The Orders of The Court**

The Court may exercise its power under ERISA § 502(a)(2) to appoint an independent trustee and independent Plan administrator in order to ensure that the Court's orders to correct the fiduciary breaches and prohibited transactions will be carried out in the best interest of the participants. The Court has the power under ERISA to remove and appoint fiduciaries. "[R]emoval of pension fund trustees and the appointment of a person to serve in their stead is appropriate under the statute when they have engaged in 'repeated or substantial violation[s] of [their] responsibilities.'" (*Katsaros v. Cody*, 744 F.2d 270, 281 (2nd Cir. 1984), citing *Marshall v. Snyder*, 572 F.2d 894, 901 (2d Cir.1978).) As another example, in a case involving a plan invested in employer securities, in *Solis v. Current Dev. Corp.*, 557 F.3d 772, 775 (7th Cir. 2009), the court removed the trustee, and appointed Consulting Fiduciaries, Inc. to be the independent fiduciary. In that case, the court was willing and able to step forward and take action to ensure the plan participants were protected, in order to accomplish what a negotiated consent decree could not. In *Solis,* the Department of Labor had entered into a consent decree with the fiduciaries (the plan sponsor and its owner) who agreed to terminate the plan and make distributions to the participants. The fiduciaries, however, undervalued the plan's assets in such a way that other plan participants

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

received less while the fiduciaries received a windfall. The judge removed the trustee, forced the sale of the property, and ordered restorative payments. In this case, Ellis and the Plan are entitled to the protection and objectivity of an independent trustee and administrator because the fiduciaries engaged in repeated and substantial violations of their duties as ERISA fiduciaries.

Furthermore, given the nature of the repeated prohibited transactions that have transpired in this case, an independent trustee is critical to ensure that future self-dealing does not occur between the trustees and the Plan. As indicated in *Solis*, there are individuals that specialize in these matters. Since the Defendant trustees' sworn testimony and position in this case is that all sales of shares between HolliShare and JDS were negotiated under the exceptional circumstances provision of the JDS Articles, these future negotiations must take place at arms' length to avoid abuses.

Finally, the appointment of an independent trustee would substantially limit the amount of oversight, if any, necessary by this Court. The Court could issue orders to the independent trustee to carry out, including the order to retain an objective appraiser to assist with the calculations necessary to determine the fair market value, if the Court determines that the JDS common shares sold by the Plan to JDS should have been valued at a prudently determined fair market value.

### 5. Plaintiffs Are Also Entitled To Attorneys' Fees Pursuant To ERISA § 502(G)(1), 29 U.S.C. § 1132(G)(1)

Ellis and the Plan would like this Court to exercise its discretion to award fees to Ellis and the Plan from the Defendants pursuant to ERISA § 502(g). A balancing of the five factors under *Hummell v. Rykoff*, 634 F.2d 446 (9th Cir. 1980), weighs in favor of awarding fees to the Plan, and

DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH
Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

ERISA § 502(g) permits fee shifting so long as the Plan had some success on the merits pursuant to *Hardt v. Reliance Standard Life Insurance*, 130 S. Ct. 2149 (2010).

The Supreme Court held that there is no "prevailing party" requirement in order for fee shifting in an ERISA suit. (*Hardt*, 130 S. Ct. at 2157.) Rather, the test is whether the party had "some success" on the merits. (*See generally Hardt*, 130 S. Ct. 2149.) The *Hardt* Court stated that "some degree of success on the merits" is achieved if "the court can fairly call the outcome of the litigation … without conducting a 'lengthy inquir[y]' into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" (*Id.*, at 2158.)  Although the opposition in *Hardt* argued that "a court order remanding an ERISA claim for further consideration can never constitute 'some success on the merits,'" the Court did not agree with that argument and responded:

> Although Hardt failed to win summary judgment on her benefits claim, the District Court nevertheless found "compelling evidence that Ms. Hardt is totally disabled due to her neuropathy," and stated that it was "inclined to rule in Ms. Hardt's favor" on her benefits claim, but declined to do so before "first giving Reliance the chance to address the deficiencies in its" statutorily mandated "full and fair review" of that claim.
> (*Id.* at 2158.)

The Court ultimately held that Hardt had "achieved more than 'trivial success on the merits' or a 'purely procedural victory.'" (*Id.* at 2158.)

Plaintiffs shall file a comprehensive motion for fees pursuant to ERISA § 502(g) if requested by the Court after achieving some success on the merits of the claims and reserve the right to file the same post-judgment.

/ / /

**111**

<u>DeFazio, et al., v. Hollister, et al.</u>, Case No. 04-1358 WBS GGH
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

## H.   Conclusion

The evidence establishes liability on the part of Plan fiduciaries for a myriad of ERISA violations from 1982 to the present, namely, non-exempt prohibited transactions, breaches of fiduciary obligations, and misrepresentation and concealment to avoid exposure of the violations.

Plaintiff Ellis, on behalf of herself and the Plan, is entitled to recovery for the violations; the fraud perpetrated by Defendants allows recovery for the violations when they began, in 1982, up through the present.

Ellis respectfully requests that this Court issue the following rulings:

1. that the Court order a preliminary and permanent injunction removing the Plan trustees and barring them from serving as Plan trustees in the future; and,

2. that the Court appoint an independent trustee and a Plan administrator to carry out the orders of the Court to calculate the losses of the Plan and to correct the fiduciary breaches and prohibited transactions; and

3. that the Court award Plaintiff Ellis her attorney fees; and

4. that the Court order one of the following remedies to Plaintiff and the Plan:

   a)   against the fiduciaries individually for restitution or surcharge from 1982 through the present based on the difference between the actual price paid by JDS (previous December 31 book value) and the month end book value in the month the transactions took place, or, alternatively the difference between the actual price paid by JDS (previous December 31 book value) and appraised fair market value on the date of the transactions as determined by a neutral appraiser retained by the appointed independent trustee; or

   b)   against the fiduciaries individually to recover the excess shares redeemed by JDS in the transactions from 1982 to the present and restoration of each Participant's account with the excess shares for each year; or

   c)   against JDS as a party in interest to recover the excess shares redeemed by JDS in the transactions from 1982 to the present and restoration of each Participant's account with the excess shares for each year.

112
**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com

{00956881.DOCX}

Dated: November 14, 2011        PORTER SCOTT
                                A PROFESSIONAL CORPORATION

                                /s/ Russell G. Porter
                                _____
                                RUSSELL G. PORTER
                                Attorney for Plaintiffs


Dated: November 14, 2011        WILCOXEN CALLAHAM, LLP

                                /s/ Daniel E. Wilcoxen
                                _____
                                DANIEL E. WILCOXEN
                                Attorney for Plaintiffs

**DeFazio, et al., v. Hollister, et al., Case No. 04-1358 WBS GGH**
**Plaintiffs' (Proposed) Findings of Fact and Conclusions of Law**

{00956881.DOCX}

PORTER | SCOTT
ATTORNEYS
350 University Ave., Suite 200
Sacramento, CA 95825
TEL: 916.929.1481
FAX: 916.927.3706
www.porterscott.com